UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DONNA J. GARRETT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:09CV01252 ERW |
| ) | |
| J. DOUGLAS CASSITY, et al., ) | |
| ) | |
| Defendants. ) | |

### **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant National City Bank, N.A.'s Motion to Dismiss [doc. #166], Defendant Bremen Bank and Trust Company's Motion to Dismiss [doc. #168], Defendant Southwest Bank, an M&I Bank's Motion to Dismiss [doc. #170], Defendant Marshall and Ilsley Trust Company, N.A.'s Motion to Dismiss [doc. #172], Defendant Bank of America, N.A.'s Motion to Dismiss [doc. #191], Defendant U.S. Bank, N.A.'s Motion to Dismiss [doc. #195], Defendant Comerica Bank & Trust, N.A.'s Motion to Dismiss [doc. #197], and Defendant American Stock Transfer and Trust Company, LLC's Motion to Dismiss [doc. #384].

### **I.    BACKGROUND[1]**

This litigation arises out of proceedings instituted by the Texas Department of Insurance in Travis County, Texas, in which National Prearranged Services, Inc. ("NPS"), Lincoln Memorial Life Insurance Company ("Lincoln"), and Memorial Service Life Insurance Company ("Memorial") were placed in receivership and are currently in the process of being liquidated.

---

[1] For purposes of the Motions to Dismiss currently before the Court, the facts alleged by Plaintiffs in their Complaint [doc. #1] are taken as true.

Prior to the institution of the Texas proceedings, NPS was in the business of selling pre-need funeral service contracts, sold to consumers through funeral homes, and Lincoln and Memorial were issuers of life insurance policies. NPS marketed its pre-need contracts by assuring consumers that funds paid to NPS would be secured in pre-need trusts and backed by whole life insurance policies issued by Lincoln or Memorial for the full amount of the contract, so that the necessary funds would be available when the pre-need beneficiary died and the funeral home's claim became due. In accordance with state law, this was accomplished in certain states by requiring the purchaser to simultaneously apply for a life insurance policy issued by Lincoln or Memorial in an amount corresponding to the amount of the pre-need contract, and in other states, the pre-need trust itself purchased the life insurance policies.

Plaintiffs in this litigation are Donna J. Garrett, acting on behalf of NPS, Lincoln, and Memorial as Special Deputy Receiver in connection with the Texas receivership proceedings, The National Organization of Life and Health Guaranty Associations ("NOLHGA"),[2] and the individual state life and health insurance guaranty associations of Arkansas, Illinois, Kansas, Kentucky, Missouri, Oklahoma, and Texas. These individual guaranty associations, as well as those represented by NOLHGA, are statutory entities created by state legislatures to provide protection for resident policyholders in the event that a member insurance company becomes insolvent. Plaintiffs represent that these state guaranty associations have been assigned or subrogated to the claims of funeral homes and consumers arising out of dealings with NPS through (1) each state guaranty association's enabling act; (2) the NPS / Lincoln / Memorial

---

[2] NOLHGA represents the interests of the state life and health insurance guaranty associations of Arizona, California, Colorado, the District of Columbia, Georgia, Idaho, Indiana, Iowa, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Mexico, North Dakota, Ohio, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Washington, West Virginia, Wisconsin, and Wyoming.

Liquidation Plan approved by the Texas Receivership Court on September 22, 2008; or (3) express assignments received from recipients of death benefits paid by a state guaranty association.

There are over forty defendants named in Plaintiffs' Complaint, with varying degrees of alleged involvement in what Plaintiffs characterize as a scheme to defraud individual consumers and funeral homes in the sale of NPS's pre-need funeral contracts, with the ultimate goal of siphoning funds away from NPS, Lincoln, and Memorial for the personal use of certain defendants, and with the effect of leaving more than $600 million in liabilities to be satisfied by the Texas receiver and the state life and health guaranty association Plaintiffs. The principal focus of Plaintiffs' claims is a group of defendants consisting of (1) J. Douglas Cassity, J. Tyler Cassity, Rhonda Cassity, and Brent Cassity ("the Cassity Defendants"), the beneficial owners of NPS, Lincoln, Memorial, and a number of affiliated entities through a family trust of which J. Douglas Cassity is the settlor; (2) certain officers and employees of the Cassity-controlled entities, including Defendant Randall Sutton, former President of NPS and Lincoln; (3) a number of attorneys and law firms engaged by those entities; and (4) several of those entities themselves (collectively, "the RICO Defendants"). Plaintiffs allege that the RICO Defendants defrauded and conspired to defraud NPS's individual and funeral home consumers by, among other things:

