UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DONNA J. GARRETT, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:09CV01252 ERW |
| | ) |
| J. DOUGLAS CASSITY, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants David R. Wulf and Wulf, Bates & Murphy, Inc.'s Motion to Dismiss [doc. #604], seeking dismissal of Counts 1-2, 4-6, 9, 11-12, 17-18, and 28 of Plaintiffs' Second Amended Complaint [doc. #594].

**I.      FACTUAL AND PROCEDURAL BACKGROUND**[1]

This litigation arises out of an alleged scheme by the owners, directors, officers, employees, and several associated parties of three entities – National Prearranged Services, Inc. ("NPS"), Lincoln Memorial Life Insurance Company ("Lincoln"), and Memorial Service Life Insurance Company ("Memorial") – to defraud funeral homes and consumers in the sale of pre-need funeral service contracts, and to re-direct the funds received from the sale of those products to other related entities and certain individual parties, with the ultimate result of causing the Texas Department of Insurance to declare these entities insolvent and place them in receivership.[2] Plaintiffs in this litigation are Donna J. Garrett, acting on behalf of NPS, Lincoln,

---

[1] For purposes of this Motion to Dismiss, the facts alleged in Plaintiffs' Second Amended Complaint [doc. #594] are taken as true.

[2] For a more complete discussion of Plaintiffs' voluminous and complex allegations, *see* the Court's December 21, 2010 Memorandum and Order [doc. #589]; *Garrett v. Cassity*, 2010

and Memorial as Special Deputy Receiver ("Plaintiff SDR") in connection with the receivership proceedings instituted in Travis County, Texas, The National Organization of Life and Health Guaranty Associations ("NOLHGA"),[3] and the individual state life and health insurance guaranty associations of Arkansas, Illinois, Kansas, Kentucky, Missouri, Oklahoma, and Texas. These individual guaranty associations, as well as those represented by NOLHGA (collectively, "SGA Plaintiffs"), are statutory entities created by state legislatures to provide protection for resident policyholders in the event that a member insurance company becomes insolvent.

Defendants David R. Wulf ("Wulf") and his firm Wulf, Bates & Murphy, Inc. ("Wulf Bates") (collectively, "Wulf Defendants") were allegedly hired by NPS to act as investment advisors to the pre-need trusts. Plaintiffs' numerous allegations against Wulf Defendants amount to a claim that Wulf Defendants did not act independently as required by their roles as investment advisors, but instead participated in and facilitated the fraudulent scheme devised by those Defendants in control of NPS, Lincoln, and Memorial. Plaintiffs contend that Wulf Defendants mismanaged trust assets through self-dealing and taking out loans – or permitting other Defendants to take out loans – against life insurance policies that were intended to be held in trust and ultimately used to fund the payments to the beneficiaries of NPS's pre-need contracts. Based on these allegations, Plaintiffs brought claims against Wulf Defendants for, among other things, violations of the RICO and Lanham Acts, and for various types of fraud and violations of state statutes governing the insurance business.

---

WL 5392767 (E.D. Mo. 2010).

[3] NOLHGA represents the interests of the state life and health insurance guaranty associations of Arizona, California, Colorado, the District of Columbia, Georgia, Idaho, Indiana, Iowa, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Mexico, North Dakota, Ohio, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Washington, West Virginia, Wisconsin, and Wyoming.

In response to Plaintiffs' original complaint, Wulf Defendants filed a combined motion to dismiss and motion for a more definite statement, arguing for dismissal of Plaintiffs' claim for violation of the Missouri Merchandising Practices Act ("MMPA") and seeking a more definite statement as to Plaintiffs' other claims. In a December 21, 2010 Memorandum and Order addressing a variety of Rule 12(b) and Rule 12(e) motions, the Court dismissed the MMPA claim and otherwise denied Wulf Defendants' motion. The Court also ordered Plaintiffs to file an amended complaint, clarifying which Plaintiffs are asserting which claims and on whose behalf Plaintiff SDR is asserting each of her claims. *See generally Garrett v. Cassity*, 2010 WL 5392767 (E.D. Mo. 2010). In response to Plaintiffs' Second Amended Complaint, Wulf Defendants now contend in this Motion that Plaintiffs' Counts 1-2, 4-6, 9, 11-12, 17-18, and 28 must be dismissed.

## II. LEGAL STANDARD

The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." In order to meet this standard and to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means that the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949). Furthermore, courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (internal

citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alterations and citations omitted); *see also Iqbal*, 129 S. Ct. at 1950 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, although the "plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a sheer possibility," it is not a "probability requirement." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1949). As such, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely," *id.* (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted), provided that the complaint contains sufficient facts to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

Thus, in sum, these considerations suggest a two-step analysis under which the court may first (1) identify whether the complaint contains pleadings that are "more than conclusions," and that the court can therefore treat as factual allegations entitled to "the assumption of truth," and if it does, (2) "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.

4

In cases in which a party alleges fraud or mistake, Federal Rule of Civil Procedure 9(b) requires that the party plead "with particularity the circumstances" of the fraud or mistake. The Eighth Circuit has stated that this rule is to be interpreted "in harmony with the principles of notice pleading, and to satisfy it, the complaint must allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the representation and what was obtained or given up thereby." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (internal quotations and citation omitted). "In other words, the complaint must plead the who, what, where, when, and how of the alleged fraud." *Id.* (internal quotations and citation omitted).

That said, "[t]he special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001). Furthermore, the overarching principles of notice pleading dictate that a plaintiff does not need to plead fraud "with complete insight before discovery is complete." *Gunderson v. ADM Investor Servs., Inc.*, 230 F.3d 1363, at *3 (8th Cir. 2000) (table) (quoting *Maldonado v. Dominguez*, 137 F.3d 1, 9 (1st Cir. 1998)). As a result, 9(b) does not require a plaintiff to set out specific facts concerning matters that are likely solely known by the defendant. *See, e.g.*, *Abels*, 259 F.3d at 921. Likewise, the Eighth Circuit has recognized that in cases alleging a systematic scheme to defraud, the plaintiff can satisfy Rule 9(b) by providing "some representative examples of [the defendants'] alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors," *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006), and in cases involving multiple defendants participating in such a scheme, by

5

"inform[ing] each defendant of the nature of his alleged participation in the fraud." *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 778 (7th Cir. 1994) (internal quotations and citations omitted).

## III. DISCUSSION

Given that this is the second motion to dismiss Wulf Defendants have filed, the Court must evaluate it in light of Federal Rule of Civil Procedure 12(g)(2), which provides that "a party that makes a motion under this rule [i.e., under Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion," with certain exceptions not relevant here. Thus, if the defendant files a motion to dismiss, and the plaintiff files an amended complaint after that motion has been resolved, the defendant cannot raise defenses in a subsequent motion to dismiss that could have been raised in the earlier motion. *See* 5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, Federal Practice and Procedure § 1388 (3d ed. 2002) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading; conversely, a Rule 12 defense that becomes available because of new matter in the amended complaint may be asserted by motion."). The same is true if the defendant's first motion was a motion for a more definite statement under Rule 12(e), because Rule 12(g)(2) refers to Rule 12 as a whole and not only to Rule 12(b). *See id.* ("Motions . . . for a more definite statement are motions under Rule 12 and thus clearly are within the language of subdivision (g)."). As a result, to the extent Wulf Defendants raise arguments in this Motion that could have been raised in their initial motion to

dismiss and for a more definite statement, those arguments have been waived and may not be considered.[4]

   A.   RICO Act

Wulf Defendants argue that Plaintiffs' RICO claims – Count 1 for violating the RICO Act and Count 2 for conspiracy to that end – must be dismissed because Plaintiffs have failed to allege that Wulf Defendants personally used interstate mails or other means of communication in furtherance of the alleged scheme.

This argument fails for two reasons. First, Wulf Defendants could have made this claim in the context of their first motion to dismiss, but did not, and thus waived this argument. *See* Rule 12(g)(2). Second, the Court rejected this precise argument from Defendant Randall Sutton in the December 21 Memorandum and Order, because the predicate offenses alleged here – mail fraud and wire fraud – do not require that the defendant *personally* used the mail or wires. *See Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 918 (8th Cir. 2001) (offenses of mail fraud and wire fraud "consist in the foreseeable use of the mails or wires for the purpose of carrying out a scheme to defraud"). Plaintiffs allege that Wulf Defendants "directed, knew about, and intentionally concealed" the fraudulent practices of taking out loans on insurance policies issued in connection with NPS's pre-need funeral service contracts, and that wire transfers occurred in connection with those practices. These assertions adequately allege the interstate communication

---

[4] Wulf Defendants did state in their first motion that they were reserving the right to file additional Rule 12 motions depending on how that motion was resolved, but the language of Rule 12(g)(2) is mandatory and does not provide for such a reservation of rights. Wulf Defendants have cited two district court cases from other circuits in which the court permitted the defendant to file a second motion to dismiss in the interest of efficiency, *see SCO Group, Inc. v. Novell, Inc.*, 377 F. Supp. 2d 1145, 1151 (D. Utah 2005); *Thorn v. N.Y. City Dep't of Soc. Servs.*, 523 F. Supp. 1193, 1196 n.1 (S.D.N.Y. 1981), but again, the wording of Rule 12(g)(2) is mandatory and not discretionary, and the Court therefore declines to follow those cases.

component of the predicate offenses at issue, and because Wulf Defendants sole argument in favor of dismissing the RICO conspiracy claims is Plaintiffs' failure to allege the underlying RICO violation, they are likewise not entitled to dismissal of those claims. Thus, Wulf Defendants' Motion will be denied on this point.

### B.  Lanham Act

For substantially the same reasons, the Court rejects Wulf Defendants' contention that Plaintiffs' Lanham Act claims must be dismissed for failure to allege that Wulf Defendants had any direct involvement in misrepresentations to funeral homes and consumers about the financial condition of the pre-need trusts. Wulf Defendants waived this argument by failing to make it in their first motion to dismiss, and the Court also rejected an analogous argument from Defendant Howard Wittner in the December 21 Memorandum and Order. Plaintiffs assert that Wulf Defendants intentionally concealed NPS's policy loans from funeral homes, that Wulf Defendants knew that the pre-need trusts lacked sufficient assets to meet NPS's future obligations on its pre-need contracts, and that Wulf Defendants participated in various efforts to generate cash to meet NPS's then-present obligations, so that NPS's customers would not become aware of its financial difficulties. The Court agrees with Plaintiffs that these allegations, taken together, amount to an allegation that Wulf Defendants were directly involved in the alleged misrepresentations. Furthermore, Wulf Defendants – like Defendant Wittner – offer no authority suggesting that Lanham Act liability requires that the defendant personally made the misrepresentation(s) at issue, and this argument is therefore likewise not a ground for dismissal. Wulf Defendants' Motion will therefore be denied as to the Lanham Act claims.

### C. Fraudulent Misrepresentation

Wulf Defendants' contention that Plaintiffs' fraudulent misrepresentation claims must be dismissed for failure to plead fraud with particularity will likewise be rejected. Wulf Defendants have waived this argument because they could have raised it in their first motion to dismiss and did not. Again, moreover, Plaintiffs have alleged specific facts concerning Wulf Defendants' involvement in the misrepresentations at issue: that they were directly involved in a plan to misrepresent and conceal the financial condition of the pre-need trusts, to the detriment of the purchasers of NPS's pre-need contracts. The Court also considered and rejected this precise argument from Defendants Wittner and Sutton in the December 21 Memorandum and Order. Wulf Defendants are not entitled to dismissal of these claims.

### D. Negligent Misrepresentation and Omission, Gross Negligence, and Breach of Fiduciary Duty by SGA Plaintiffs

Wulf Defendants argue that these claims, as brought by SGA Plaintiffs, must be dismissed because Plaintiffs have only alleged that Wulf Defendants owed legal duties to funeral homes and consumers that dealt with NPS, and not that they owed any legal duty to SGA Plaintiffs.[5]

As to the negligent misrepresentation and omission and gross negligence claims, the Second Amended Complaint – and indeed, the other complaints that preceded it – does allege a basis for Wulf Defendants to owe legal duties to SGA Plaintiffs. Plaintiffs allege that SGA Plaintiffs "have been assigned and/or subrogated to the causes of action the funeral homes, consumers, and their estates, policyholders, beneficiaries, and other payees have against those

---

[5] The Court finds that Wulf Defendants did not waive this argument pursuant to Rule 12(g)(2), because their argument is at least arguably based on Plaintiffs' clarification in their Second Amended Complaint as to which Plaintiffs are asserting these claims.

responsible for the losses in this case through: (1) each state guaranty association's enabling act; (2) the NPS/Lincoln/Memorial Liquidation Plan approved on September 22, 2008, by the Texas Receivership Court in Travis County, Texas; and (3) express assignments received from every recipient of a death benefit paid by a state guaranty association." Wulf Defendants do not dispute these allegations, and they also do not dispute that they may owe legal duties to funeral homes and consumers for purposes of these claims. As such, Plaintiffs' contention that SGA Plaintiffs are standing in the shoes of those funeral homes and consumers in bringing these claims alleges the legal duty required for these claim .

With respect to the breach of fiduciary duty claims, Wulf Defendant do contend that they could not have owed fiduciary duties to the funeral homes or consumers that dealt with NPS. The Missouri Uniform Trust Code provides that "[a] person, other than a beneficiary, who holds a power to direct is presumptively a fiduciary who, as such, is required to act in good faith with regard to the purposes of the trust and the interests of the beneficiaries," and therefore "is liable for any loss that results from breach of a fiduciary duty." Mo. Rev. Stat. § 456.8-808.4; *see also* § 456.8-808.2 (from which it is evident that "a power to direct" refers to the authority to direct the actions of the trustee concerning trust assets).[6] Additionally, under Missouri common law, "[a] fiduciary relationship may arise as a matter of law by virtue of the parties' relationship, e.g., attorney-client, or it may arise as a result of the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former." *Shervin v. Huntleigh Sec. Corp.*, 85 S.W.3d 737, 740-41 (Mo. Ct. App. 2002). With respect to this latter standard, "[t]he question in determining whether a fiduciary or confidential

---

[6] Wulf Defendants appear to concede that Missouri law governs this claim.

relationship exists is whether or not trust is reposed with respect to property or business affairs of the other." *Id.* at 741.

Here, Plaintiffs allege that Wulf Defendants acted as investment advisors to the NPS pre-need trusts and had the authority to direct the investment of trust assets, and that NPS's customers were beneficiaries of those trusts, in that the trusts were established by NPS to safeguard some portion of the funds collected from pre-need contract sales. Thus, under § 456.8-808.4, the allegations with respect to Wulf Defendants' authority over trust assets are sufficient to support a basis for Wulf Defendants to owe fiduciary duties. Furthermore, Plaintiffs allege that NPS expressly represented to funeral homes and consumers that pre-need funds would be safeguarded in pre-need trusts under its control. Under *Shervin*, this suggests a fiduciary relationship in which funeral homes and consumers placed trust in NPS to safeguard pre-need funds, and that Wulf Defendants assumed those fiduciary obligations under § 456.8-808.4 by acting as investment advisors to the trust(s). The Court therefore concludes that Plaintiffs have adequately alleged that Wulf Defendants owed fiduciary duties to the funeral homes and consumers on whose behalf SGA Plaintiffs are asserting claims, and accordingly these claims will not be dismissed.

### E. Fraudulent Omission / Nondisclosure

Plaintiffs contend in these claims that Wulf Defendants are liable for failing to fulfill their duty, arising out of superior knowledge, to disclose to funeral homes and consumers various facts about the financial condition of NPS and the pre-need trusts. Wulf Defendants argue that allegations of superior knowledge are insufficient to state a claim for fraudulent omission / nondisclosure under the laws of Virginia, Texas, Illinois, Kansas, Oklahoma, Kentucky, and Arkansas. Wulf Defendants further contend that those states' laws govern the fraudulent

omission claims of the individual SGA Plaintiffs from those states, and that Texas and Virginia law will govern the claims of Plaintiff SDR and Plaintiff NOLHGA, respectively. Thus, Wulf Defendants assert that the Court should dismiss these claims as to these Plaintiffs.[7] Plaintiffs respond that Wulf Defendants are incorrect because (1) superior knowledge *can* give rise to a duty to disclose in all of those states; (2) alternatively, fiduciary duties give rise to a duty to disclose in all of those states; and (3) Missouri law governs all of these claims.

District courts exercising supplemental jurisdiction over state-law claims apply the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Missouri applies the Restatement (Second) of Conflicts of Laws (1977) for analyzing choice-of-law issues in tort cases. *See Livingston v. Baxter Health Care Corp.*, 313 S.W.3d 717, 721 (Mo. Ct. App. 2010); *see also Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. 1969) (en banc). That said, no choice-of-law inquiry is necessary if there is no conflict between the state laws that might apply. *See Modern Equip. Co. v. Cont'l W. Ins. Co.*, 355 F.3d 1125, 1128 n.7 (8th Cir. 2004).

There is no conflict here because there is no authority from any of the states at issue suggesting that, for purposes of a claim of fraudulent omission / nondisclosure, a duty to disclose, based on superior knowledge, might exist with respect to a transaction to which the defendant was not a party. Put another way, courts from these states have only recognized such a duty to disclose in the context of transactions in which the plaintiff and the defendant are dealing directly with one another. *See, e.g.*, *Holiday Inn Franchising, Inc. v. Hotel Assocs., Inc.*, __ S.W.3d __, 2011 WL 657222 (Ark. Ct. App. 2011) ("In determining whether [a special

---

[7] This excludes the Missouri SGA Plaintiff, and Wulf Defendants do not claim to seek dismissal of its fraudulent omission / nondisclosure claim, although they do contend in their Reply that Plaintiffs have also failed to state valid claims under Missouri law.

relationship or circumstances requiring disclosure] exist[s], the events surrounding *the parties' transaction* may be considered.") (emphasis added)[8]; *Schrager v. N. Cmty. Bank*, 767 N.E.2d 376, 385-86 (Ill. Ct. App. 2002) (triable issue of fact existed as to whether defendants might have assumed a duty to disclose by counseling plaintiff on certain financial matters relevant to the plaintiff's decision to guarantee a note held by the defendants); *Zhu v. Countrywide Realty, Co.*, 165 F. Supp. 2d 1181, 1202 (D. Kan. 2001) (Under Kansas law, "a *contracting party* who has superior knowledge, or knowledge that is not within the reasonable reach *of the other party*, has a legal duty to disclose information material to the bargain . . . .") (internal citations omitted) (emphasis added); *Smith v. Gen. Motors Corp.*, 979 S.W.2d 127, 129 (Ky. Ct. App. 1998) ("Considering [the defendant car dealership's] superior knowledge and [the plaintiff purchaser's] reliance thereupon, we are of the opinion there arose, as a matter of law, a duty upon [the defendant] to disclose material defects and repairs known to it."); *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765-67 (Mo. 2007) (en banc) (seller of real estate had duty to disclose EPA investigation to buyer) (emphasis added); *Barry v. Orahood*, 132 P.2d 645, 647 (Okla. 1942) ("Silence as to a material fact is not necessarily, as a matter of law, equivalent to a false representation. [citation omitted] But if on account of peculiar circumstances there is a positive duty *on the part of one of the parties to a contract* to speak, and he remains silent to his benefit and to the detriment of the other party, the failure to speak constitutes fraud.") (emphasis added); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, __ S.W.3d __, 2011 WL 1445950, at *10 (Tex. 2011) (citing cases for the proposition that superior knowledge by one party to a transaction can give rise to fraud claim, all of which concerned situations in which the

---

[8] No page number is given for this quotation because the version of the opinion currently available on Westlaw does not contain page numbers.

13

party with superior knowledge was a party to the transaction); *Allen Realty Corp. v. Holbert*, 318 S.E.2d 592, 597 (Va. 1984) ("Concealment of a material fact by one who knows that *the other party* is acting upon the assumption that the fact does not exist constitutes actionable fraud.") (emphasis added). Furthermore, these cases also make clear that it is well-established in all of these jurisdictions that the existence of a duty to disclose based on superior knowledge is a facts-and-circumstances inquiry, that necessarily varies from case to case. As a practical matter, it would be illogical to impose on Wulf Defendants a duty to disclose facts about the pre-need trusts to NPS's customers – at least in the context of this claim – given that NPS employees, and not Wulf Defendants, were responsible for contracting with customers.

The Court is also not persuaded by Plaintiffs' assertion that for purposes of these claims, Wulf Defendants' duty to disclose could arise out of a fiduciary relationship between Wulf Defendants and the funeral homes and individual consumers who contracted with NPS. To be sure, these jurisdictions do recognize that this sort of relationship of trust might give rise to a duty to disclose, but to the extent Wulf Defendants might have breached that duty through nondisclosure, that would be the subject of a breach of fiduciary duty claim and not a free-standing claim for fraudulent omission / nondisclosure. In any event, however, for the reasons stated in the preceding paragraph, the Court would not be likely to conclude that Wulf Defendants had a fiduciary obligation to disclose these matters to funeral homes and consumers, given the practical difficulties with imposing such a duty in these circumstances.

In sum, then, the Court concludes that Wulf Defendants are entitled to dismissal of these claims for fraudulent omission / nondisclosure. As noted above, however, Wulf Defendants did not move to dismiss this claim as brought by the Missouri SGA Plaintiff, apparently because they did not initially recognize the argument that this claim is not cognizable under Missouri law. As

such, the Missouri SGA Plaintiff's fraudulent omission / nondisclosure claim will remain to be summarily dismissed on a motion for summary judgment, or in the alternative, Plaintiffs may move to dismiss it voluntarily in the interim.

**F. MMPA**

In the December 21 Memorandum and Order, the Court dismissed Plaintiffs' Count 11 against Wulf Defendants for violation of the MMPA, and Plaintiffs appear to re-assert those claims in their Second Amended Complaint. For the reasons stated previously, and without any apparent opposition from Plaintiffs, these claims will once again be dismissed.

**G. Texas Receivership Act**

In Count 12 of the Second Amended Complaint, Plaintiff SDR seeks to recover, pursuant to the Texas Insurer Receivership Act ("TIRA"), Tex. Ins. Code §§ 443.001-443.402, certain funds NPS, Lincoln, and Memorial transferred to Wulf Defendants. Wulf Defendants contend that these claims must be dismissed because Plaintiffs' allegations "parrot the elements of the claim and are unsupported by any underlying facts."

The Court, however, agrees with Plaintiffs that Plaintiff SDR has adequately alleged claims under the TIRA.[9] Tex. Ins. Code §§ 443.202-443.205 – the four TIRA sub-sections under which Plaintiff SDR asserts these claims – give a receiver the right to recover certain (1) transfers to a receivership entity's affiliates,[10] (2) unauthorized post-petition transfers, (3) "preference"

---

[9] As yet, no party has questioned whether Plaintiff SDR may properly assert claims under the TIRA in the context of this proceeding – that is, outside of the Texas receivership proceeding; the Court expresses no opinion on that issue in concluding that her allegations are sufficient to state valid claims.

[10] "A person is an affiliate of another if the person directly or indirectly through one or more intermediaries controls, is controlled by, or is under common control with the other person." Tex. Ins. Code § 823.003(a); Tex. Ins. Code § 443.004(a)(1) (for purposes of Texas Insurer Receivership Act, "affiliate" has the meaning stated in Chapter 823 of the Texas

15

transfers, and (4) fraudulent transfers, respectively – provided certain requirements are met, the substance of which are not relevant at this time. While it is true that the allegations in Count 12 do largely "parrot" the language of the statutes cited above, and that is unclear under which of those sub-sections Plaintiff SDR seeks recovery from Wulf Defendants, allegations directed at Wulf Defendants elsewhere in the Second Amended Complaint provide the necessary factual enhancement. Specifically, Plaintiffs allege that Wulf Defendants received over $600,000 in fees from Lincoln and other related entities between 2005 and 2008, that Wulf Defendants received at least $15,000 per year over that time period from NPS, and that Wulf and Trip Bates[11] received health care benefits in the same fashion, and from the same provider, as employees of NPS, Lincoln, Memorial, and other related entities. This is sufficient information to give Wulf Defendants notice of the facts underlying Plaintiff SDR's TIRA claims and to enable them to formulate a response, and accordingly the Court declines to dismiss these claims.

### H. Unjust Enrichment

Wulf Defendants argue that Plaintiffs have failed to state valid claims for unjust enrichment because (1) the benefit allegedly conferred on Wulf Defendants was the subject of a contract, specifically the pre-need contracts sold by NPS, and (2) Plaintiffs have failed to allege that Plaintiffs conferred any benefit on Wulf Defendants.[12]

The parties appear to be in agreement that Missouri law governs these claims, under which a claim for restitution due to unjust enrichment requires: "(1) that the defendant was

---

Insurance Code).

[11] Trip Bates is presumably an individual associated with Wulf Bates.

[12] As in Section III.D above, it is to some extent arguable that these contentions arise out of the changes in Plaintiffs' Second Amended Complaint, and the Court therefore finds that Plaintiffs did not waive them pursuant to Rule 12(g)(2).

enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit." *Title Partners Agency, LLC v. Devisees of Last Will & Testament of M. Sharon Dorsey*, 334 S.W.3d 584, 588 (Mo. Ct. App. 2011). "If the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract." *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010).[13]

Plaintiffs have stated valid claims under these principles. With respect to the necessary elements of the claims, Plaintiffs allege that (1) Wulf Defendants were enriched by funds received from NPS and other related entities; (2) this enrichment was at the expense of the funeral homes and consumers on whose behalf Plaintiffs assert their claims – to the extent the enrichment left NPS unable to satisfy its contractual obligations; and (3) it would be unjust to allow Wulf Defendants to retain the funds they received, because Wulf Defendants mismanaged trust assets through self-dealing and other mechanisms. The Court rejects the argument that unjust enrichment is unavailable because the funds at issue – the fees and other moneys NPS paid to Wulf Defendants over the course of the alleged fraud – were originally the subject of express contracts between NPS and its customers. If the Court were to accept Wulf Defendants' argument, that would mean that unjust enrichment would not apply in any situation in which the

---

[13] The Court is aware that there is also authority in Missouri stating that the existence of an express contract does not necessarily preclude recovery for unjust enrichment, because an unjust enrichment claim is equitable in nature and therefore not based in the law of either tort or contract. *See Petrie v. LeVan*, 799 S.W.2d 632, 634-35 (Mo. Ct. App. 1990). The Court does not believe that these authorities are inconsistent, insofar as *Howard* simply provides one specific example of a situation in which an express contract would preclude an unjust enrichment claim: where the plaintiff has contracted with the defendant to receive the same thing that the plaintiff seeks to recover as restitution. 316 S.W.3d at 436. *Howard* does not suggest that an express contract *always* precludes a claim of unjust enrichment. *See id.*

defendant could trace the recovery sought to a contract between some other parties. Likewise, there is no requirement for an unjust enrichment claim that the plaintiff conferred a benefit directly on the defendant; *Title Partners* states solely that the enrichment must be "at the expense of the plaintiff," 334 S.W.3d at 588, and that is the situation contemplated by Plaintiffs' factual allegations.[14]

In sum, then, Plaintiffs' allegations provide the necessary factual detail to give Wulf Defendants notice of their unjust enrichment claims and to enable them to formulate a response, and Wulf Defendants' Motion will therefore be denied as to these claims.

## IV. CONCLUSION

The Court concludes that Wulf Defendants are entitled to dismissal of Plaintiffs' Count 5 for fraudulent omission / nondisclosure and Plaintiffs' Count 11 for violations of the MMPA. With respect to the other claims at issue in this Motion, Wulf Defendant have failed to demonstrate that the allegations in Plaintiffs' Second Amended Complaint are insufficient to state valid claims for relief.

---

[14] The only authority offered by Wulf Defendants in support of this argument is the Missouri Supreme Court's statement that "[a]n essential element of [unjust enrichment] is 'a benefit conferred upon the defendant by the plaintiff.'" *See ACLU/E. Mo. Fund v. Miller*, 803 S.W.2d 592, 595 (Mo. 1991). There is no "directly" in that statement. Furthermore, in *Miller*, that element was found to be lacking because the plaintiff sought to recover attorneys' fees awarded to a former employee while working for the plaintiff, but the court determined the plaintiff had no enforceable right to the fees. *Id.* Thus, the court further stated that the defendant had not received the attorneys' fees the plaintiff sought to recover "at the expense of" the plaintiff. *Id.*

Accordingly,

**IT IS HEREBY ORDERED** that Wulf Defendants' Motion to Dismiss [doc. #604] is **GRANTED, in part** and **DENIED, in part**. The Motion is granted as to Plaintiffs' Count 5 and Count 11, and is otherwise denied.

Dated this 28th Day of July, 2011.

_E. Richard Webber_
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE