UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JO ANN HOWARD & | ) | |
| ASSOCIATES, P.C., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV01252 ERW |
| | ) | |
| J. DOUGLAS CASSITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on: (1) Plaintiff Jo Ann Howard & Associates, P.C.'s
Motion to Disqualify Jack Spooner as Counsel for the Wittner Defendants, [ECF No. 842]; and (2)
Defendant Brown Smith Wallace's Motion for a Protective Order, or, in the Alternative, to Amend
the July 22, 2011 Consent Protective Order, [ECF No. 821].  The Court held a hearing on these
Motions on March 28, 2012.

**I.     PLAINTIFF JO ANN HOWARD & ASSOCIATES, P.C.'S MOTION TO
        DISQUALIFY JACK SPOONER AS COUNSEL FOR THE WITTNER
        DEFENDANTS. [ECF No. 842].**

Plaintiff Jo Ann Howard & Associates, P.C. (Plaintiff) has been appointed to serve as the
Special Deputy Receiver (SDR) of three companies: National Prearranged Services, Inc. (NPS);
Lincoln Memorial Life Insurance Co. (Lincoln); and Memorial Service Life Insurance Co. (Memorial)
(collectively, the Receivership Entities).  In the instant case, Plaintiff, in its capacity as the SDR of
the Receivership Entities, has asserted claims such as breach of fiduciary duty, legal malpractice,
gross negligence, and others, against Defendant Wittner, Spewak & Maylack, P.C. and/or Howard
A. Wittner (collectively, the Wittner Defendants). Pls.' Second. Amended Compl. ¶¶ 229-45, 302-06,
353-64, 365-71, 372-78, 420-29, 430-36, [ECF No. 594].  On February 21, 2012, Jack Spooner

entered his appearance as counsel for the Wittner Defendants. [ECF No. 828]. Approximately one week later, all other counsel of record for the Wittner Defendants moved to withdraw from the representation. [ECF No. 836; ECF No. 837]. The Court granted these Motions, with the result that Spooner alone was counsel of record for the Wittner Defendants. [ECF No. 838]. Plaintiff now moves to disqualify Spooner as counsel for the Wittner Defendants. Pls.' Mot. to Disqualify Spooner, [ECF No. 842].

Motions to disqualify opposing counsel are subject to the discretion of the district court. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154 (8th Cir. 2000). "[B]ecause motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law." *Dalton v. Painters Dist. Council No. 2*, no. 4:10CV01090 AGF, 2011 WL 1344120, at *4 (E.D. Mo. April 8, 2011). Under federal law, a party seeking to disqualify opposing counsel bears a heavy burden. *Macheca Transp. Co. v. Phila. Indem. Co.* 463 F.3d 827, 833 (8th Cir. 2006). "A party's right to select its own counsel is an important public right and a vital freedom that should be preserved[.]" *Id.* In addition, motions to disqualify may be abused by opposing counsel in pursuit of a tactical advantage. *Id.* As a result, courts subject motions to disqualify to "particularly strict scrutiny," and "the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Id.* Even so, "any doubt is to be resolved in favor of disqualification." *Coffelt v. Shell*, 577 F.2d 30, 32 (8th Cir. 1978); *see also Dalton*, no. 4:10CV01090 AGF, 2011 WL 1344120, at *4.

Plaintiff argues that because Spooner has previously represented the Receivership Entities in various matters, he is barred under the Court's Rules of Professional Conduct from representing the Wittner Defendants in the instant case. Plaintiffs rely upon Rule 4-1.9(a) of the Missouri Rules of Professional Conduct:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Mo Sup. Ct. R. 4-1.9(a); *see also* E.D. Mo. L.R. 12.02 (adopting the Missouri Rules of Professional Conduct).  This Rule "protects the client's interest in both loyalty and confidentiality."  *Griffen by Freeland v. E. Prairie, Mo. Reorganized Sch. Dist. No. 2*, 945 F. Supp. 1251, 1253 (E.D. Mo. 1996) (citing *In re American Airlines, Inc.*, 972 F.2d 605, 618 (5th Cir. 1992)).  In addition, it promotes fundamental fairness by barring an attorney from using an informational advantage gained in the course of a former representation, and it serves the important policies of encouraging client disclosure of all pertinent information and fostering confidence in the integrity of the judicial system.  *Dalton*, no. 4:10CV01090 AGF, 2011 WL 1344120, at *5.

There is no dispute here that Spooner has previously represented at least some of the Receivership Entities, that the interests of the Receivership Entities and the Wittner Defendants are materially adverse, and that the Receivership Entities have not consented in writing to Spooner's representation.  Thus, the parties dispute three points: (1) whether Spooner personally represented the Receivership Entities; (2) whether Plaintiff is a "former client" within the meaning of Rule 4-1.9(a); and (3) whether Spooner's former representation of the Receivership Entities and current representation of the Wittner Defendants are substantially related.

### 1. *Whether Spooner personally represented the Receivership Entities*

Plaintiffs argue that Spooner has personally represented the Receivership Entities in numerous cases over many years.  Plaintiffs' primarily rely upon Spooner's appearance as counsel of record for NPS in *Hanover Life Reassurance Co. of Am. v. Sutton, et. al*, no. 4:07-cv-01434 JCH (E.D. Mo.) and a related arbitration action.  A review of those matters shows that Spooner appeared on the docket and in filings as counsel for NPS.  Pl.'s Mot. to Disqualify Spooner Ex. 1, [ECF No. 842-1].

3

Plaintiff has also submitted billing records showing that Spooner's representation of NPS was substantial and involved a wide variety of legal work.  Pl.'s Reply Ex. 1-A, [ECF No. 850-2]. Various records also show that for those matters, Spooner both attended depositions and personally deposed witnesses.  Pl.'s Reply Ex. 1-B, [ECF No. 850-3].  Plaintiffs have also presented evidence that Spooner served as counsel for Lincoln and NPS in several other matters.  Pls.' Mot. to Disqualify Spooner Ex. 1.  Based on this evidence, the Court finds that Spooner has personally represented the Receivership Entities.[1]

### 2. *Whether Plaintiff is a "former client" within the meaning of Rule 4-1.9(a)*

Rule 4-1.9(a) prevents an attorney from representing a person, when that person has adverse interests to one of the attorney's former clients.  Here, Spooner has not previously represented Plaintiff, but instead has previously represented NPS and Memorial.  As a result, the Court must decide whether Plaintiff, based on its status as SDR, may seek to disqualify Spooner's representation of the Wittner Defendants as a violation of Rule 4-1.09(a).  Neither party presented the Court with any authority that squarely resolves this issue, and the Court found no such authority after conducting independent research.  Nevertheless, a review of the relevant case law makes clear that Plaintiff may seek to disqualify Spooner.

The Court's analysis of Plaintiff's Motion to Disqualify begins with the United States Supreme Court decision of *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985).  In that case, the issue presented was "whether the trustee of a corporation in bankruptcy has the power to

---

[1]Because the Court finds that Spooner personally represented the Receivership Entities, the Court rejects the Wittner Defendants' contention that the Plaintiff's Motion be analyzed under Mo. Sup. Ct. R. 4-1.9(b).  Rule 4-1.9(b) bars a lawyer from representing a person as a result of that lawyer's prior affiliation with a firm who represented clients with adverse interests to that person.  This Rule is inapplicable here, because it was not merely Spooner's former law firm, but instead Spooner himself who previously represented the Receivership Entities.

waive the debtor corporation's attorney-client privilege with respect to communications that took place before the filing of the petition in bankruptcy." *Id.* at 345. The Court noted that "for solvent corporations, the power to waive the corporate attorney-client privilege rests with the corporation's management," so that "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Id.* at 348. Because a corporation's management controls its privilege outside of the bankruptcy context, the Court concluded that the actor who held duties most analogous to management should also control its privilege during bankruptcy. *Id.* at 351-52. The Court then noted that when a corporation enters bankruptcy, its trustee acquires wide-ranging powers, including the power to manage its property, to manage its financial affairs, to pursue its legal claims, and to operate its business. *Id.* at 352 (citing and discussing provisions of the Bankruptcy Code). Based in large part upon these powers, the Court held "that the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications." *Id.* at 358.

Lower courts have stated that *Weintraub* "reflects a continuity of the attorney-client relationship" without regard to a corporation's bankruptcy status. *In re Peck Foods*, 196 B.R. 434, 438 (Bankr. E.D. Wis. 1996); *see also In re Successor I Corp.*, 321 B.R. 640, 652 (Bankr. S.D.N.Y. 2005) ("that the attorney-client privilege of a corporation continued after the process of liquidation has begun is a necessary predicate for" *Weintraub*). As a result, when an attorney has represented a corporation before it entered bankruptcy, the courts have disqualified that attorney from representing defendants adverse to the corporation in its bankruptcy proceedings. *In re Successor I Corp.*, 321 B.R. 640, 654, 663; *In re Jaeger*, 213 B.R. 578, 594 (Bankr. C.D. Cal. 1997); *In re Marks v. Goergens, Inc.*, 199 B.R. 922, 929 (Bankr. E.D. Mich. 1996); *see also In re Peck Foods*, 196 B.R. 434, 440 (court denied approval of attorney's representation of defendant, when that

attorney previously represented corporation); *In re Rodriguez*, no. 10-05835 BKT, 2012 WL 112971, at *4 (Bankr. D. P.R. Jan. 12, 2012) ("... if the trustee is pursuing claims of the debtor under to Section 541 [of the Bankruptcy Code], the trustee stands in the shoes of the debtor."); *In re Estates of Dublin Secs., Inc.*, 214 B.R. 310, 314 (Bankr. S.D. Ohio 1997) (attorney who had previously represented corporation disqualified under a distinct Rule from representing defendant with adverse interests). Courts have disqualified an attorney under the applicable equivalent to Rule 4-1.9(a), even though the party moving for disqualification was the bankruptcy trustee or a similarly interested party, rather than the corporation itself. *In re Successor I Corp.*, 321 B.R. 640, 654, 663; *In re Jaeger*, 213 B.R. 578, 594; *In re Marks & Goergens, Inc.,* 199 B.R. 922, 929.

In the instant case, Plaintiff's duties and obligations as the Receivership Entities' SDR place it in a position similar to that of the bankruptcy trustees described above. For instance, Plaintiff's authority arises from the Texas Insurer Receivership Act, and that Act gives SDRs broad powers to manage the property, business operations, and legal claims of entities placed under receivership. Tex. Code Ann. § 443.001 *et seq.*; *id.* § 443.154. Furthermore, it is clear that Plaintiff may exercise those broad powers in pursuit of its duties here. Pls' Second Amended Compl. Ex. 3, [ECF No. 594-3]; *Speaks Family Legacy Chapels, Inc. v. Nat'l Heritage Enters., Inc.*, no. 2:08-cv-04148-NKL, 2009 WL 3855685, at *1 (W.D. Mo. Nov. 18, 2009) (describing authority and powers granted to SDR of NPS, Lincoln, and Memorial). Plaintiff is therefore "functioning in the same manner as a bankruptcy trustee, marshaling and preserving assets as circumstances allow." *SEC v. Bravata*, no. 09-12950, 2011 WL 606745, at *2 (E.D. Mich. Feb. 11, 2011); *id.* ("The appointing order provides the Receiver with broad authority to act on behalf of the receivership entities.").

The Court is also guided by decisions addressing whether a receiver may assert the attorney-client privilege on behalf of an entity in receivership. Several courts have held such authority is within

the powers granted to a receiver. *United States v. Plache*, 913 F.2d 1375, 1381 (9th Cir. 1990) ("Prior to the instant action, the corporation was placed in receivership. Because the privilege was held by the corporation, any right to assert the attorney-client privilege on behalf of the corporation passed when the receiver of ELMAS/ROBL and its affiliates and subsidiaries, was appointed by the court."); *Bravata*, no. 09-12950, 2011 WL 606745, at *2 ("The appointing order provides the Receiver with broad authority to act on behalf of the receivership entities. That authority includes the right to waive the attorney-client privilege, if the Receiver in his judgment deems that course prudent."); *United States v. Shapiro*, 2007 WL 2914218, at *5 (S.D.N.Y. Oct. 1, 2007) (holding that receiver had authority to waive corporate entity's attorney-client privilege, and collecting cases in support); *see also SEC v. Ryan*, 747 F. Supp. 2d 355, 362 (N.D.N.Y. 2010) ("Now that the Court has determined that Prime Rate is an independent entity, our next inquiry is to ascertain if the Receiver steps into the proverbial shoes of Prime Rate, becoming a client of Bosman & Associates, who may have the right to seek its own files. Again, both the facts and law compel only one observation: Levine, as Receiver and successor to the management of Prime Rate, is indeed a client."). Though these cases address only whether a receiver exercises control over a corporation's privilege, the same legal principles determine whether opposing counsel should be disqualified under Rule 4-1.9(a). *Parus Holdings, Inc. v. Banner & Witcoff, Ltd.*, 585 F. Supp. 2d 995, 1001-02 (N.D. Ill. 2008).

The Wittner Defendants raise several arguments against Plaintiff's authority to seek Spooner's disqualification, but each is without merit. First, the Wittner Defendants' argue that the Court must distinguish between the Receivership Entities's attorney-client privilege and their attorney-client relationships. There is no basis in the law for making such a distinction. *Id.*

Next, the Wittner Defendants argue the Court should determine whether the Receivership Entities' attorney-client relationships transfer to Plaintiff by examining the "practical consequences" of the receivership. However, courts employ the practical consequences test when evaluating whether a particular transaction between a predecessor corporate entity and its successor operates to transfer control over the former's attorney-client privilege. *See, e.g.*, *id.* at 1002-03; *Soverain Software LLC v. Gap, Inc.*, 340 F. Supp. 2d 760, 763 (E.D. Tex. 2004). For instance, "a mere transfer of some assets or a single patent from one corporation to the other does not transfer the attorney-client privilege." *Soverain Software LLC*, 340 F. Supp. 2d 760, 763. However, "[i]f the practical consequences of the transaction result in the transfer of control of the business and the continuation of the business under new management, the authority to assert or waive the attorney-client privilege will follow as well." *Id.* Thus, the practical consequences test is used where corporate control transfers as the result of some transaction, such as the purchase and sale of assets or patents. *Id.*; *In re Successor I Corp.*, 321 B.R. 640, 653-54. It is therefore inapplicable here, because Plaintiff acquired control over the Receivership Entities by virtue of its appointment as their SDR. For the same reasons, the Wittner Defendants' reliance on *FDIC v. Amundson* is misplaced. *See* 682 F. Supp. 981, 983-84 (D. Minn. 1988) (the court denied the FDIC's motion to disqualify opposing counsel, where the FDIC was acting "in its corporate capacity as purchaser of certain assets" of an insolvent bank rather than as receiver of that bank).

After reviewing the legal principles discussed above, the Court finds that Plaintiff qualifies as a "former client" by virtue of its status as the SDR of the Receivership Entities. As a result, Plaintiff may seek to disqualify Spooner on the grounds that his representation of the Wittner Defendants violates Rule 4-1.9(a).

3. *Whether Spooner's Former Representation of the Receivership Entities and Current Representation of the Wittner Defendants are Substantially Related*

Finally, Plaintiff argues that Spooner's former representation of the Receivership Entities is substantially related to his representation of the Wittner Defendants in the instant case. "Matters are 'substantially related' for purposes of this Rule 4-1.9 if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Rule 4-1.9(a) cmt. ¶ 3; *see also In re IH 1, Inc.*, 441 B.R. 742, 746 (Bankr. D. Del. 2011).

In *In re Carey*, the Missouri Supreme Court listed factors the courts consider when determining whether two matters are substantially related. 89 S.W.3d 477, 494 (Mo. 2002). Among these factors are: whether the matters involve the same clients or a series of matters or transactions that reveal a client's pattern of conduct; whether the lawyer interviewed witnesses key to both cases; whether the matters share a commonality of witnesses, legal theories, and client business practices; and whether the matters share common subject matter issues, and causes of action. *Id.* However, when determining whether a substantial relationship between a former and current representation exists, "[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." *Dalton*, no. 4:10CV01090 AGF, 2011 WL 1344120, at *6 (quoting Rule 4-1.9(a) cmt. ¶ 1.). Put another way, "[t]he inquiry is whether it is reasonable to infer that confidential information would have been given to the lawyer during the prior representation and, if so, whether that information is relevant to issues raised in the current litigation." *Dalton*, no. 4:10CV01090 AGF, 2011 WL 1344120, at *6 (citation omitted).

Plaintiff argues Spooner's former representations are substantially related to the instant case by focusing on the *Hannover Reassurance Life Co. of Am. v. Lincoln Memorial Life Ins. Co.* arbitration and litigation. In these matters, Hannover named Lincoln as a defendant and alleged it had breached its contractual duties and committed fraud. Some of the factual allegations against Lincoln were that NPS financial advisor David Wulf was not independent, that NPS officers and directors improperly surrendered whole value life insurance policies and replaced them with term life insurance policies, and that NPS failed to make timely payments to Lincoln. Similarly, here, Lincoln and NPS are Receivership Entities, and Plaintiff alleges these Receivership Entities suffered damages resulting from Defendants' breach of their duties and fraud. These causes of action are built, in part, upon the factual allegations discussed above.

During his representation of Lincoln, Spooner also had extensive interactions with witnesses and parties that are relevant here. For instance, Plaintiff produced evidence showing that Spooner regularly communicated with Lincoln's corporate officers and attorneys, including Howard A. Wittner and Katherine Scannell. Both of these individuals are defendants here. Records show that Spooner also communicated with Howard A. Wittner, Randall Sutton, David Wulf, and J. Douglas Cassity. All of these individuals are Defendants here. Finally, Spooner also attended the depositions of Tony Lumpkin, Randall Sutton, and J. Douglas Cassity. Each of these individuals is a Defendant here.[2]

---

[2]Plaintiff also argues that Spooner may be called as a witness in the instant case, given his extensive history and knowledge of the Receivership Entities and the allegations pending against his former law firm. Plaintiff does not claim Spooner's status as a possible witness warrants his disqualification under Rule 4-3.7, but rather argues that this status is further evidence of the necessity of his disqualification under Rule 4-1.9(a). The Court bears this possibility in mind, but does not base its decision upon this consideration. *Macheca Transp. Co.*, 463 F.3d 827, 833-34.

Even if the Court were to put aside the evidence of the extent of Spooner's representation in the *Hannover* matters, the mere existence of an "attorney-client relationship raises an irrefutable presumption that confidences were disclosed." *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602, 608 (8th Cir. 1977). The Court has already concluded that Spooner personally represented Lincoln and NPS, in part based upon Spooner's billing records indicating he discussed confidential matters regarding those entities. Accordingly, there is an irrebuttable presumption that NPS and Lincoln disclosed confidential communications to Spooner. *Dalton*, no. 4:10CV01090 AGF, 2011 WL 1344120, at *6; *Griffen by Freeland*, 945 F. Supp. 1251, 1254. Accordingly, Plaintiff need not prove the Receivership Entities in fact disclosed confidences to Spooner to prevail on their disqualification motion.

The Wittner Defendants argue that Plaintiff has waived the attorney-client privilege by alleging the attorneys for the Receivership Entities committed malpractice and breached their fiduciary duties. This argument is misplaced. It is true that when a client challenges his attorney's competence, the client puts the substance of attorney-client communications into issue. *Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974). As a result, such a challenge waives the attorney-client privilege, thereby enabling the attorney to defend himself against the client's allegations. *United States v. Glass*, 761 F.2d 479, 480 (8th Cir. 1985). However, such a challenge does not result in blanket waiver, but instead in a waiver limited to only those documents and communications that are at-issue. *Jones v. United States*, no. 4:11CV00702 ERW, 2012 WL 484663, at *1 (E.D. Mo. Feb. 14, 2012). More importantly, a waiver of the privilege does not bar Plaintiff from invoking Rule 4-1.9(a), because the Rule protects a client's interest in both confidences and loyalty. *In re Jaeger*, 213 B.R. 578, 589 (Bankr. C.D. Cal. 1997) ("A waiver of the attorney-client privilege does not affect the duty of loyalty for conflict of interest purposes.); *Griffen by Freeland*, 945 F. Supp. 1251, 1253.

11

Accordingly, if an attorney is burdened by a conflict of interest, then Rule 4-1.9(a) requires that attorney to secure informed consent, confirmed in writing, to continue a representation.  Regardless of any issues of privilege and waiver, it is undisputed here that Spooner has not obtained Plaintiff's consent to represent the Wittner Defendants.

In ruling on this matter, the Court must resolve all doubts in favor of disqualification. *Coffelt.* 577 F.2d 30, 32; *see also Dalton*, no. 4:10CV01090 AGF, 2011 WL 1344120, at *4.  Upon review of the facts and the law, the Court finds that Spooner has personally represented the Receivership Entities.  The Court also finds that this representation was substantially related to his current representation of the Wittner Defendants in the instant case, and that Plaintiff qualifies as a "former client" of Spooner based on its status as SDR of the Receivership Entities.  As a result, Plaintiff has shown that Spooner's representation of the Wittner Defendants violates Rule 4-1.9(a).  The Court will therefore grant Plaintiff's Motion to Disqualify Spooner.

## II.   DEFENDANT BROWN SMITH WALLACE'S MOTION FOR A PROTECTIVE ORDER, OR, IN THE ALTERNATIVE, TO AMEND THE JULY 22, 2011 CONSENT PROTECTIVE ORDER. [ECF No. 821].

In their Second Amended Complaint, Plaintiffs allege Defendant Brown Smith Wallance (BSW), an accounting firm, is liable for one count of professional negligence in auditing.  BSW states that although this allegation is only a small aspect of Plaintiffs' wide-ranging Complaint, Plaintiffs have produced or identified a tremendous number of documents.  BSW argues it is unclear which of these documents, if any, pertain to the single negligence allegation it faces, and that sifting through this mass of documents presents an undue burden.  BSW therefore asks the Court to enter a Protective Order requiring Plaintiffs to identify with specificity the documents supporting their negligence allegation.  In the alternative, BSW asks the Court to amend the Consent Protective Order dated July 22, 2011. [ECF No. 742].  In this Order, the Court permitted certain parties to exchange

fact-based interrogatories without regard to the stay of under-oath discovery previously issued by the Court in this case. BSW asks the Court to Amend this Order to include BSW, so that it too may engage in discovery by fact-based interrogatories.

Fed. R. Civ. P. 26(c)(1) states, in part, as follows:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, ....

BSW's request does not fit well within the text of this Rule. First, BSW seeks an Order requiring Plaintiffs to identify documents supporting their allegation. Thus, BSW is not protected from the burden of *producing* discovery to Plaintiffs; instead, it seeks protection from the burden of *reviewing* the discovery Plaintiffs produced for their Rule 26 initial disclosures. Fed. R. Civ. P. 26(a)(1). BSW is therefore not a "party or person from whom discovery is sought[.]" *John Wiley & Sons, Inc. v. Does Nos. 1-27*, no. 11 Civ. 7627(WHP), 2012 WL 364048, at *2 (S.D.N.Y. Feb. 3, 2012). Next, there was some discussion that the parties had talked prior to filing this Motion, but the Motion contained no certification confirming the parties had conferred in good faith. BSW's Motion therefore violated both Rule 26, as well as Local Rule 3.04. Fed. R. Civ. P. 26(c)(1); E.D Mo. L.R. 3.04(A). In addition, it was immediately apparent at the hearing held on this Motion that the failure of the parties to communicate materially impeded their resolution of this matter. Finally, BSW must show "good cause" to be entitled to a protective order. *Donovan v. Shaw*, 668 F.2d 985, 991 (8th Cir. 1982). Given the present stage of the discovery process and BSW's failure to take simple measures to resolve this dispute without Court intervention, BSW has failed to make this showing. BSW's request for a Protective Order will therefore be denied.

13

As for BSW's alternative request, Plaintiffs state that they take no position with regard to BSW's request that the Consent Protective Order be amended so that BSW may also engage in fact-based interrogatories.  Because Plaintiffs do not object to BSW's request, the Court believes that this issue can best be resolved through discussions between the parties.  For this reason, the Court will deny BSW's request at the present time.  However, the Court invites BSW and Plaintiffs to confer and develop a mutually agreeable Consent Protective Order to submit for the Court's consideration.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Jo Ann Howard & Associates, P.C.'s Motion to Disqualify Jack Spooner as Counsel for the Wittner Defendants, [ECF No. 842], is **GRANTED.** Spooner is disqualified from further representation of the Wittner Defendants in this case.  The Clerk's Office shall terminate Spooner's entry immediately.  Witter Defendants shall employ new counsel within twenty (20) days of this Order.

**IT IS FURTHER ORDERED** that Defendant Brown Smith Wallace's Motion for a Protective Order, or, in the Alternative, to Amend the July 22, 2011 Consent Protective Order, [ECF No. 821] is **DENIED.**  However, the Court invites the parties to confer and develop a mutually agreeable Consent Protective Order to submit for the Court's consideration.

So Ordered this 13th day of April, 2012.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE

14