UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JO ANN HOWARD & ASSOCIATES, P.C., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:09CV01252 ERW |
| J. DOUGLAS CASSITY, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This Matter comes before the Court on: (1) Defendant National City Bank, N.A.'s ("National City") Motion for Entry of Protective Order, [ECF No. 853]; and (2) Plaintiffs' Motion for a Rule 26(b)(5)(B) Ruling on National City's Claim of Privilege Over Disclosed Documents, [ECF No. 855]. Because these Motions concern a single issue, the Court will resolve them together.

**I.    BACKGROUND**

Plaintiffs include nationwide life and health insurance guaranty associations, as well as Texas receiver Jo Ann Howard & Associates, P.C., which has served as the Special Deputy Receiver of National Prearranged Services, Inc ("NPS") since 2008. National City is named as a defendant as the surviving entity of non-party Allegiant Bank.

Beginning in 1999, Allegiant Bank served as the trustee of NPS's Missouri Pre-Need Trusts. As of 2004, National City was considering whether to acquire Allegiant. National City's in-house

legal counsel[1] directed the company's internal auditing department[2] to review and report findings on the pre-need trust accounts held by Allegiant.

National City asserts this directive was a part of its legal department's due diligence, and that its purpose and design was to enable in-house counsel to provide full and accurate legal advice to National City.  In the course of fulfilling this directive, National City employees generated various documents, including e-mail communications, spreadsheet analyses, and handwritten notes.  These are the documents in dispute here.  Allegiant resigned as the trustee of NPS's Missouri Pre-Need Trusts on May 31, 2004, and National City acquired Allegiant thereafter.

In 2009, National City was served with a grand jury subpoena issued in connection with a United States Department of Justice criminal investigation into the actions of certain NPS officers and directors.  National City responded to this subpoena by producing various documents, including the disputed documents discussed above.  That investigation eventually led to an indictment and criminal prosecution, which is parallel to the instant civil matter.  *United States v. Sutton, et al.*, 4:09-cr-00509 (E.D. Mo.).  In this case, Plaintiffs filed a Petition under Federal Rule of Criminal Procedure 6(e) seeking production of all documents obtained by the United States through the grand jury subpoenas.  Plaintiffs' request therefore encompassed the documents National City had produced to the United States, including the disputed documents concerning its review of Allegiant's pre-need trust accounts.  The Court granted Plaintiffs' Rule 6(e) Petition.

Accordingly, the Government began producing the documents it had obtained to Plaintiffs' counsel.  In compliance with the parties' agreement and the Court's Order, Plaintiffs' counsel, in

---

[1] National City's legal department included Assistant General Counsel Tom Plant, Assistant General Counsel Carlton Langer, and in-house attorney Sandra Brantley.

[2] National City's internal auditors included Thomas Jurmanovich and Robert Hipskind.

2

turn, made these documents available to each defendant in this case.  Plaintiffs subsequently discovered that some National City documents marked "Attorney-Client Privilege" were among those produced by the United States.[3]  Extensive communications followed, and the parties now seek a court ruling as to whether these documents are protected by the attorney-client privilege. National City moves for a protective order holding they are privileged, barring their use in this matter, and requiring the originals to be returned and all copies to be destroyed.  [ECF No. 853]. Plaintiffs move for a ruling that National City's asserted attorney-client privilege either does not apply to the documents or has been waived. [ECF No. 855].

## II.   ANALYSIS

The parties dispute whether National City has waived its attorney-client privilege in the disputed documents by voluntarily producing them to the Government in response to the grand jury subpoena.  Upon a review of the Eighth Circuit's case law, the Court finds that National City did not.

In *Diversified Industries, Inc. v. Meredith*, the issue presented was "whether [a corporation] waived its attorney-client privilege with respect to the [disputed] material by voluntarily surrendering it to the SEC pursuant to an agency subpoena." 572 F.2d 596, 611 (8th Cir. 1977) (en banc).  The Eighth Circuit, sitting *en banc*, then wrote that because the corporation "disclosed these documents in a separate and nonpublic SEC investigation, we conclude that only a limited waiver of the privilege occurred." *Id.*  As a result, the Court found the documents at issue were protected by the attorney-client privilege. *Id.*  The Eighth Circuit subsequently applies this rule to a party who disclosed a document to a grand jury investigation:

> We next reject appellants' contention that the trial court erred in not requiring disclosure of an internal investigative report prepared by counsel for

---

[3] Plaintiffs promptly notified National City of the existence of these documents. Plaintiffs are to be commended for this course of action.

3

>Anheuser–Busch for the purpose of rendering legal advice. The communications contained in this report were protected by the attorney-client privilege, which Anheuser–Busch did not waive by voluntarily disclosing the report to the Government in conjunction with a grand jury investigation.

*United States v. Shyres*, 898 F.2d 647, 647 (8th Cir. 1990) (*citing Diversified Indus., Inc.*, 572 F.2d at 611). The Court concludes this law is controlling here. The decisions of other courts that have interpreted *Diversified Industries* provide additional support for this conclusion. *McDonnell Douglas Corp. v. United States EEOC,* 922 F. Supp. 235, 243 (E.D. Mo. 1996) ("Under the rule of [*Diversified Industries*], MDC's disclosure of the documents to the EEOC constituted only a limited waiver and did not destroy the privilege."); *Byrnes v. IDS Realty Trust*, 85 F.R.D. 679, 685 (S.D.N.Y. 1980) (stating that the "central question on this motion is whether the voluntary disclosure of privileged material to the SEC for purposes of its nonpublic proceeding constitutes a waiver of the attorney-client privilege" and concluding that *Diversified Industries* was not distinguishable); *In re Grand Jury Subpoena Dated July 13, 1979*, 478 F. Supp. 368 (E.D. Wis. 1979).

Plaintiffs make several arguments in an attempt to distinguish or limit *Diversified Industries*. For instance, Plaintiffs argue that the decision's holding applies only when a corporation employs independent outside counsel for the purpose of investigating fraud or similar malfeasance within the corporation itself. *Diversified Indus., Inc.*, 572 F.2d at 611. This argument was also considered in *Byrnes v. IDS Realty Trust*, and this Court joins that decision in rejecting it. *See Byrnes*, 85 F.R.D. at 687. Plaintiffs also suggest that *Diversified Industries* was wrongly decided, that the decision may no longer be good law, and that its holding is against the weight of federal case law. The Court has no occasion to consider these arguments, because it is bound to follow Eighth Circuit precedent. *McDonnell Douglas Corp.*, 922 F. Supp. at 243 ("Although the EEOC contends that *Diversified* was wrongly decided and conflicts with other cases, it is the prevailing law of this Circuit and is consistent with [Supreme Court precedent]."). Accordingly, the Court holds that National City did

4

not waive attorney-client privilege over the disputed documents by producing them in response to a grand jury subpoena.

Next, the parties dispute whether National City's privilege was waived by subsequent distribution of the disputed documents. The Court finds that the privilege was not waived. First, the Court notes that National City's only disclosure of the disputed documents has been to the Government in response to a grand jury subpoena. As discussed above, under *Diversified Industries*, such disclosure was protected and did not waive its privilege. Next, the Court finds the subsequent distribution of those documents by the Government and Plaintiffs did not operate as an implied waiver. Again, the law in this circuit is clear: under *Diversified Industries* and its progeny, disclosure of documents in response to a grand jury proceeding does not bar a party from subsequently asserting the attorney-client privilege in a collateral proceeding. The Court sees no reason why this rule should not be applied here. There is no evidence the distribution of the disputed documents was anything other than an oversight, especially given the volume and logistical challenges of discovery presented in this case. In addition, once National City learned the disputed documents had been distributed, it took prompt action to rectify that oversight. Fed. R. Evid. 502(b). Nothing here bars National City from asserting the attorney-client privilege.

Finally, the parties dispute whether the disputed documents are communications entitled to the protection of the attorney-client privilege. The attorney-client privilege applies "where legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relevant to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal advisor except the protection be waived." *Diversified Industries, Inc.*, 572 F.2d at 602 (internal quotations and citation omitted). However, such communications are not privileged simply because they are made by or to a person

5

who happens to be a lawyer. *Id.* Merely including an attorney in a discussion or as a recipient of a communication does not make that communication privileged. *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir. 1987).

Further, the privilege serves to protect only against disclosure of attorney-client communications; it does not prevent disclosure of the underlying facts by those who communicated with the attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981).

Determining whether the parties to a given communication are attorney and client presents greater difficulty in situations where the client is a corporation. *Id.* Because corporations can communicate only by or through human agents, the question arises as to whether the privilege extends to communications by or to all classes of corporate agents or employees. *Id.* When considering whether communications made by an employee or agent are privileged, the Eighth Circuit has held the attorney-client privilege applies if: (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication made it at the direction of his corporate supervisor; (3) the supervisor's request was made for the purpose of securing legal advice for the corporation; (4) the subject matter of the communication was withing the scope of the employee or agent's corporate duties; and (5) the communication was not disseminated beyond those individuals who needed to know its contents due to the corporate structure. *In re Bieter Co.*, 16 F.3d 929, 936 (8th Cir. 1994).

A given communication might not be protected from disclosure for several principal reasons, nine of which the Court has previously identified: (1) the communication concerned only underlying facts, and the communication was not shared in order to solicit legal advice; (2) disclosure of the communication to a third party waived its protection; (3) no attorney was involved with the communication and the communication did not reflect privileged advice from an attorney; (4) any

6

attorney involvement was merely as a passive recipient of the communication; (5) the attorney's advice was not legal in nature; (6) the communication was not made for the purpose of obtaining the attorney's legal advice; (7) the communication was made by an employee to whom the privilege does not extend; (8) the communication was not intended to be confidential; and (9) the document is attorney work product, but the party seeking production has demonstrated that the communication is discoverable. *Monsanto Co. & Monsanto Tech. LLC v. E.I. Du Pont De Nemours & Co.*, 2011 WL 4408184 (E.D. Mo. Sept. 22, 2011).

The work product privilege's primary purpose is to assure that the representation provided by an attorney to a client is not inhibited by fear that his files will be subject to scrutiny upon demand by an opposing party. *Id.* at *2. Under the work product doctrine, two kinds of documents and tangible things that are prepared in anticipation of litigation are sheltered from discovery: opinion work product and ordinary work product. *Id.* The test for determining if the materials assembled were prepared in anticipation of litigation is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* at *3, quoting *Simon v. G.D. Searle & Co*, 816 F.2d 397, 401 (8th Cir. 1987).

Opinion work product includes counsel's mental impressions, conclusions, opinion, or legal theories, and enjoys almost absolute immunity. *Id.* at *2. In contrast, ordinary work product includes raw factual information, and is discoverable if the party seeking discovery has a substantial need for the materials and cannot obtain the substantial equivalent of the materials through other channels.

Reviewing the disputed documents under the rubric of the nine reasons why a given communication might not be protectible, the Court has classified the documents as either privileged,

not privileged, work product, discoverable work product, or some combination of these four classifications. Using this rubric, the Court has created a table that documents its rulings on each produced document. The column on the far right contains the Court's conclusion: "P" (privileged", "WP" (work product), "NP" (not privileged), "DWP" (discoverable work product), or some combination thereof. For those documents found not to be protected, the Court also states its rationale, with references to the list of nine reasons set forth above. Thus, if the Court determined that a document was not privileged because no attorney was involved in the communication and it does not reflect privileged advice from an attorney, that column would indicate "NP: 3."

To allow the parties the opportunity to submit brief requests for reexamination of specific documents, the Court orders each party to review the "Attached Rulings on *In Camera* Review," and to submit a brief, individualized statement, less than five pages, supported by legal authority, explaining why the party believes any determination to be erroneous.

After conducting this reexamination, the Court shall order all documents determined to be "not privileged" in the reexamination and all other documents in the Court's Rulings on *In Camera* Review (or tables) that the Court has determined to be not privileged, delivered to the other party in unredacted format.

Accordingly,

**IT IS HEREBY ORDERED** that National City's Motion for Entry of Protective Order [ECF No. 853] is **GRANTED in part** and **DENIED** in part.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Rule 26(b)(5)(B) Ruling on National City's Claim of Privilege Over Disclosed Documents [ECF No. 855] is **GRANTED in**

**part** and **DENIED** in part.

Dated this  25th  day of June, 2012.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE