UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| JO ANN HOWARD & ASSOCIATES, P.C., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:09CV01252 ERW |
| J. DOUGLAS CASSITY, *et al.*, | ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiffs' Motion for Protective Order Regarding Collateral Attack Discovery [ECF No. 925].  The Court conducted a hearing on this Motion on June 25, 2012.

Plaintiff Jo Ann Howard & Associates, P.C., has been appointed by the District Court of Travis County, Texas ("Texas Receivership Court") to serve as the Special Deputy Receiver ("SDR") of three companies: National Prearranged Services, Inc. ("NPS"); Lincoln Memorial Life Insurance Co. ("Lincoln"); and Memorial Service Life Insurance Co. ("Memorial") (collectively, these three companies shall be referred to as "Receivership Entities").  In the matter before this Court, Plaintiff Jo Ann Howard & Associates, P.C., in its capacity as the SDR, has asserted claims such as violation of the RICO Act, 18 U.S.C. § 1962(d), breach of fiduciary duty, and gross negligence.  Other plaintiffs include national and individual state life and health insurance guaranty associations ("GAs").

In their Third Amended Complaint [ECF No. 909], Plaintiffs characterize NPS as a "pre-need funeral contract seller" or as a "marketer" of such contracts.  Plaintiffs allege that NPS was a "selling company" in a consortium of affiliated companies owned by the Cassity family

defendants.  Plaintiffs further allege that "NPS was used to market [a multi-state scheme] to funeral homes and consumers, and Lincoln and Memorial were used to give the scheme the semblance of corporate and regulatory credibility and to provide a vehicle to siphon cash from insurance policies that NPS represented as providing guaranteed funds for future funeral costs." Plaintiffs assert that, as part of the scheme to defraud, NPS collected pre-need contract sums, amounting to several million dollars, paid in full to funeral homes by funeral home consumers when the consumers submitted applications for single-premium, paid-in-full life insurance policies.

Plaintiffs brought their claims against numerous defendants, including several banks and trust companies that served as trustees of various pre-need trusts in which NPS placed insurance policies and proceeds from the sale of pre-need funeral contracts.  National City Bank is one of the named trustee bank defendants.  Plaintiffs assert claims against the trustee defendants based on alleged failures to supervise properly the management of the pre-need trusts.

## I.  THE UNDERLYING RECEIVERSHIP PROCEEDING

On April 8, 2008, the Texas Commissioner of Insurance placed Memorial, Lincoln, and NPS under a Chapter 404 Order by Consent [ECF No. 925-6].  In this order, the Commissioner identified Memorial as a Texas-domiciled stipulated premium company authorized to write life, accident and health insurance under *Texas Insurance Code Annotated* chapter 883; Lincoln as a Texas-domiciled insurer authorized to write life, accident and health insurance under *Texas Insurance Code Annotated* chapter 841; and NPS as "a Missouri-domiciled corporation that is engaged in the business of insurance in Texas through its inextricably intertwined operations with both [Memorial and Lincoln] and the collection of insurance premiums."  The Commissioner's order indicated that Memorial, Lincoln and NPS had agreed with its entry, and

2

stated, among other things, that NPS acknowledged the Commissioner's jurisdiction and authority over it for purposes of the order only, with the exception that NPS would "not waive any right as to any jurisdictional issue regarding any action not related to this Order[.]"  The Commissioner, as Receiver of Defendants, ordered that Angel Garrett would act as his Representative and he instructed Memorial, Lincoln and NPS to develop and implement a plan regarding the converted policies and policy loans.

On May 3, 2008, counsel for the legal services department of the Texas Department of Insurance ("TDI"), on behalf of Receiver Garrett wrote to the attorney representing Memorial, Lincoln, and NPS, to memorialize a Rule 11 agreement between the parties [ECF No. 925-7]. The terms of this communication indicated that the three entities had consented to receivership in Texas and to an Agreed Order Appointing Rehabilitator and Permanent Injunction [ECF No. 925-8]; and that the Receiver, in return, had agreed that neither he nor any SDR of the entities would file suit against certain entities listed in an attachment to the agreement.  This Agreed Order was entered by the Texas Receivership Court on May 14, 2008.

Thereafter, the SDR filed an Application for Order of Liquidation and for Order Approving Plan of Liquidation of the three entities with the Texas Receivership Court, which issued its Order Appointing Liquidator, Order Approving Liquidation Plan, and Permanent Injunction following a hearing on September 22, 2008 [ECF No. 901-6].  Terms of the Liquidation Plan, as proposed by the SDR, the National Organization of Life and Health Guaranty ("NOLHGA"), and NOLHGA's participating member GAs, included the following provision: "With respect to the Disputed Policies, the Participating Associations will recognize and pay the original face amount death benefit and provide no other benefits, in accordance with and subject to the Liquidation Plan, including the requirement for the payment of premiums as

set forth therein."  The Liquidation Plan provided that death benefits would be paid directly to the funeral homes that were responsible for providing and actually did provide the funeral or burial services for the benefit of the insured.  The Liquidation Order also specifically approved the Liquidation Plan's treatment of the participating GAs' subrogation and assignment rights.

## II.  DISCUSSION

Plaintiffs move, pursuant to Fed. R. Civ. P. 26(c)(1)(D), for an Order protecting them from responding to certain document requests made by National City Bank.  These following eight requests, which were propounded in National City Bank's First Set of Requests for Production to the SDR, NOLHGA[1], and the individual state guaranty association ("GA") plaintiffs in this matter, are denominated as Request Nos. 4-11 in the requests directed to the SDR, and as Request Nos. 7-15 in the requests directed to the national and state GAs:

**Request No. 4 (SDR); No. 7 (GAs)**
All documents and communications related to the Chapter 404 Order By Consent entered by the Texas Department of Insurance on April 8, 2008, against the Receivership Entities.

**Request No. 5 (SDR); No. 8 (GAs)**
All documents and communications related to the inclusion of NPS in the Chapter 404 Order By Consent entered by the Texas Department of Insurance on April 8, 2008.

**Request No. 6 (SDR); No. 9 (GAs)**
All documents and communications related to the Rule 11 Agreement entered into by the Receivership Entities and the Texas Department of Insurance, filed in the District Court of Travis County, Texas on May 14, 2008.

**Request No. 7 (SDR); No. 10 (GAs)**
All documents and communications related to the inclusion of NPS in the Rule 11 Agreement entered into by the Receivership Entities and the Texas Department of Insurance, filed in the District Court of Travis County, Texas on May 14, 2008.

---

[1]NOLHGA represents the interests of state life and health guaranty associations in Arizona, California, Colorado, the District of Columbia, Georgia, Idaho, Indiana, Iowa, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Mexico, North Dakota, Ohio, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Washington, West Virginia, Wisconsin, and Wyoming.

**Request No. 8 (SDR); No. 11 (GAs)**
All documents and communications related to the Agreed Order Appointing Rehabilitator and Permanent Injunction entered by the District Court of Travis County, Texas on May 14, 2008.

**Request No. 9 (SDR); No. 12 (GAs)**
All documents and communications related to the inclusion of NPS in the Agreed Order Appointing Rehabilitator and Permanent Injunction entered by the District Court of Travis County, Texas on May 14, 2008.

**Request No. 10 (SDR); No. 13 (GAs)**
All documents and communications related to the negotiation of the Liquidation Plan entered by the District Court of Travis County, Texas on September 22, 2008, including specifically: (a) the decision to treat all life insurance policies, whether whole or term life, as fully paid whole life insurance policies; (b) the definition of a "Disputed Policy" in the Liquidation Plan; and (c) the decision to make payments on each "Disputed Policy" as that term is used in Paragraph 197.5 of the Second Amended Complaint.

**Request No. 11 (SDR); No. 14 (GAs)**
All documents and communications related to the Order Approving Application to Authorize Handling of NPS Contracts and Payments with No Related Insurance, filed in the District Court of Travis County, Texas on June 1, 2010.

In their response to these document requests made by National City Bank, Plaintiffs objected, as pertinent to the Motion, that the documents sought are irrelevant and will not lead to the discovery of admissible evidence, because they relate to final decisions of a state court, which, under principles of full faith and credit, federalism, and comity, are not subject to collateral attack[2] [ECF Nos. 925-1, 925-2].

National City Bank responded to Plaintiffs' objections, requesting a "meet-and-confer" to discuss the issues, and maintaining that the preclusive effect of the receivership proceeding or the

---

[2]Plaintiffs also objected to the phrase "related to" as vague and ambiguous; and they generally objected to the requests to the extent they requested any documents protected by the attorney-client privilege, the work product doctrine, the joint client privilege, or the common interest privilege. As to Request No. 10, Plaintiffs additionally stated that "the Liquidation Plan expressly provides that negotiations, proceedings, and statements made in connection with the entry of the plan will not be offered in evidence in subsequent actions or proceedings. *See* Liquidation Plan, section 13. 1."

state's interest in regulating the insurance industry had no bearing on the relevant question, which was whether the requests sought documents that were reasonably calculated to lead to the discovery of admissible evidence [ECF No. 925-3]. National City Bank stated that the requests sought documents and communications concerning the course of events leading to the receivership proceedings and to the negotiation of liquidation plan details. National City Bank indicated certain defendants had asserted that the TDI sought a capital infusion to the Lincoln of millions of dollars prior to the receivership, and that a plan to rehabilitate the Receivership Entities was proposed, but ultimately was rejected in favor of liquidation, with the decision-making TDI official installing her brother-in-law as counsel to the appointed SDR. National City Bank further claimed these defendants had stated that NPS was included in the receivership proceedings at the urging of Doug Ommen, so as to avoid having the receivership proceeding for NPS "play out in Missouri during Jay Nixon's gubernatorial race." Additionally, National City Bank asserted the defendants had averred that the plaintiff GAs had voluntarily agreed to treat Lincoln policies backing NPS pre-need contracts as fully paid-up whole life policies, as opposed to term policies, which would not have been their responsibility to pay. [ECF No. 925-3].

Plaintiffs reaffirmed their objections during the parties' meet-and-confer discussions, characterizing the assertions made by other defendants as baseless and inaccurate, and stating that such claims could serve no purpose other than to undermine the orders of the Texas Receivership Court confirming Plaintiffs' standing to pursue this action. Plaintiffs thereafter notified National City Bank by letter that they would seek a protective order with respect to the eight requests [ECF No. 925-4].

National City Bank wrote back to Plaintiffs, asserting that the plaintiffs had refused to confer in good faith, and that Plaintiffs had failed to respond to its assertion that "the

applicability of the Full Faith and Credit Clause to the receivership orders has nothing to do with whether documents related to the receivership proceeding are discoverable." [ECF No. 951-1]. National City Bank asserted that the requested documents are directly related to the affidavit of Plaintiff witness Doug Slape [ECF No. 951-2], in which Mr. Slape described the course of events leading to the receivership and lists reasons for placing NPS and Lincoln into receivership. National City further averred that the documents related to the negotiation of the Liquidation Plan, which bear directly on the GAs decision to cover the face value of disputed policies, is relevant to whether the GAs are entitled to claim damages resulting from the compromise negotiations the Liquidation Order represents.

Plaintiffs resist National City Bank's production requests as irrelevant because they relate to final decisions of a state court that are not subject to collateral attack.  Plaintiffs are correct that the principles of *res judicata* apply to questions of jurisdiction; however, a judgment is entitled to full faith and credit as to such jurisdictional questions only when the subsequent court's inquiry reveals that those questions were fully and fairly litigated and finally decided in the court that rendered the original judgment.  *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 706 (1982).  A conclusion as to the preclusive effect of the receivership proceeding and orders here would require this Court to determine whether the Texas court's jurisdiction over NPS was fully and fairly litigated, and finally decided, in the receivership proceedings.

National City Bank's jurisdictional argument is not the first challenge to the SDR's standing to pursue claims on behalf of NPS raised in this matter.  Previously, this Court considered the issue when three other trustee defendants moved for dismissal of Plaintiffs' claims against them on the basis that NPS was not a proper party to the underlying receivership

7

action.  Those defendants argued that the Texas Insurance Commissioner's statutory authority to

initiate receivership proceedings was limited to insurance business entities, and Plaintiffs'

allegations revealed NPS was in the business of selling pre-need funeral contracts, not insurance.

In its March 22, 2011 Memorandum and Order [ECF No. 636], this Court concluded that a

dismissal motion was not the proper context for deciding the issue of the SDR's standing to bring

claims on behalf of NPS, because to do so would require it to make a factual determination that

NPS was not in the business of selling insurance.  This Court declined to make such a

determination on the basis of the Plaintiffs' pleaded allegations, noting that the Texas Insurance

Commissioner's factual finding with respect to NPS's involvement in the insurance business was

based on a factual record not before the Court.  *See Tex. Ins. Code Ann.* § 443.003 (West 2012)

(defining persons covered by the provisions of the Insurance Receivership Act; including "other

persons organized or doing insurance business").

However, as National City Bank pointed out in its response to Plaintiffs' objections, the

primary question presented in terms of the discovery dispute presently before the Court is

whether the requests seek documents that are "reasonably calculated to lead to the discovery of

admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Generally, parties may obtain discovery

regarding any matter that is not privileged and that is relevant to any party's claim or defenses.

*Id.*  Under Rule 26(b)(1), relevance is construed more broadly for discovery than for trial, and

where relevance is in doubt, the rule indicates courts should be permissive.  *Truswal Sys. Corp.

v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987).  Courts are accorded significant

discretion in making discovery-related decisions.  *Florsheim Shoe Co. Div. of Interco, Inc. v.

United States*, 744 F.2d 787, 797 (Fed. Cir. 1984).  "The party resisting production bears the

burden of establishing lack of relevancy or undue burden."  *Pinnix v. Centaur Bldg Supply Serv.,*

*Inc.*, 2008 WL 4826306 at *1 (E.D. Mo. Nov. 4, 2008). With this standard in mind, the Court examines National City Bank's document requests and Plaintiffs' responses and objections.

In their Motion, Plaintiffs claim National City Bank's requests seek to collaterally attack the Texas state court orders that confirmed Plaintiffs' standing and capacity to pursue the claims asserted in this matter. Plaintiffs assert that the SDR, NOLHGA, and the Plaintiff State GAs are entitled to pursue the claims under a Liquidation Order entered by the Texas Receivership Court. According to Plaintiffs, National City Bank, due to unfounded assertions made by other defendants in this matter, is demanding internal documents to use to undermine the orders of the Texas Receivership Court by removing Plaintiffs' capacity as the real parties in interest herein. Plaintiffs argue that the demanded documents are irrelevant to the matter under determination because Defendants cannot collaterally attack the Texas Receivership Court proceedings and orders. They maintain that a protective order is necessary to prevent National City Bank from making improper discovery requests designed to undercut state court orders, and claim that the "vast majority of the documents requested by National City Bank would be privileged, potentially subjecting Plaintiffs to the burden of entering thousands of documents on a privilege log when only a small number of documents would actually be produced."

In their Opposition to Plaintiffs' Motion for Protective Order [ECF No. 951], National City Bank argues Plaintiffs' claim that production would be unduly burdensome should be disregarded because they failed to discuss narrowing or limiting the requests prior to filing their motion, and have not described in any detail the alleged burden in terms, of time, money, or procedure. National City Bank asks the Court to order production of the requested documents, claiming they are relevant for three reasons. First, National City Bank asserts they are relevant because Plaintiffs have put the course of the receivership proceedings at issue, and the documents

could yield information concerning the operation and financial condition of the entities prior to receivership.  It further argues that they could reveal information that could be used to effectively depose Plaintiffs' identified witnesses and to identify other potential witnesses.  In addition to its claim that the requested documents are needed to effectively depose Mr. Slape, National City Bank asserts that they contain information related to topics on which Plaintiffs have indicated witness Danny Saenz will offer testimony, including "knowledge and information regarding the decision to place NPS, Lincoln, and Memorial into receivership and liquidation." [ECF Nos. 951, 951-3].  As well, National City Bank avers that the requests could produce information capable of resolving factual disputes among the defendants making the assertions.

Next, National City Bank claims the requested documents are relevant because they could support its challenge to the assignments by which funeral homes' claims against National City Bank were transferred to the GAs.

Finally, National City Bank argues that the requested documents are relevant because National City Bank, as a non-party to the Texas receivership proceeding, can challenge the SDR's standing to sue on behalf of NPS, should the discovery reveal that NPS was not engaged in the business of insurance in Texas and therefore not within the jurisdiction of the Texas Receivership Court.

In their Reply [ECF No. 992], Plaintiffs assert that National City Bank cannot "test" or collaterally attack the Texas receivership court's facially valid orders by challenging the Texas court's jurisdiction over NPS, regardless of whether National City Bank appeared in the Texas proceedings.  As to National City Bank's claim that the requested internal documents would allow it to negate the GA plaintiffs' assignee standing if the documents showed these assignees acquired claims for an improper purpose, Plaintiffs argue this "improper purpose" theory fails as

10

a matter of law.  Plaintiffs assert that, contrary to National City Bank's premise, the SDR could

sue on behalf of any funeral homes seeking payment, under its power to "prosecute any action

that may exist on behalf of the creditors . . . against any person."  Plaintiffs further argue that the

GAs were required by the Liquidation Plan and Order to cover the "Disputed Policies," and that

the GAs honored their statutory missions in their payments to the funeral homes.

      In its arguments for compelling production, National City Bank claims that the requests

are reasonably calculated to lead to the discovery of admissible evidence such as: information

concerning the operation and condition of the entities prior to being placed in receivership;

information relevant to Plaintiffs' claims that National City Bank should or could have known

about the insolvency of the insurance companies; information that could be used to depose

Plaintiffs' identified witnesses, including individuals who have already submitted affidavits in

this matter; and information leading to the identification of other potential witnesses.

      Plaintiffs have not met their burden of establishing lack of relevancy.  *Pinnix*, 2008 WL

4826306 at *1.  Concerning Request Nos. 4-11(SDR) and 7-14 (GAs), the Court finds that they

seek documents reasonably calculated to lead to the discovery of admissible evidence.  Fed. R.

Civ. P. 26(b)(1).  Although Plaintiffs also objected generally to these requests "to the extent"

they requested any privileged communications, this bare statement is not adequate to voice a

successful objection.  *Pinnix*, 2008 WL 4826306 at *1.  Plaintiffs' objection to Request Nos. 10

(SDR) and 13 (GAs), on the basis that "the Liquidation Plan expressly provided that

negotiations, proceedings, and statements made in connection with the entry of the plan will not

be offered in evidence in subsequent actions or proceedings" is an argument for its

inadmissibility at trial, rather than its relevance during discovery.  *Truswal Sys. Corp.*, 813 F.2d

at 1211.

When a party requests an order protecting it from responding to certain document requests, Federal Rule of Civil Procedure 26(c)(1)(D) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]"

The Court finds that Plaintiffs have failed to establish good cause with respect to the requested protective order provisions.  In fact, Plaintiffs specifically state their decision to not do so in their Reply: "Plaintiffs are not seeking to limit 'discovery otherwise allowed by these rules'" on the ground that 'the burden . . . outweighs its likely benefit[.]'  Rather, the documents are irrelevant as a matter of law."

The Court overrules Plaintiffs' objections and denies their request for a protective order, except to the extent that any of the document requests seek information or testimony that is protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Protective Order Regarding Collateral Attack Discovery [ECF No. 925] is **DENIED**.  Plaintiffs must produce nonprivileged documents that are responsive to National City Bank's Request Nos. 4-11 (SDR) and 7-14 (GAs) within sixty (60) days.

Dated this  6th   day of July, 2012.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE

12