UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JO ANN HOWARD & ASSOCIATES, P.C., *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) Case No. 4:09CV01252 ERW |
| J. DOUGLAS CASSITY, *et al.,* | ) ) ) |
| Defendants. | ) |

**<u>MEMORANDUM ORDER</u>**

This matter comes before the Court on The Missouri Trustee Defendants'[1] Motion to Dismiss the Aiding-and-Abetting Counts for Failure to State a Claim [ECF No. 1016]; Defendant U.S. Bank, National Association's ("U.S. Bank") Motion to Dismiss Plaintiffs' Third Amended Complaint or, in the Alternative, for a More Definite Statement [ECF No. 1023]; and Defendant Richard Markow's Motion to Dismiss Counts 36-38 of Plaintiffs' Third Amended Complaint [ECF No. 1082].

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This litigation arises out of proceedings instituted by the Texas Department of Insurance in Travis County, Texas, in which National Prearranged Services, Inc. ("NPS"), Lincoln Memorial Life Insurance Company ("Lincoln"), and Memorial Service Life Insurance Company ("Memorial") were placed in receivership and are currently in the process of being liquidated. Plaintiffs in this litigation are Jo Ann Howard and Associates, P.C., acting on behalf of NPS,

---

[1]The Missouri Trustee Defendants include U.S. Bank, N.A.; National City Bank; PNC Bank, N.A.; Bremen Bank and Trust Company; Marshall & Ilsley Trust Company, N.A.; Southwest Bank; and BMO Harris Bank, N.A.

Lincoln, and Memorial, as Special Deputy Receiver ("SDR") in connection with the Texas

receivership proceedings; the National Organization of Life and Health Guaranty Associations

("NOLHGA")[2]; and the individual state life and health insurance guaranty associations of

Arkansas, Illinois, Kansas, Kentucky, Missouri, Oklahoma, and Texas.  These individual

guaranty associations, as well as those represented by NOLHGA, are statutory entities created by

state legislatures to provide protection for resident policyholders in the event that a member

insurance company becomes insolvent.  Plaintiffs represent that these state guaranty associations

have been assigned or subrogated to the claims of funeral homes and consumers arising out of

dealings with NPS  through (1) each state guaranty association's enabling act; (2) the NPS /

Lincoln / Memorial Liquidation Plan approved by the Texas Receivership Court on September

22, 2008; or (3) express assignments received from recipients of death benefits paid by a state

guaranty association.

　　　Prior to the institution of the Texas proceedings, NPS was in the business of selling pre-

need funeral service contracts, which were sold to consumers through funeral homes.  Lincoln

and Memorial were issuers of life insurance policies.  NPS marketed its pre-need contracts by

assuring consumers that funds paid to NPS would be secured in pre-need trusts and backed by

whole life insurance policies issued by Lincoln or Memorial for the full amount of the contract.

NPS represented to these consumers that the necessary funds would be available when the pre-

need beneficiary died and the funeral home's claim became due.  In accordance with state law,

this process was accomplished in certain states by requiring the purchaser to simultaneously

---

[2] NOLHGA represents the interests of the state life and health insurance guaranty
associations of Arizona, California, Colorado, the District of Columbia, Georgia, Idaho, Indiana,
Iowa, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada,
New Mexico, North Dakota, Ohio, Oregon, Rhode Island, South Dakota, Tennessee, Utah,
Washington, West Virginia, Wisconsin, and Wyoming.

apply for a life insurance policy issued by Lincoln or Memorial in an amount corresponding to the amount of the pre-need contract.  In other states, the pre-need trust itself purchased the life insurance policies.

On May 3, 20, 2012, Plaintiffs herein filed their Third Amended Complaint, asserting a wide variety of claims against various defendants, including, but not limited to, claims for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-1968, violations of the Lanham Act, 15 U.S.C. §§ 1051-1141n, state law claims concerning intentional and negligent fraudulent misrepresentations, and violations of the Texas Receivership Act, Tex. Ins. Code §§ 443.202-443.205 [ECF No. 916].  The Third Amended Complaint alleges that the fraudulent scheme's ultimate goal was to siphon funds away from NPS, Lincoln, and Memorial for the personal use of certain defendants, a scheme that ultimately left more than $600 million in liabilities to be satisfied by the SDR and the state life and health guaranty association Plaintiffs.

There are over forty defendants named in Plaintiffs' Third Amended Complaint, with varying degrees of alleged involvement in what Plaintiffs characterize as a scheme to defraud individual consumers and funeral homes in the sale of NPS's pre-need funeral contracts.  Six of the defendants named in this matter are being prosecuted for a variety of fraud-based crimes in a parallel criminal case, *United States v. Sutton*, Case No. 4:09CR00509 JCH (E.D. Mo.).

 The principal focus of Plaintiffs' claims is a group of defendants, defined as "the RICO Defendants," consisting of (1) Doug Cassity, Tyler Cassity, Rhonda Cassity, and Brent Cassity ("the Cassity Defendants"), who are the beneficial owners of NPS, Lincoln, Memorial, and a number of affiliated entities through the RBT Trust II – a family trust of which Doug Cassity is the settlor and the Cassity Defendants are the sole beneficiaries; (2) certain officers and

employees of the Cassity-controlled entities; (3) a number of attorneys and law firms engaged by

those entities; and (4) several of those entities themselves.  Plaintiffs allege that the RICO

Defendants defrauded and conspired to defraud NPS's individual and funeral home consumers

by, among other things:

>  (1)  not revealing to NPS employees, funeral homes, or consumers that
> Lincoln and Memorial, as issuers of the life insurance policies intended to fund
> the pre-need contracts upon the death of the purchaser, were not independent of
> NPS, and that Lincoln, Memorial, NPS, and the Cassity Defendants were not
> independent of each other;

>  (2)  in states in which the purchaser of the pre-need contract applied for
> the life insurance policy directly, altering policy applications to indicate that the
> policy was to be paid for in installments, when in fact the purchaser had paid the
> full amount of the policy in full, so that NPS would only be required to deposit the
> first installment into a pre-need trust, with the remainder of the amount then
> ultimately diverted to the RICO or Cassity Defendants through various Cassity-
> controlled entities, including NPS, Lincoln, and Memorial;

>  (3)  in states in which the pre-need trusts purchased the life insurance
> policies, purchasing installment policies with monthly payments when the
> consumer paid for the pre-need contract with a single payment in full, likewise in
> order to avoid depositing the entire policy amount into a pre-need trust and to
> siphon the remaining funds to the RICO or Cassity Defendants;

>  (4)  altering life insurance policy applications to indicate that NPS was the
> owner or beneficiary of the policy, in order to allow NPS to take out loans on the
> policies from Lincoln or Memorial, and then denying that NPS had taken out any
> such loans in response to inquiries from funeral homes;

>  (5)  directing NPS to stop paying premiums to Lincoln on whole life
> policies  and surrendering whole life policies for their cash value, with the effect
> of reducing NPS's obligations to Lincoln and allowing NPS to retain a greater
> percentage of funds received from consumers in exchange for the pre-need funeral
> contracts;

>  (6)  removing funds from the NPS pre-need trusts in exchange for the
> issuance of promissory notes or debentures, with repayment only occurring
> through book entries unsupported by actual transactions or through the temporary
> shifting of funds between various entities controlled by the RICO Defendants; and

>  (7)  engaging in "roll-over" transactions with funeral homes, whereby a
> funeral home would agree to transfer its existing pre-need contracts to NPS and

remit to NPS the balance of its trust funds from those contracts, with NPS then using the above-described tactics with whole life insurance policies issued by Lincoln to avoid placing as much as possible of the "roll-over" funds into a pre-need trust, and diverting the remainder to the RICO or Cassity Defendants.

Based on these allegedly wrongful actions, Plaintiffs assert additional claims related to allegedly fraudulent transfers between Cassity-controlled entities against another set of Defendants that are collectively referred to as "the Fraudulent Transfer Defendants." Plaintiffs bring another set of claims arising out of the removal of funds from the pre-need trusts through the issuance of promissory notes and debentures against yet another group of defendants that are defined as "the Promissory Note Defendants," some of whom are likewise RICO or Fraudulent Transfer Defendants.

The defendants bringing the Motions to Dismiss presently before the Court are members of the group of defendants defined in the Third Amended Complaint as the "Trustee Defendants," and individual defendant Richard Markow ("Defendant Markow"), who was head of Trustee Defendant Bremen Bank's trust department, and a Senior Vice President and Trust Officer for Bremen Bank. The claims stated against Trustee Defendants allege that they breached their fiduciary duties to NPS, funeral homes, and consumers, by failing to properly manage the NPS pre-need trust assets, and by failing to ensure that those assets were prudently handled.

Plaintiffs' claims against Trustee Defendants include Breach of Fiduciary Duty by Trustee Banks (Count 19); Negligence and Gross Negligence by Trustee Banks (Count 20); Unjust Enrichment (Count 28); Money Had and Received (Count 29); Aiding and Abetting Fraud (Count 31); Aiding and Abetting Breach of Fiduciary Duty by Investment Advisors (Count 32); Aiding and Abetting  Breach of Fiduciary Duty by Bremen Bank (Counts 33 and 34); Breach of Fiduciary Duty (against Defendant Markow) (Count 36); Participation in a Breach of Trust Duties and

5

Aiding and Abetting Breach of Fiduciary Duties (against Defendant  Markow) (Count 37); and

Aiding and Abetting Fraud (against Defendant Markow) (Count 38).

In their Motion, Missouri Trustee Defendants urge the Court to dismiss Counts 31

through 34 of Plaintiff's Third Amended Complaint.  In its pleading, Defendant U.S. Bank

separately moves to dismiss Counts 31 and 32.  Defendant Markow's Motion moves to dismiss

the claims asserted solely against him, Counts 36-38 of the Third Amended Complaint.

## II.  LEGAL STANDARD

A party may move under Rule 12(b)(6) to dismiss a complaint for "fail[ing] to state a

claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to

dismiss is to test "the sufficiency of a complaint[.]"  *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616

F.3d 872, 876 (8th Cir. 2010).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. at 678 (internal quotations omitted).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  *Id.*

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor

of the plaintiff[.]"  *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir.

2010).  However, if a claim fails to allege one of the elements necessary to recovery on a legal

theory, that claim must be dismissed for failure to state a claim upon which relief can be granted.

*Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).

## II.  DISCUSSION

### A.  The Missouri Trustee Defendants' Motion

In their Motion, Missouri Trustee Defendants move to dismiss Counts 31 through 34 of

Plaintiffs' Third Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), on

several grounds.  Counts 31 through 34 assert that Missouri Trustee Defendants aided and abetted

various alleged acts of fraud and breaches of fiduciary duty by knowingly and recklessly providing

substantial assistance and encouragement to the primary tortfeasors in their commission of the

alleged torts.

### 1.  The Missouri Trustees' Contention that Plaintiffs' Allegations Directly Conflict with the Government's Theory in the Parallel Criminal Proceeding is not Grounds for Dismissal under Rule 12(b)(6).

Among other things, Missouri Trustee Defendants aver that Plaintiffs' allegations directly

conflict with the Government's theory in the parallel criminal proceeding, which asserts that

Missouri Trustee Defendants were victims of the RICO Defendants' fraud.

Plaintiffs contend the Missouri Trustees' claim that their allegations in this civil matter

directly conflict with the Government's theory in the criminal case is not cognizable under Rule

12(b)(6), and they further assert that there is no conflict between the allegations of their

Complaint and the position advanced by Government's Indictment.  Plaintiffs argue that the banks

can be both criminal victims and civil wrongdoers, contending that insider officer wrongdoing can

render a bank civilly liable to innocent third parties, even if the bank is potentially victimized by

the wrongdoing also.

A court considering a motion to dismiss accepts as true all of the well-pleaded allegations

contained in a complaint, and then determines whether the complaint facially states a plausible

claim for relief.  *See Iqbal*, 556 U.S. at 678-79; Fed. R. Civ. P. 12(b)(6).  Given the purpose of a

motion to dismiss, Plaintiffs' point is well taken.   The Missouri Trustees' contention that the

Complaint's allegations directly conflict with the Government's theory in the parallel criminal

proceeding is an argument requiring factual determinations, and thus is not grounds for dismissal.

All that is required at this point in the proceedings is for Plaintiffs to assert factual allegations,

taken and true and liberally construed in Plaintiffs' favor, which could entitle them to relief.  *Id.*

Moreover, given that the civil rules of procedure allow parties to bring alternative or inconsistent

theories in their complaints and even require trial courts to examine complaints to determine if the

allegations provide for relief on any possible theory, the Missouri Trustees' assertion that

Plaintiffs' claims conflict with the Government's theory in a related, but separate, case is certainly

not basis for dismissal of Plaintiffs' action.  *See* Fed. R. Civ. P. 8(d), (e) and 12(b)(6); *Thomas W.

Garland, Inc. v. St. Louis*, 596 F.2d 784, 787 (8th Cir. 1979).

> **2.  The Missouri Supreme Court has not recognized a cause of action based on §
> 876(b).**

Missouri Trustee Defendants claim that the aiding-and-abetting counts fail to state a claim

upon which relief may be granted.  They assert that the counts allege claims fashioned after §

876(b) of the Restatement (Second) of Torts, and contend that the Missouri Supreme Court has

never recognized a cause of action based on the theory of secondary liability reflected in

subsection (b).   Section 876 of the Restatement (Second) of Torts provides:

> For harm resulting to a third person from the tortious conduct of another, one is
> subject to liability if he (a) does a tortious act in concert with the other or pursuant
> to a common design with him, or (b) knows that the other's conduct constitutes a
> breach of duty and gives substantial assistance or encouragement to the other so to
> conduct himself, or (c) gives substantial assistance to the other in accomplishing a
> tortious result and his own conduct, separately considered, constitutes a breach of
> duty to the third person.

Missouri Trustee Defendants assert that the Missouri Supreme Court discussed secondary

liability under § 876 on only one occasion, in *Zaft v. Eli Lilly & Co.*, 676 S.W.2d 241 (Mo. banc

1984), and that the court limited the section's application to the context of concert-of-actions under subsection (a).   Missouri Trustee Defendants argue that, if confronted with the question, the Missouri Supreme Court would not recognize a cause of action for aiding and abetting fraud or breach of fiduciary duty.  They aver that the great weight of Missouri authority limits secondary liability to the conspiracy theory reflected in § 876(a), and declines to recognize claims under subsections (b) or (c).  Additionally, Missouri Trustee Defendants claim that substantial policy concerns support limiting the scope of secondary liability to cases falling under § 876(a), alleging that applying subsection (b) heightens the risk that the law will improperly impose liability on a party without fault or a direct connection between a wrongful act and tortious harm.

Missouri Trustee Defendants note that two decisions from the Court of Appeals, Western District conflict in their stance regarding Missouri's adoption of § 876 (b).  The first of these decisions, *Bradley v. Ray*, 904 S.W.2d 302 (Mo. Ct. App. 1995), addressed whether a therapist could be liable for aiding and abetting the sexual abuse of a child if the therapist knew of the abuse, but consciously failed to report it to authorities.  In *Bradley*, the court concluded that Missouri did not recognize such a tort, stating "Plaintiff has not cited any Missouri case which recognizes a claim for aiding and abetting in the commission of a tort, and none were located through the Court's own research."  *Id.* at 315.  In a footnote to this statement, the court added, "While no Missouri courts have recognized a tort based on Restatement (Second) Torts § 876(b), Missouri courts have *rejected* claims fashioned after the Restatement (Second) of Torts § 876 (c)." *Id.*, n. 11 (italics in original).

The second Western District decision, *Shelter Mut. Ins. Co. v. White*, 930 S.W.2d 1 (Mo. Ct. App. 1996), concluded that, in the context of a fatal automobile accident,  the circuit court erred in dismissing the plaintiffs' action, because passengers who encouraged their intoxicated

driver to drive under the influence, to speed, and to ignore traffic signs, could be liable under §

876(b), should a jury determine their acts constituted a substantial factor in the plaintiffs' losses.

Missouri Trustee Defendants argue that *Shelter Mutual* was incorrectly decided, asserting

that the decision's analysis was flawed, because it ignored the *Zafft* court's limitation of its

discussion to § 876(a)'s concert-of-action theory of liability, and failed to address the contrary

conclusion in *Bradley* reached by the Western District just one year prior.

In their pleading opposing the Motion to Dismiss [ECF No. 1092], Plaintiffs claim that,

because the Missouri Supreme Court often adopts the Second Restatement's position when

confronted with previously unsettled issues of Missouri tort law, it would almost certainly adopt §

876(b), even if the court had to overrule state law precedent to do so.  Plaintiffs further argue that

the Missouri Court of Appeals, as well as the vast majority of courts nationwide, have recognized

aiding-and-abetting claims under the theory of liability described in § 876(b), and assert that the

section is consistent with prior Missouri law accepting aiding and abetting as a "well settled"

cause of action.  As well, Plaintiffs state that the Western District's holding in *Shelter Mutual*

constituted a rejection of any argument that Missouri courts would not uphold § 876(b) claims.

Plaintiffs additionally assert that they have properly pleaded the requisite elements to establish

liability under § 876(b) and § 876(c).

As previously mentioned, the Missouri Supreme Court has not squarely decided whether

to recognize the tort of aiding and abetting based on subsections (b) or (c) of § 876.  When faced

with an issue of state law not yet determined, the task of a federal court sitting in diversity is to

attempt to predict how the state's highest court would resolve the question.  *Polk v. Ford Motor*

*Co.*, 529 F.2d 259, 264 (8th Cir. 1976);  *Auto Owners Ins. Co. v. Biegel Refrigeration & Elec.*

*Co., Inc.*, 659 F.Supp.2d 1050, 1054 (E.D. Mo. 2009).  To accomplish this undertaking, federal

courts are to consider "any persuasive data that is available, such as compelling inferences or logical implications form other related adjudications and considered pronouncements." *Polk*, 529 F.2d at 264.

Available for this Court's consideration in this matter is a decision from the United States District Court, Western District of Missouri, *Omaha Indem. Co. v. Royal Am. Managers, Inc.*, 755 F.Supp. 1451 (W.D. Mo. 1991), in which another federal district court was challenged to predict whether the Missouri Supreme Court would recognize an aiding-and-abetting tort premised on §876(b).  This Court recognizes that *Omaha Indemnity* predates the two Western District decisions cited by the parties.   Nevertheless, this Court finds that a review of the *Omaha Indemnity* court's determination provides additional assistance in ascertaining the landscape of Missouri law addressing the application of the various subsections of § 876.

In *Omaha Indemnity*, plaintiffs filed a summary judgment motion in a case where the named defendants, using entities they controlled, perpetuated injustice and fraud by intermingling corporate and personal finances and participating in the systematic stripping of Royal American Managers' corporate assets.  *Id.* at 1458.  In their motion, the plaintiffs requested judgment in their favor on, among others, a cause of action against two defendants for aiding and abetting breaches of fiduciary duty owed to Omaha Indemnity.  *Id.* at 1454, 1459.

In support of their argument for summary judgment, the plaintiffs cited  *Terrydale Liquidating Trust v. Barness*, 611 F.Supp. 1006, 1015-16 (S.D.N.Y. 1984), a decision where a New York district court, while noting that Missouri courts had not adopted the aider and abetter liability found in § 876, found it appropriate to use subsection b of the statute in a case involving the application of Missouri substantive law.  The *Omaha Indemnity* court, however, denied the request for summary judgment on the aiding-and-abetting cause of action, stating that the

11

plaintiffs' "citation of one New York district court opinion does not convince me that Missouri courts would recognize a cause of action for aiding and abetting a breach of fiduciary duty." *Omaha Indem.*, 755 F.Supp. at 1459.

In addition to *Zafft*, and the two contradictory Western District Missouri Court of Appeals opinions, *Bradley* and *Shelter Mutual*, Missouri case law considering the application of various subsections of § 876 includes a pre-*Omaha Indemnity* decision from the Southern District, *Richardson v. F.I.E. Corp.*, 741 S.W.2d 751 (Mo. Ct. App. 1987) (considering § 876 (c)), and a post-*Omaha Indemnity* determination from the Eastern District, *Gettings v. Farr*, 41 S.W.3d 539 (Mo. Ct. App. 2001) (discussing § 876 (a), (b), and (c)).

*Richardson*, like *Zafft*, was available for consideration by the *Omaha Indemnity* court; however *Richardson* involved the application of a different subsection of § 876.  *Richardson* was an action brought against a gun manufacturer for injuries sustained when the plaintiff was intentionally shot with a gun considered to be a "Saturday Night Special"(allegedly so named due to the gun's principal use for criminal activities and lack of value for legitimate activity). *Richardson*, 741 S.W.2d at 752.  In his petition, the plaintiff, relying on subsection (c) of § 876, pleaded that the gun manufacturer was liable because it "gave substantial assistance" to the shooter, by the manufacture and sale of the gun.  *Id.* at 754.

The *Richardson* court noted that recovery for an injury must be based on an act by the defendant that proximately caused the injury.  *Id.*  The Southern District dismissed the plaintiff's claim, stating that § 876(c) had not been adopted as law in Missouri, and opining that applying subsection (c) as "construed by the plaintiff would extend liability to any injury caused by the product of a manufacturer whose product is often used in a manner to cause harm to others."  *Id.* The court further stated: "In any event, [§ 876(c)] is authority for the fact that this count does *not*

state a cause of action." *Id.* (italics in original).  The court thus concluded that the pleaded count

failed to state a cause of action, because its allegations did not establish the gun manufacturer's

act, separately considered, constituted a breach of duty to the plaintiff.  *Id.*

      The Eastern District's decision, *Gettings* concerned a trial court's dismissal of a plaintiff's

civil conspiracy claims, and consequently, involved the application of § 876(a).  *Gettings*, 41

S.W.3d at 541.  Gettings' petition alleged that he was injured when he was struck by an

automobile negligently operated by one of three named defendants.  *Id.*  In his civil conspiracy

claim, Plaintiff further alleged that the three defendants conspired to steal an automobile, that the

defendants' conspiracy involved the use of the stolen automobile, and that the plaintiff was

injured as a result of the use of the automobile pursuant to the conspiracy.  *Id.* at 542-43.

      In challenging the sufficiency of the civil conspiracy count's allegations, one of the

*Gettings* defendants urged the Eastern District to consider "cases from other states analyzing

attempts to impose liability on third parties for actively encouraging drinking and driving or other

negligent operation of an automobile." *Id.* at 543.   The appellate court found that the theories

involved in the defendants' cited cases were not the theory alleged by Gettings.  *Id.*  In

distinguishing the cases, the Eastern District stated as follows: "These cases do not involve civil

conspiracy as the doctrine has been recognized in Missouri.  Rather, in these cases, the plaintiff

was attempting to establish liability based on substantial assistance and encouragement of the

negligent conduct causing injury as provided in Restatement (Second) of Torts, Sec. 876(b) and

(c)." *Id.*  The Eastern District concluded that the allegations contained in two of the plaintiff's

counts were sufficient to state of claim for relief against the two non-driving defendants on a

theory of civil conspiracy based on the section Missouri courts had recognized, § 876(a).  *Id.*

In interpreting state law, federal district courts are bound by the decisions of the state's highest court. *Minnesota Supply Co. v. Raymond*, 472 F.3d 524, 534 (8th Cir. 2006).  When an issue has not been decided by the state's highest court, the decisions of the intermediate appellate courts are persuasive authority that may be followed, if they are the best evidence of what state law is.  *Id.*  As discussed, the *Omaha Indemnity* court was not persuaded that Missouri courts would recognize a cause of action for aiding and abetting a breach of fiduciary duty when it was presented with the issue in 1991.  *Omaha Idem.*, 755 F. Supp. at 1459.  At that time, the Missouri case law addressing the application of § 876 liability was limited to *Zafft* and *Richardson*, neither of which recognized a cause of action under subsections (b) or (c).  *Id.*; *Zafft*, 676 S.W.2d 241; *Richardson*, 741 S.W.2d 751.  In fact, the Southern District expressly stated, in 1987, that subsection (c) had not been adopted as the law in Missouri.  *Richardson*, 741 S.W.2d at 754.

In the interim since *Omaha Indemnity*, several intermediate Missouri appellate court decisions have addressed the application of various subsections of § 876, including *Bradley*, *Shelter Mutual*, and *Gettings*.  In 1996, the Western District not only noted that Missouri courts had never recognized a claim for aiding and abetting a tort, or any other theory of liability based on § 876(b); the court also stated that Missouri courts had rejected claims fashioned after § 876 (c).  *Bradley*, 904 S.W.2d at 315.  One year later, a different panel of the Western District reversed a dismissal of a claim brought under § 876 (b), finding that the plaintiffs asseverated a cause of action by alleging the defendants encouraged tortious conduct that was a substantial factor of the plaintiffs' injuries.  *Shelter Mutual*, 930 S.W.2d at 3-4.  Although the *Shelter Mutual* court addressed the holdings in *Zafft* and *Richardson* in reaching its conclusion that Missouri would recognize a tort based on § 876, it seemingly was unaware of the decision decided by another panel of its court, as the *Shelter Mutual* decision made no mention of the holding reaching

14

in *Bradley*.  Both decisions, with contradictory, opposing conclusions, apparently remain good law in Missouri.

The Western District briefly revisited the holding of *Shelter Mutual* in 1998, when it was presented with a plaintiff's contention that  a hotel was liable for his harm under section 876(b) for allegedly suggesting that a city eliminate from its construction plans a stairway where the plaintiff fell.  *Joseph v. Marriott Int'l*, 967 S.W.2d 624 (Mo. Ct. App. 1998).  When presented with the hotel's contention that *Shelter Mutual* was limited to situations involving passenger encouragement of drunk driving, the appellate panel stated, "Whether section 876 applies outside the drunk driving context, however, need not be determined because under the facts of this case, section 876(b) could not apply.  Subsection (b) specifically requires that the party 'know that the other's conduct constitutes a breach of duty.'" *Id*. at 629-30.

Other than the conflicting Western District decisions, the other Missouri intermediate appellate court decisions  providing guidance concerning the current state of Missouri law on the application of § 876 recognize only the civil conspiracy theory set forth in subsection (a). *Gettings*, 41 S.W.3d 539; *Lynn-Flex W. v. Dieckhaus*, 24 S.W.3d 693, 701 (Mo. Ct. App. 1999).

When the question as to whether an individual could be liable for the action of another under the collusion standard of §876 was presented to a bankruptcy court in 2006, the court stated, "Missouri courts have held that a person may only be liable for the action of another under the collusion standard of Section 876 of the Restatement if there is evidence that the two parties acted pursuant to an agreement or otherwise in concert with each other."  *In re Machinery, Inc.*, 342 B.R. 790, 799 (E.D. Mo. 2006).  The bankruptcy court further noted that Missouri law additionally requires the individual's action itself, separately considered, to be wrongful with respect to the injured third-party.  *Id.*

15

In sum, Missouri state courts, including the state's highest court, have recognized the civil conspiracy theory of liability set forth in § 876 (a). *Zafft*, 676 S.W2d at 245; *Gettings*, 41 S.W.2d at 542-43; *Shelter Mutual*, 930 S.W.2d at 3-4; *Lyn-Flex W., Inc.,* 24 S.W.3d at 70. Several Missouri courts have flatly rejected the application of § 876 (c), and others have acknowledged its rejection. *Gettings*, 41 S.W.2d at 542-43; *Bradley*, 904 S.W.2d at 315, n. 11; *Richardson*, 741 S.W.2d at 754. Missouri intermediate appellate courts have reached opposing holdings on the application of § 876(b), *Shelter Mutual*, 930 S.W.2d at 3-4; *Bradley*, 904 S.W.2d at 315; and the most recent decision of the state's intermediate appellate courts has indicated that the only civil conspiracy doctrine recognized and applied in Missouri is the theory described in § 876(a). *Gettings*, 41 S.W.3d at 541-43. Of the Missouri appellate court decisions addressing the issue, only the *Shelter Mutual* decision concluded that Missouri's highest state court would recognize the secondary liability theories set forth in § 876(b) or (c). In view of the holdings in all these decisions, this Court predicts that the Missouri Supreme Court would decline to adopt the theory of liability presented by either § 876(b), or § 876(c).

Missouri Trustee Defendants further contend that, even if the Missouri Supreme Court would recognize such torts, the aiding-and-abetting counts in Plaintiffs' Complaint fail to state a claim because they do not allege facts that show Missouri Trustee Defendants affirmatively acted to aid the primary tortfeasors with actual knowledge that the purportedly assisted or encouraged conduct was illegal. Missouri Trustee Defendants assert that the "substantial assistance" they allegedly provided was "passively failing to stop, warn of, or report the primary torts allegedly being committed by others."

Plaintiffs assert that they have properly pleaded the requisite elements to establish liability under § 876(b) and § 876(c), and allege that the Third Amended Complaint contains allegations

16

showing Defendant's knowledge of the schemes to defraud and the roles they played in the

perpetration of the schemes, as well as extensive allegations of affirmative assistance provided by

Defendants, which constituted an indispensable part of the fraud and breaches.   The Court finds

that, even if Missouri state law were to recognize the theories of secondary liability for the acts of

a primary tortfeasor as described in § 876(b) or §876(c), the Third Amended Complaint fails to

plead sufficient facts to support the requisite elements of any cause of action under the section.

*See Restatement (Second) of Torts, § 876; Zafft,* 676 S.W.2d at 245;  *Lyn-Flex W. Inc.,* 24 S.W.3d

at 701; *Richardson,* 741 S.W.2d at 754.

Accordingly, this Court will grant the Missouri Trustee Defendants' Motion to Dismiss the

Aiding-and-Abetting Counts for Failure to State a Claim [ECF No. 1016], and will dismiss

Counts 31 through 34 of Plaintiffs' Third Amended Complaint.   In light of this disposition,

Defendant U.S. Banks' Motion to Dismiss Plaintiffs' Third Amended Complaint, or, in the

Alternative, for a More Definite Statement [ECF No. 1023], brought separately to challenge the

claims asserted against it in Counts 31 and 32, will be denied as moot.

### B.  Defendant Markow's Motion

In his Motion, Defendant Markow moves to dismiss the claims brought against him in

Counts 36 through 38 [ECF No. 1082].  The cause of action stated in Count 38, "Aiding and

Abetting Fraud" is premised on the theory of liability described in § 876 (b), with allegations that

Defendant Markow participated in the schemes to defraud by providing encouragement and

substantial assistance in perpetration of those frauds.   Accordingly, for the reasons discussed

above, Count 38 will be dismissed for failure to state a claim upon which relief may be granted.

The other counts challenged by Defendant Markow, however, are not resolved by the

disposition of the aiding-and-abetting claims.  Count 36 brings a claim for "Breach of Fiduciary

17

Duty." Count 37 asserts a claim for "Participation in a Breach of Trust Duties and Aiding and Abetting Breach of Fiduciary Duties." An examination of the Third Amended Complaint reveals that Plaintiffs have alleged sufficient factual matter, accepted as true, to state a claim for breach of fiduciary duty and participation in a breach of trust duties. *See Iqbal*, 556 U.S. at 678; *Emerson Elec. Co. v. Marsh & McLennan Cos.*, 362 S.W.3d 713-14, 720 (existence & scope of fiduciary duties owed depends on extent of parties' relationship & nature of any agreements between them); *State ex rel. Doe Run Res. Corp. v. Neill*, 128 S.W.3d 502, 505 (Mo. banc 2004) (corporate officer may be held individually liable for tortious corporation if he had actual or constructive knowledge of & participated in actionable wrong); *Shervin v. Huntleigh Sec. Corp.*, 85 S.W.3d 740-41 (Mo. Ct. App. 2002) (fiduciary duty may arise as result of special circumstances of parties' relationship; question is whether trust is reposed with respect to property or business affairs of another); *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 411 (Mo. Ct. App. 2000); *Morrison v. Asher*, 361 S.W.2d 844, 850 (Mo. Ct. App. 1962) (trustee's fiduciary duty owed as matter of law). Because the Third Amended Complaint contains sufficient factual matter to allow the reasonable inference that Defendant Markow is liable for the misconduct alleged in the causes of actions contained in Counts 36 and 37, Defendant Markow's Motion will be denied as to these two claims.

Accordingly,

**IT IS HEREBY ORDERED** that the Missouri Trustee Defendants' Motion to Dismiss the Aiding-and-Abetting Counts for Failure to State a Claim [ECF No. 1016] is **GRANTED.** Counts 31, 32, 33, and 34 of Plaintiffs' Third Amended Complaint are **DISMISSED.**

**IT IS FURTHER ORDERED** that Defendant U.S. Bank's Motion to Dismiss Plaintiffs' Third Amended Complaint, or, in the Alternative, for a More Definite Statement [ECF No. 1023], is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Defendant Richard Markow's Motion to Dismiss Counts 36-38 of Plaintiffs' Third Amended Complaint [ECF No. 1082] is **GRANTED in part, and DENIED in part.**  Only Count 38 of Plaintiffs' Third Amended Complaint is **DISMISSED.**

Dated this  11th  day of September, 2012.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JO ANN HOWARD &                    )
ASSOCIATES, P.C., *et al.*,         )
                                    )
        Plaintiffs,                 )
                                    )
    vs.                             )        Case No. 4:09CV01252 ERW
                                    )
J. DOUGLAS CASSITY, *et al.*,       )
                                    )
        Defendants.                 )

**MEMORANDUM ORDER**

This matter comes before the Court on The Missouri Trustee Defendants'[1] Motion to

Dismiss the Aiding-and-Abetting Counts for Failure to State a Claim [ECF No. 1016]; Defendant

U.S. Bank, National Association's ("U.S. Bank") Motion to Dismiss Plaintiffs' Third Amended

Complaint or, in the Alternative, for a More Definite Statement [ECF No. 1023]; and Defendant

Richard Markow's Motion to Dismiss Counts 36-38 of Plaintiffs' Third Amended Complaint

[ECF No. 1082].

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This litigation arises out of proceedings instituted by the Texas Department of Insurance

in Travis County, Texas, in which National Prearranged Services, Inc. ("NPS"), Lincoln

Memorial Life Insurance Company ("Lincoln"), and Memorial Service Life Insurance Company

("Memorial") were placed in receivership and are currently in the process of being liquidated.

Plaintiffs in this litigation are Jo Ann Howard and Associates, P.C., acting on behalf of NPS,

---

[1]The Missouri Trustee Defendants include U.S. Bank, N.A.; National City Bank; PNC
Bank, N.A.; Bremen Bank and Trust Company; Marshall & Ilsley Trust Company, N.A.;
Southwest Bank; and BMO Harris Bank, N.A.

Lincoln, and Memorial, as Special Deputy Receiver ("SDR") in connection with the Texas

receivership proceedings; the National Organization of Life and Health Guaranty Associations

("NOLHGA")[2]; and the individual state life and health insurance guaranty associations of

Arkansas, Illinois, Kansas, Kentucky, Missouri, Oklahoma, and Texas.  These individual

guaranty associations, as well as those represented by NOLHGA, are statutory entities created by

state legislatures to provide protection for resident policyholders in the event that a member

insurance company becomes insolvent.  Plaintiffs represent that these state guaranty associations

have been assigned or subrogated to the claims of funeral homes and consumers arising out of

dealings with NPS  through (1) each state guaranty association's enabling act; (2) the NPS /

Lincoln / Memorial Liquidation Plan approved by the Texas Receivership Court on September

22, 2008; or (3) express assignments received from recipients of death benefits paid by a state

guaranty association.

     Prior to the institution of the Texas proceedings, NPS was in the business of selling pre-

need funeral service contracts, which were sold to consumers through funeral homes.  Lincoln

and Memorial were issuers of life insurance policies.  NPS marketed its pre-need contracts by

assuring consumers that funds paid to NPS would be secured in pre-need trusts and backed by

whole life insurance policies issued by Lincoln or Memorial for the full amount of the contract.

NPS represented to these consumers that the necessary funds would be available when the pre-

need beneficiary died and the funeral home's claim became due.  In accordance with state law,

this process was accomplished in certain states by requiring the purchaser to simultaneously

---

[2] NOLHGA represents the interests of the state life and health insurance guaranty
associations of Arizona, California, Colorado, the District of Columbia, Georgia, Idaho, Indiana,
Iowa, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada,
New Mexico, North Dakota, Ohio, Oregon, Rhode Island, South Dakota, Tennessee, Utah,
Washington, West Virginia, Wisconsin, and Wyoming.

apply for a life insurance policy issued by Lincoln or Memorial in an amount corresponding to the amount of the pre-need contract.  In other states, the pre-need trust itself purchased the life insurance policies.

On May 3, 20, 2012, Plaintiffs herein filed their Third Amended Complaint, asserting a wide variety of claims against various defendants, including, but not limited to, claims for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-1968, violations of the Lanham Act, 15 U.S.C. §§ 1051-1141n, state law claims concerning intentional and negligent fraudulent misrepresentations, and violations of the Texas Receivership Act, Tex. Ins. Code §§ 443.202-443.205 [ECF No. 916].  The Third Amended Complaint alleges that the fraudulent scheme's ultimate goal was to siphon funds away from NPS, Lincoln, and Memorial for the personal use of certain defendants, a scheme that ultimately left more than $600 million in liabilities to be satisfied by the SDR and the state life and health guaranty association Plaintiffs.

There are over forty defendants named in Plaintiffs' Third Amended Complaint, with varying degrees of alleged involvement in what Plaintiffs characterize as a scheme to defraud individual consumers and funeral homes in the sale of NPS's pre-need funeral contracts.  Six of the defendants named in this matter are being prosecuted for a variety of fraud-based crimes in a parallel criminal case, *United States v. Sutton*, Case No. 4:09CR00509 JCH (E.D. Mo.).

 The principal focus of Plaintiffs' claims is a group of defendants, defined as "the RICO Defendants," consisting of (1) Doug Cassity, Tyler Cassity, Rhonda Cassity, and Brent Cassity ("the Cassity Defendants"), who are the beneficial owners of NPS, Lincoln, Memorial, and a number of affiliated entities through the RBT Trust II – a family trust of which Doug Cassity is the settlor and the Cassity Defendants are the sole beneficiaries; (2) certain officers and

employees of the Cassity-controlled entities; (3) a number of attorneys and law firms engaged by

those entities; and (4) several of those entities themselves.  Plaintiffs allege that the RICO

Defendants defrauded and conspired to defraud NPS's individual and funeral home consumers

by, among other things:

(1)  not revealing to NPS employees, funeral homes, or consumers that
Lincoln and Memorial, as issuers of the life insurance policies intended to fund
the pre-need contracts upon the death of the purchaser, were not independent of
NPS, and that Lincoln, Memorial, NPS, and the Cassity Defendants were not
independent of each other;

(2)  in states in which the purchaser of the pre-need contract applied for
the life insurance policy directly, altering policy applications to indicate that the
policy was to be paid for in installments, when in fact the purchaser had paid the
full amount of the policy in full, so that NPS would only be required to deposit the
first installment into a pre-need trust, with the remainder of the amount then
ultimately diverted to the RICO or Cassity Defendants through various Cassity-
controlled entities, including NPS, Lincoln, and Memorial;

(3)  in states in which the pre-need trusts purchased the life insurance
policies, purchasing installment policies with monthly payments when the
consumer paid for the pre-need contract with a single payment in full, likewise in
order to avoid depositing the entire policy amount into a pre-need trust and to
siphon the remaining funds to the RICO or Cassity Defendants;

(4)  altering life insurance policy applications to indicate that NPS was the
owner or beneficiary of the policy, in order to allow NPS to take out loans on the
policies from Lincoln or Memorial, and then denying that NPS had taken out any
such loans in response to inquiries from funeral homes;

(5)  directing NPS to stop paying premiums to Lincoln on whole life
policies  and surrendering whole life policies for their cash value, with the effect
of reducing NPS's obligations to Lincoln and allowing NPS to retain a greater
percentage of funds received from consumers in exchange for the pre-need funeral
contracts;

(6)  removing funds from the NPS pre-need trusts in exchange for the
issuance of promissory notes or debentures, with repayment only occurring
through book entries unsupported by actual transactions or through the temporary
shifting of funds between various entities controlled by the RICO Defendants; and

(7)  engaging in "roll-over" transactions with funeral homes, whereby a
funeral home would agree to transfer its existing pre-need contracts to NPS and

remit to NPS the balance of its trust funds from those contracts, with NPS then
using the above-described tactics with whole life insurance policies issued by
Lincoln to avoid placing as much as possible of the "roll-over" funds into a pre-
need trust, and diverting the remainder to the RICO or Cassity Defendants.

Based on these allegedly wrongful actions, Plaintiffs assert additional claims related to
allegedly fraudulent transfers between Cassity-controlled entities against another set of
Defendants that are collectively referred to as "the Fraudulent Transfer Defendants."  Plaintiffs
bring another set of claims arising out of the removal of funds from the pre-need trusts through
the issuance of promissory notes and debentures against yet another group of defendants that are
defined as "the Promissory Note Defendants," some of whom are likewise RICO or Fraudulent
Transfer Defendants.

The defendants bringing the Motions to Dismiss presently before the Court are members
of the group of defendants defined in the Third Amended Complaint as the "Trustee Defendants,"
and individual defendant Richard Markow ("Defendant Markow"), who was head of Trustee
Defendant Bremen Bank's trust department, and a Senior Vice President and Trust Officer for
Bremen Bank.  The claims stated against Trustee Defendants allege that they breached their
fiduciary duties to NPS, funeral homes, and consumers, by failing to properly manage the NPS
pre-need trust assets, and by failing to ensure that those assets were prudently handled.

Plaintiffs' claims against Trustee Defendants include Breach of Fiduciary Duty by Trustee
Banks (Count 19); Negligence and Gross Negligence by Trustee Banks (Count 20); Unjust
Enrichment (Count 28); Money Had and Received (Count 29); Aiding and Abetting Fraud (Count
31); Aiding and Abetting Breach of Fiduciary Duty by Investment Advisors (Count 32); Aiding
and Abetting  Breach of Fiduciary Duty by Bremen Bank (Counts 33 and 34); Breach of Fiduciary
Duty (against Defendant Markow) (Count 36); Participation in a Breach of Trust Duties and

Aiding and Abetting Breach of Fiduciary Duties (against Defendant Markow) (Count 37); and

Aiding and Abetting Fraud (against Defendant Markow) (Count 38).

In their Motion, Missouri Trustee Defendants urge the Court to dismiss Counts 31

through 34 of Plaintiff's Third Amended Complaint.  In its pleading, Defendant U.S. Bank

separately moves to dismiss Counts 31 and 32.  Defendant Markow's Motion moves to dismiss

the claims asserted solely against him, Counts 36-38 of the Third Amended Complaint.

## II.  LEGAL STANDARD

A party may move under Rule 12(b)(6) to dismiss a complaint for "fail[ing] to state a

claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to

dismiss is to test "the sufficiency of a complaint[.]"  *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616

F.3d 872, 876 (8th Cir. 2010).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. at 678 (internal quotations omitted).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  *Id.*

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor

of the plaintiff[.]"  *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir.

2010).  However, if a claim fails to allege one of the elements necessary to recovery on a legal

theory, that claim must be dismissed for failure to state a claim upon which relief can be granted.

*Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).

## II.  DISCUSSION

### A.  The Missouri Trustee Defendants' Motion

In their Motion, Missouri Trustee Defendants move to dismiss Counts 31 through 34 of

Plaintiffs' Third Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), on

several grounds.  Counts 31 through 34 assert that Missouri Trustee Defendants aided and abetted

various alleged acts of fraud and breaches of fiduciary duty by knowingly and recklessly providing

substantial assistance and encouragement to the primary tortfeasors in their commission of the

alleged torts.

### 1.  The Missouri Trustees' Contention that Plaintiffs' Allegations Directly Conflict with the Government's Theory in the Parallel Criminal Proceeding is not Grounds for Dismissal under Rule 12(b)(6).

Among other things, Missouri Trustee Defendants aver that Plaintiffs' allegations directly

conflict with the Government's theory in the parallel criminal proceeding, which asserts that

Missouri Trustee Defendants were victims of the RICO Defendants' fraud.

Plaintiffs contend the Missouri Trustees' claim that their allegations in this civil matter

directly conflict with the Government's theory in the criminal case is not cognizable under Rule

12(b)(6), and they further assert that there is no conflict between the allegations of their

Complaint and the position advanced by Government's Indictment.  Plaintiffs argue that the banks

can be both criminal victims and civil wrongdoers, contending that insider officer wrongdoing can

render a bank civilly liable to innocent third parties, even if the bank is potentially victimized by

the wrongdoing also.

A court considering a motion to dismiss accepts as true all of the well-pleaded allegations

contained in a complaint, and then determines whether the complaint facially states a plausible

claim for relief.  *See Iqbal*, 556 U.S. at 678-79; Fed. R. Civ. P. 12(b)(6).  Given the purpose of a

motion to dismiss, Plaintiffs' point is well taken.   The Missouri Trustees' contention that the

Complaint's allegations directly conflict with the Government's theory in the parallel criminal

proceeding is an argument requiring factual determinations, and thus is not grounds for dismissal.

All that is required at this point in the proceedings is for Plaintiffs to assert factual allegations,

taken and true and liberally construed in Plaintiffs' favor, which could entitle them to relief. *Id.*

Moreover, given that the civil rules of procedure allow parties to bring alternative or inconsistent

theories in their complaints and even require trial courts to examine complaints to determine if the

allegations provide for relief on any possible theory, the Missouri Trustees' assertion that

Plaintiffs' claims conflict with the Government's theory in a related, but separate, case is certainly

not basis for dismissal of Plaintiffs' action.   *See* Fed. R. Civ. P. 8(d), (e) and 12(b)(6); *Thomas W.*

*Garland, Inc. v. St. Louis*, 596 F.2d 784, 787 (8th Cir. 1979).

**2. The Missouri Supreme Court has not recognized a cause of action based on §**
**876(b).**

Missouri Trustee Defendants claim that the aiding-and abetting counts fail to state a claim

upon which relief may be granted.   They assert that the counts allege claims fashioned after §

876(b) of the Restatement (Second) of Torts, and contend that the Missouri Supreme Court has

never recognized a cause of action based on the theory of secondary liability reflected in

subsection (b).   Section 876 of the Restatement (Second) of Torts provides:

> For harm resulting to a third person from the tortious conduct of another, one is
> subject to liability if he (a) does a tortious act in concert with the other or pursuant
> to a common design with him, or (b) knows that the other's conduct constitutes a
> breach of duty and gives substantial assistance or encouragement to the other so to
> conduct himself, or (c) gives substantial assistance to the other in accomplishing a
> tortious result and his own conduct, separately considered, constitutes a breach of
> duty to the third person.

Missouri Trustee Defendants assert that the Missouri Supreme Court discussed secondary

liability under § 876 on only one occasion, in *Zaft v. Eli Lilly & Co.*, 676 S.W.2d 241 (Mo. banc

8

1984), and that the court limited the section's application to the context of concert-of-actions under subsection (a).   Missouri Trustee Defendants argue that, if confronted with the question, the Missouri Supreme Court would not recognize a cause of action for aiding and abetting fraud or breach of fiduciary duty.  They aver that the great weight of Missouri authority limits secondary liability to the conspiracy theory reflected in § 876(a), and declines to recognize claims under subsections (b) or (c).  Additionally, Missouri Trustee Defendants claim that substantial policy concerns support limiting the scope of secondary liability to cases falling under § 876(a), alleging that applying subsection (b) heightens the risk that the law will improperly impose liability on a party without fault or a direct connection between a wrongful act and tortious harm.

Missouri Trustee Defendants note that two decisions from the Court of Appeals, Western District conflict in their stance regarding Missouri's adoption of § 876 (b).  The first of these decisions, *Bradley v. Ray*, 904 S.W.2d 302 (Mo. Ct. App. 1995), addressed whether a therapist could be liable for aiding and abetting the sexual abuse of a child if the therapist knew of the abuse, but consciously failed to report it to authorities.  In *Bradley*, the court concluded that Missouri did not recognize such a tort, stating "Plaintiff has not cited any Missouri case which recognizes a claim for aiding and abetting in the commission of a tort, and none were located through the Court's own research."  *Id.* at 315.  In a footnote to this statement, the court added, "While no Missouri courts have recognized a tort based on Restatement (Second) Torts § 876(b), Missouri courts have *rejected* claims fashioned after the Restatement (Second) of Torts § 876 (c)." *Id.*, n. 11 (italics in original).

The second Western District decision, *Shelter Mut. Ins. Co. v. White*, 930 S.W.2d 1 (Mo. Ct. App. 1996), concluded that, in the context of a fatal automobile accident,  the circuit court erred in dismissing the plaintiffs' action, because passengers who encouraged their intoxicated

driver to drive under the influence, to speed, and to ignore traffic signs, could be liable under §

876(b), should a jury determine their acts constituted a substantial factor in the plaintiffs' losses.

Missouri Trustee Defendants argue that *Shelter Mutual* was incorrectly decided, asserting

that the decision's analysis was flawed, because it ignored the *Zafft* court's limitation of its

discussion to § 876(a)'s concert-of-action theory of liability, and failed to address the contrary

conclusion in *Bradley* reached by the Western District just one year prior.

In their pleading opposing the Motion to Dismiss [ECF No. 1092], Plaintiffs claim that,

because the Missouri Supreme Court often adopts the Second Restatement's position when

confronted with previously unsettled issues of Missouri tort law, it would almost certainly adopt §

876(b), even if the court had to overrule state law precedent to do so.  Plaintiffs further argue that

the Missouri Court of Appeals, as well as the vast majority of courts nationwide, have recognized

aiding-and-abetting claims under the theory of liability described in § 876(b), and assert that the

section is consistent with prior Missouri law accepting aiding and abetting as a "well settled"

cause of action.  As well, Plaintiffs state that the Western District's holding in *Shelter Mutual*

constituted a rejection of any argument that Missouri courts would not uphold § 876(b) claims.

Plaintiffs additionally assert that they have properly pleaded the requisite elements to establish

liability under § 876(b) and § 876(c).

As previously mentioned, the Missouri Supreme Court has not squarely decided whether

to recognize the tort of aiding and abetting based on subsections (b) or (c) of § 876.  When faced

with an issue of state law not yet determined, the task of a federal court sitting in diversity is to

attempt to predict how the state's highest court would resolve the question.  *Polk v. Ford Motor

Co.*, 529 F.2d 259, 264 (8th Cir. 1976);  *Auto Owners Ins. Co. v. Biegel Refrigeration & Elec.

Co., Inc.*, 659 F.Supp.2d 1050, 1054 (E.D. Mo. 2009).  To accomplish this undertaking, federal

10

courts are to consider "any persuasive data that is available, such as compelling inferences or logical implications form other related adjudications and considered pronouncements." *Polk*, 529 F.2d at 264.

Available for this Court's consideration in this matter is a decision from the United States District Court, Western District of Missouri, *Omaha Indem. Co. v. Royal Am. Managers, Inc.*, 755 F.Supp. 1451 (W.D. Mo. 1991), in which another federal district court was challenged to predict whether the Missouri Supreme Court would recognize an aiding-and-abetting tort premised on §876(b).  This Court recognizes that *Omaha Indemnity* predates the two Western District decisions cited by the parties.   Nevertheless, this Court finds that a review of the *Omaha Indemnity* court's determination provides additional assistance in ascertaining the landscape of Missouri law addressing the application of the various subsections of § 876.

In *Omaha Indemnity*, plaintiffs filed a summary judgment motion in a case where the named defendants, using entities they controlled, perpetuated injustice and fraud by intermingling corporate and personal finances and participating in the systematic stripping of Royal American Managers' corporate assets.  *Id.* at 1458.  In their motion, the plaintiffs requested judgment in their favor on, among others, a cause of action against two defendants for aiding and abetting breaches of fiduciary duty owed to Omaha Indemnity.  *Id.* at 1454, 1459.

In support of their argument for summary judgment, the plaintiffs cited  *Terrydale Liquidating Trust v. Barness*, 611 F.Supp. 1006, 1015-16 (S.D.N.Y. 1984), a decision where a New York district court, while noting that Missouri courts had not adopted the aider and abetter liability found in § 876, found it appropriate to use subsection b of the statute in a case involving the application of Missouri substantive law.  The *Omaha Indemnity* court, however, denied the request for summary judgment on the aiding-and-abetting cause of action, stating that the

11

plaintiffs' "citation of one New York district court opinion does not convince me that Missouri courts would recognize a cause of action for aiding and abetting a breach of fiduciary duty." *Omaha Indem.*, 755 F.Supp. at 1459.

In addition to *Zafft*, and the two contradictory Western District Missouri Court of Appeals opinions, *Bradley* and *Shelter Mutual*, Missouri case law considering the application of various subsections of § 876 includes a pre-*Omaha Indemnity* decision from the Southern District, *Richardson v. F.I.E. Corp.*, 741 S.W.2d 751 (Mo. Ct. App. 1987) (considering § 876 (c)), and a post-*Omaha Indemnity* determination from the Eastern District, *Gettings v. Farr*, 41 S.W.3d 539 (Mo. Ct. App. 2001) (discussing § 876 (a), (b), and (c)).

*Richardson*, like *Zafft*, was available for consideration by the *Omaha Indemnity* court; however *Richardson* involved the application of a different subsection of § 876.  *Richardson* was an action brought against a gun manufacturer for injuries sustained when the plaintiff was intentionally shot with a gun considered to be a "Saturday Night Special"(allegedly so named due to the gun's principal use for criminal activities and lack of value for legitimate activity). *Richardson*, 741 S.W.2d at 752.  In his petition, the plaintiff, relying on subsection (c) of § 876, pleaded that the gun manufacturer was liable because it "gave substantial assistance" to the shooter, by the manufacture and sale of the gun.  *Id.* at 754.

The *Richardson* court noted that recovery for an injury must be based on an act by the defendant that proximately caused the injury.  *Id.*  The Southern District dismissed the plaintiff's claim, stating that § 876(c) had not been adopted as law in Missouri, and opining that applying subsection (c) as "construed by the plaintiff would extend liability to any injury caused by the product of a manufacturer whose product is often used in a manner to cause harm to others."  *Id.* The court further stated: "In any event, [§ 876(c)] is authority for the fact that this count does *not*

12

state a cause of action." *Id.* (italics in original).  The court thus concluded that the pleaded count failed to state a cause of action, because its allegations did not establish the gun manufacturer's act, separately considered, constituted a breach of duty to the plaintiff.  *Id.*

The Eastern District's decision, *Gettings* concerned a trial court's dismissal of a plaintiff's civil conspiracy claims, and consequently, involved the application of § 876(a).  *Gettings*, 41 S.W.3d at 541.  Gettings' petition alleged that he was injured when he was struck by an automobile negligently operated by one of three named defendants.  *Id.*  In his civil conspiracy claim, Plaintiff further alleged that the three defendants conspired to steal an automobile, that the defendants' conspiracy involved the use of the stolen automobile, and that the plaintiff was injured as a result of the use of the automobile pursuant to the conspiracy.  *Id.* at 542-43.

In challenging the sufficiency of the civil conspiracy count's allegations, one of the *Gettings* defendants urged the Eastern District to consider "cases from other states analyzing attempts to impose liability on third parties for actively encouraging drinking and driving or other negligent operation of an automobile."  *Id.* at 543.   The appellate court found that the theories involved in the defendants' cited cases were not the theory alleged by Gettings.  *Id.*  In distinguishing the cases, the Eastern District stated as follows: "These cases do not involve civil conspiracy as the doctrine has been recognized in Missouri.  Rather, in these cases, the plaintiff was attempting to establish liability based on substantial assistance and encouragement of the negligent conduct causing injury as provided in Restatement (Second) of Torts, Sec. 876(b) and (c)."  *Id.*  The Eastern District concluded that the allegations contained in two of the plaintiff's counts were sufficient to state of claim for relief against the two non-driving defendants on a theory of civil conspiracy based on the section Missouri courts had recognized, § 876(a).  *Id.*

13

In interpreting state law, federal district courts are bound by the decisions of the state's highest court. *Minnesota Supply Co. v. Raymond*, 472 F.3d 524, 534 (8th Cir. 2006). When an issue has not been decided by the state's highest court, the decisions of the intermediate appellate courts are persuasive authority that may be followed, if they are the best evidence of what state law is. *Id.* As discussed, the *Omaha Indemnity* court was not persuaded that Missouri courts would recognize a cause of action for aiding and abetting a breach of fiduciary duty when it was presented with the issue in 1991. *Omaha Idem.*, 755 F. Supp. at 1459. At that time, the Missouri case law addressing the application of § 876 liability was limited to *Zafft* and *Richardson*, neither of which recognized a cause of action under subsections (b) or (c). *Id.*; *Zafft*, 676 S.W.2d 241; *Richardson*, 741 S.W.2d 751. In fact, the Southern District expressly stated, in 1987, that subsection (c) had not been adopted as the law in Missouri. *Richardson*, 741 S.W.2d at 754.

In the interim since *Omaha Indemnity*, several intermediate Missouri appellate court decisions have addressed the application of various subsections of § 876, including *Bradley*, *Shelter Mutual*, and *Gettings*. In 1996, the Western District not only noted that Missouri courts had never recognized a claim for aiding and abetting a tort, or any other theory of liability based on § 876(b); the court also stated that Missouri courts had rejected claims fashioned after § 876 (c). *Bradley*, 904 S.W.2d at 315. One year later, a different panel of the Western District reversed a dismissal of a claim brought under § 876 (b), finding that the plaintiffs asseverated a cause of action by alleging the defendants encouraged tortious conduct that was a substantial factor of the plaintiffs' injuries. *Shelter Mutual*, 930 S.W.2d at 3-4. Although the *Shelter Mutual* court addressed the holdings in *Zafft* and *Richardson* in reaching its conclusion that Missouri would recognize a tort based on § 876, it seemingly was unaware of the decision decided by another panel of its court, as the *Shelter Mutual* decision made no mention of the holding reaching

14

in *Bradley*.  Both decisions, with contradictory, opposing conclusions, apparently remain good law in Missouri.

The Western District briefly revisited the holding of *Shelter Mutual* in 1998, when it was presented with a plaintiff's contention that  a hotel was liable for his harm under section 876(b) for allegedly suggesting that a city eliminate from its construction plans a stairway where the plaintiff fell.  *Joseph v. Marriott Int'l*, 967 S.W.2d 624 (Mo. Ct. App. 1998).  When presented with the hotel's contention that *Shelter Mutual* was limited to situations involving passenger encouragement of drunk driving, the appellate panel stated, "Whether section 876 applies outside the drunk driving context, however, need not be determined because under the facts of this case, section 876(b) could not apply.  Subsection (b) specifically requires that the party 'know that the other's conduct constitutes a breach of duty.'" *Id*. at 629-30.

Other than the conflicting Western District decisions, the other Missouri intermediate appellate court decisions  providing guidance concerning the current state of Missouri law on the application of § 876 recognize only the civil conspiracy theory set forth in subsection (a). *Gettings*, 41 S.W.3d 539; *Lynn-Flex W. v. Dieckhaus*, 24 S.W.3d 693, 701 (Mo. Ct. App. 1999).

When the question as to whether an individual could be liable for the action of another under the collusion standard of §876 was presented to a bankruptcy court in 2006, the court stated, "Missouri courts have held that a person may only be liable for the action of another under the collusion standard of Section 876 of the Restatement if there is evidence that the two parties acted pursuant to an agreement or otherwise in concert with each other."  *In re Machinery, Inc.*, 342 B.R. 790, 799 (E.D. Mo. 2006).  The bankruptcy court further noted that Missouri law additionally requires the individual's action itself, separately considered, to be wrongful with respect to the injured third-party.  *Id.*

15

In sum, Missouri state courts, including the state's highest court, have recognized the civil conspiracy theory of liability set forth in § 876 (a).  *Zafft*, 676 S.W2d at 245; *Gettings*, 41S.W.2d at 542-43;  *Shelter Mutual*, 930 S.W.2d at 3-4; *Lyn-Flex W., Inc.,* 24 S.W.3d at 70.  Several Missouri courts have flatly rejected the application of § 876 (c), and others have acknowledged its rejection.  *Gettings*, 41 S.W.2d at 542-43; *Bradley*, 904 S.W.2d at 315, n. 11; *Richardson*, 741 S.W.2d at 754.  Missouri intermediate appellate courts have reached opposing holdings on the application of § 876(b),  *Shelter Mutual*, 930 S.W.2d at 3-4; *Bradley*, 904 S.W.2d at 315; and the most recent decision of the state's intermediate appellate courts has indicated that the only civil conspiracy doctrine recognized and applied in Missouri is the theory described in § 876(a).  *Gettings*, 41 S.W.3d at 541-43.  Of the Missouri appellate court decisions addressing the issue, only the *Shelter Mutual* decision concluded that Missouri's highest state court would recognize the secondary liability theories set forth in § 876(b) or (c).  In view of the holdings in all these decisions, this Court predicts that the Missouri Supreme Court would decline to adopt the theory of liability presented by either § 876(b), or § 876(c).

Missouri Trustee Defendants further contend that, even if the Missouri Supreme Court would recognize such torts, the aiding-and-abetting counts in Plaintiffs' Complaint fail to state a claim because they do not allege facts that show Missouri Trustee Defendants affirmatively acted to aid the primary tortfeasors with actual knowledge that the purportedly assisted or encouraged conduct was illegal.  Missouri Trustee Defendants assert that the "substantial assistance" they allegedly provided was "passively failing to stop, warn of, or report the primary torts allegedly being committed by others."

Plaintiffs assert that they have properly pleaded the requisite elements to establish liability under § 876(b) and § 876(c), and allege that the Third Amended Complaint contains allegations

16

showing Defendant's knowledge of the schemes to defraud and the roles they played in the perpetration of the schemes, as well as extensive allegations of affirmative assistance provided by Defendants, which constituted an indispensable part of the fraud and breaches.   The Court finds that, even if Missouri state law were to recognize the theories of secondary liability for the acts of a primary tortfeasor as described in § 876(b) or §876(c), the Third Amended Complaint fails to plead sufficient facts to support the requisite elements of any cause of action under the section. *See Restatement (Second) of Torts, § 876; Zafft,* 676 S.W.2d at 245;  *Lyn-Flex W. Inc.,* 24 S.W.3d at 701; *Richardson*, 741 S.W.2d at 754.

Accordingly, this Court will grant the Missouri Trustee Defendants' Motion to Dismiss the Aiding-and-Abetting Counts for Failure to State a Claim [ECF No. 1016], and will dismiss Counts 31 through 34 of Plaintiffs' Third Amended Complaint.  In light of this disposition, Defendant U.S. Banks' Motion to Dismiss Plaintiffs' Third Amended Complaint, or, in the Alternative, for a More Definite Statement [ECF No. 1023], brought separately to challenge the claims asserted against it in Counts 31 and 32, will be denied as moot.

### B.  Defendant Markow's Motion

In his Motion, Defendant Markow moves to dismiss the claims brought against him in Counts 36 through 38 [ECF No. 1082].  The cause of action stated in Count 38, "Aiding and Abetting Fraud" is premised on the theory of liability described in § 876 (b), with allegations that Defendant Markow participated in the schemes to defraud by providing encouragement and substantial assistance in perpetration of those frauds.   Accordingly, for the reasons discussed above, Count 38 will be dismissed for failure to state a claim upon which relief may be granted.

The other counts challenged by Defendant Markow, however, are not resolved by the disposition of the aiding-and-abetting claims.  Count 36 brings a claim for "Breach of Fiduciary

17

Duty."  Count 37 asserts a claim for "Participation in a Breach of Trust Duties and Aiding and Abetting Breach of Fiduciary Duties."  An examination of the Third Amended Complaint reveals that Plaintiffs have alleged sufficient factual matter, accepted as true, to state a claim for breach of fiduciary duty and participation in a breach of trust duties.  *See Iqbal*, 556 U.S. at 678; *Emerson Elec. Co. v. Marsh & McLennan Cos.*, 362 S.W.3d 713-14, 720 (existence & scope of fiduciary duties owed depends on extent of parties' relationship & nature of any agreements between them); *State ex rel. Doe Run Res. Corp. v. Neill*, 128 S.W.3d 502, 505 (Mo. banc 2004) (corporate officer may be held individually liable for tortious corporation if he had actual or constructive knowledge of & participated in actionable wrong); *Shervin v. Huntleigh Sec. Corp.*, 85 S.W.3d 740-41 (Mo. Ct. App. 2002) (fiduciary duty may arise as result of special circumstances of parties' relationship; question is whether trust is reposed with respect to property or business affairs of another); *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 411 (Mo. Ct. App. 2000);  *Morrison v. Asher*, 361 S.W.2d 844, 850 (Mo. Ct. App. 1962) (trustee's fiduciary duty owed as matter of law).  Because the Third Amended Complaint contains sufficient factual matter to allow the reasonable inference that Defendant Markow is liable for the misconduct alleged in the causes of actions contained in Counts 36 and 37, Defendant Markow's Motion will be denied as to these two claims.

Accordingly,

**IT IS HEREBY ORDERED** that the Missouri Trustee Defendants' Motion to Dismiss the Aiding-and-Abetting Counts for Failure to State a Claim [ECF No. 1016] is **GRANTED.** Counts 31, 32, 33, and 34 of Plaintiffs' Third Amended Complaint are **DISMISSED.**

**IT IS FURTHER ORDERED** that Defendant U.S. Bank's Motion to Dismiss Plaintiffs' Third Amended Complaint, or, in the Alternative, for a More Definite Statement [ECF No. 1023], is **DENIED as moot.**

18

**IT IS FURTHER ORDERED** that Defendant Richard Markow's Motion to Dismiss Counts 36-38 of Plaintiffs' Third Amended Complaint [ECF No. 1082] is **GRANTED in part, and DENIED in part.**  Only Count 38 of Plaintiffs' Third Amended Complaint is **DISMISSED.**

Dated this  11th   day of September, 2012.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE