IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JO ANN HOWARD AND ASSOCIATES, P.C., SPECIAL DEPUTY RECEIVER OF LINCOLN MEMORIAL LIFE INSURANCE COMPANY, MEMORIAL SERVICE LIFE INSURANCE COMPANY, AND NATIONAL PREARRANGED SERVICES, INC., ET AL., Plaintiffs, v. J. DOUGLAS CASSITY; RANDALL K. SUTTON; BRENT D. CASSITY; J. TYLER CASSITY; RHONDA L. CASSITY; ET AL., Defendants. | Case No. 09-CV-1252-ERW |

**MEMORANDUM IN SUPPORT OF PLAINTIFF SDR'S MOTION
TO COMPEL THE PRODUCTION OF DOCUMENTS BY
<u>DEFENDANT SOUTHWEST BANK</u>**

Plaintiff Jo Ann Howard and Associates, P.C., the Special Deputy Receiver ("SDR") of National Prearranged Services, Inc. ("NPS"), Lincoln Memorial Life Insurance Company ("Lincoln"), and Memorial Service Life Insurance Company ("Memorial") submits the following memorandum in support of its Motion to Compel Defendant Southwest Bank, an M&I Bank ("Southwest Bank") to produce documents improperly withheld in response to Plaintiff SDR's First Set of Requests for Production to Southwest Bank (the "RFPs").

## INTRODUCTION

Southwest Bank agreed to become a trustee of the NPS pre-need trusts in 2005 as a means to strengthen its extensive banking and lending relationship with NPS and NPS's owners and affiliates. That relationship included millions of dollars in loans and lines of credit, going back to at least 2002. Plaintiffs allege that through these banking and lending relationships,

656084

Southwest Bank learned of the precarious financial condition of and affiliations between NPS and its related entities. Plaintiffs further allege that despite this knowledge, Southwest Bank and its affiliate, Defendant Marshall & Ilsley Trust Company ("Marshall & Ilsley")—both of whom Plaintiffs allege were trustees of the NPS pre-need trusts—willingly transferred pre-need trust assets to NPS's owners and affiliates while receiving little or no consideration in return. In favoring the interests of its banking clients over the rights of the NPS pre-need trust beneficiaries, Southwest Bank was negligent and breached its fiduciary duties to the beneficiaries of the trusts.

The SDR served requests for production seeking documents related to Southwest Bank's banking and lending relationships, which Plaintiffs believe will support the allegations against Southwest Bank. Although Southwest Bank admits that it is in possession of the requested documents, it refuses to produce even a single page. The stated basis for this refusal is Southwest Bank's asserted defense that it never actually served as trustee of the NPS pre-need trusts (although it admits that its affiliate Marshall & Ilsley served as trustee). Not only is there extensive evidence that Southwest Bank did act as trustee of the NPS pre-need trusts, contradicting Southwest Bank's defense, but also the mere assertion of a defense to liability cannot justify withholding documents that are relevant to Plaintiffs' allegations. But even if Southwest Bank's factual assertions were true, the requested documents are nonetheless relevant to Plaintiffs' claims against other defendants, including Marshall & Ilsley.

## BACKGROUND

The Third Amended Complaint alleges that Southwest Bank and Marshall & Ilsley were among the trustees of the NPS pre-need trusts. [Doc. 916 ¶¶ 73-74]. Due to the significant overlap between Defendants Southwest Bank and Marshall & Ilsley, both entities are alleged to have acted as trustees during the same period. (*Id.*) As examples of this overlap, Southwest Bank

and Marshall & Ilsley: (1) operated out of the same address; (2) were owned and controlled by the same parent company; (3) used the same employees; (4) had overlapping officers and directors; and (5) were jointly involved with the NPS pre-need trusts.

Years before Marshall & Ilsley and Southwest Bank began serving as trustees of the NPS pre-need trusts, they began establishing personal and commercial banking and lending relationships with NPS, members of the Cassity family that owned NPS, and other Cassity-related entities. (*Id.* ¶ 228.171). Examples include a $5.3 million loan to Defendant Forever Network, a $3 million line of credit to Defendant Forever Network, and a $3.5 million term loan agreement with Defendant Forever Enterprises. (*Id.* ¶ 228.173). In 2005, Southwest Bank and Marshall & Ilsley agreed to serve as trustees of the NPS pre-need trusts as a means to strengthen these banking and lending relationships. (*Id.* ¶ 228.174).

Through information obtained from their extensive banking and lending relationships with the Cassitys and their entities, including from loan applications and evaluations, Southwest Bank and Marshall & Ilsley gained unusual insight into the operations of NPS and its affiliates. (*Id.* ¶ 228.176). Among other things, they knew that NPS and its affiliates were in weak financial condition, were late in repaying loans, and needed a large influx of cash to continue business operations. (*Id.*) Rather than acting on this knowledge to protect the beneficiaries of the pre-need trusts, Southwest Bank and Marshall & Ilsley accepted direction from NPS employees to transfer pre-need trust assets to NPS and NPS affiliates in return for little or no consideration. (*See, e.g.*, *id.* ¶¶ 228.54, 228.63, 228.88-.89, 228.130). Because they were more concerned with enhancing their banking and lending business than with protecting the interests of the pre-need trust beneficiaries, Southwest Bank and Marshall & Ilsley allowed their banking relationships to

detrimentally affect the performance of their trustee duties, which constituted a conflict of interest and breach of their fiduciary duties. (*Id.* ¶ 228.175).

**ARGUMENT**

Southwest Bank refuses to produce relevant documents related to its banking and lending activities—a key component to Plaintiffs' allegations—simply because it disagrees with the Complaint allegations that it acted as trustee of the pre-need trusts. As courts have held, however, such an assertion of a defense to liability as a basis for refusing to produce documents is improper, even if the defense is valid. Here, Southwest Bank's defense is also severely undermined by documents in Plaintiffs' possession that support the allegation that Southwest Bank acted as trustee of the NPS pre-need trusts. Moreover, because Southwest Bank concedes that its close affiliate Marshall & Ilsley served as trustee, and because Southwest Bank and Marshall & Ilsley shared employees, offices, and information, the requested documents are also relevant to prove Plaintiffs' claims against Marshall & Ilsley, regardless of whether Southwest Bank was an actual trustee. They are also relevant to prove Plaintiffs' claims against other defendants.

I. **Southwest Bank's Denial of the Complaint Allegations Cannot Justify Withholding Relevant Documents.**

In its responses to the RFPs, Southwest Bank objected to producing *any* documents, specifically including documents related to the banking services it provided to the Cassity family and their associated companies. (Ex. F). Southwest Bank's only defense of this refusal was its denial of the allegation that it was a trustee of the NPS pre-need trusts and its conclusory assertion that documents related to its banking relationships are therefore irrelevant. (*Id.*; *see also* Ex. C). Although the SDR explained in subsequent correspondence that disagreement with the

4
656084

Complaint allegations does not excuse Southwest Bank from its discovery obligations (Ex. D), Southwest Bank persists in its refusal to produce even a single page of the requested documents.

In particular, Request No. 30 is the primary request to which Southwest Bank refuses to produce documents, which relates to its banking and lending relationships and seeks "All Documents relating to all banking, trustee, and other services that You provided to any Defendant." (Ex. E at 13.) Other affected RFPs include Request Nos. 12, 16, and 23:

REQUEST FOR PRODUCTION NO. 12

All Communications between or among You and any of the Defendants prior to this Litigation.

REQUEST FOR PRODUCTION NO. 16

All Documents relating to the ownership of and affiliations between NPS, Lincoln, Memorial, and any other entity within the Cassity Consortium [defined to include a number of Cassity-owned or controlled companies].

REQUEST FOR PRODUCTION NO. 23

All meeting minutes or notes and lists of persons in attendance at all meetings held prior to the initiation of this Lawsuit, where . . . any of the Defendants named in this Lawsuit (other than You) were discussed.

(*Id.* at 9-10, 12.) Southwest Bank admits that documents requested by these RFPs exist, yet refuses to produce them.

### A. As a Matter of Law, Southwest Bank's Assertion of a Defense to Liability Cannot Justify Withholding Relevant Documents.

Southwest Bank's disagreement with the Complaint allegations that it served as trustee of the NPS pre-need trusts constitutes its sole reason for refusing to produce documents in response to the SDR's RFPs. (Exs. C, F.) This disagreement is essentially a defense to liability—an assertion that it owed no duties to the pre-need trust beneficiaries because it was not a trustee. The mere assertion of such a defense, however—even if valid—cannot justify

5
656084

withholding responsive documents. *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Schilli Transp. Servs., Inc.*, No. 2:08 CV 176, 2010 WL 2629485, at *3 (N.D. Ind. June 28, 2010) ("[The defendant] may not avoid its participation in the discovery process merely by asserting its defense to the underlying claim."); *Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 615-16 (N.D. Ill. 2001) (refusing to answer discovery on the basis of a defense "puts the cart before the horse"; even a valid defense "would not relieve [the defendant] of its duty to answer and respond to discovery"); *see also* 8 Charles Alan Wright et al., *Federal Practice & Procedure* § 2008 (3d ed. 2010) ("Discovery is not to be denied because it relates to a claim . . . that is being challenged as insufficient.").

Furthermore, as a practical matter, if a defendant could withhold documents that are relevant to a plaintiff's claims on the ground that it denied some of the plaintiff's allegations, there could never be discovery regarding disputed facts. Such a rule would make little sense and would be contrary to the broad, permissive scope of Rule 26. *See* Fed. R. Civ. P. 26(b)(1) (parties may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party"); Memorandum & Order at 8 [Doc. 1064] ("[R]elevance is construed more broadly for discovery than for trial, and where relevance is in doubt, the rule [Fed. R. Civ. P. 26(b)(1)] indicates courts should be permissive."). Southwest Bank should be ordered to produce documents responsive to the RFPs, regardless of its denial of the allegation that it acted as trustee of the NPS pre-need trusts.

### B. Numerous Documents Support the Allegation That Southwest Bank Acted as Trustee of the NPS Pre-Need Trusts.

Under the Federal Rules, whether documents requested from a defendant are relevant does not depend on whether the plaintiff has gathered admissible evidentiary support for its

complaint allegations. Rather, if a document is relevant to the plaintiffs' claims and allegations, it is discoverable. Yet even if it were proper to consider whether there is support for Plaintiffs' allegation that Southwest Bank served as trustee of the NPS pre-need trusts, Plaintiffs have identified numerous documents supporting that allegation, representative samples of which have been identified to counsel for Southwest Bank and which are included as exhibits to this Memorandum:

- In March 2005, Southwest Bank communicated with NPS about the potential transfer of a number of accounts, including the NPS pre-need trusts, from the prior trustee. (Ex. G.)

- Pre-need contracts that NPS and its affiliates distributed to funeral homes and consumers stated that funds would be deposited into trust "with Southwest Bank . . . as Trustee." (*E.g.*, Ex. H (the relevant language is in ¶¶ 2 and 2(e) on the back of each contract).)

- NPS and its affiliates sent wire transfer requests for the pre-need trusts to Southwest Bank (*e.g.*, Ex. I) and Southwest Bank provided receipts for such transfers (*e.g.*, Ex. J).

- Reconciliation statements for NPS pre-need trusts were sent to Southwest Bank and listed Southwest Bank account numbers for the trusts. (*E.g.*, Ex. K.)

- Southwest Bank faxed bank statements for the NPS pre-need trusts to NPS. (*E.g.*, Ex. L (fax header shows that it was from "Southwest Bank").)

- Southwest Bank drafted letters to NPS and Forever Enterprises, on Southwest Bank letterhead, regarding its intent to resign as trustee of certain NPS pre-need trusts. (Ex. M.)

- NPS and its affiliates and attorneys treated and referred to Southwest Bank as trustee of the NPS pre-need trusts. (*See, e.g.*, Ex. N (email from Defendant Butler stating "We are moving several trust accounts to Southwest Bank"); Ex. O (letter from Defendant Wittner to Defendant Sutton stating: "Southwest Bank called and they are going to resign as Trustee on all the National Prearranged Services trusts")).

These documents, and others like them, undermine Southwest Bank's asserted defense and provide more than sufficient support for Plaintiffs' allegation that Southwest Bank served as

7

trustee of the NPS pre-need trusts. Southwest Bank should be compelled to produce the requested documents despite its denial of that allegation.

### C. The Requested Documents Are Relevant Regardless of Whether Southwest Bank Was Formally Designated Trustee of the NPS Pre-Need Trusts.

Even if it were proper to consider the merits of Southwest Bank's assertion that it was not a trustee of the NPS pre-need trusts, and even if Southwest Bank could substantiate that defense, documents relating to Southwest Bank's banking relationships are nonetheless relevant and must be produced, for several reasons.

First, the documents contradict Southwest Bank's position taken in this litigation that there was a firm separation between it and its affiliate Marshall & Ilsley—with Marshall & Ilsley acting as trustee and Southwest Bank handling only banking and lending business. (*See* Ex. C at 1.) The documents, including the documents cited above, indicate substantial overlap between the two entities and as to which entity was a trustee. For example, in October 2005, Pam Roberts, the primary trust officer for the NPS pre-need trusts, wrote on Southwest Bank letterhead to Defendant Butler at Forever Enterprises that, "I want to personally thank you for choosing *Southwest Bank through Marshall & Ilsley Trust Company N.A.* to act as your Corporate Trustee." (Ex. P (emphasis added).) In addition, Southwest Bank and Marshall & Ilsley: (1) operated out of the same address (*see* Ex. Q (letters from Southwest Bank and Marshall & Ilsley, both using the address 13205 Manchester Road, St. Louis, Missouri)); (2) were owned and controlled by the same parent company (*see* Ex. R at 3 (selections from form 10-K for fiscal year 2007, filed with the SEC by Marshall & Ilsley Corporation)); (3) used the same employees, including the employees listed in their joint Rule 26(a)(1)(A) disclosures (*see* Ex. S (initial disclosures listing "Pamela J. Roberts" and "David Pisarkiewicz" as employees of Marshall &

656084

Ilsley); *see also, e.g.*, Ex. T (trust statement listing email addresses for Pamela Roberts and David Pisarkiewicz as "PROBERTS@SWBANK-STL.COM" and "DPISARKIEWICZ@SWBANK-STL.COM"); Ex. U (email from Pamela Roberts with "Southwest Bank of St. Louis" in her signature block)); and (4) had overlapping officers and directors (*see* Ex. R at 20, 22 (listing Mark Furlong, Thomas O'Neill, and Gregory A. Smith as directors of Marshall & Ilsley and officers of Southwest Bank)). Although a more complete understanding of the relationship and roles of Southwest Bank and Marshall & Ilsley must await further discovery (including the production of these requested documents by Southwest Bank), Southwest Bank cannot validly refuse to produce documents based on the purported distinction—manufactured for this litigation—between it and Marshall & Ilsley.

Second, Plaintiffs have alleged that both Southwest Bank and Marshall & Ilsley accepted and acted as trustees of the NPS Pre-Need Trusts as a means to further their banking relationships with NPS and its owners and affiliates. [Doc. 916 ¶¶ 228.171, 228.173-.174.] Even if it were true that only Marshall & Ilsley was the trustee and that only Southwest Bank had the banking and lending relationships, the requested documents are nonetheless relevant to whether *Marshall & Ilsley* accepted the NPS pre-need trusts as a means to further *Southwest Bank's* banking and lending relationships.

Third, Plaintiffs have alleged that Southwest Bank and Marshall & Ilsley's banking and lending relationships provided Southwest Bank and Marshall & Ilsley with unusual insight into the operations of the Cassity-related companies. (*Id.* ¶¶ 228.176, 398). Among other things, the banks knew from those relationships that the Cassity-related companies were financially weak and needed a large cash influx to continue business operations. (*Id.* ¶¶ 228.176, 398). Because of

9

the overlap and interconnection between Southwest Bank and Marshall & Ilsley, including an overlap of personnel, information on the banking side would have been freely available to the trustee side—even if Marshall & Ilsley was the trustee and Southwest Bank had the banking relationships. Plaintiffs are entitled to banking and lending documents that will show what information each of these Defendants had about NPS, the Cassitys, and their affiliates and how Marshall & Ilsley and Southwest Bank used that information in performing its or their duties as trustee(s).

Fourth, the requested documents are relevant to Plaintiffs' claims against other defendants. For example, in 2002—while Allegiant Bank was trustee of the NPS pre-need trusts—Southwest Bank agreed to issue a new $2.5 million loan to defendant Forever Network. (*See* Ex. V.) Southwest Bank's loan was conditioned on Allegiant Bank, as trustee of NPS Pre-Need Trust IV, subordinating an existing $560,000 secured loan from Trust IV to Southwest Bank's loan. (*Id.*) In December 2002, Allegiant Bank and Southwest Bank signed a "Subordination and Intercreditor Agreement" whereby Allegiant Bank agreed that Trust IV's existing loan would be "expressly subordinated and made at all times inferior" to the new Southwest Bank loan. (Ex. W at 2-3.) The Southwest Bank documents relating to this transaction are relevant to whether Allegiant Bank violated its trustee duties in agreeing to subordinate Trust IV's loan to Southwest Bank's. Documents related to Southwest Bank's loan to Forever Network and the subordination agreement are also relevant to Plaintiffs' claims against Allegiant Bank's successors.

Documents related to Southwest Bank's provision of banking services to the Cassity family and their related entities are relevant to Plaintiffs' claims and the allegations of the Third

10

Amended Complaint and must be produced, regardless of whether Southwest Bank also acted as trustee of the NPS pre-need trusts.

## CONCLUSION

Because Southwest Bank's denial of the complaint allegations cannot justify its refusal to produce documents, and because the requested documents are relevant to Plaintiffs' claims against Southwest Bank, Marshall & Ilsley, and other defendants, the SDR respectfully requests that the Court issue an order compelling Southwest Bank to produce documents related to its banking and lending activities within 30 days of the Court's order.

Dated: June 10, 2013.

Respectfully submitted,

*s/ Wendy B. Fisher*
Daniel M. Reilly (Admitted *Pro Hac Vice*)
Larry S. Pozner, E.D. Missouri Bar No. 2792CO
Wendy B. Fisher (Admitted *Pro Hac Vice*)
Glenn E. Roper (Admitted *Pro Hac Vice*)
Clare S. Pennington (Admitted *Pro Hac Vice*)
Farrell A. Carfield (Admitted *Pro Hac Vice)*
Reilly Pozner LLP
1900 16th Street, Suite 1700
Denver, CO 80202
(303) 893-6100

and

Maurice B. Graham, Bar No. 3257
Morry S. Cole, Bar No. 77854
Gray, Ritter & Graham, P.C.
701 Market Street, Suite 800
St. Louis, MO 63101
(314) 241-5620

Attorneys for Plaintiffs Jo Ann Howard and Associates, P.C., in its capacity as Special Deputy Receiver of Lincoln Memorial Life Insurance Company, Memorial Service Life Insurance Company, and National Prearranged Services, Inc.; the National Organization of Life and Health Insurance Guaranty Associations; the Missouri Life & Health Insurance Guaranty Association; the Texas Life & Health Insurance Guaranty Association; the Illinois Life & Health Insurance Guaranty Association; the Kansas Life & Health Insurance Guaranty Association; Oklahoma Life & Health Insurance Guaranty Association; the Kentucky Life & Health Insurance Guaranty Association; and the Arkansas Life & Health Insurance Guaranty Association

# CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2013, the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFF SDR'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS BY DEFENDANT SOUTHWEST BANK was filed electronically with the Clerk of Court and served by operation of the Court's electronic filing system upon all counsel of record in this case participating in Electronic Case Filing.

I hereby further certify that on June 10, 2013, the foregoing was mailed by United States Postal Service to the following non-participants in Electronic Case Filing:

Randall J. Singer
10833 Forest Circle Dr.
St. Louis, MO 63128
*Pro se*

J. Douglas Cassity
P.O. Box 16220
St. Louis, MO 63105
*Pro se*

James M. Crawford
418 Pine Bend Drive
Chesterfield, MO 63005
*Pro se*

Tony B. Lumpkin, III
6508 Cuesta Trail
Austin, TX 78730
*Pro se*

Nekol Province
1525 Greenfield Crossing
Ballwin, MO 63021
*Pro se*

                                              *s/ Wendy B. Fisher*
                                              Wendy B. Fisher
                                              (Admitted *Pro Hac Vice)*

                                              Attorney for Plaintiffs

656084