UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JO ANN HOWARD & ASSOCIATES, P.C., *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) )   Case No. 4:09CV01252 ERW |
| J. DOUGLAS CASSITY, *et al.,* | ) ) ) |
| Defendants. | ) |

### **MEMORANDUM AND ORDER**

This matter comes before the Court on "Defendants Tyler Cassity and Hollywood Forever, Inc.'s Motion to Compel Return of Inadvertently Produced Document" [ECF No. 1197], and "Plaintiff SDR's Motion for Discovery Status Update by Defendants Tyler Cassity and Hollywood Forever Regarding Documents Cited in Narrative Timeline and for Other Relief" [ECF No. 1217].

### I.   BACKGROUND

Plaintiff Jo Ann Howard & Associates, P.C., has been appointed to serve as the Special Deputy Receiver ("SDR") of three companies, National Prearranged Services Agency, Inc. ("NPS"); Lincoln Memorial Life Insurance Co.; and Memorial Service Life Insurance Co.  In the instant case, Plaintiff Jo Ann Howard & Associates, in its capacity as the SDR, has asserted, against numerous defendants, claims such as violation of the RICO Act, 18 U.S.C. § 1962(d); breach of fiduciary duty; and gross negligence.  Other plaintiffs include national and individual

state life and health insurance guaranty associations.

The term "Forever Defendants" refers collectively to Defendants Brentwood Heritage Properties, LLC; Forever Enterprises, Inc.; Forever Illinois, Inc.; Forever Network, Inc.; Legacy International Imports, Inc.; Lincoln Memorial Services, Inc.; National Heritage Enterprises, Inc.; NPS; and Texas Forever, Inc.  Defendant Tyler Cassity served as President and as a Director of Defendant Forever Enterprises, and as Vice President and Director of Forever Network.  Tyler Cassity was also a beneficiary of the RBT Trust II.

The "inadvertently produced" document that is the subject of the defendants' Motion to Compel is a narrative summary composed by Tyler Cassity.  He composed this narrative summary of his personal recollection of the events resulting in this litigation, and then delivered this summary, entitled "Narrative Timeline," to Enenstein & Ribakoff, counsel of record for Mr. Cassity and Hollywood Forever.  Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendants Tyler Cassity and Hollywood Forever ("Defendants") initially disclosed numerous documents to Plaintiffs, including the Narrative Timeline, which was Bates numbered TCAS/HF 000341 to RCAS/HF 000357, on November 4, 2011 [ECF No. 1201-2].  Because Defendants' first production consisted only of single-page TIFFs (Tagged Image File Format) and did not comply with the parties Stipulation on Production of Hard Copy Documents and Electronically Stored Information [ECF No. 733], Plaintiffs returned the initial disclosure documents to Defendants and asked them to re-produce the documents in the proper format [ECF No. 1201-3]. In January 2012, Defendants' counsel contacted Plaintiffs to say they were having trouble complying with the Stipulation, so Plaintiffs agreed to allow Defendants to produce their initial disclosure documents as multi-page PDF's (portable document format), the creation of which

required Defendants to rescan or convert all of the disclosure documents, including the Narrative Timeline.

Thereafter, on February 7, 2012, Defendants produced the Narrative Timeline a second time to Plaintiffs, in a PDF format [ECF No. 1201-4].  This disclosure document production was accompanied by a thumb drive that included in its listing of twenty-two filenames, the entry: "000341 Narrative Timeline Bates 341-357" [ECF Nos. 1201-7, 1201-14].

Plaintiff SDR served its First Set of Requests for Production of Documents on Hollywood Forever, Inc. on January 30, 2013 [ECF No. 1201-5].   Request for Production No. 39 asked Hollywood Forever to produce: "All Documents or Communications cited or quoted from in the "Narrative Timeline produced at Bates number TCAS/HF000341-57 . . ." [ECF No. 1201-5].  On February 6, Defendants' counsel requested a copy of the document production sent to Plaintiff SDR in February of 2012 [ECF No. 1201-6].  Plaintiff SDR sent Defendants' counsel a disc containing a duplicate copy of the production the following day [ECF No. 1201-8].  On February 14, 2013, Defendants' counsel sent a letter to Plaintiff SDR, confirming that Plaintiffs had "granted Defendant Hollywood Forever an extension of time to respond to the Requests for Production of Documents propounded by Plaintiffs on January 31, 2013[,]" and that "Hollywood Forever's written objections and responses are now due March 27, 2013, and Hollywood Forever's document production is due April 16, 2013" [ECF No. 1201-9].

When Hollywood Forever answered Plaintiff SDR's First Set of Requests for Production of Documents, its response to Request for Production No. 39 was as follows:

> Objection.  Hollywood Forever objects to the Request on the following grounds: (1) the Request seeks documents that are protected from disclosure by the attorney-client privilege.

> Subject to and without waiving the foregoing objection, Hollywood Forever responds as follows: Hollywood Forever will produce all responsive, non-privileged documents in its possession, custody, or control provided an appropriate protective order concerning the documents is in place prior to such production.

[ECF No. 1201-10 at 33].

Thereafter, on March 29, 2013, Defendants' counsel sent a letter to Plaintiff SDR, stating:

> Please take notice that Defendants Tyler Cassity and Hollywood Forever have inadvertently produced an attorney-client privileged communication in their prior joint document production. The document bates numbered TCAS/HF 000341 to TCAS/HF 000358 (entitled "Narrative Timeline") constitutes a privileged attorney-client communication and was inadvertently produced due to a clerical error of our file room staff. Neither Darren Enenstein nor David Ribakoff, counsel of record for Tyler Cassity and Hollywood Forever since the inception of this matter, has ever authorized the production of TCAS/HF 000341-000358. Therefore, please immediately destroy all copies of TCAS/HF 000341-000358 currently in your possession. Also, please ensure no use or dissemination of TCAS/HG 000341-000358 , or the information contained therein, will be made.
>
> Please confirm immediately that all copies of TCAS/HF 000341-000358 have been destroyed and that no use will be made of TCAS/HF 000341-000358 for any purpose.

[ECF No. 1201-11]. In response, Plaintiff SDR informed Defendants' counsel on April 1, 2013, that it had sequestered all copies in its possession, pending a resolution of any privilege or waiver issues, and requested that Defendants produce a privilege log for the document indicating the specific privilege being asserted and explaining other specifics about the Narrative Timeline [ECF No. 1201-12].

Defendants filed their Motion to Compel Return of Inadvertently Produced Document on May 15, 2013, seeking to compel return of the Narrative Timeline, pursuant to Federal Rule of Civil Procedure 26(b)(5)(B) [ECF No. 1197]. On June 24, 2013, Plaintiff SDR filed its Motion

4

for Discovery Status Update by Defendants Tyler Cassity and Hollywood Forever Regarding Documents Cited in Narrative Timeline and for Other Relief, informing the Court that Defendants' counsel states that it has lost all the key documents cited or quoted in the Narrative Timeline [ECF No. 1217].

## II.     LEGAL STANDARD

The attorney-client privilege is the oldest privilege for confidential communications known to the common law, and its purpose is to encourage full and frank communication between clients and their attorneys without threat of disclosure. *Herndon v. U.S. Bancorp Asset Mgmt., Inc.*, 2007 WL 781788 (E.D. Mo. March 13, 2007). However, this privilege is waived by the voluntary disclosure of privileged communications. *Painewebber Group, Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 992 (8th Cir. 1999).

The applicable test to determine whether a waiver has occurred requires the Court to examine five factors: 1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of document production; 2) the number of inadvertent disclosures; 3) the extent of the disclosures; 4) the promptness of measures taken to rectify the disclosure; and 5) whether the overriding interest of justice would be served by relieving the party of its error. *Gray v. Bicknell*, 86 F.3d 1472, 1484 (8th Cir. 1996).

## III.    DISCUSSION

In their Motion to Compel Return of Inadvertently Produced Document [ECF No. 1197], Defendants seek the return of the Narrative Timeline, claiming that the document was prepared by Defendant Tyler Cassity at the direction of his attorneys, and that the document is protected by the attorney-client privilege and the work product doctrine. For purposes of this discussion, the

5

Court will presume, without deciding, that the document is privileged in some manner.

Defendants contend that the Narrative Timeline was inadvertently produced by counsel for Tyler Cassity and Hollywood Forever during Hollywood Forever's initial Rule 26(a) disclosures. They claim that the document was one of 2,000 documents produced on November 4, 2011, that it was inadvertently produced due to error of file room staff, that production of the Narrative Timeline was never authorized, and that they immediately notified Plaintiffs upon learning of the inadvertent disclosure.[1]

Defendants argue that the inadvertent disclosure of the Narrative Timeline did not waive the attorney-client privilege or the work product doctrine. They further contend that because no waiver occurred, the document is still protected, and they ask the Court to compel return of all copies, prohibit any future dissemination, and require all notes or records pertaining to the Narrative Timeline to be destroyed.

In their Memorandum in Opposition, Plaintiffs state that Defendants produced the Timeline as one of only twenty-two documents, and that Defendants produced it to Plaintiffs twice: once during the initial disclosures on November 4, 2011, and again in February of 2012 [ECF No. 1201]. Plaintiffs further state that, even after Plaintiffs made the Narrative Timeline the subject of a detailed discovery request in January of 2013, Defendants answered the request without claiming the document was privileged, and they did not seek its return. Plaintiffs claim that Defendants are attempting to "claw back" the Narrative Timeline more than eighteen months

---

[1] The Court notes that Defendants contradict this statement, made in their Motion [ECF No. 1197 at 2] in their Reply Memorandum [ECF No. 1206 at 4]. The Court further notes that, although Defendants contend in their Reply Memorandum that the Narrative Timeline was segregated from other files and saved in a separate folder, they failed to mention this claim in their Motion and supporting Memorandum.

after their intentional disclosure of the document because it contains admissions that contradict Defendants' denials of allegations Plaintiffs have made against them. Plaintiffs contend that Defendants' request fails because it fails to meet the requirements of Federal Rule of Evidence 502(b), or the test set forth in *Gray v. Bicknell*, 86 F.3d 1472, 1483-84 (8th Cir. 1996).

Federal Rule of Evidence 502 addresses limitations on waiver of attorney-client privilege and work-product protection. Fed. R. Evid 502. Its provisions apply, in certain enumerated circumstances, to the disclosure of a communication or information covered by the attorney-client privilege and work-product doctrine. Subsection (b) of the rule concerns inadvertent disclosures such as alleged here, those made in a federal proceeding, and provides that such a disclosure does not operate as a waiver in a federal or state proceeding, if the following requirements are met:

      1. the disclosure is inadvertent;

      2. the holder of the privilege or protection took reasonable steps to prevent disclosure; and

      3. the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b).

In the context of determining whether privilege or protection has been waived by an inadvertent disclosure, the Eighth Circuit determined in *Gray* that a "middle of the road" test, also referred to as the *Hydroflow*[2] test, is best suited to achieving a fair result: "It accounts for the errors that inevitably occur in modern, document-intensive litigation, but treats carelessness with privileged material as an indication of waiver." *Gray*, 86 F.3d at 1483-84. Utilizing this test, the

---

[2]*Hydraflow, Inc. v. Enidine, Inc.*, 145 F.R.D. 626, 637 (W.D.N.Y. 1993).

Court undertakes a five-step analysis of the unintentionally disclosed document to determine the proper range of privilege to extend. *Id.* at 1484. The Court considers: 1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of document production, 2) the number of inadvertent disclosures, 3) the extent of the disclosures, 4) the promptness of measures taken to rectify the disclosure, and 5) whether the overriding interest of justice would be served by relieving the party of its error. *Id.*

If, after completing this analysis, the court determines that waiver occurred, the document is no longer privileged. *Id.* Additionally, the court has discretion to determine that the privilege has been waived for related, but as-yet-undisclosed documents. *Id.*

Plaintiffs argue that Rule 502(b), and the *Gray* test, bar Defendants' belated attempt to claw back the Narrative Timeline for numerous reasons, including:

1. the Timeline sets forth facts, the document bears no indicia that it is a privileged communication, and Defendants failed to provide a privilege log, or to answer Plaintiffs' questions regarding the Timeline;

2. Defendants intentionally produced the document twice with their voluntary, initial disclosures, naming the document "Narrative Timeline";

3. Defendants provided no affidavits to support their claims of inadvertence and ignored facts defeating their position;

4. Plaintiffs disclosed the existence of the Timeline to all parties in their January 30, 2013, requests for production to Hollywood Forever, and Hollywood Forever answered the document requests two months later without claiming the Timeline was privileged;

5. Defendants unreasonably waited eighteen months to attempt to claw back the timeline;

and

6. the interests of justice and fairness support waiver because the facts discussed in the Narrative Timeline constitute admissions that contradict Defendants' denials of key allegations against them.

This Court agrees, and after consideration of all the *Gray* factors, concludes that Defendants have waived their claim of privilege by their voluntary disclosure of the Narrative Timeline. *See Gray*, 86 F.3d at 1484. As previously stated, the Court will presume, without deciding, that the Narrative Timeline is a privileged document. First, the Court finds that Defendants voluntarily disclosed the entire document several times, and clearly identified it by name in a log when it was produced. The record shows that, as part of their initial disclosures, Defendants produced the timeline to Plaintiffs on two separate occasions [ECF Nos. 1201-2, 1201-3, 1201-4 (Exhibits B, C, D)].

The Court further finds that Defendants failed to take reasonable precautions to prevent inadvertent disclosure, in view of the extent of document production. The Narrative Timeline bears no label or other indication of its alleged privileged status that would likely alert anyone that the document might be protected. *See Herndon*, 2007 WL 781788 at *4 (lack of anything on the face of document likely to alert counsel of protected status weighed as a factor in finding defendants failed to show they took reasonable precautions to prevent inadvertent disclosure). Although Defendants contend that they produced over 2,000 documents when they provided the seventeen-page Narrative Timeline, the record indicates that only twenty-two pdf files were Bates-stamped, separately listed on the index, and produced [ECF No. 1201-14 (Exhibit N)]. The other twenty-one documents produced are primarily check registers, bank statements, e-

9

mails, and supporting documentation for funeral claims paid by Hollywood Forever [ECF No. 1201-14 (Exhibit N)]. Defendants' claim that the timeline was disclosed due to a clerical error of file room staff does not excuse Defendants from failing to supervise the production of documents to Plaintiffs, particularly given that the Narrative Timeline was clearly identified by name and listed on an index provided to Plaintiffs. *See id.*

Moreover, the Court finds that Defendants failed to take prompt measures to rectify the disclosure. *See id.* (finding persuasive the rule whereby courts consider when the disclosing party discovered, or with reasonable diligence should have discovered, the inadvertent disclosure, in their evaluation of promptness). The record reveals that Defendants responded to Plaintiffs' discovery requests regarding the Narrative Timeline without claiming that the narrative summary itself was privileged [ECF No. 1201-5 (Exhibit E)]. After requesting on February 6, 2013, and receiving on February 7, 2013, a copy of their February 2012 document production, Defendants still failed to assert their claim of inadvertent disclosure [ECF No. 1201-8 (Exhibit H)]. Instead, Defendants requested an extension of time to respond to Plaintiffs' Requests, and Plaintiffs agreed that Hollywood Forever would have until March 27 to provide its written responses, and until April 16, 2013 to produce documents [ECF No. 1201-9 (Exhibit I)].

Defendants did not produce any of the documents sought by Plaintiffs by the April deadline. Hollywood Forever did, however, serve its written responses to Plaintiff SDR's discovery requests on March 27, responding to Request No. 39 by objecting that some of the documents cited in the Narrative Timeline were "protected disclosure by attorney-client privilege[,]" but agreeing to "produce all responsive, non-privileged documents in its possession, custody, or control [ECF No. 1201-10 (Exhibit J)]. On March 29, 2013 -- two days after their

first response to Request No. 39, and almost seventeen months after they first voluntarily produced the timeline -- Defendants finally asserted their claim that the Narrative Timeline was inadvertently produced, stating that the summary "constitutes a privileged attorney-client communication[,]" which had been produced due to "clerical error of [its] file room staff" [ECF No. 1201-11 (Exhibit K)].

Thereafter, Plaintiffs sequestered their copies of the Narrative Timeline, and informed Defendants they had done so, by letter dated April 1, 2013 [ECF No. 1201-12 (Exhibit L)]. In the April 1 letter, Plaintiffs asked Defendants to provide a privilege log and other information to substantiate Defendants' claim the timeline is privileged. Defendants responded to this request by e-mailing Plaintiffs an early draft of this Motion to Compel [ECF No. 1201-13 (Exhibit M)].

Finally, the Court finds that the overriding interest of justice would not be served by relieving Defendants of their error. The timeline provides a factual chronology of material events and key documents, without revealing any legal strategy, thoughts or insights of counsel, or other similar information suggesting work product. The Narrative Timeline does, however, contradict several denials made by Defendants in their Answer to Plaintiffs' Third Amended Complaint. A finding that the privilege has not been waived effectively would deprive Plaintiffs of contradictory evidence they know exists but would be unable to use. *See Herndon*, 2007 WL 781788 at \*\*4-5 (fairness dictated a finding of waiver because disclosed document challenged defendants' litigation position in case and could be highly relevant to plaintiffs' case).

Plaintiff SDR's Motion for Discovery Status Update only reinforces the Court's conclusion. In the Motion, Plaintiff SDR informs the Court that Defendants now claim original non-privileged documents, to which the Narrative Timeline refers, have been lost and cannot be

11

located [ECF No. 1217].   In their Response, Defendants offer to meet *in camera* with the Court to discuss Plaintiff SDR's Motion, but otherwise "decline to comment via ECF, except to say that the issue of the Narrative Timeline has been briefed and submitted and should not be reargued at plaintiffs' whim" [ECF No. 1218].  The Court finds that considerations of fairness and justice weigh in favor of finding waiver.   Moreover, the Court agrees with Plaintiff SDR that Defendants should be required to explain to Plaintiffs and this Court the circumstances behind the disappearance of the timeline documents and indicate Defendants' efforts to locate hard copy and electronic versions of the same.

## IV.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that "Defendants Tyler Cassity and Hollywood Forever, Inc.'s Motion to Compel Return of Inadvertently Produced Document" [ECF No. 1197], is **DENIED**.

**IT IS FURTHER ORDERED** that  "Plaintiff SDR's Motion for Discovery Status Update by Defendants Tyler Cassity and Hollywood Forever Regarding Documents Cited in Narrative Timeline and for Other Relief" [ECF No. 1217] is **GRANTED**.  Defendants shall, within ten (10) days of this Order, provide to Plaintiffs and this Court a Status Report concerning their larger document collection, giving a date certain as to when productions shall be forthcoming, and specifying the circumstances surrounding the loss or destruction of the documents cited, referenced, or quoted in the Narrative Timeline.  Furthermore, Defendants shall, within thirty (30) days of this Order, produce all documents responsive to Plaintiff SDR's Requests for Production; and they shall, within forty-five (45) days of this Order, provide

Plaintiffs and this Court a privilege log.

Dated this __19th__ day of July, 2013.

_E. Richard Webber_
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE