UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JO ANN HOWARD &                                )
ASSOCIATES, P.C., *et al.*,                    )
                                               )
      Plaintiffs,                  )
                                               )
      vs.                          )          Case No. 4:09CV01252 ERW
                                               )
J. DOUGLAS CASSITY, *et al.,*                  )
                                               )
      Defendants.                  )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant J. Douglas Cassity's (also referred to as "Doug Cassity") "Motion for Reconsideration" [ECF No. 1280], and Defendant Howard A. Wittner's, Individually and as Trustee of the RBT Trust II, and Defendant Wittner, Spewak & Maylack, PC's (collectively referred to as "Wittner Defendants") "Motion to Reconsider and Request for Clarification of this Court's September 18, 2013 Order" [ECF No. 1284].

## I.      BACKGROUND

Plaintiff Jo Ann Howard & Associates, P.C., has been appointed to serve as the Special Deputy Receiver ("SDR") of three companies, National Prearranged Services Agency, Inc. ("NPS"); Lincoln Memorial Life Insurance Co.; and Memorial Service Life Insurance Co.  In the instant case, the SDR has asserted, against numerous defendants, claims such as violation of the RICO Act, 18 U.S.C. § 1962(d); breach of fiduciary duty; and gross negligence.  Other plaintiffs include national and individual state life and health insurance guaranty associations.

The term "Forever Defendants," as used in this Order, refers collectively to Defendants Brentwood Heritage Properties, LLC; Forever Enterprises, Inc.; Forever Illinois, Inc.; Forever

Network, Inc.; Legacy International Imports, Inc.; Lincoln Memorial Services, Inc.; National Heritage Enterprises, Inc.; NPS; and Texas Forever, Inc.  These entities are part of a larger consortium of related entities that are all ultimately owned by a family trust of the St. Louis-based Cassity family, whose members include J. Douglas Cassity.  Defendant Howard Wittner served as a trustee of the family trust in this matter, was an officer and director of several of the Forever Defendants, and provided services as general counsel and outside counsel to the Forever entities.  Defendant Wittner law firm also served as outside counsel to the entities.

## II.     THE SEPTEMBER 18, 2013 ORDER [ECF NO. 1279]

Counsel for Plaintiffs, counsel for Forever Defendants, and counsel for Wittner Defendants appeared before the Court on September 11, 2013, to present argument regarding four pending motions: "Plaintiff's Motion to Enforce Court Order Requiring Payment of Attorney Fees by Forever Defendants [ECF No. 1173]; Forever Defendants' "Motion to Withdraw as Counsel [ECF No. 1191]; and "Plaintiffs' Unopposed Motion for Order Requiring Personal Presence of Forever Defendants' Officers and Directors and Other Defendants for Questioning at September 11 Hearing  [ECF No. 1298].   In an August 23, 2013 Order, the parties were instructed to address the status of Forever Defendants' production of financial papers and documents supporting their claimed inability to pay the attorney fees as previously ordered by the Court.

During the September 11 hearing, the Court inquired regarding the status of discovery production.  Firmin Puricelli, counsel for Forever Defendants, apprised the Court that, with the cooperation of Defendant Doug Cassity, he had discovered the location of numerous corporate records and files for the Forever entities, as well as several of the companies' computer servers,

hard drives, and other electronic storage devices and equipment.  Mr. Puricelli further stated that

the records, files and computer equipment were stored at cemeteries formerly owned by Forever

entities, but now in the possession of judgment creditors.  Mr. Puricelli informed the Court that

he had arranged  meetings between Plaintiffs' counsel and the judgment creditors in possession

of the property, and the judgment creditors had allowed Plaintiffs to inspect and photograph the

stored property of the corporate defendants.  Mr. Puricelli also told the Court that one of the

judgment creditors uses some of these records in its provision of funeral services, and urged they

not be removed from the cemetery property where they are stored.  However, Mr. Puricelli

indicated that the judgment creditor would not deny access to the stored property.  Forever

Defendants did not file a privilege log to raise attorney-client or work product privilege

objections to the newly disclosed information, and did not identify any files, documents, or other

information they sought to withhold.

   After describing his efforts to uncover and produce requested discovery information, Mr.

Puricelli reiterated his desire to withdraw from his representation of Forever Defendants,

assuring the Court that he had attempted to comply with the Court's Order to the best of his

ability.  However, as the hearing progressed, and arguments and exhibits offered by Plaintiffs'

counsel revealed significant work remained to facilitate discovery compliance, Mr. Puricelli

informed the Court that he would stay in the case to assist the process.  The Court expressed its

appreciation for Mr. Puricelli's willingness to remain in the case.  In view of the repeated failures

of Forever Defendants to comply with the rules of discovery, and in order to assure greater

cooperation by  Forever Defendants with Plaintiffs' information requests, the Court denied the

Motion to Withdraw.  The Court denied the motion to compel attendance, as moot, due to the

parties' report regarding discovery production, which indicated the location of a substantial amount of files, servers, and electronic equipment had been discovered and would be turned over to Plaintiffs.  The Court's ruling was also based on certain representations made during the hearing by counsel for the Forever Entities, and Defendant J. Douglas Cassity.

During the hearing, Plaintiffs requested the Court enter an Order waiving privilege asserted by various defendants as to certain documents.  Plaintiffs contended waiver was appropriate due to the discovery costs they incurred and expended in their effort to obtain information that was hindered by the defendants' deceitful behavior, over the course of two years.  Plaintiffs detailed the following pattern and practice of deception and disruption exhibited by the numerous defendants throughout the discovery process: 1)  Forever Defendants' initial disclosures, dated August 25, 2011, state "Defendants have no documents in their possession relevant to disputed facts"; 2) on May 10, 2013,  Forever Defendants counsel left a voice mail message for Plaintiffs' counsel, stating his clients had informed him they have no documents, and "Texas took everything"; 3) on May 12, Forever Defendants failed to respond to discovery, and Plaintiffs filed a motion to compel; 4) on May 29, 2013, Forever Defendants' counsel confirmed by telephone to Plaintiffs that his clients insisted there were no documents to produce; and  5) during a June 10 hearing, Forever Defendants again stated they had no documents to produce, claimed  the companies were insolvent, and insisted there were no assets.

During the September 11, 2013 hearing, Plaintiffs reported that Wittner Defendants' law firm, asserting privilege as to approximately 500 withheld documents, had produced no documents responsive to their requests for production [ECF No. 1295 at 34-36].  Paul Simon, counsel for Wittner Defendants, addressed the Court to clarify that his clients possessed seventy-

six (76) bankers' boxes containing files relating to this matter, and that Wittner Defendants had

produced to Plaintiffs a 47-page privilege log, listing documents in those files [ECF No. 1295 at

42-43].  Forever Defendants, as proof of counsel's recent attempt to comply with Plaintiffs'

production requests and the June 24 Order, submitted a letter written to Mr. Puricelli by counsel

for the Wittner Defendants, in response to Forever Defendants' inquiry regarding documents in

the Wittner Defendants' possession [ECF No. 1232-10].  In this letter, Wittner Defendants state:

> It may be that the Wittner firm provided legal services and generated documents
> that arguably fall within the categories of documents labeled 5, 6, and 7 in Judge
> Webber's Order.  If the Wittner firm indeed possesses any such documents, the
> Firm identified any such documents in its privilege log previously provided to
> Plaintiffs.

 The nature of the three described categories of documents, and Wittner Defendants'

response to the Forever Defendants' inquiry, revealed that the privilege claimed as to the

withheld documents was asserted on behalf of Forever Defendants by the Wittner firm.

However, as previously noted, Forever Defendants, the holders of the privilege, did not file a log

to raise attorney-client or work product privilege objections to the newly disclosed information,

and did not identify any files, documents, or other information they sought to withhold.   In its

Memorandum and Order, issued September 18, 2013, the Court further noted that individual

Defendant Howard Wittner did not act solely as a legal advisor to Forever Defendants, but also

actively participated in the conduct of business as an officer and director of certain Forever

entities, making him responsible for production of properly requested information [ECF No.

1279].

In the September 18, 2013 Order, the Court found Wittner Defendants had failed to

comply with its June 24 Order directing production.  Noting the broad discretion Federal Civil

Procedure Rule 37 provides district courts to sanction parties that fail to obey an order to provide

or permit discovery, the Court considered Plaintiffs' request for sanctions, which included entry

of default against defendants, waiver of any objections or claims of privilege asserted by Forever

Defendants or Wittner Defendants on Forever Defendants' behalf, and compelling the production

of all withheld documents.

Upon weighing the severity of waiving the privilege afforded attorney-client

communications against the conduct of the defendants during the course of discovery, the Court

found that waiver of privilege concerning the documents possessed by the Wittner Defendants,

Forever Defendants, and Forever Defendants' corporate officers and directors was appropriate.

The Court further found that Forever Defendants waived any objections to the discovery requests

at issue, including those based on attorney-client privilege and work-product doctrine.  The Court

ordered Wittner Defendants to provide revised responses to Plaintiffs' Requests for Production,

removing all objections and otherwise complying with the Court's directions in its June 24

Order.

Regarding the Forever Defendants' claimed inability, due to lack of financial resources

and assets, to comply with an August 14, 2012 Order awarding fees to Plaintiffs [ECF No. 1110],

the Court further ordered that "Plaintiff's Motion to Enforce Court Order Requiring Payment of

Attorney Fees by Forever Defendants" [ECF No. 1173], be held in abeyance, subject to

examination of documents to be supplied by the Forever Defendants' Officers and Directors, who

were also named as individual defendants in this matter, and who were subject to contempt

sanctions for failure to take appropriate action within their power for the performance of the

corporate duty.  Additionally, the Court ordered Defendants J. Douglas Cassity, Brent Cassity,

and J. Tyler Cassity to produce to Plaintiffs all personal banking statements, credit card

statements, and financial statements pertaining to their financial status, for the period between

July 1, 2011 to present [ECF No. 1279 at 11-12].

## III.    LEGAL STANDARD

A "motion to reconsider" is not explicitly contemplated by the Federal Rules of Civil

Procedure.  Typically, courts construe a motion to reconsider as a motion to alter or amend

judgment under Federal Rule of Civil Procedure 59(e), or as a motion for relief from a final

judgment, order, or proceeding under Rule 60(b).  This Court's September 18, 2013

Memorandum and Order cannot be classified as a "judgment"; therefore, Defendants' motions to

reconsider do not fall within the parameters of Rule 59(e).  However, Defendants' Motions to

Reconsider may be considered pursuant to Rule 60(b), which allows relief from an order due to:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b); *see also Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006) ("[W]e

have determined that motions for reconsideration are 'nothing more than Rule 60(b) motions

when directed at non-final orders.'").

Although it is not clear from Defendants' motions, it appears that the applicable ground

for relief is Rule 60(b)(6)'s catch-all provision, which provides that relief may be granted for

"any other reason that justifies relief."  The Court notes that relief under "Rule 60(b) is an extraordinary remedy" that is "justified only under 'exceptional circumstances.'"  *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.,* 413 F.3d 897, 903 (8th Cir. 2005) (quoting *Watkins v. Lundell*, 169 F.3d 540, 544 (8th Cir. 1999)).  Further, "[r]elief is available under Rule 60(b)(6) only where exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress."  *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005).

The Rule 60(b)(6) catch-all provision is not a vehicle for setting forth arguments that were made or could have been made earlier in the proceedings.  *See Broadway v. Norris*, 193 F.3d 987, 989-90 (8th Cir. 1999).

IV.    **DISCUSSION**

A.    **Defendant Doug Cassity's Motion for Reconsideration**

In his Motion for Reconsideration, Defendant Doug Cassity asks the Court to Reconsider its Order requiring him to give Plaintiffs "all personal banking statements, credit card statements and financial statements" from July 1, 2011 until the present [ECF No. 1280].  In support of his request, Doug Cassity asserts the following:

1.    This Defendant is not a member of the family trust, RBT Trust II, and never has been.  The Grantors are Rhonda, Brent, and Tyler Cassity, the trustee is Howard A. Wittner, and the Beneficiaries are Rhonda, Brent and Tyler Cassity[.]

2.    This Defendant is not an officer or director of any of the "Forever" Defendants and Plaintiffs have made no such allegation.

3.    As Mr. Puricelli advised the court and this court in its Memorandum acknowledged, it was "with the cooperation of Defendant Doug Cassity" . . . that the documents taken over by judgment creditors were found.

[ECF No. 1280 at 1-2].  Doug Cassity contends his only "nexus" to the matters referred to in the

Court's September 18, 2013 Order is the assistance he provided to the Court and Mr. Puricelli

when asked to do so.

In their "Opposition to Defendant Doug Cassity's Motion to Reconsider," Plaintiffs argue

Doug Cassity cannot satisfy the high standard parties must establish to warrant reconsideration of

a court order, because he has identified no manifest error in the ruling and has presented no

newly discovered evidence [ECF No. 1288].  Plaintiffs contend Doug Cassity should be held

responsible for his participation in Forever Defendants' discovery abuses, because he was

actively involved in their operations.  Plaintiffs further assert Doug Cassity played a central role

in the RBT II Trust, the family trust that owned the Forever Entities.  This Court agrees.  In their

Complaint, Plaintiffs describe a scheme to defraud individual consumers and funeral homes in

the sale of NPS's pre-need funeral contracts, in which NPS, Lincoln, and Memorial funds were

siphoned for the personal use of various defendants, principally members of the Cassity family,

certain officers and employers of the Cassity-controlled entities, attorneys and law firms

employed by the entities, and several of the entities themselves (collectively referred to as "the

RICO Defendants").  Among other things, Plaintiffs'claims relate to allegedly fraudulent

transfers between Cassity-controlled entities and some of the other RICO Defendants.

In support of their Opposition to Doug's Cassity's Motion, Plaintiffs submit several

exhibits, which reveal Doug Cassity actively participated in Forever Defendants' business

operations, continued to exercise control over NPS and its affiliated companies, and engaged in

the negotiations for the companies [ECF Nos. 1288-1 through 1288-12; 1269].  Plaintiffs'

submission also contains exhibits that show Doug Cassity's substantial role in the RBT II Trust

[ECF Nos. 1288-1, 1288-13, 1288-14].  These exhibits establish Doug Cassity was the original

settlor of the predecessor trust (RBT Trust I).  The documents also reveal the Trust was obligated

to ensure Doug Cassity received compensation from NPS and Lincoln, pursuant to an agreement

entered by, and between, him and RBT Trust II Trustee Howard A. Wittner on March 20, 1998

(the "Agreement") [ECF No. 1288-14].  The Agreement recognized the trust as the indirect

majority owner of NPS, Forever Enterprises, Inc., and Lincoln Heritage Corporation (owner of

Lincoln and Memorial) [ECF No. 1288-14].   The Agreement shows that, in recognition of many

years of valuable services provided by him, Doug Cassity was paid twenty-two percent (22%) of

the amounts the trust received due to its ownership of NPS and Lincoln, and he was compensated

by affiliated entities, through payments made to the trust [ECF Nos. 1288-1, 1288-13, 1288-14].

Contrary to his contention, the assistance he provided in finding the documents left at the

properties taken over by judgment creditors is not Doug Cassity's only nexus to the matters

referred to in this Court's September 18, 2013 Order.  Although not formally designated as an

officer or director of any of the Forever Defendants, the exhibits indicate that, over a series of

years and in numerous transactions, Doug Cassity has portrayed authority to act on behalf of the

Forever Defendants, and has engaged in negotiations, maintained active involvement in business

decisions, and exercised control over their operations [ECF Nos. 1269, 1288-1 through 1288-14].

The Court finds Doug Cassity's arguments for reconsideration unpersuasive.  He has not

demonstrated "mistake, inadvertence, surprise, or excusable neglect," or "any other reason

justifying relief" from the Court's September 18, 2013 Order.   *See* Fed. R. Civ. P. 60(b).

Furthermore, Defendant J. Douglas Cassity has failed to demonstrate that relief from this Court's

September 18, 2013 Memorandum and Order is justified.  The Court will deny Doug Cassity's

10

Motion for Reconsideration [ECF No. 1280].

> **B.      Wittner Defendants' Motion to Reconsider and Request for Clarification**

In their Motion to Reconsider and Request for Clarification of this Court's September 18,

2013 Order, Wittner Defendants argue that they have engaged in good faith in compliance with

this Court's Orders, and ask the Court "to reconsider its suggestion that the Wittner Defendants

lacked good faith in producing responsive documents or in complying with the Court's Order

[ECF No. 1284 at 10]. Wittner Defendants state Plaintiffs directed Requests for Production of

Documents to Forever Defendants, not Wittner Defendants, and they argue that Wittner

Defendants thus have no specific responses to revise, or specific objections to remove, in order to

comply with the Court's Order. Noting that Forever Defendants are represented by counsel

separate from that of Wittner Defendants, they further contend they do not believe they were

required to respond to a Request for Production of Documents directed to Forever Defendants,

and not directed to them. They additionally seek clarification regarding the extent of a court-

ordered waiver of privilege as to documents in their possession, and state that they "still bear the

burden of withholding from production any documents to which a privilege attaches in favor of

the remaining Non-Receivership Clients." [ECF No. 1284 at 15].

In their Response, Plaintiffs argue Wittner Defendants' request for reconsideration of a

portion of the Court's Order fails to meet the high standard necessary to justify the extraordinary

remedy of reconsideration, contending Wittner Defendants present no new facts or law, and have

shown no manifest error [ECF No. 1300]. Plaintiffs state Defendant Howard Wittner served as

an officer and director of two Forever Defendants, and is an agent of the Forever Defendants as

their former attorney, and they assert the Court "correctly recognized that as a legal advisor and a

11

former officer and director of the Forever Defendants, Defendant Wittner had a duty to comply with the Court's June 24, 2013 Order." [ECF No. 1300 at 2].

Regarding the Wittner Defendants' request for clarification concerning the extent of the court-ordered privilege waiver, Plaintiffs contend the scope is clear and should be read broadly, quoting the following language of the September 18, 2013: "waiver of privilege concerning the documents possessed by the Wittner Defendants, Forever Defendants, and Forever Defendants' corporate officers and directors is appropriate." [ECF No. 1279 at 9].   As to the Wittner Defendants' expressed concern over obligations to former clients who are not Forever Defendants or Receivership Entities, Plaintiffs note most of the entities listed on Wittner Defendants' privilege log[1] are no longer in operation or have been administratively dissolved, and they claim three individual defendants (Randall K. Sutton, James M. Crawford, and Brent Cassity) waived the privilege as to communications with the Wittner firm when they asserted the

---

[1]Plaintiffs provide, in their brief, a listing of the former Forever Defendants subsidiaries, affiliated entities and properties upon whose behalf Wittner Defendants are asserting privileges: Mt. Washington Forever, Mt. Washington Cemetery, National Cemetery Management Company, Lincoln Heritage Corporation, National Prearranged Services Agency, Hollywood Forever, Hollywood Forever Cemetery, Cassity Heritage Funeral Homes, NPS Forever, Forever Memorial (including Forever Library of Lives), BDC Properties, Bellerive Heritage Gardens, Bellerive Cemetery, Forever Bellerive, Forever Georgia, Oak Hill Cemetery, Forever Wisconsin, National Discount Casket Store, Forever Oak Hill, Forever Preneed Insurance Agency, Pftizinger, Family Tree, Bellerive-Creve Coeur, Forever Audit Commission, Mason Securities Association d/b/a Cremation Society of America, National Funeral Home Services, Wise & Associates, National Heritage Foundation, Forever Marin, National Prearranged Services of Texas, Dartmouth Investment, Mt. Hope Cemetery, Valley View Cemetery, Hiram Cemetery, Fendler Funeral Homes, National Mortuary Services, and Cassity Enterprises.  The Court notes that Wittner Defendants assert privilege as to other entities and individuals, as well, including Forest Home Cemetery, NPS Advantage Association, New Beginnings, McCracken-Allen, JTC Ventures, Restland Funeral Home, Mount Hope Cemetery, North America Life Insurance Company, Funeral Security Life Insurance Company, Rhonda L. Cassity Incorporated, RBT Trust II, Randy Murray, Judith Crawford, Doug Cassity, Jerry Griffin, and Randy Singer.

defense of advice of counsel. *See Baker v. Gen. Motors Corp.*, 209 F.3d 1052, 1055, 1057-58 (8th Cir. 2000)(client waives any claim of attorney-client privilege by placing subject matter of privilege communication at issue; at-issue waiver found when client uses reliance on legal advice as a defense). Plaintiffs contend a broad reading of the court-ordered waiver is appropriate because it facilitates discovery between Plaintiffs and Wittner Defendants, and Plaintiffs have been unfairly prejudiced by the length of time the matter has taken to negotiate search terms. They ask the Court to reaffirm its broad waiver of privilege to include all "documents possessed by the Wittner Defendants." Plaintiffs additionally state they are amenable to a clawback agreement for inadvertently produced documents belonging to Wittner Defendant clients who are not involved in this matter.

In their Reply, Wittner Defendants assert the Court's Order suggests the record reveals a lack of good faith effort on their behalf to produce responsive documents and to comply with the Court's June 24, 2013 Order, and they claim they have continually complied with the Court's orders and have worked in good faith with parties who have requested information or documents [ECF No. 1305]. In asking the Court to reconsider this suggestion, Wittner Defendants contend they have made, subject to obligations owed clients regarding matters of privilege, all documents and electronic devices in their possession available to the parties in this litigation, and state they contacted their non-receivership clients to seek guidance on privileges and to provide an avenue to obtain express waivers of privileges. They argue Plaintiffs "self-servingly overlook the myriad of facts, which were not presented to this Court upon the Motion from which the Order emanated, that necessitate reconsideration of the above-stated manifest error." [ECF No. 1305 at 3]. Wittner Defendants also ask the Court to reconsider its direction to provide revised responses

to Plaintiffs' production requests, again contending they have no responses to revise or

objections to remove in order to comply with the Court's June 24 Order.

Wittner Defendants are correct in their assertion that the Order suggests the record reveals

a lack of good faith effort by Wittner Defendants in their production of documents and

compliance with Court orders, and the Court directs Wittner Defendants to the following

Electronic Case File documents, which provide support for the suggestion: ECF Nos. 733, 734,

812, 812-1, 812-2, 812-3, 81`2-4, 812-5, 822, 825, 827, 862, 867, 867-1, 967-2, 867-3, 871, 922.

Among other things, the record shows that the Court had to intervene in a discovery matter after

Plaintiffs filed January 12, 2012 Motion to Compel the Production of Documents and

Electronically Stored Information by Wittner Defendants on January 12, 2012  [ECF Nos. 812,

827].  In the January 12 Motion to Compel, Plaintiffs reported Wittner Defendants had not

produced copies of any documents or electronically stored information listed in their initial

disclosure, as they were required to do by Local Rule 26-3.01(A), and the Court's Interim Case

Management Order [ECF No. 812].  In a February 13, 2012 Order, the Court noted Plaintiffs'

motion was moot as to the production of three categories of materials requested, but found

Wittner Defendants had failed to produce two other types of materials identified in their

disclosure statement: 1) correspondence and emails; and 2) a Travelers Insurance Company

policy [ECF No. 827].  The Court granted, in part, Plaintiffs' motion to compel, and ordered

Wittner Defendants to produce the materials in conformity with the parties' existing discovery

stipulation within ten days.  Nevertheless, on April 5, 2012, Plaintiffs had to file a motion to

enforce the Court's prior orders directing Wittner Defendants to produce the documents, and

Plaintiffs stated: "Despite Plaintiffs' and the Court's best effort, Plaintiff find themselves back

again requesting help to ensure compliance by the Wittner Defendants with the most basic of

discovery obligations." [ECF Nos. 867 at 1, 867-1 through 867-3].  Four days later, Plaintiffs and

Wittner Defendants filed a "Stipulation Regarding Collection and Production of Documents &

Other Material by the Wittner Defendants" [ECF No. 871].  On May 9, 2012, Wittner Defendants

filed a "Compliance Memorandum Reflecting Compliance with the Stipulation regarding

Collection and Production of Documents & Other Material by the Wittner Defendants" [ECF

Nos. 871, 922].   In this Compliance Memorandum, Wittner Defendants represented that hard

copies of responsive documents available for production were in their possession, custody, and

control, and were available to pick up by Plaintiffs' Information Technology Vendor.  Wittner

Defendants also indicated they had provided the Privilege Log to Plaintiffs, stating: "The

Privilege Log reflects documents which, to the Wittner Defendants' best knowledge, information

and belief, are potentially related to the facts in this action but which are privileged as further

described in the Privilege Log. The privileged documents are contained in 74 boxes." [ECF No.

922 at 2].

The record refutes Wittner Defendants' claim of continuous compliance with the Court's

orders and good faith effort to work with parties requesting information or documents.  The

Court will deny Wittner Defendants' request to reconsider language in the June 24, 2013 Order

that suggests the record reveals a lack of good faith effort and compliance with Court orders.

Additionally, Wittner Defendants reassert clarification of the extent of the privilege

waiver is necessary, claiming: 1) the Privilege Log identifies privileged documents belonging not

only to Forever Defendants, but also to other parties; 2) Wittner Defendants' only interest in

preserving the privilege is to satisfy their ethical obligations; and 3) they have no other interest in

withholding the documents, because they are incurring substantial expense in protecting their

former clients' rights.

The attorney-client privilege attaches to corporations as well as to individuals.

*Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985).  "As an inanimate

entity, a corporation must act through agents.  *Id.*  As to solvent corporations, the power to assert

or waive the corporate attorney-client privilege is vested in the company's management, and is

normally exercised by its officers and directors.  *Id.*  The managers must exercise the privilege in

a manner consistent with their fiduciary duty to act in the corporation's best interests, not their

own interests as individuals.  *Id.*

As an initial matter, examination of the privilege log reveals that, as to the majority of the

entries, the privilege is asserted only on behalf of Forever Defendants, and no other entity; as to

these documents, clarification of the extent of the privilege waiver is obviously not a valid

concern.  Wittner Defendants shall produce all such documents as ordered.  Of note, Wittner

Defendants do not address Plaintiffs' contention that most of the entities upon whose behalf

Wittner Defendants are asserting privileges are no longer in operation or have been

administratively dissolved.  *See Commodity Futures Trading Comm'n*, 471 U.S. at 349 (when

control of corporation passes to new management, the authority to assert or waive corporation's

attorney-client privilege also transfers; displaced management retains no control over

corporation's privilege).

Nor have Wittner Defendants satisfied their burden to demonstrate the applicability of the

attorney-client privilege, by showing the asserted holder was actually a client, the Wittner firm

was acting as a lawyer in connection with the communication, and the communication related to

a fact of which the firm was informed by the client, without the presence of strangers, for the

non-criminal, non-tortious purpose of securing primarily some legal assistance or services.  *See*

*Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 601-02 (8th Cir. 1977); *PSK, LLC, d/b/a*

*Overhead Door Co. of Cedar Rapids & Ia. City v. Hicklin d/b/a A-1 Garage Door Repair*, No. 9-

105, 2010 WL 2541795 at *4 (N.D. Ia., June 22, 2010).

     Moreover, it appears Wittner Defendants asserted privilege as to many communications

that are not covered by the attorney-client privilege.  Wittner Defendants' letter to Mr. Puricelli

indicates that the retained documents may include titles, assessments, promissory notes, purchase

agreements, and loan agreements concerning properties that are, or have been, owned, leased, or

transferred  by Forever Defendants or their subsidiaries, from January 2007 to the present.

Therefore, copies of these documents presumably were provided to Forever Defendants, who

were Wittner Defendants' established clients in the property matters.  Here, even if Wittner

Defendants had shown the entities upon whose behalf they were asserting privilege were still

valid entities, and that an attorney-client relationship existed between them and a particular valid

entity, disclosure of the documents to Forever Defendants would indicate the communication was

not confidential or privileged.  *See PSK, LLC, d/b/a Overhead Door Co. of Cedar Rapids & Ia.*

*City*, 2010 WL 2541795 at *4.   Furthermore, any privilege held by the other entities relating to

such documents would be waived by copies being provided to Forever Defendants.  *Id*.

     The Court finds that Wittner Defendants have failed to demonstrate that relief from this

Court's September 18, 2013 Memorandum and Order is justified.  Therefore, the Court affirms

the reasoning set forth in its September 8, 2013 Memorandum and Order, and reaffirms the

waiver of privilege to include "any attorney/client privilege that has been asserted concerning all

documents listed in the 47-page privilege log, prepared by Wittner Defendants on behalf of the

Forever Defendants, and produced to Plaintiffs (more than 15 months ago), shall be waived."

Nevertheless, as to documents listed in the log to which the privilege asserted is not solely on the

behalf of Forever Defendants, on behalf of entities that are no longer in operation or have been

administratively dissolved, or on behalf of individual defendants as to whom the attorney-client

privilege has been waived, the Court is willing to conduct an *in camera* review, upon a sufficient

showing of the applicability of the attorney-client privilege.

## III.    CONCLUSION

In sum, the Court finds that Defendants have failed to demonstrate that "exceptional

circumstances" exist such that relief from this Court's September 18, 2013 Memorandum and

Order would be justified under Rule 60(b).  *Prudential Ins. Co. of Am.,* 413 F.3d at 903.

"'Exceptional circumstances' are not present every time a party is subject to potentially

unfavorable consequences as a result of an adverse judgment properly arrived at."  *Atkinson v.*

*Prudential Prop. Co.*, 43 F.3d 367, 373 (8th Cir. 1994).  Thus, Defendants' motions for

reconsideration and Wittner Defendants' request for clarification will be denied and the Court's

September 18, 2013, Memorandum and Order will stand.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Doug Cassity's "Motion for

Reconsideration" [ECF No. 1280] is **DENIED.**

**IT IS FURTHER ORDERED** that  Defendant Howard A. Wittner's, Individually and as

Trustee of the RBT Trust II, and Defendant Wittner, Spewak & Maylack, PC's "Motion to

Reconsider and Request for Clarification of this Court's September 18, 2013 Order" [ECF No.

1284] is **DENIED.**

Dated this __13th__ day of November, 2013.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE