UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JO ANN HOWARD & ASSOCIATES, P.C., et al., ) ) ) Plaintiffs, ) ) vs. ) ) J. DOUGLAS CASSITY, et al., ) ) Defendants. ) | Case No. 4:09CV01252 ERW |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiffs' Motion for *In Camera* Review [ECF No. 1439] of documents in the Wittner Defendants' possession. The Court issued an Order on April 8, 2014, directing Wittner Defendants to produce to the Court the documents to which privilege was being asserted. The Court received these documents and has completed its review. In this Memorandum and Order, the Court addresses documents provided from boxes 8, 4, 2, 9, 7, 1, 3, 6, 10, 12, 14, 17, 22, 23, 24, 26, 27, 29, 30, 31, 41, 42, 47, 53, 55, 57, 60, 66, 70, 75 and 76.

"[T]he party who claims the benefit of the attorney-client privilege has the burden of establishing the right to invoke its protection." *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985). One common formulation of the privilege is: "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 404 n.7 (8th Cir. 1987) (internal quotations and citation omitted).

Under this standard, "[a] communication is not privileged simply because it is made by or to a person who happens to be a lawyer." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977). The Eighth Circuit has recognized that including an attorney in a discussion or as an addressee of a communication does not make that communication privileged:

> [T]he special master stated: "A business document is not made privileged by providing a copy to counsel. . . . Thus, those documents from one corporate officer to another with a copy sent to an attorney do not qualify as attorney client communications." [citation omitted]. We perceive no error in this statement of the law . . . .

*Simon*, 816 F.2d at 403.[1] "Just as the minutes of business meetings attended by attorneys are not automatically privileged, . . . . business documents sent to corporate officers and employees, as well as the corporation's attorneys, do not become privileged automatically." *Id.* (internal citations omitted). With respect to the level of confidentiality required, the client's "intent to maintain confidentiality" can be inferred from the circumstances, and drafts of documents ultimately intended to be shared with third parties may therefore be privileged if the draft was provided in order to solicit confidential advice concerning its content. *See Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 84-85 (W.D.N.Y. 2011) (internal citations omitted).

Additionally, "[t]he privilege only protects [against] disclosure of communications; it does not protect [against] disclosure of the underlying facts by those who communicated with the attorney . . . ." *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981). As a result, attorney-client privilege does not cover client communications that "relate only business or technical data," where the client is not sharing that information in order to solicit legal advice. *See Simon*, 816 F.2d at 403; *see also Robbins & Myers, Inc.*, 274 F.R.D. at 86 ("Even if the client's

---

[1] The *Simon* court was applying Minnesota law, but the Minnesota standard for attorney-client privilege is identical to the federal standard. For that reason, the court cites interchangeably to Minnesota and federal cases in the opinion.

2

communications with an attorney are confidential, merely because an attorney is consulted by a client does not render the ensuing communications privileged if the purpose of the consultation is to obtain other than legal advice or services.") (collecting cases).

In the corporate context, there may also be some question about whether the privilege applies to a low-level employee's communications, and the Eighth Circuit has held that a communication is privileged in that situation if:

> (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*In re Bieter Co.*, 16 F.3d 929, 935-36 (8th Cir. 1994) (quoting *Diversified Indus.*, 572 F.2d at 609). This same test applies when the person making the communication is not an employee but is instead an independent contractor, such as a consultant. *See In re Bieter Co.*, 16 F.3d at 937.

As for the protections that apply to attorney work product, the Eighth Circuit has stated the applicable standards clearly:

> There are two kinds of work product – ordinary work product and opinion work product. Ordinary work product includes raw factual information. *See Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 n.4 (8th Cir. 1998). Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories. *See id.* at n.5. Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. *See* Fed. R. Civ. P. 26(b)(3). In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud. *See In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977).

*Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000).

From the foregoing, the Court has identified nine principal reasons why a given communication might not be protected from disclosure:

(1) the communication only concerns underlying facts, such as business or technical data, and was not shared in order to solicit legal advice;

(2) privilege was waived because the communication was disclosed to a third party;

(3) no attorney was involved in the communication and it does not reflect privileged advice from an attorney;

(4) the attorney's only involvement in the communication was as a passive recipient;

(5) the attorney's advice is not legal in nature;

(6) the communication was not made to the attorney for the purpose of obtaining legal advice;

(7) privilege does not extend to the employee who made the communication;

(8) the communication was not intended to be confidential;

(9) the document is attorney work product but the party seeking production has demonstrated that it is discoverable.

The Court makes the following rules of "P" (privileged), "NP" (not privileged), and "WP" (work product). The Court has inspected all documents submitted in a banker's box containing individual manilla folders. Each folder corresponds to the thirty-page privilege log, which begins on page one with Box 8. The order of "the boxes" on the privilege log is 8, 4, 2, 9, 7, 1, 3, 6, 10, 12, 14, 17, 22, 23, 24, 25, 26, 27, 29, 30, 31, 32, 41, 42, 47, 53, 55, 57, 60, 66, 70 and 74. The Court assumes "box" refers to a separate banker's box or similar container from which the individual files were pulled. There is a file marked Box 75 and a file marked Box 76 in the supplied banker's box. Those files contain many pages of notes and some documents with names unfamiliar to the Court. Both of those files are returned without rulings. There is nothing the Court concludes is relevant. These are not on the privilege log.

4

There is no Box 5 listed on the privilege log. There was a yellow sticker number 5 in the bottom of the banker's box, unattached to any file. There were three files with documents without stickers, which were reconciled with the privilege log and with files, but no documents described on the privilege log for Box 5 were reconciled with a file. Two letters were in a file; one dated June 12, 2008, from Dave to Jim, and it is not privileged. The second is a letter dated October 19, 1999, from Jean Maylack to Nicki Province. It is not privileged. File 5 is placed back in the box after file 76.

Box 25 is listed on the privilege log, but no file 25 was supplied.

Box 32 is on the privilege log, but no file 32 was supplied.

Box 74 is listed on the privilege log, but no file 74 was supplied.

When the banker's box was delivered to chambers, there were yellow stickers on most of the files. When the files were placed in the banker's box, several of the stickers were removed. File documents in folders with no identifying stickers were compared to documents on the privilege log in an attempt to identify documents to folders. In many cases, as hereafter shown, documents were in files that were not on the privilege log, and the privilege log states documents are in files when documents were not submitted. All documents submitted were examined page by page, in some cases several times, in an attempt to reconcile the privilege log with numbered submitted folders. All documents received are being returned; none are being retained.

On the right margin of the provided privilege log, the Court has marked "P" if the document is privileged, "NP" if not privileged, and "WP" for Privileged Work Product.

A listed counsel of record for the Wittner Firm shall promptly retrieve the submitted "box folders" from chambers with proper identification. The Wittner Defendants' firm shall supply copies of all non-privileged documents to Plaintiffs within ten (10) days of this Order.

5

There are materials not listed on the privilege log, but contained in the banker's box. The Court has identified those documents by box number and made a brief description and ruling as to each.

**<u>Material not listed on privilege log, but contained in the banker's box</u>**:

Box 1   9/16/99 letter - Moss to James Crawford - P

     10/18/99 letter Moss to James Crawford - P

     9/14/04 letter - Stefacek to Spewak - NP

     10/29/82 memo re: Doug and Rhonda Cassity for tax planning - P

     9/10/04 fax - Stejacek to Spewak - NP

     1/18/83 letter - J.P. Cassity to Wittner - P

     10/22/03 Business Plan - Doug Cassity to Wittner - P

     10/22/91 fax - Maylack to Wittner - diagram of ownership structure - P

     undated handwritten note - NP

     10/28/91 fax - Spewak to Wittner - NP

     10/23/91 letter - Maylack to Wittner - P

     undated handwritten note (one page) - NP

     9/12/91 memo - Doug Cassity to Wittner - Estate planning - P

     9/11/91 memo - Pam to Jane - NP

     Seven pages of handwritten notes - NP

     6/5/91 memo - Moss to JMC and HAW - P

     6/5/91 memo - Moss to JMC - P

     undated - one page handwritten note - "Land Trust Transactions" - P

     7/23/91 memo - Moss to JMC - P

| | |
|---|---|
| | undated handwritten notes - P |
| Box 2 | letter from "Donna" to HAW - NP |
| Box 7 | In Box 7, the third entry on page four of Privilege Log also includes a January 17th letter which is NP |
| | There is a January 12, 1999 letter with attachments from Pamela Moss to James M. Crawford - NP |
| Box 14 | letter dated May 8, 1998 to Doug Cassity from Jean Maylack and Howard Wittner. It is a privileged document containing one page - P |
| Box 22 | June 2001 handwritten notes, single page of yellow tablet paper - NP |
| | Undated two pages of handwritten notes unsigned on yellow tablet paper - NP |
| Box 23 | e-mail 4/27/01 - Jean Maylack to Tyler Cassity - NP |
| | Letter - 2-18-00 to Randy Murray from Howard Wittner - NP |
| | 8/22/00 letter with attachments to Lynda Ridley from Jean Maylack - NP |
| Box 26 | 6/5/2007 letter to Doug and Rhonda Cassity from Wittner firm - NP |
| | November 2, 2007 e-mail from Spewak to Nicki Province - NP |
| Box 29 | 11/3/1997 letter from Wittner to J. Douglas Cassity - P |
| Box 30 | 6/8/00 letter from Howard Wittner to Tyler Cassity with five pages of attachments - NP |

There are documents for which privilege is claimed, but are not in produced files. The Court is requesting that these documents for which privilege claimed and not in produced boxes be submitted within ten (10) days of this Order for Court review.

**Documents for which privilege is claimed but are not in produced files**:

Box 1      2003 communications and related documents between Doug Cassity and John Kendrick

             11/28/84 correspondence from Howard Wittner to Doug Cassity

             5/25/83 correspondence with attachments from Doug Cassity to Howard Wittner

             11/12/84 memo w/ attachments from Howard Wittner to ATD

             10/29/82 communication from Doug Cassity to Howard Wittner

Box 23     8/19/02 letter from Pam Moss to Jean Maylack

Box 27     4/11/97 letter from Maylack to Crawford

             3/28/08 to 1/17/08 general corporate correspondence, notes, etc.

             7/13/09 correspondence, notes, misc. articles

Box 31     undated handwritten notes re: purchase of home by Randy Singer

             undated handwritten notes re: sale of '98 Mercedes

The review of these documents has taken more time than expected. Because discovery is in the final phase, there is an expectation that non-privileged documents will be supplied to Plaintiffs expeditiously, and documents not yet reviewed, but requested, will be promptly supplied to the Court.

**IT IS HEREBY ORDERED** that the Wittner Firm shall produce to Plaintiffs, within ten (10) days of this Order, copies of all non-privileged documents as identified by the Court.

**IT IS FURTHER ORDERED** that the Wittner Firm shall produce to the Court for review, within ten (10) days of this Order, all documents for which privilege was claimed, but not provided to the Court.

So Ordered this 8th day of May, 2014.

*/s/ E. Richard Webber*
_____
E. RICHARD WEBBER
SENIOR JUDGE E. RICHARD WEBBER