UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JO ANN HOWARD & ASSOCIATES, P.C., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:09CV01252 ERW |
| J. DOUGLAS CASSITY, *et al.,* | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the court upon "Plaintiffs' Motion to Strike National City Bank's Failure to Mitigate Damages Defense and Quash Its Subpoena" [ECF No. 1437].

## I.  BACKGROUND

This litigation arises out of an alleged scheme by the owners, directors, officers, employees, attorneys, and consultants of three entities -- National Prearranged Services, Inc. ("NPS"), Lincoln Memorial Insurance Company ("Lincoln"), and Memorial Service Life Insurance Company ("Memorial") -- to defraud funeral homes and consumers in the sale of pre-need funeral service contracts, and to re-direct the funds received from the sale of those products to other related entities and certain individual parties.

On April 8, 2008, the Texas Commissioner of Insurance placed Lincoln under a consent order, finding, among other things, that Lincoln had failed to comply with certain laws and that several states had suspended Lincoln's certificate of authority, or otherwise prohibited Lincoln from issuing policies within their borders.  An arbitration proceeding arising out of a reinsurance

agreement between Lincoln and Hannover Life Reassurance Company of America ("Hannover") began on April 14, 2008.

Hannover, who had reinsured some of Lincoln's insurance policies in exchange for premium payments, sought in excess of $28 million for damages caused by Lincoln's misconduct. Lincoln asserted Hannover wrongfully accused Lincoln of fraud and other deliberate misconduct, claimed the arbitration expenses had brought it to the brink of insolvency, and contended Hannover should pay Lincoln over $50 million in compensatory damages. Lincoln also sought $200 million in punitive damages on the basis of Hannover's "grotesque conduct" during the arbitration proceeding.

Several weeks after Lincoln was placed under the April 8, 2008 consent order, top Lincoln officials refused to testify in the Hannover arbitration. The arbitration hearing concluded on April 25, 2008, without any Lincoln witness testifying. The alleged scheme ultimately resulted in causing the Texas Department of Insurance to declare the three defendant entities insolvent, and to petition for an order of rehabilitation in a Texas state court.

On May 13, Lincoln entered into a "Rule 11 Agreement" with the Texas Department of Insurance, consenting to receivership, an agreed Rehabilitation Order, and a permanent injunction. On May 14, 2008, the Texas Receivership Court entered its Order, appointing the Commissioner of Insurance for the State of Texas as Receiver for Rehabilitation ("Rehabilitator"), finding Lincoln to be in a hazardous financial condition, and granting the Rehabilitator all title to Lincoln's property. The Texas Receivership Court issued an automatic stay under Texas Insurance Code § 443.008, and entered a permanent injunction that, among other things, enjoined arbitration against Lincoln, and prohibited persons or any other legal

entities from making any claim, charge or offset against the defendant entities, their property, or the Rehabilitator [ECF No. 925-8]. The Rehabilitator subsequently appointed Plaintiff Jo Ann Howard & Associates, P.C., to serve as the Special Deputy Receiver ("SDR") of NPS, Lincoln, and Memorial. On September 22, 2008, the receivership court entered an order approving the liquidation of Lincoln, and permanently staying the Hannover arbitration.

In the instant case, the SDR, has asserted, against numerous defendants, claims such as violation of the RICO Act, 18 U.S.C. § 1962(d); breach of fiduciary duty; and gross negligence. Other plaintiffs include national and individual state life and health insurance guaranty associations. Plaintiffs' Third Amended Complaint ("TAC") names over forty defendants, including Defendant National City Bank and PNC Bank (collectively referred to as "National City"). In its Answer to Plaintiffs' TAC, National City asserts, among others, the affirmative defense that Plaintiffs failed to mitigate any damages they may have suffered [ECF No. 1018 at 93].

National City recently served Peter A. Scarpato with a subpoena, requesting production of an unissued arbitration award from the 2008 arbitration proceeding between Hannover and Lincoln [ECF Nos. 1437, 1437-1]. Mr. Scarpato was the umpire for the Hannover arbitration. The requested award was never issued because the Texas Receivership Court permanently stayed the arbitration matter, when it placed Lincoln into rehabilitation.

## II. LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure provides that courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although district courts enjoy liberal discretion under the rule,

striking a party's pleadings is an extreme measure, and motions to strike are viewed with disfavor and are infrequently granted. *Stanbury Law Firm, P.A. v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

Where a defense is insufficient as a matter of law, it should be stricken to eliminate the delay and unnecessary expense of litigating it at trial. *See FDIC v. Collins*, 920 F.Supp. 30, 33 (D. Conn. 1996); *RTC v. Youngblood*, 807 F.Supp. 765, 769 (N.D. Ga. 1992); *FDIC v. Eckert Seamans Cherin & Mellot*, 754 F.Supp. 22, 23 (E.D.N.Y. 1990); *Purex Corp., Ltd. v. Gen. Foods Corp.*, 318 F.Supp. 322, 323 (D.C. Cal. 1970).

### III. DISCUSSION

In their Motion, Plaintiffs contend National City's failure-to-mitigate-damages defense should be stricken, and the subpoena served on the Hannover arbitration umpire should be quashed, because National City's actions challenge orders of the Texas Receivership Court,[1] and attack the Texas Department of Insurance's actions after the agency declared NPS, Lincoln and Memorial insolvent and the entities were placed in receivership [ECF No. 1437]. Plaintiffs state the Court previously stuck affirmative defenses challenging the conduct of regulators, and

---

[1]The Court agrees that National City's asserted defense basically constitutes a challenge the receivership court's orders. Significantly, the commencement of the original delinquency proceeding automatically operated as a stay of the Hannover arbitration and other proceedings against Lincoln, in accordance with the Texas Insurer Receivership Act's purpose of "protect[ing] the interest of insureds, claimants, creditors, and the public generally[.]" Texas Insurance Code § 443.001. The automatic stay and permanent injunction enjoining arbitration against Lincoln, resulted from an order issued on May 14, 2008, by the receivership court under Texas Insurance Code § 443.008; and the permanent stay of the Hannover arbitration was ordered by the receivership court when it issued its September 22, 2008 order approving the liquidation of Lincoln. When the Texas Commissioner of Insurance was appointed as Rehabilitator in the May 14, 2008 Order, and designated as Liquidator in the September 22, 2008 Order, he became an officer or agent of the receivership court, subject to its supervision, and he owed a fiduciary duty to comply with the court's orders.

4

dismissed counterclaims brought by other defendants, because their counterclaims concerned post-receivership conduct unrelated to Plaintiffs' claims. They contend "[t]he Court should again prevent a defendant from seeking to inject the conduct of regulators into this case in an attempt to avoid or lessen the consequences of its misconduct."

In its Response in Opposition, National City claims Plaintiffs wrongly seek to cut off its inquiry into their decisions and actions during the course of the supervision, rehabilitation, and receivership proceedings [ECF No. 1490]. National City argues the award is discoverable because it directly concerns causation, a fundamental element of each of Plaintiffs' two remaining claims against National City. National City maintains Hannover's conduct in pursuing claims against Lincoln in the arbitration proceeding, and the SDR's decision to abandon Lincoln's claims against Hannover, proximately caused Plaintiff's alleged injuries.

National City further argues that, while Hannover's claims against Lincoln were stayed by operation of law, claims pursued by Lincoln were not; and it claims, whether the abandonment of Lincoln's claim against Hannover is viewed as an act by the SDR or the Texas Department of Insurance, National City is still entitled to conduct discovery to prove the action was grossly arbitrary and capricious, and a valid defense. It asserts Missouri law governs its ability to assert its failure-to-mitigate defense, and it claims Plaintiff's motion must be denied, because Plaintiff has not cited any Missouri case law establishing the legal insufficiency of National City's defense.

National City contends this Court already rejected Plaintiffs' arguments when it denied a motion asking the Court for an order protecting them from responding to certain document requests made by National City [ECF No. 1064], and it urges the Court to do so again. National

City asserts such an outcome "is so obviously correct that the [SDR] took the unusual and improper additional step of circumventing this Court and obtaining a state court temporary injunction from the Travis County District Court in Austin, Texas, in an attempt to bar National City's discovery of the document at issue – a fully prepared but unissued arbitration award." [ECF No. 1490 at 1]. National City contends discovery in this matter suggests the SDR chose to block the issuance of the award because an arbitration award showing Hannover's wrongdoing caused Lincoln's collapse would undermine Plaintiffs' claims against the pre-need trusts in this matter for losses due to trustee mismanagement. It argues the SDR's failure to collect the award may have proximately caused Lincoln's demise, and the damages Plaintiffs seek from National City.[2]

In their Reply, Plaintiffs contend National City has no cognizable defense, whether styled as "failure to mitigate" or "loss causation," based on the Hannover Arbitration. They argue National Bank's theory that the SDR could have split the arbitration and proceeded with only Lincoln's counterclaims, "defies law and logic." Plaintiffs claim National City wrongly criticizes this and other courts' rulings for purportedly applying federal common law, and they contend Missouri case law precludes National City's purported defense, however styled, as there was no causal connection between the damages caused by National City and the SDR's post-receivership actions, and it was completely reasonable for the SDR not to pursue Lincoln's arbitration counterclaims, because they were premised on the unfounded notion that Lincoln did nothing

---

[2]As an incidental matter, the Court notes the arbitration hearing concluded on April 25, 2008, without any Lincoln witness testifying, a circumstance not assuring confidence that any forthcoming award would be favorable to Lincoln. Furthermore, it was entirely within the receivership court's authority over the arbitration proceeding to issue the injunction.

6

wrong. They claim Missouri law prohibits discovery of arbitration proceedings, and they state no basis for subpoenaing an arbitrator to release an unissued ruling exists.

In this case, the SDR asserts claims against National City for breach of fiduciary duty, and negligence and gross negligence. These causes of action are created by Missouri law. Accordingly, state law governs National City's tort liability, and its ability to assert affirmative defenses to Plaintiffs' claims against it in this matter. *See e.g., Resolution Trust Corp. v. Gibson*, 829 F.Supp. 1103 (W.D. Mo. 1993). The task before this Court is to interpret and apply the relevant rules of state law to determine how Missouri courts would dispose of the issue.

Essentially, National City's mitigation-of-damages defenses seek to diminish, based upon actions taken by the Texas Department of Insurance and the Texas Receivership Court, the amount of any recovery from National City by Plaintiffs. In Missouri, the mitigation-of-damages defense, also known as the rule of avoidable consequences, requires the party damaged through the alleged breach by another of some legal duty or obligation, to make reasonable efforts to minimize the damages incurred as a result of the defendant's breach. *Carpenters' Dist. Council of Greater St. Louis & Vicinity v. Commercial Woodworking & Contracting, Inc.*, 2012 WL 1025203 at * 6 (E.D. Mo. March 26, 2012) (citing *Wolf v. Mo. State Training Sch. for Boys*, 517 S.W.2d 138 (Mo. banc 1974)).

Although a plaintiff has a general duty to mitigate its damages under Missouri law, public policy considerations weigh in favor of treating a regulatory agency differently than a typical plaintiff in a civil case, when the agency is attempting to recover and collect assets. *See Gibson*, 829 F.Supp. at 1107-08; *see also* Mo. Rev. Stat § 374.040.1 (director of department of insurance has duty "generally to do and perform with justice and impartiality all such duties as are or may

7

be imposed upon him by the laws regulating the business of insurance in this state and to perform those duties . . . in such a manner as to be in the best interests [ ] and protect[ion of] the general public, policyholders, insurance companies, and the officers, directors and stockholders thereof[.]"); *Craig v. Stacy*, 50 S.W.2d 104, 106-07 (Mo. 1932) (recognizing special kind of receivership for liquidation of insolvent banks, because they affect public welfare and involve the rights of many individuals who are unable to adequately protect their interests; receiver represents not only corporation, but also the creditors).

Considering the imposition of injunctive relief by the Texas court, Defendants' flawed reasoning concerning any likelihood of recovery, based on facts viewed most favorably to Defendants, and after an examination of the public policy concerns underlying both Texas' and Missouri's insurer insolvency codes, this Court is persuaded Plaintiff is entitled to relief under Federal Rule of Civil Procedure 12(f). The best interests of the general public, policy holders, creditors, and the insolvent insurers will be served by granting the requested relief. The public is the intended beneficiary of the common law duty imposed upon officers and directors of institutions entrusted to their care, and of a regulatory agency's acts. *Fed. Savings & Loan Ins. Corp. v. Burdette*, 718 F.Supp. 649, 662-63 (E. D. Tenn. 1989). The purpose of the Texas Receivership Act is "to protect the interest of insureds, claimants, creditors, and the public generally . . . ." Tex. Ins. Code § 443.001(e). "A receiver is the representative and protector of the interests of all persons, including creditors, shareholders and others, in the property of the receivership." *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 966 (5th Cir. 2012) (internal quotations and citation omitted). Likewise, a key objective of Missouri's insurer insolvency code, Missouri Revised Statutes §§ 375.1150 et seq., is to shore up confidence in the insolvent

insurance company, because insurance companies exist and thrive on public confidence. *A.W. McPherson v. U.S. Physicians Mutual Risk Retention Grp.*, 99 S.W.3d 462, 480 (Mo. Ct. App. 2003). Under Missouri's insurer insolvency statute, the Director of the Missouri Department of Insurance has a duty to regulate insurance companies for the benefit of consumers. Id. at 467.

The Missouri and Texas statutory schemes for insurer rehabilitation and liquidation are both designed to further the same governmental interest of orderly and equitable distribution of insolvent insurers' assets. Texas Insurance Code § 443.005 grants the Texas Commissioner of Insurance the power to commence delinquency proceedings in Texas state courts. Likewise, Missouri Revised Statute § 375.1165 grants the Director of the Missouri Department of Insurance power to petition, upon certain grounds, a court for an order of rehabilitation for troubled insurance companies. In accordance with both states' statutory plans, the receivership court thereafter appoints the Director (or Commissioner), and his successors, as rehabilitator, and directs the rehabilitator to take possession of the insurer's business and assets. Mo. Rev. Stat. § 375.1166; Tex. Ins. Code § 443.101. The purpose of both states' insurer receivership acts is to protect the interests of insureds, creditors, and the public generally. See Tex. Ins. Code § 443.001; Mo. Rev. Stat. § 375.1170.1 ("The rehabilitator shall take such action respecting the pending litigation as he deems necessary in the interests of justice and for the protection of creditors, policyholders, and the public.").

Often, as occurred in this matter with the Texas Department of Insurance, the Director of the Missouri Department of Insurance, as statutory receiver, will appoint a SDR who stands in the shoes of the Director, to perform his duties. *A.W. McPherson*, 99 S.W.3d at 468. "Although SDRs have the same powers as the Receiver, they do not have *carte blanche*; their administration

9

is monitored by the supervising court, which must pre-approve many SDR actions, including . . . abandoning the prosecution or defense of claims deemed unprofitable." *Id.* The SDR, as Receiver's counsel, or as SDR, is an officer or agent of the court, and has a fiduciary duty to comply with the supervising court's orders. *A.W. McPherson*, 99 S.W.3d at 468; Tex. Ins. Code §§ 443.101, 443.102. SDR, as Receiver's employee, is also its agent and fiduciary. *Id.* Due to its broad powers over the receivership estate, the SDR also is a fiduciary of all parties interested in the receivership, and must undertake to care for the property and manage it for creditors. *A.W. McPherson*, 99 S.W.3d at 468-69.

Significantly, both states' insurance codes provide that the receiver and its SDR, when acting with respect to the rehabilitation, enjoys immunity from any claim against them for any act or omission committed in the performance of their functions and duties. *See* Mo. Rev. Stat. §§ 375.1166.4 (official immunity when acting with respect to rehabilitation), 375.1182.5 (absolute immunity when acting with respect to liquidation); Tex. Ins. Code §§ 443.011(c) (action or inaction by department or insurance regulatory authorities in any state may not be asserted as defense to claim by receiver), 443.014(c) (receiver, receiver's assistants, and receiver's contractors are immune from suit and liability, both personally and in representative capacities, for any claim for damage to or loss of property or personal injury or other civil liability caused by or resulting from any alleged act, error, or omission . . . that arises out of or by reason of their duties . . . or is taken at direction of receivership court, providing that alleged act, error or omission is performed in good faith).

Given the similarity of the purposes of Texas' and Missouri's insolvent insurer statutes, the fiduciary duties of their receivers to the general public established in both of those states'

codes, and the states' statutory schemes' immunity provisions, the Court finds Missouri courts would not permit National City to assert a mitigation-of-damages defense attacking the conduct of a receiver in collecting the assets of a failed institution. Furthermore, the Court agrees that Missouri case law likewise supports this finding, as the "efforts which [an] injured party must make to avoid the consequences of the wrongful act or omission need only be reasonable under the circumstances of the particular case." *Cook v. Lenetz*, 764 S.W.2d 682, 683 (Mo. Ct. App. 1988). The Court finds it was not unreasonable for the SDR not to pursue Lincoln's arbitration counterclaims against Hannover, particularly as Lincoln's claims were premised upon its assertion that Hannover, not Lincoln, was the party that perpetuated a fraud.

When previously presented with the question whether corporate officers or directors should be permitted to assert affirmative defenses based on the regulator's actions in this matter, this Court, noting the weight of authority holding regulators owed no duty to directors and officers (the "no duty rule"), ruled the former officers and directors should not be allowed to avoid liability on that basis [ECF No. 569]. On a prior occasion, the Court recognized the underlying public policy rationale applied equally to the accountants or lawyers of insolvent financial entities [ECF No. 1133]. The Court is persuaded that public policy weighs in favor of the public not bearing the risk of any judgment errors by regulators or receivers. "In reaching its decision, this court balanced the danger that the [agency] would never be held accountable if its actions were, in fact, irresponsible, with the policy of not forcing the public to bear the losses for errors in judgment." *Gibson,* 829 F.Supp. at 1108. Accordingly, the Court finds National City's mitigation of damages defense also must be stricken.

This conclusion is supported by long-standing federal case law. "[N]othing could be

more paradoxical or contrary to sound policy than to hold that it is the public which must bear the risk of errors of judgment made by its officials in attempting to save a failing institution – a risk which would never have been created but for defendants' wrongdoing in the first instance." *Burdette*, 718 F.Supp. at 663. In *FDIC v. Bierman*, 2 F.3d 1424 (7th Cir. 1993), the Seventh Circuit examined the FDIC's duty as a receiver to replenish the insurance fund used to cover bank losses allegedly caused by the bank's officers and directors, and, in light of clear congressional intent for the FDIC to exercise its discretion in efforts to do so, concluded FDIC had no duty mitigate damages attributed to those individuals by seeking other avenues of relief. *Id*. at 1439-40.

Following a 1994 decision in which the Supreme Court considered the tort liability of attorneys who provided services to a bank that was subsequently placed in receivership, a split developed among district courts, as to whether affirmative defenses could be raised against a receiver. *See O'Melveny & Meyers v. FDIC*, 512 U.S. 79 (1994). In *O'Melveny*, the Supreme Court held that state law governed the imputation of corporate officers' knowledge to a corporation asserting causes of action created by state law, and determined that corporate officers' knowledge could be imputed to the FDIC suing as a receiver. *Id* at 84-87. *O'Melveny* did not address whether state law affirmative defenses, such as mitigation of damages, could be asserted against the FDIC, and expressly said, "[t]he rules of decision at issue here . . . affect only the FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that has already occurred." *Id*. at 88. Nevertheless, post *O'Melveny*, district courts have reached differing conclusions as to whether affirmative defenses could be asserted against a receiver's action seeking recovery of a troubled institution's assets. *Compare FDIC v.*

12

*Oldenburg*, 38 F.3d 1119, 1122 (10th Cir. 1994) ("[W]hen the FDIC sues to recover on the assets of a failed financial institution, the responsible officers and directors of such institution may not assert the affirmative defenses of contributory negligence and mitigation of damages against the FDIC."*); FDIC v. Mahajan*, 2013 WL 3771419 at *2 (N.D. Ill. July 16, 2013) (while post-*O'Melveny* split among district courts evidences its effect on "no duty rule," court was not "powerfully convinced" that relationship between *O'Melveny* and *Bierman* was so clear that it should go against binding precedent barring mitigation-of-damages defense against FDIC based on its conduct as receiver); *FDIC v. Raffa*, 935 F.Supp. 119 (D. Conn. 1995) (rejecting affirmative defenses, including mitigation of damages, which asserted either some duty was owed and breached by FDIC, or which challenged FDIC's discretionary decisions); *Resolution Trust Corp. v. Moskowitz*, 1994 WL 16190856 at *6 (D. N.J. Aug. 12, 1994) (noting *O'Melveny* did not address defenses implication pre- or post-receivership actions of the receiver, and holding RTC has no duty to officers, directors of failed institution, or institution's retained professionals); *Resolution Trust Corp. v. Sands*, 863 F.Supp. 365 (N.D. Tex. 1994) (neither the holding nor reasoning of *O'Melveny* calls into question the rulings and rationale of Fifth Circuit precedent holding the FDIC is not subject to affirmative defense of failure to mitigate damages when it sues former directors and officers in its corporate capacity to recover losses sustained by insolvent financial institution); *with FDIC v. Skow*, 741 F.3d 1342 (11th Cir. 2013) (determining FDIC was unentitled to partial summary judgment as it had failed to demonstrate existence of established and long-standing common law rule barring defendants' affirmative defenses); *FDIC v. Ornstein*, 73 F.Supp.2d 277 (E.D. N.Y. 1999) (no duty rule abrogated); *Resolution Trust Corp. v. Liebert*, 871 F.Supp. 370 (C.D. Calif. 1994) (stating it respectfully disagreed with majority position that

13

"no duty" rule applied to post-Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") suits, and concluding no duty rule abrogated by *O'Melveny*). The Court concludes finding a duty on behalf of a regulatory agency that would relieve National City of liability for misconduct would not comport with the agency's duty to the general public and the insurance funds it is charged to protect, or with the congressional scheme of the insolvent insurer statutes in Missouri or Texas.

The Court finds National City's failure-to-mitigate-damages defense is legally insufficient as a matter of law. *See FDIC v. Coble*, 720 F.Supp. 748, 750 (E.D. Mo. Sept. 18, 1989) (defense is insufficient if, as a matter of law, it cannot succeed under any circumstances; defense is immaterial if it bears no essential relationship to claim for relief). In Missouri, the failure-to-mitigate-damages defense requires a showing that the plaintiff's behavior was causally related to the damages the plaintiff claims the defendant caused. *See* MAI 4.01, 32.29. Here, Plaintiff's allegations of negligence and breach of fiduciary duty asserted against National City concern actions taken by National City prior to the date the Texas Receivership Court appointed the Receiver. National City's affirmative defense concerns actions or omissions by the Receiver, or the SDR as his agent, after that date. National City takes the position that the transaction under consideration is the movement of Lincoln toward insolvency. However, Lincoln's insolvency is not the crux of the plaintiffs' claims. The TAC's claims concern alleged breaches of fiduciary duties owed by officers and directors of National City in their management of certain Lincoln pre-need trust accounts, which led to specific losses on these accounts. The transaction at issue here is the specific actions or inactions of discrete individuals causing losses in identified trust accounts:

14

> As a direct and proximate result of [the trustee defendants' failures, breaches of fiduciary duties, and negligent and grossly negligent conduct], the Rico Defendants . . . were able to manipulate trust assets and siphon millions of dollars from the NPS pre-need trusts, such that the trusts lacked sufficient assets to provide consumers their pre-paid funeral services.

[ECF No. 916 at 184, 186]. National City's failure-to-mitigate damages defense does not relate to the transaction at issue in the TAC. Furthermore, Lincoln would have been able to assert these same claims against National City, even if Lincoln had managed to remain solvent. Because National City's affirmative defense is not causally related to the damages Plaintiffs claims National City caused, it must be stricken. *See Coble*, 720 F.Supp. at 750; *Earll v. Consol. Aluminum Corp.*, 714 S.W.2d 932, 935 (Mo. Ct. App. 1986).

Here, as in failed savings institutions, the receiver's ability to recover assets, or damages for wrongdoing, quickly and efficiently, is important to the public. *See Burdette*, 718 F.Supp. at 663. Considering all of the circumstances of this case, receivership proceedings initiated to perform these functions will not be encumbered by a court order legitimizing a proffered mitigation of damages defense; particularly, not at the behest, or on the behalf, of an alleged wrongdoer attempting to reduce the receiver's recovery. *Id.* at 663-64.

Plaintiffs additionally contend National City's subpoena violates the order of the Texas Receivership Court [ECF No. 925-8]. This Court agrees. *See* Tex. Ins. Code 443.008 (commencement of delinquency proceeding operates as stay of continuation of judicial, administrative, or other action or proceeding against the insurer, including an arbitration proceeding commenced before delinquency proceeding); Mo. Rev. Stat. § 435.014 (arbitration proceedings regarded as settlement negotiations; arbitrators may not be subpoenaed or otherwise compelled to disclose any matter disclosed in the process of conducting the arbitration).

15

The most recent case management order was filed in this case on April 16, 2013. Fact discovery ends June 1, 2014. National City's attempt to pursue a collateral action at this stage of the case, based on a mitigation-of-damages defense as a wrongdoer attempting to reduce the receiver's recovery, will not be permitted. Thus, the Court also finds the subpoena served on Mr. Scarpato, seeking the unissued Hannover arbitration award, should be quashed. Because such discovery could be relevant only to the stricken mitigation-of-damages defense, a request seeking such information properly should be denied. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). The Court will grant Plaintiffs' Motion.

Accordingly,

**IT IS HEREBY ORDERED** that "Plaintiffs' Motion to Strike National City Bank's Failure to Mitigate Damages Defense and Quash Its Subpoena" [ECF No. 1437] is **GRANTED**. Dated this   9th   day of May, 2014.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE