# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| JO ANN HOWARD AND ASSOCIATES, P.C., SPECIAL DEPUTY RECEIVER OF LINCOLN MEMORIAL LIFE INSURANCE COMPANY, MEMORIAL SERVICE LIFE INSURANCE COMPANY, AND NATIONAL PREARRANGED SERVICES, INC., et al., | ) ) ) ) ) ) ) ) | |
| Plaintiffs | ) ) | Case No. 09-CV-1252 ERW |
| v. | ) ) | |
| J. DOUGLAS CASSITY; RANDALL K. SUTTON; BRENT D. CASSITY; J. TYLER CASSITY; RHONDA L. CASSITY; et al., | ) ) ) ) | |
| Defendants. | ) | |

## COMERICA BANK AND TRUST, N.A.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SEPARATE TRIAL

Defendant, Comerica Bank and Trust, N.A.("Comerica"), by and through its attorneys, respectfully submits this memorandum of law in support of its Motion for Separate Trial pursuant to Federal Rules of Civil Procedure 42(b) and 20(b). In support of its Motion, Comerica states as follows:

## RELEVANT BACKGROUND FACTS

On May 3, 2012, Plaintiffs filed their current complaint, a 224 page Third Amended Complaint ("Complaint"), which asserts 42 causes of action against over 40 defendants. (Dkt. 916). Due to the number of claims and defendants, this matter is currently scheduled for an ***eleven week jury trial*** starting on February 2, 2015.

The Complaint separates the defendants into various groups, including the "RICO Defendants," the "Promissory Note Defendants," the "Fraudulent Transfer Defendants," the

"D&O Defendants," the "Investment Advisor Defendants," the "Trustee Defendants," and the "Attorney Defendants."  Each of the causes of action are directed at one or more group of defendants.  For example, the Complaint alleges 16 causes of action against the RICO Defendants, who allegedly perpetrated *inter alia* a Ponzi-like scheme siphoning money away from NPS, Lincoln, and Memorial and looted NPS' pre-need trusts. (Dkt. 916, Compl. at ¶ 7).  The claims against the RICO Defendants assert claims such as violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), violations of the Lanham Act, and fraud.  The Complaint further alleges that certain professionals, such as attorneys, auditors and investment advisors did not properly perform their professional duties.

With respect to the Trustee Defendants, plaintiffs differentiate between the "Missouri Trustee Defendants" and the "Iowa Trustee Defendants," and allege different facts and claims relating to the NPS trusts held in Missouri and the one NPS trust held in Iowa. (Dkt. 916, Compl. at pp. 88-124).

The allegations relating to the Missouri Trustee Defendants involve *eight trusts* that were created and operated under Missouri law from 1989 through 2008.  (Dkt. 916, Compl. at ¶¶ 169-171.1).  The Complaint alleges that from 1995 to 2008, certain improper actions were taken with respect to the life insurance policies that were allegedly held in trust in the Missouri trusts.  For example, plaintiffs allege that NPS took out more than $116 million in policy loans from the life insurance policies that were held in the Missouri trusts.  The Complaint also alleges that promissory notes and debentures were taken against the Missouri trusts during this time.  Plaintiffs further allege that the life insurance policies held in the Missouri trusts were allowed to lapse, and that NPS cancelled policies, surrendered whole life policies, received the cash values and replaced them with term policies.  According to the allegations in the Complaint, the

2

Missouri Trustee Defendants purportedly approved and authorized these actions by NPS.  The Complaint also alleges that two of the Missouri trustees were warned by regulators.  (Dkt. 916, Compl. at ¶¶228.5-228.18).

Conversely, the allegations relating to the Iowa Trustee Defendants involve only *one trust*, the NPS Iowa Trust, which was created and operated from 2002 through 2008.  Unlike the allegations relating to the Missouri trusts, the Complaint does ***not*** allege that any policy loans were taken out on the insurance policies held in the NPS Iowa Trust; it does ***not*** allege that any promissory notes or debentures were taken against the NPS Iowa Trust assets; it does ***not*** allege that NPS cancelled policies in the NPS Iowa Trust, surrendered whole life policies, received the cash values and replaced them with term policies.  Instead, the only allegations with respect to the Iowa Trustee Defendants are that they failed they failed to take custody of the life insurance policies (*id.* at ¶¶ 228.40-44), that they improperly allowed funds to be invested in the life insurance policies (*id.* at ¶¶ 228.100-111), and that the Iowa trust agreement violated Iowa law (*id.*at ¶¶ 228.180-182).

Of the 42 causes of actions alleged in the Complaint, only four of the claims are directed at Comerica and the Iowa Trustee Defendants: (1) breach of fiduciary duty (Count 19); (2) negligence and gross negligence (Count 20); (3) unjust enrichment (Count 28), and (4) money had and received (Count 29).

Notably, different law applies to the claims against Comerica than that applicable to the Missouri Trustee Defendants.  The Iowa Trust Agreement explicitly provides that it, and Comerica's performance thereunder, is governed by Iowa law, including Chapter 523A of the Iowa Code.  *See* Art. VII and Section 4.5 of the Iowa Trust Agreement, attached hereto as **Exhibit A**.  As such, Iowa law, including Chapter 523A and Iowa law on directed trustees,

3

governs the claims against Comerica. Conversely, the Missouri Trusts and the claims against the Missouri Trustee Defendants are governed by Missouri law. Therefore, the jury will have to apply different law and different standards to the Iowa Trustee Defendants.

Most recently, on September 5, 2014, Plaintiffs filed a Motion For Leave To Amend Complaint and Remove Certain Defendants And Claims ("Motion to Amend"). [Dkt. # 1663]. Plaintiffs' Motion to Amend seeks leave to file a Fourth Amended Complaint that adds new allegations and claims for *aiding and abetting* against the Missouri Trustee Defendants. Unlike the allegations against the Missouri Trustee Defendants, there are **no** allegations that Comerica or the Iowa Trustee Defendants aided and abetted, or otherwise conspired with, the RICO Defendants. And, *none* of the new claims for aiding and abetting are asserted against Comerica or the Iowa Trustee Defendants.

Fact discovery is now closed. During the fact discovery period, over 85 depositions were conducted. Of those 85 depositions, less than 5 related to Comerica and very few even mentioned the Iowa Trust. With regard to expert discovery, plaintiff has identified 8 experts. Only two of the eight experts offer an opinion relating to Comerica or the Iowa Trustee Defendants: Edgar Coster (who opines on the purported standard of care for all of the Trustee Defendants) and Jonathon Arnold (who opines on all of plaintiffs' purported damages). A review of these experts further reveals the need for separate trials and the extreme prejudice and inconvenience that will be suffered by the Iowa Trustee Defendants with a combine trial.

Mr. Coster submitted a 60-page expert report; yet, his discussion of Comerica was limited to approximately *one page*. Mr. Coster acknowledges in his report that Iowa law, including Chapter 532A of the Iowa Code applies to Comerica; whereas, Missouri law applies to the Missouri Trustee Defendants.

4

Likewise, Mr. Arnold submitted a 56-page expert report, and his discussion of Comerica was limited to *two paragraphs*. Mr. Arnold initially opined that plaintiffs' alleged damages attributed to the Iowa trust totaled $10,276,004 (he later provided an "errata" report that increased his damages opinion relating to the Iowa trust total $21,373,960). By comparison, Mr. Arnold opined that plaintiffs suffered a total of $514,589,251 relating to the Missouri trusts. Thus, even with his increased "errata," the total alleged damages attributed to the Iowa trust is merely four percent (4%) of the total damages alleged by Plaintiffs.

Not only are the facts, law and plaintiffs' Iowa claims separable, but there are separate affirmative defenses that apply to Comerica. For example, as stated in its Second Affirmative Defense, Comerica is contractually entitled to be indemnified or held harmless by plaintiffs since NPS and Comerica entered into an Amendment to their Iowa Trust Agreement, which amended subsection 4.2(h) of the Iowa Trust Agreement such that the "Trustee [Comerica] shall not be required to engage in administrative proceedings or litigation without being indemnified. . .." (*see* Dkt. 1060, p. 46; Amendment, attached hereto as **Exhibit B** at ¶ 1).

## ARGUMENT

### A.   Legal Standard For Separate Trials.

Federal Rule of Civil Procedure 42(b) provides that a "court may order a separate trial of one or more separate issues, claims, cross-claims, counterclaims, or third-party claims" in order to further "convenience, to avoid prejudice, or to expedite and economize" the trial. Fed. R. Civ. P. 42(b). Federal Rule Civil Procedure 20(b) further provides that the court may order a separate trial in order "to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party." Fed. R. Civ. P. 20(b).

5

The decision to separate or bifurcate issues for trial is within the sound discretion of the trial court. *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202, 1209 (8th Cir. 1995) (affirming bifurcation of the issues for trial); *EEOC v. McDonnell Douglas Corp.*, 960 F. Supp. 203, 204 (E.D. Mo. 1996). "District judges should be given considerable latitude in deciding the most efficient and effective method of disposing of the issues in a case, so long as a party is not prejudiced." *Rolscreen Co.*, 64 F.3d at 1209. The trial court will not have abused its discretion by bifurcating the case where the issues in the case are clearly separable. *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1202 (8th Cir. 1990) citing *Beeck v. Aquaslide ' N' Dive Corp.*, 562 F.2d 537 (8th Cir. 1977) (affirming bifurcation of the trial on the issue of whether the product was manufactured by the defendant because evidence of the plaintiff's substantial injuries and damages may have been prejudicial to the defendant's claim of non-manufacture).

"In exercising discretion, district courts should consider the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion." *O'Dell*, 904 F.2d at 1202. If the trial court finds that considerations of "convenience, clarity, and the avoidance of confusion and prejudice" outweigh "the immediate and superficial economies which might be achieved by conduct[ing] a single trial," then the court can, in its discretion, order that the trial be separated. *Manufacturers Bank & Trust Co. v. Transamerica Ins. Co.*, 568 F. Supp. 790, 793 (E.D. Mo. 1983); *see also Kosters v. The Seven-Up Company*, 595 F.2d 347, 356 (6th Cir.1979).

**B.     Separate Trials Will Prevent Jury Confusion And Undue Prejudice To Comerica.**

Ordering separate trials is proper in this case under Rule 42(b) and Rule 20(b) because it will prevent jury confusion and avoid prejudice to Comerica and the Iowa Trustee Defendants. The facts alleged in plaintiffs' Iowa claims are separate, different statutory law applies, and the jury will be required to assess this breadth of law, facts and claims over an ***eleven week*** trial and

6

face a nearly impossible task of processing the law, facts and differentiating between the Iowa parties and claims. If the claims against Comerica are heard along with the claims against the RICO Defendants, the Fraudulent Transfer Defendants, the D&O Defendants, the Investment Advisor Defendants, the Attorney Defendants, and the Missouri Trustee Defendants, Comerica will be denied a fair trial because the trial against the other defendants will distract and confuse the jury as to the issues relative to the claims against Comerica.

The evidence relating to the claims against Comerica and the Iowa Trustee Defendants is minimal compared to plaintiffs' other claims such that a trial relating to plaintiffs' Iowa claims would likely last less than one week.  On the contrary, having Comerica and the Iowa Trustee Defendants sit through an 11 week trial would be uneconomical and cause extreme prejudice and inconvenience to Comerica and the Iowa Trustee Defendants and lead to a very substantial likelihood that the jury will be unable to correlate the specific facts relating to Comerica and distinguish Comerica's involvement.

Plaintiffs have attempted to lump the trustee defendants together, referring to them as the "Trustee Defendants" many times without differentiating between the conduct of the trustee defendants.  Now that fact discovery is complete and plaintiffs' expert reports have been disclosed, it is clear that the plaintiffs' claims against Comerica and the Iowa Trustee Defendants are separable and should be tried separately to avoid prejudice and jury confusion.

For these reasons, separate trials is proper under Rule 42(b) and Rule 20(b) to "avoid prejudice" to Comerica (Fed. R. Civ. P. 42(b)) and to protect against "prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party" (Fed. R. Civ. P. 20(b)).

**C.      Separate Trials Will Protect Against Unnecessary Expense And Delay**

Separate trials are also proper under Rule 20(b) "to protect a party against embarrassment, delay, expense..."  If the trials are not separated, Comerica will be forced to incur the unnecessary and substantial expense of having its attorneys attend eleven weeks of trial, much of which will be irrelevant to the claims against Comerica.  The claims against Comerica could likely be heard in just a few days.  There is simply no reason Comerica should have to sit through eleven weeks of irrelevant testimony to have its day in Court.

Accordingly, ordering a separate trial on the claims against Comerica or the Iowa Trustee Defendants is additionally proper under Rule 20(b) to avoid unnecessary expense and would not prejudice Plaintiffs.

## CONCLUSION

For the foregoing reasons, Comerica respectfully requests that pursuant to Federal Rules of Civil Procedure 42(b) and 20(b), this Court order a separate trial for the claims against Comerica and/or the Iowa Trustee Defendants.

Dated:  September 26, 2014                    Respectfully submitted as to objections,

**COMERICA BANK & TRUST, N.A.**

By: s/ Harry N. Arger _____
One of its Attorneys
Harry N. Arger MO BAR #38838
Michelle K. Schindler Bar # 6293710IL
Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, Illinois 60606
Tel: (312) 627-2127
harger@dykema.com
mschindler@dykema.com

8

John Mark Hongs
Clayborne, Sabo & Wagner LLP
525 W. Main St., Ste. 105
Belleville, IL 62220
Tel. (618) 310-1086
jhongs@cswlawllp.com

*Attorneys for Comerica Bank & Trust, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2014, the foregoing Comerica Bank And Trust, N.A.'S Memorandum In Support Of Its Motion For Separate Trial was filed electronically with the Clerk of Court and served by operation of the Courts electronic filing system upon all counsel of record in this case participating in Electronic Case Filing.

I hereby further certify that on September 26, 2014, the foregoing was sent by United States Postal Service, as indicated below, to the foregoing non-participants in Electronic Case Filing:

Randall J. Singer, *Pro se*
10833 Forest Circle Dr.
St. Louis, MO 63128

Brent Douglas Cassity, *Pro se*
Register #38224-044
USP Leavenworth
U.S. Penitentiary Sattelite Camp
P.O. Box 1000
Leavenworth, KS 66048

Sharon Nekol Province, *Pro se*
Register #36759-044
FMC Carswell
Federal Medical Center
P.O. Box 27137
Fort Worth, TX 76127

Tony B. Lumpkin, III, *Pro se*
2125 Amur Drive
Austin, TX 78745-2085

David R. Wulf, *Pro se*
Register #38227-044
FCI Terre Haute
Federal Correctional Institution
Satellite Camp
P.O. Box 33
Terre Haute, IN 47808

James Douglas Cassity, *Pro se*
Register #02005-045
USP Marion
U.S. Penitentiary
Satellite Camp
P.O. Box 1000
Marion, IL 62959

Randall K. Sutton, *Pro se*
Register #36549-044
FCI Terre Haute
Federal Correctional Institution
Satellite Camp
P.O. Box 33
Terre Haute, IN 47808

Wulf, Bates & Murphy, Inc.
c/o David R. Wulf
2714 Hillcroft Drive
Chesterfield, MO 63017

  /s/ Michelle K. Schindler
Michelle K. Schindler