(1) not revealing to NPS employees, funeral homes, or consumers that Lincoln and Memorial, as issuers of the life insurance policies intended to fund the pre-need contracts upon the death of the purchaser, were not independent of NPS, and that Lincoln, Memorial, NPS, and the Cassity Defendants were not independent of each other;

(2) in states in which the purchaser of the pre-need contract applied for the life insurance policy directly, altering policy applications to indicate that the policy was to be paid for in installments, when in fact the purchaser had paid the full amount of the policy in full, so that NPS would only be required to deposit the first installment into a pre-need trust, with the remainder of the amount then ultimately diverted to the RICO or Cassity

3

>Defendants through various Cassity-controlled entities, including NPS, Lincoln, and Memorial;

(3) in states in which the pre-need trusts purchased the life insurance policies, purchasing installment policies with monthly payments when the consumer paid for the pre-need contract with a single payment in full, likewise in order to avoid depositing the entire policy amount into a pre-need trust and to siphon the remaining funds to the RICO or Cassity Defendants;

(4) altering life insurance policy applications to indicate that NPS was the owner or beneficiary of the policy, in order to allow NPS to take out loans on the policies from Lincoln or Memorial, and then denying that NPS had taken out any such loans in response to inquiries from funeral homes;

(5) directing NPS to stop paying premiums to Lincoln on whole life policies and surrendering whole life policies for their cash value, with the effect of reducing NPS's obligations to Lincoln and allowing NPS to retain a greater percentage of funds received from consumers in exchange for the pre-need funeral contracts;

(6) removing funds from the NPS pre-need trusts in exchange for the issuance of promissory notes or debentures, with repayment only occurring through book entries unsupported by actual transactions or through the temporary shifting of funds between various entities controlled by the RICO Defendants; and

(7) engaging in "roll-over" transactions with funeral homes, whereby a funeral home would agree to transfer its existing pre-need contracts to NPS and remit to NPS the balance of its trust funds from those contracts, with NPS then using the above-described tactics with whole life insurance policies issued by Lincoln to avoid placing as much as possible of the "roll-over" funds into a pre-need trust, and diverting the remainder to the RICO or Cassity Defendants.

Based on these allegedly wrongful actions, Plaintiffs assert a wide variety of claims against the RICO Defendants, including but not limited to claims for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-1968, violations of the Lanham Act, 15 U.S.C. §§ 1051-1141n, state law claims concerning intentional and negligent fraudulent misrepresentations, and violations of the Texas Receivership Act, Tex. Ins. Code §§ 443.202-443.205. Plaintiffs assert additional claims related to allegedly fraudulent transfers between

Cassity-controlled entities against another set of Defendants (collectively, "the Fraudulent Transfer Defendants"), consisting of some of the RICO Defendants as well as certain additional Defendants. Plaintiffs also bring another set of claims arising out of the removal of funds from the pre-need trusts through the issuance of promissory notes and debentures against yet another defined group of defendants ("the Promissory Note Defendants"), some of which are likewise RICO or Fraudulent Transfer Defendants.

Defendants bringing the Motions currently before the Court, however, are not among any of these previously-discussed groups; instead, these Defendants are banks that served, or whose predecessors in interest served, as trustees to the NPS pre-need trusts: National City Bank, N.A. ("National City"), Bremen Bank and Trust Company ("Bremen"), Southwest Bank, an M&I Bank ("Southwest"), Marshall and Ilsley Trust Company, N.A. ("M&I"), Bank of America, N.A. ("Bank of America"), U.S. Bank, N.A. ("U.S. Bank"), Comerica Bank & Trust, N.A. ("Comerica"), and American Stock Transfer and Trust Company, LLC ("AST") (collectively, "the Trustee Defendants"). Plaintiffs assert state law claims against the Trustee Defendants for breach of fiduciary duty, gross negligence, money had and received, and unjust enrichment, alleging that during their respective tenures as trustees over the pre-need trusts, the Trustee Defendants failed to properly supervise the trusts and protect against the fraudulent actions of the RICO Defendants, the Fraudulent Transfer Defendants, and the Promissory Note Defendants.

## II.  DISCUSSION

The Trustee Defendants assert three principal grounds for dismissal of Plaintiffs' claims: (A) Plaintiffs' claims against AST and Bank of America are barred by Missouri's five-year statute of limitations for such claims; (B) Plaintiffs have improperly joined their claims against the Trustee Defendants with the other claims asserted in their Complaint; and (C) Plaintiffs have failed to

5

satisfy Fed. R. Civ. P. 8's pleading requirements, in that their allegations against the Trustee Defendants as a group are insufficiently factual to indicate that they are plausibly entitled to relief. The Court considers each of these arguments in turn.

### A. Statute of Limitations

Defendants AST and Bank of America assert that the five-year statute of limitations in Mo. Rev. Stat. § 516.120.1 bars Plaintiffs' claims against them, based on their contention that the claims against them accrued when their tenures as pre-need trustees ended in June 2004 and May 2003, respectively. Plaintiffs agree that the five-year statute of limitations applies to these claims, but they assert that their claims against the Trustee Defendants did not become ascertainable, and therefore did not accrue, until the Texas receivership action was instituted in May 2008.

District courts exercising supplemental jurisdiction apply the choice-of-law rules of the forum state and the state statutes of limitations indicated by those choice-of-law rules. *See East Maine Baptist Church v. Union Planters Bank, N.A.*, 244 F.R.D. 538, 545 (E.D. Mo. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989); *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 399 (3d Cir. 1987)). Under Missouri choice of law principles, the applicable statute of limitations is a procedural matter, meaning that the forum state's law applies. *See Nettles v. American Tel. & Tel. Co.*, 55 F.3d 1358, 1362 (8th Cir. 1995) (internal citation omitted).

Mo. Rev. Stat. § 516.120.1 provides a five-year statute of limitations for "actions upon contracts, obligations or liabilities, express or implied," which, as noted above, the parties agree is applicable to all of Plaintiffs' claims against the Trustee Defendants. The statute of limitations begins to run when the cause of action accrues, which under Missouri law occurs not

> when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and capable of ascertainment,

6

> and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

Mo. Rev. Stat. § 516.100. Under § 516.100, damages are "capable of ascertainment" when "the evidence is such to place a reasonably prudent person on notice of a potentially actionable injury." *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 582 (Mo. 2006) (internal quotations and citations omitted). As such, "[t]he issue is not when the injury occurred, or when [the] plaintiff subjectively learned of the wrongful conduct and that it caused his or her injury, but when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Id.* at 584. The "capable of ascertainment" standard is objective, and the court can therefore decide the statute of limitations issue as a matter of law where the underlying facts are undisputed; if, however, "contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question of fact for the jury to decide." *Id.* at 585 (internal citations omitted).

The damages allegedly caused by AST and Bank of America likely were *complete* at the point when they ceased to serve as trustees, but there is little to no indication in the pleadings as to when those damages became *ascertainable*. Apart from the obvious inference from Plaintiffs' Complaint that the Texas receivership proceedings somehow alerted Plaintiffs to the existence of these claims, neither Plaintiffs nor AST or Bank of America has indicated precisely when Plaintiffs should have been on notice that AST or Bank of America's actions had caused them "substantial damages," such that Plaintiffs "would have undertaken to ascertain the extent of the damages." *See id.* at 584. It may very well be true, as AST and Bank of America contend, that Plaintiffs, or those parties whose interests Plaintiffs represent, were on notice of breach of fiduciary duty claims against these trustees as soon as each trustee ended its tenure as trustee, but that much is not

7

apparent from the face of Plaintiffs' Complaint. As such, because AST and Bank of America bear the burden of establishing that the statute of limitations bars Plaintiffs' claims against them, and because Plaintiffs are under no obligation to plead facts with respect to whether the statute of limitations applies, the absence of sufficient facts to determine whether Plaintiffs' claims are time-barred means that AST's and Bank of America's Motions to Dismiss must be denied on this point. *See Metro. St. Louis Equal Hous. Opportunity Council v. Tillman*, 2007 WL 3046585, at *1 (W.D. Mo. 2007) ("A federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense. However, dismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense.") (internal alterations, quotations, and citations omitted).

In sum, the Court concludes that AST and Bank of America are not entitled to dismissal of Plaintiffs' claims against them for breach of fiduciary duty, gross negligence, money had and received, and unjust enrichment, based on Missouri's five-year statute of limitations for such claims, Mo. Rev. Stat. § 516.120.1. Although it is undisputed that AST and Bank of America ceased to serve as trustees for the relevant pre-need trusts in June 2004 and May 2003, respectively, there are insufficient undisputed facts in the record for the Court to conclude that Plaintiffs were on inquiry notice of the existence of their claims against these Defendants at that time. As such, the Court cannot conclude as a matter of law that Plaintiffs' claim accrued more than five years before this Complaint was filed in August 2009.[3]

---

[3] This conclusion makes it unnecessary for the Court to consider whether, as Plaintiffs argue, provisions of the Texas Receivership Act could "save" their claims even if AST and Bank of America are correct as to when the claims accrued. *See* Pl. Response in Opposition [doc. #226], p. 18. Likewise, the Court need not address at this juncture the possibility that certain of Plaintiffs' claims against the Trustee Defendants are governed by the law of another jurisdiction,

B.    **Improper Joinder of Parties**

The Trustee Defendants next contend that Plaintiffs' claims should be dismissed because Plaintiffs have failed to satisfy Fed. R. Civ. P. 20(a)'s requirements for permissive joinder in joining their claims against the Trustee Defendants to this litigation. This argument ignores, however, that "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Rule 21 does further provide that a district may, on motion or *sua sponte*, add or drop parties or sever a claim against a party, and the Court also has authority under Rule 42(b) to order separate trials of certain claims "[f]or convenience, to avoid prejudice, or to expedite and economize." The Court finds, however, that the appropriateness of taking any of these measures is best addressed, if at all, in the Rule 16 Conference following resolution of the pending motions to dismiss. At this point, it suffices to state that Rule 21 specifically provides that misjoinder of parties is not grounds for dismissal, and that the Trustee Defendants' Motions to Dismiss on that basis will therefore be denied.[4]

C.    **Failure to State Claims upon Which Relief Can Be Granted**

The Trustee Defendants contend that Plaintiffs' claims must be dismissed because Plaintiffs' allegations against the Trustee Defendants as a group contain insufficient facts to satisfy

---

in which case the applicable statute of limitations for that jurisdiction may be relevant. *See* Mo. Rev. Stat. § 516.190 ("Whenever a cause of action has been fully barred by the law of the state . . . in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of [Missouri].").

[4] A somewhat related issue is whether the Court may properly exercise supplemental jurisdiction over Plaintiffs' state law claims against the Trustee Defendants – that is, whether these claims and Plaintiffs' federal question claims against the other defendants "derive from a common nucleus of operative fact." *See OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 350 (8th Cir. 2007) (internal citation omitted). The Court declines to raise this issue *sua sponte* at this relatively early stage in this litigation, however, given that the Trustee Defendants have chosen not to contest subject matter jurisdiction, and also due to a lack of clarity concerning whether diversity might provide an alternative jurisdictional basis for these claims.

Rule 8's standards, as articulated in *Twombly* and *Iqbal*. Plaintiffs assert that their pleaded claims are sufficiently detailed to survive a motion to dismiss, in that each bank is alleged to have occupied the same role with respect to the NPS pre-need trusts and is alleged to have committed the same acts or omissions in failing to properly safeguard trust assets.

The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." In order to meet this standard and to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means that the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949). Furthermore, courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (internal citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alterations and citations omitted); *see also Iqbal*, 129 S. Ct. at 1950 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, although the "plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a sheer possibility," it is not a "probability requirement." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1949). As such, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely," *id.* (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted), provided that the complaint contains sufficient facts to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

Thus, in sum, these considerations suggest a two-step analysis under which the court may first (1) identify whether the complaint contains pleadings that are "more than conclusions," and that the court can therefore treat as factual allegations entitled to "the assumption of truth," and if it does, (2) "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.

All of Plaintiffs' four claims against the Trustee Defendants are ultimately based on the Trustee Defendants' alleged breaches of fiduciary duties, set forth in Plaintiffs' Count 19. That Count contains the following factual allegations against the Trustee Defendants:

> The Trustee Defendants breached their fiduciary duties to NPS, the funeral homes, and consumers by, *inter alia*:

a) permitting the looting of the NPS pre-need trusts through promissory notes and debentures to affiliated entities within the Cassity Consortium[5] and the other schemes set forth in this Complaint;

b) failing to ensure that the promissory notes were adequately secured by assets, that security interests were properly recorded, and failing to ensure payment of interest due under the promissory notes;

c) failing to adequately account for the funds in the NPS pre-need trusts;

d) failing to keep and review adequate records of trust transactions;

e) "rubber-stamping" the accounting of trust funds presented to them by Defendants Wulf, Wulf Bates,[6] and other RICO Defendants;

f) failing to independently verify the trust account records;

g) allowing the RICO Defendants, the Promissory Note Defendants, and/or the Fraudulent Transfer Defendants to indiscriminately withdraw funds from the NPS pre-need trusts without appropriate documentation, commitments from those Defendants to repay the funds, or requiring a reasonable interest rate on those Defendants' use of the trust funds;

h) failing to ensure that Defendants Wulf and Wulf Bates were "independent";

i) using or allowing NPS pre-need trust funds to be used primarily to purchase life insurance policies from Lincoln, a company which the Trustee Defendants knew or should have known was closely affiliated with NPS and which was controlled by the same Defendants who controlled NPS;

j) allowing the RICO Defendants to manipulate the Lincoln policies through policy loans, surrenders, and other means;

---

[5]The "Cassity Consortium" refers to the network of affiliated entities, including NPS, Lincoln, and Memorial, owned by the RBT Trust II, the family trust of which Defendants J. Douglas Cassity, Rhonda Cassity, Brent Cassity, and J. Tyler Cassity are beneficiaries.

[6] Plaintiffs allege that the RICO Defendants hired Defendant David Wulf and the law firm Defendant Wulf, Bates & Murphy, Inc. to act as independent investment advisors for the various NPS pre-need trusts. Plaintiffs claim that instead of acting independently, however, Wulf and Wulf Bates acted at the RICO Defendants' direction in appointing Defendant Randall Sutton, President of NPS and Lincoln, as investment agent for the trusts, which allowed the RICO Defendants to directly manipulate trust assets.

> k) failing to ensure the payment of premiums on the life insurance policies
> held by the NPS pre-need trusts, thus allowing those policies to be
> surrendered or lapsed . . . .

These alleged actions, according to Plaintiffs, allowed "the RICO Defendants . . . to manipulate trust assets and siphon millions of dollars from the NPS pre-need trusts, such that the trusts lacked sufficient assets to provide consumers their pre-paid funeral services." Plaintiffs' Complaint, in setting out the identities of the parties, also identifies the pre-need trust for which each Trustee Defendant acted as trustee, and provides the specific timeframe during which it did so. Additionally, the Complaint alleges that the Trustee Defendants owed fiduciary duties to the consumers who provided the funds to be placed in the pre-need trusts and to the funeral homes listed as service providers on the pre-need contracts, allegations which are to some extent legal conclusions, but which also contain concrete factual representations as to the basis for the fiduciary duties allegedly owed. These allegations are sufficiently factual, as opposed to being in the nature of legal conclusions, to be entitled to "the assumption of truth," *see id.*, in that they are verifiable factual assertions and do not represent a mere "formulaic recitation" of the elements of Plaintiffs' causes of action. *See Twombly*, 550 U.S. at 555.

Having made that determination as to the sufficiency of Plaintiffs' factual allegations, the Court concludes that Plaintiffs have sufficiently pleaded claims that "plausibly give rise to an entitlement to relief." *See Iqbal*, 129 S. Ct. at 1950. Plaintiffs' Complaint informs each Trustee of (1) the pre-need trust to which it allegedly acted as trustee; (2) the timeframe during which the trustee-trust relationship allegedly existed; (3) the fiduciary duties it allegedly owed to funeral homes and consumers as beneficiaries of the trust; and (4) the actions or omissions, in general terms, for which it is alleged to be responsible and that breached its fiduciary duties. Plaintiffs' pleading against the Trustee Defendants as a group notwithstanding, this information is sufficient

13

to put the Trustee Defendants on notice of Plaintiffs' claims, in that Plaintiffs claim that each Trustee Defendant breached its fiduciary duties in essentially the same manner. Even if it strikes the Court as unlikely or improbable that each of the Trustee Defendants breached its fiduciary duties in the same fashion, that does not provide grounds for dismissal under Rule 12(b)(6). *See Braden*, 588 F.3d at 594. *Twombly* and *Iqbal* may have refined notice pleading by emphasizing that legal conclusions couched as factual assertions do not satisfy Rule 8's requirements, but they did not go so far as requiring fact pleading under the Federal Rules of Civil Procedure. Plaintiffs' allegations are adequate to provide the required notice, and to require more than Plaintiffs have pled would, in essence, amount to this Court applying fact pleading requirements to Plaintiffs' claims.

That said, the Trustee Defendants have identified a significant deficiency in Plaintiffs' Complaint: it is not clear whether all Plaintiffs purport to assert these state law claims against all of the Trustee Defendants, or if only certain Plaintiffs are asserting claims against certain Trustee Defendants. As such, the Trustee Defendants are hampered in responding to the Complaint by their inability to discern how each of them is claimed to be liable to the numerous state guaranty association Plaintiffs and how their alleged actions or omissions might have harmed the various Plaintiffs. Although a plaintiff need not identify in her complaint which state's law applies to her claims, *see, e.g.*, *Fisher v. Great Socialist People's Libyan Arab Jamahiriya*, 541 F. Supp. 2d 46, 52 (D.D.C. 2008), each of the more than thirty jurisdictions that might arguably be at issue in this litigation has its own regulations or lack thereof concerning pre-need trusts and pre-need trust agreements. Before the Trustee Defendants can argue in favor of dismissal based on such jurisdiction-specific regulations, they must first be able to make arguments concerning which jurisdiction's law applies, something they cannot do without knowing which Plaintiffs seek to bring

claims against them. *Cf. Wisland v. Admiral Beverage Corp.*, 119 F.3d 733, 737 (8th Cir. 1997) ("The district court allowed Admiral to plead the South Dakota statute of limitations as an affirmative defense, and Admiral therefore had the right to raise the preliminary choice of law arguments necessary to present that defense."). Similarly, the Court is unable to address the Trustee Defendants' contentions that Plaintiffs have failed to plead cognizable claims under Missouri law for gross negligence, unjust enrichment, or money had and received, as the Court is unable to determine from Plaintiffs' Complaint to what extent Missouri law governs their claims. The Court finds that these deficiencies do not warrant outright dismissal of all of Plaintiffs' claims against the Trustee Defendants, however, and it will instead grant Defendants' requests for more definite statements and require Plaintiffs to supplement their claims to clarify which Plaintiffs seek to assert these claims for breach of fiduciary duty, gross negligence, money had and received, and unjust enrichment against which of the Trustee Defendants.

## IV. CONCLUSION

The Trustee Defendants' Motions to Dismiss will be denied. AST and Bank of America are not entitled to dismissal on statute of limitations grounds, at least at this juncture, because it is not readily apparent from Plaintiffs' Complaint that their claims accrued more than five years before they filed this suit. The Court further concludes that the Trustee Defendants' contention that Plaintiffs have improperly joined them as parties does not justify dismissal, in that Fed. R. Civ. P. 21 expressly provides that misjoinder of parties is not grounds for dismissing a claim. Instead, the Court believes that to the extent misjoinder might be an issue, any such problems can be resolved in conjunction with the Rule 16 conference, should this litigation proceed to that point. Lastly, the Court concludes that Plaintiffs have pled adequate facts to demonstrate that they are plausibly entitled to relief, and that they have therefore satisfied Rule 8's notice pleading

requirements. The Court will, however, grant the Trustee Defendants' requests for more definite statements, as it is unclear from Plaintiffs' Complaint which Plaintiffs are asserting claims against which of the Trustee Defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant National City Bank N.A.'s Motion to Dismiss [doc. #166], Defendant Bremen Bank and Trust Company's Motion to Dismiss [doc. #168], Defendant Southwest Bank, an M&I Bank's Motion to Dismiss [doc. #170], Defendant Marshall and Ilsley Trust Company, N.A.'s Motion to Dismiss [doc. #172], Defendant Bank of America, N.A.'s Motion to Dismiss [doc. #191], Defendant U.S. Bank, N.A.'s Motion to Dismiss [doc. #195], Defendant Comerica Bank & Trust, N.A.'s Motion to Dismiss [doc. #197], and Defendant American Stock Transfer and Trust Company, LLC's Motion to Dismiss [doc. #384] are **GRANTED, in part** and **DENIED, in part**. These Motions are granted to the extent they request more definite statements from Plaintiffs as to which Plaintiffs are asserting claims against which of the Trustee Defendants, and are otherwise denied. Plaintiffs shall file an amended Complaint containing such information no later than **July 12, 2010**.

Dated this 17th Day of June, 2010.

*E. Richard Webber*
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE