UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


| | | |
|---|---|---|
| JO ANN HOWARD AND ASSOCIATES, P.C., ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No.: 4:09-cv-1252 ERW |
| J. DOUGLAS CASSITY, ET AL., | ) ) ) | |
| Defendants. | ) | |


# *DEFENDANT BROWN SMITH WALLACE, LLC'S REPLY IN SUPPORT OF MOTION TO STRIKE PLAINTIFF SDR'S EXPERT SHAHRIAR ARFA-ZANGANEH'S OPINIONS ON CAUSATION AND DAMAGES*

COMES NOW Defendant Brown Smith Wallace, LLC (hereinafter "BSW"), by and through the undersigned counsel, and respectfully submits this Reply in Support of Motion to Strike Plaintiff SDR's Expert Shahriar Arfa-Zanganeh's Opinions on Causation and Damages.

## *INTRODUCTION*

Initially, it is necessary to correct Plaintiff SDR's misstatement of the facts. Plaintiff SDR states, "[d]uring BSW's 2004 audit of Lincoln in particular, BSW uncovered significant fraudulent activity and illicit related-party transactions taking place within Lincoln." (Plaintiff SDR's Opposition [Doc. 1808], Pg. 1-2). As is a pattern throughout her Opposition, Plaintiff SDR does not cite to the record to support this allegation.

However, the reason there is no supporting citation is because there is in fact no record evidence BSW had <u>actual</u> knowledge of the fraud taking place within the Companies. This

allegation is not accurate, and is not supported by the evidence. Moreover, Plaintiff SDR has only asserted a professional negligence claim, not a fraud claim, against BSW. (Third Amended Complaint [Doc. 916], 25th Claim for Relief). Plaintiff SDR's suggestion that BSW had actual knowledge of the fraud should be disregarded.

## *ARGUMENT*

**I.     MR. ARFA-ZANGANEH'S OPINIONS ON CAUSATION AND DAMAGES ARE INADMISSIBLE BECAUSE HE LACKS THE REQUISITE PROFESSIONAL QUALIFICATIONS TO RENDER ALL OF THE OPINIONS CONTAINED IN HIS REPORT.**

As a threshold gatekeeping duty, a court must determine whether "knowledge, skill, experience, training, or education" qualifies a proposed expert to opine about a certain subject. *Hale County A&M Transport, LLC v. City of Kansas City, Mo.*, 998 F.Supp.2d 838 (W.D. Mo. 2014). It is reversible error if a trial court fails to properly confine an expert's testimony to areas within his or her expertise. *Hale County,* 998 F.Supp.2d at 843.

Plaintiff SDR bears the burden to establish "sufficient facts" demonstrating by a preponderance of the evidence that Mr. Arfa-Zanganeh is qualified to testify to: (1) what TDI regulators would have done if the 2004 audits were different and (2) when the TDI regulators would have taken such action. *Id.* at 842-43 (requiring the proponent of expert testimony to set forth specific and "sufficient" facts demonstrating an expert's practical experience); *see also* (Exhibit A [Doc. 1706], Pg. 61) (BSW's Memorandum in Support [Doc. 1699], Sect. I). Essentially, Mr. Arfa-Zanganeh must be qualified to step into the mind of TDI regulators to predict their thoughts and reactions based on a hypothetical set of facts.

Plaintiff SDR attempts to meet her burden in two ways: (1) offering evidence of Mr. Arfa-Zanganeh's experience as a CPA in the insurance industry and (2) offering vague

statements about Mr. Arfa-Zanganeh's observation of insurance regulators.[1]  Neither of these

forms of evidence satisfy Plaintiff SDR's burden.

First, Plaintiff SDR offers evidence Mr. Arfa-Zanganeh is a CPA who has "gained

substantial experience in auditing insurance and reinsurance entities."  (Plaintiff SDR's

Opposition [Doc. 1808], Pg. 5).  This evidence, however, misses the mark.  BSW does not

challenge Mr. Arfa-Zanganeh's qualifications to testify on accounting standards in the insurance

industry.

Rather, BSW challenges Mr. Arfa-Zanganeh's attempt to testify in the area of insurance

regulation—specifically when and why insurance regulators order insurance companies into

rehabilitation or liquidation.  Insurance regulation is an entirely different area of expertise than

accounting.   Insurance regulators have vastly different certifications, training, practical

experience, obligations, goals, restrictions, pressures and motivations than a privately-employed

accountant, such as Mr. Arfa-Zanganeh.  **It is undisputed Mr. Arfa-Zanganeh has never acted**

**or worked as an insurance regulator and has no such relevant experience.**  (Exhibit C [Doc.

1706-2], 82:6-10) (BSW's Memorandum in Support [Doc. 1699], Sect. I).

Working in the general insurance industry in an entirely different capacity than as an

insurance regulator does not meet the burden of proof here.  Mr. Arfa-Zanganeh may have

familiarity with insurance regulation due to his experience in the general insurance industry, but

**familiarity does not equal expertise**.  *See Hale County*, 998 F.Supp.2d at 843 ("[w]hile this

statement suggests [the proposed expert] has some familiarity [with the subject area in question],

---

[1] It is not disputed Mr. Arfa-Zanganeh is <u>only</u> basing these opinions on his own alleged experience, not on the opinion of an actual insurance regulation expert, any communications with the TDI regulators, or any other outside sources.  (Exhibit C [Doc. 1706-2], 79:9-80:13; 82:11-83:1).  Therefore, if this Honorable Court agrees he is not qualified to give these opinions, these opinions and the calculation of damages that is based upon these opinions must be excluded.

it does not demonstrate that he is an expert"). "The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas." *Travelers Property Cas. Co. of America v. Nat'l Union Ins. Co. of Pittsburgh, PA.,* 557 F.Supp.2d 1040, 1048-1051 (W.D. Mo. 2008) (holding that an insurance broker with extensive experience in the insurance industry was not an expert on subrogation); *see also e.g., Spin Doctor Golf, Inc. v. Paymentech, LP,* 296 S.W.3d 354, 360 (Tx. Ct. App. 2009); *Kozak v. Medtronic, Inc.*, 512 F.Supp.2d 913, 918 (S.D. Tex. 2007); *Hale County*, 998 F.Supp.3d at 842-844.[2]

Second, Plaintiff SDR offers numerous vague statements about Mr. Arfa-Zanganeh's "involvement" with insurance regulators. For example, she states he: (1) "worked directly with state insurance examiners and regulators while providing rehabilitation services to special deputy receivers and liquidators;" (2) "worked alongside insurance examiners and regulators while acting as Chief Financial Officer and Controller for multiple insurance companies;"[3] (3) has "been retained by numerous state insurance departments to provide attestation services for insurance companies facing liquidation;" (4) "performed fraud examinations of insurance companies on behalf of insurance regulatory agencies, and prepared damages calculations and

---

[2] Plaintiff SDR's criticism throughout her Opposition of the cases BSW cited to is ineffective since she agrees the cited cases hold exactly what BSW cited them for and she fails to show how the facts of this case are distinguishable from the cited cases. For example, Plaintiff SDR criticized BSW's citation to the *Spin Doctor, Kozak,* and *Hale County* cases, but BSW properly cited to these cases to support the very legal rule Plaintiff SDR mentions—a witness does not necessarily possess expertise in a specific area simply because that witness has experience within the general industry of that area. (Plaintiff SDR's Opposition [Doc. 1808], Pg. 7) (BSW's Memorandum in Support [Doc. 1699], Sect. I). Similarly here, Mr. Arfa-Zanganeh is not an expert on insurance regulation just because he has experience in the general insurance industry.

[3] Plaintiff SDR cites to Mr. Arfa-Zanganeh's CV as support for statements (1) and (2); however, his CV does not truly support the entirety of these statements. (Plaintiff SDR's Opposition [Doc. 1808], Pg. 5-6). His CV states he has provided the following professional services: (1) "Rehabilitation services including assistance to special deputy receivers and liquidators;" and (2) "Acted as interim Chief Financial Officer/Controller for three insurance companies for one and half years." (Exhibit B [Doc. 1706-1]). His CV does not state he: (1) "worked directly with state insurance examiners and regulators;" or (2) "worked alongside insurance examiners and regulators." (Plaintiff SDR's Opposition [Doc. 1808], Pg. 5-6) (Exhibit B [Doc. 1706-1]).

analyses relating to distressed insurance companies;"[4] (5) has "been involved with many, many, many, insurance rehabilitations and liquidations;" (6) has "worked on several insurance receiverships, rehabilitations, and liquidations;" and (7) has "come into contact with many regulators and observed how they arrived at decisions with regard to placing companies into supervision." (Plaintiff SDR's Opposition [Doc. 1808], Pg. 5-6, 9).

None of these statements contain "sufficient facts" demonstrating Mr. Arfa-Zanganeh's expertise—there are absolutely no specifics provided here. This is Plaintiff SDR's opportunity to fight for Mr. Arfa-Zanganeh and to show with specific examples exactly how "involved" he has been with insurance regulators. Instead, she merely states he has been involved in "many, many insurance rehabilitations and liquidations," and provides no specific information. (Plaintiff SDR's Opposition [Doc. 1808], Pg. 5-6). There is no indication from these vague statements what the situation was, how Mr. Arfa-Zanganeh was involved, how substantial his involvement was, how long he was involved, how many times he has been involved in a distressed insurance company situation, when these situations took place, where these situations took place, what companies and types of companies were involved, or when he became involved in the process— before the insurance regulators intervened, during, or after intervention—since each stage of this process can be drastically different and the "before" stage is most relevant here.

This specific information has not been put before the Court. It is not in Mr. Arfa-Zanganeh's Report (Exhibit A [Doc. 1706]), CV (Exhibit B [Doc. 1706-1]), deposition (Exhibit C [Doc. 1706-2]), or Plaintiff SDR's Opposition [Doc. 1808]. Without more foundation, this

---

[4] This is contrary to Mr. Arfa-Zanganeh's deposition testimony where he testified he has never acted or worked as an insurance regulator and his only experience working with any state insurance department was working once with Arizona to examine underwriting issues and claim information reviews on non-standard auto policies. (Exhibit C [Doc. 1706-2], 82:6-10; 80:17-82:10). Contrary to what Plaintiff SDR would lead one to believe, this experience is not relevant to this case.

Honorable Court is left to speculate on Mr. Arfa-Zanganeh's experience. If this Honorable Court is required to speculate as to these material facts, then it is readily evident Plaintiff SDR has not carried her burden. *See e.g., Hale County*, 998 F.Supp.3d at 843 (stating if a court is left to speculate as to material facts of the witness' qualifications, the burden of admissibility has not been met).

At best, these vague statements demonstrate Mr. Arfa-Zanganeh has observed insurance regulators from afar—although in what capacity, situation, or how often is left unanswered. But again, Plaintiff SDR's evidence misses the mark. **Mere observation does not equal expertise.**

For example, in *Hale County, supra*, the proposed expert had unquestionable expertise as a pilot and air traffic controller, but he sought to testify in the area of snow removal on an airport runway. *Hale County,* 998 F.Supp.2d at 841-42. The purported foundation for doing so consisted of a statement in his report that read: he had "experience in observing and working with airport operations personnel during snow removal events." *Id.* at 842. The court held this statement alone was vague and left the court to speculate on the witness' actual experience. *Id* at 843. The court also found that without demonstrating the witness had education, training, or relevant practical experience managing airport operations personnel during snow removal events or personal experience participating in such events, mere observation of someone else doing snow removal was not enough to establish expertise.[5] *Id.* at 843. The court further explained the expert's lack of qualifications was not an issue for cross-examination, but that the material deficiencies went to the core of admissibility. *Id.* at 843-44. The District Court for the Western District of Missouri excluded the proposed testimony. *Id.* at 844.

---

[5] Contrary to Plaintiff SDR's contention, the *Hale County* court never states an "expert's observation can properly form the basis for his opinion." (Plaintiff SDR's Opposition [Doc. 1808], Pg. 8); *Hale County,* 998 F.Supp.3d at 843-44.

Just as in *Hale County, supra,* here, Plaintiff SDR offers only vague statements that at best show Mr. Arfa-Zanganeh has merely observed insurance regulators.[6] Plaintiff SDR offers no evidence Mr. Arfa-Zanganeh has relevant education, training, or practical experience in the area of insurance regulation of distressed companies. Just as the court held in *Hale County, supra,* these material deficiencies go to the admissibility of his opinions, not to the weight of his testimony. This is not a question of whether Mr. Arfa-Zanganeh is the best expert in this area, but whether he is an expert at all. As the court ruled in *Hale County, supra*, this Honorable Court should likewise find Mr. Arfa-Zanganeh is not qualified to testify on what insurance regulators in Texas would have done and when. His opinions on causation and damages should be excluded.

**II.  MR. ARFA-ZANGANEH'S OPINIONS ON CAUSATION AND DAMAGES ARE INADMISSIBLE BECAUSE THEY ARE SPECULATIVE, FUNDAMENTALLY FLAWED, AND THEREFORE, UNRELIABLE.**

**A.  *Mr. Arfa-Zanganeh's Opinions on Causation and Damages are Not Reliable Because He Based his Opinions on Speculation and Insufficient Facts.***

For an expert opinion to be reliable, "there must be more than a subjective belief or unsupported speculation." *Kinergy Corp. v. Conveyor Dynamics Corp.*, No. 4:01CV00211-ERW, 2003 WL 26110512 *6 (E.D. Mo.). It is Plaintiff SDR's burden to demonstrate by a preponderance of the evidence Mr. Arfa-Zanganeh's opinions on causation and damages are supported by sufficient facts and reliable. *Id.*

Plaintiff SDR admits that Mr. Arfa-Zanganeh's opinions are based solely upon: (1) the claim that because fraud was present, TDI regulators had the authority to place the Companies in rehabilitation or liquidation and (2) his own "personal" opinion. (Plaintiff SDR's Opposition

---

[6] There is no evidence however, he has actually ever observed insurance regulators decide to place an insurer into rehabilitation or liquidation.

[Doc. 1808], Pg. 10-11) (Exhibit C [Doc. 1706-2], 79:9-80:13; 82:11-83:1). This is not sufficient foundation.

First, BSW does not challenge that the TDI may have had the authority to order the Companies into rehabilitation or liquidation—that is not the issue. There is a fatal gap in Plaintiff SDR's reasoning here. Just because the TDI could have placed the Companies in rehabilitation or liquidation, does not necessarily mean it would have. The TDI had a plethora of other options available to it in such a situation and numerous reasons why rehabilitation and liquidation were not its first choice. (*See* BSW's Memorandum in Support [Doc. 1699], Pg. 14; *see also* Pg. 14-15 for a discussion of how placing the Companies in rehabilitation did not necessarily mean they would have had to stop issuing new policies).

The reality was that the TDI was not ignorant of the history of these Companies; it "examined" the Companies (or predecessor companies) five times between 1995 and 2008. (TDI employee Slape Deposition Transcript, attached hereto as Exhibit G, 36:24-37:11). It had made notes of concerning activities as early as 1996, when it placed the Companies on administrative oversight. (Exhibit G, 62:1-68:14). Despite this ongoing knowledge, the TDI chose not to investigate further or place the Companies in rehabilitation or liquidation—as Mr. Arfa-Zanganeh would lead one to believe the TDI would have been quick to do in 2005. Instead, the TDI chose to pursue other options, such as fines, administrative oversight, referring issues to the Texas Department of Banking, and deferring issues to the Missouri Department of Insurance. (Exhibit G, 68:15-72:23; 90:3-96:15).

Even after the TDI began to learn more in depth of the insolvency and fraud taking place, it took several other actions before finally obtaining a <u>consent</u> order of liquidation, including confidential supervision, negotiating with the Cassitys to infuse their personal and other assets

into the Companies, allowing the Companies to sell assets, seeking capital infusion from third parties, and hiring an outside manager for the Companies. (Exhibit G, 276:3-289:10-11). The TDI "were trying to recapitalize the companies in hopes that [they] would avoid having to go to liquidation." (Exhibit G, 277:17-19). The situation was not as simplistic as Plaintiff SDR maintains in her Opposition.

Neither Plaintiff SDR nor Mr. Arfa-Zanganeh demonstrate a factual foundation to support Mr. Arfa-Zanganeh's opinion that the TDI would have jumped to the option of rehabilitation or liquidation first—or at all—even if it had the legal authority to do so. Mr. Arfa-Zanganeh acknowledges that this opinion is based only upon his "personal" opinion. As was discussed above, his experience does not qualify him to make such an opinion, especially when he can cite to no facts in the record to support the opinion.

Notably absent from both Mr. Arfa-Zanganeh's Report and Plaintiff SDR's Opposition is any citation to testimony from the TDI employees involved in this matter or to TDI documents (commonly referred to as "work papers") from its examinations of the Companies.[7] If Mr. Arfa-Zanganeh is going to claim that his mere guess about what the TDI regulators would have done in a hypothetical situation is reliable, then he <u>must</u> be able to cite to testimony and documents from TDI indicating how the TDI regulators would have acted. If the TDI depositions and examination documents do not indicate how they would have acted in a hypothetical situation, then Mr. Arfa-Zanganeh's opinion can be nothing more than speculation. Mr. Arfa-Zanganeh has not cited to, and cannot cite to, the testimony of a single one of the actual TDI employees involved in this matter or their examination documents because they do not support his opinion.

---

[7] In fact, in this section of his Report, Mr. Arfa-Zanganeh does not cite to any evidence. (Exhibit A [Doc. 1706], Pg. 61-62).

In fact, Mr. Arfa-Zanganeh, when he wrote his report and when he gave his deposition, did not even know or consider what the TDI already knew about the Companies when he reached his own "personal" opinions about what the TDI would have done with different information in the 2004 audits. He admits that he did **"not know what TDI did know or did not know [about the Companies] and how they would have reacted [to different information in the 2004 audits]**." (Exhibit C [Doc. 1706-2], 89:10-17). Based on this crucial admission, Mr. Arfa-Zanganeh essentially concedes that his opinions on what the TDI "would have done" are nothing more than rank speculation.

Mr. Arfa-Zanganeh offered testimony in his deposition on such topics as BSW's failure to require disclosure of: "related party transactions" (Exhibit C [Doc. 1706-2], 89:3-25), illegal acts of Lincoln (Exhibit C [Doc. 1706-2], 90:14-25), and Lincoln's ability to continue as a "going concern" (Exhibit C [Doc. 1706-2], 91:9-93:7). In each case, Mr. Arfa-Zanganeh admitted that he had no knowledge of whether the TDI was already aware of issues regarding these topics at the time BSW completed its audits of the financial statements of the Companies for 2004, on April 29, 2005.

When asked about such topics as premium collections, reinsurance recoveries, and early access distributions as potential offsets against his <u>gross</u> damages calculation(s) (Exhibit C [Doc. 1706-2], 150:12-152:16; 145:5-20; 150:1-25), Lincoln's financials and Lincoln's capability to make <u>future</u> additional death claim payments (which would, presumably, include payments on the approximately $71 million in future death claim payments that Mr. Arfa-Zanganeh stated in his report are owed by BSW as "damages") (Exhibit C [Doc. 1706-2], 151:1-11), whether, in fact, there actually are uncollectible premiums on the policies Mr. Arfa-Zanganeh used to "calculate" his damage(s) figure (Exhibit C [Doc. 1706-2], 153:15-18), and the alleged lack of

disclosure by BSW of Lincoln's reliance on NPS as its sole provider of business (sole customer) (Exhibit C [Doc. 1706-2], 182:10-183:23), **Mr. Arfa-Zanganeh admitted as to each topic that he had done no "due diligence" to answer, or to even determine if he is qualified to answer, these questions and/or he had no idea what TDI knew regarding these topics as of April 29, 2005, the date BSW completed its 2004 audit of the financial statements of the Companies.** He admitted that he had no idea what information TDI had contained in its work papers with respect to its examinations of the Companies (Exhibit C [Doc. 1706-2], 181:8-16). Mr. Arfa-Zanganeh's admitted lack of investigation and knowledge about what the TDI knew before he reached his opinion about what he thought the TDI would do is incredibly concerning.

Plaintiff SDR criticizes BSW's citation to *Board of Trustees of Fire and Police Retiree Health Fund v. Towers, Perrin, Forster & Crosby, Inc.*, 191 S.W.3d 185 (Tex. App. 2005). But, what Plaintiff SDR neglects to acknowledge is that under the law, neither a lay witness nor an expert is permitted to speculate as to what someone else would do in a hypothetical situation if the opinion is not based upon sufficient facts. *See Hale County*, 998 F.Supp.2d at 844 (holding an expert is not permitted to speculate). *Board of Trustees*, *supra,* is instructive for its explanation of speculation. **The *Board of Trustees* court stated that an opinion is speculative if it purports to testify "on what someone else was thinking at a specific time**." *Board of Trustees,* 191 S.W.3d at 193 (emphasis added).

Just as the witnesses in *Board of Trustees, supra¸* were attempting to speculate as to what the union members and council members would have done if they had been given different information by the actuary, here, Mr. Arfa-Zanganeh is attempting to speculate as to what the TDI regulators would have done if they had been given different information from BSW. Just as the court in *Board of Trustees, supra*, found this improper, this Honorable Court should find Mr.

Arfa-Zanganeh's opinions improper—especially since he cannot cite to any TDI testimonial or documentary evidence as support for these opinions.

Mr. Arfa-Zanganeh has essentially asked this Honorable Court to accept his opinion(s) because he says (it is) so. This is not permitted under the law. *See Boehm v. Eli Lilly & Co.,* 747 F.3d 501, 506 (8th Cir. 2014) ("If 'opinion evidence…is connected to existing data only by the *ipso dixit* of the expert,' a district court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'") *quoting Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 130 L.Ed.2d 508 (1997).

Moreover, this is not an issue of the weight to be given Mr. Arfa-Zanganeh's testimony; this is an issue of admissibility. Under the law, "[i]f the expert's opinion is so fundamentally unsupported that it can offer no assistance to the [fact-finder], **it must be excluded.**" *David E. Watson, P.C. v. U.S.*, 668 F.3d 1008, 1014 (8th Cir. 2012) (emphasis added). Plaintiff SDR fails to meet her burden to prove that Mr. Arfa-Zanganeh's opinions are based upon sufficient facts, and are, therefore, reliable. His opinions on causation and damages should be excluded.

**B.      *Mr. Arfa-Zanganeh's Opinions on Causation and Damages are Not Reliable Because His Method and Application of that Method to Calculate Damages is Fundamentally Flawed.***

The exclusion of an expert's opinion is proper if it is so fundamentally flawed that it can offer no assistance to the jury. *In re Celexa and Lexapro Products Liability Litigation*, 927 F.Supp.2d 758. 762 (E.D. Mo. 2013). The purpose of the requirements for determining the reliability of expert testimony is to make certain that an expert, whether he or she has based testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Celexa*, 927 F.Supp.2d at 761.

Here, in response to BSW's demonstration that the scope of Mr. Arfa-Zanganeh's engagement by Plaintiff SDR was so incredibly narrow as to render his calculation of damages unreliable, Plaintiff SDR argued that his review was proper because he reviewed "every audit work paper produced by BSW" and the deposition transcripts of all BSW and TDI representatives. (Plaintiff SDR's Opposition [Doc. 1808], Pg. 16). The question is not how many documents he reviewed, but whether he reviewed the right documents to enable him to have the proper foundation to calculate damages. He may have reviewed "thousands" of BSW audit work papers, but by his own admission he did not review the critical damages-related documents—such as the SDR's financial statements that showed the billion dollar loss to the Companies between 2007 and 2014. (Exhibit C [Doc. 1706-2], 47:4-20). In fact, Mr. Arfa-Zanganeh admits his review of the documents was incredibly limited, because "**he was provided with 2 pieces of information. [He] was requested to rely on those and calculate damages and that's what he did**." (Exhibit C [Doc. 1706-2], 142:25-143:3).

In fact, because of the remarkably limited scope of his engagement, Mr. Arfa-Zanganeh did not have a clear, or really any, understanding of the financial condition of the Companies as of the time he prepared/submitted his report on July 1, 2014. The SDR filed a (quarterly) Financial Report and Summary Statement of Expenses of the receivership estates of the Companies as of May 31, 2014 with the District Court of Travis County, Texas, but Mr. Arfa-Zanganeh never saw this document (Exhibit C [Doc. 1706-2], 43:5-16). Therefore, he was unable at his deposition to offer any opinion on the accuracy of this Financial Report (Exhibit C [Doc. 1706-2], 45:2-47:4), which was prepared by his own client in this case (Exhibit C [Doc. 1706-2], 47:4-20).

Still further, as Mr. Arfa-Zanganeh had not reviewed the Financial Report dated May 31, 2014, it was "impossible" for him to testify as to what happened financially within the Companies between 2006 and 2014 (Exhibit C [Doc. 1706-2], 47:23-50:10). Yet, Mr. Arfa-Zanganeh purports to have calculated damages in this case based on policies sold by the Companies between January 1, 2006 and May 14, 2008 (Exhibit A [Doc. 1706]). Mr. Arfa-Zanganeh admitted that he had "no idea" whether consideration of the financial statements of the Companies for the period between 2006 and May 31, 2014 (the date the Financial Report was prepared by the SDR) would impact anything he had done with respect to his report (Exhibit C [Doc. 1706-2], 52:22-53:25; 55:14-56:2). For example, if the Companies lost more than $1 billion combined, during the period from December 31, 2006 – May 31, 2014, which he could neither confirm nor deny, he could not be sure whose fault it is that (in his opinion) $141 million of death benefits "cannot" be paid by the Companies (Exhibit C [Doc. 1706-2], 58:9-24).

Contrary to Plaintiff SDR's allegations in her Opposition, BSW addressed Mr. Arfa-Zanganeh's failure to confirm the accuracy of the two documents upon which he based his "calculation" of damages not because it truly questions these documents, but because this is one of many examples showing that, as to his calculation of damages, Mr. Arfa-Zanganeh is nothing more than a "hired gunslinger." *See Kinergy*, 2003 WL 26110512 at *4 (discussing how *Daubert* intended to curtail the use of "hired gunslingers").

It is clear that Mr. Arfa-Zanganeh "calculated" damages within the very narrow confines of his engagement instead of independently investigating the case to determine if there are damages and/or the most accurate measure of damages. His failure to consider alternatives such as reductions for premiums collected by the Companies on the policies allegedly at issue in his damages calculation, reinsurance recoveries, or payments recovered on policy loans, and his

failure to even consider—or know about or care about—a billion dollar loss to the Companies or how other defendants may have contributed to Plaintiffs' damages clearly demonstrate fundamental flaws in Mr. Arfa-Zanganeh's "calculation" of damages. (BSW's Memorandum in Support [Doc. 1699], Sect. IIB). Plaintiff SDR clearly hired Mr. Arfa-Zanganeh to produce a damages number based on two numbers spoon fed to him, and that is what he did. (Exhibit C [Doc. 1706-2], 142:25-143:3). This is not reliable. There is no "science" to Mr. Arfa-Zanganeh's "calculation" of damages.

Plaintiff SDR makes numerous statements throughout the last section of her Opposition that Mr. Arfa-Zanganeh did not need to consider these other factors because the "fraud" somehow trumped consideration of these other factors in calculating actual damages to Plaintiffs. But, this entire section of Plaintiff SDR's Opposition is devoid of any citation to law, facts, or even Mr. Arfa-Zanganeh's own Report. Plaintiff SDR bears the burden here to produce sufficient evidence to demonstrate that Mr. Arfa-Zanganeh's calculation of damages is reliable, but apparently she can only attempt to do so with unsupported arguments. She can point to no facts or law to support Mr. Arfa-Zanganeh's damages calculation.[8]

What is at issue here is the reliability of Mr. Arfa-Zanganeh's method of calculating alleged damages. His "method"—if it is even a method—consists of taking two figures given to him by counsel for the SDR and adding them together to calculate a gross damages figure that was considered in a vacuum because he considered no factors that may have interplayed with the measure of actual damages to Plaintiffs. He cannot satisfy a single *Daubert* factor set forth

---

[8] In fact, the law will not support the calculation of gross damages. *See e.g, Coonis v. Rodgers*, 429 S.W.2d 709, 714 (Mo. 1968) and *Texaco, Inc. v. Phan*, 137 S.W.3d 763, 771 (Tx. Ct. App. 2004) (both holding damages for lost profits are for net profits, not gross profits); *Minpeco, S.A. v. Conticommodity Services, Inc.*, 676 F.Supp.486 (S.D. N.Y. 1987) (stating "[u]nder most circumstances, it is clear that a plaintiff both injured and enriched by illegal activity cannot choose to recover for his injuries yet retain his windfall," and finding it was the plaintiff's burden to prove the amount of offsets when reduction for offsets would cause no unjust enrichment to the defendant or "sheltered liability").

below, which are the reliability factors this court should consider in determining whether testimony should be presented to the jury. *Hodak v. City of St. Peters*, No. 4:04CV01099 ERW, 2006 WL 3210495 (E.D. Mo.); *Lauzon*, 270 F.3d at 687.

### *Daubert Factors*

A.   **Testing.**  Plaintiff SDR presents no evidence Mr. Arfa-Zanganeh's method of calculating damages has been tested.

B.   **Subject to Peer Review.**  Plaintiff SDR presents no evidence Mr. Arfa-Zanganeh's method of calculating damages has been subjected to peer review.

C.   **Subject to Publication.**  Plaintiff SDR presents no evidence Mr. Arfa-Zanganeh's method of calculating damages has been subjected to publication.  In fact, Mr. Arfa-Zanganeh has not published anything in at least 10 years.  (Exhibit B [Doc. 1706-1]).

D.   **Rate of Error.**  Plaintiff SDR presents no evidence of the rate of error of Mr. Arfa-Zanganeh's method of calculating damages.

E.   **Whether Generally Accepted.**  Plaintiff SDR presents no evidence of whether Mr. Arfa-Zanganeh's method of calculating damages has been generally accepted.

F.   **Whether Expertise was Developed for Litigation or Naturally Flowed from the Expert's Research.**  This method of calculating damages was solely developed for this case.  In fact, there is no evidence Mr. Arfa-Zanganeh conducted any research, and certainly none regarding damages in this case.

G.   **Whether Alternative Explanations were Ruled Out.**  As was discussed above and in depth in BSW's Memorandum in Support, Mr. Arfa-Zanganeh failed to consider <u>any</u> alternative explanations for Plaintiffs' damages because this was outside the scope of his engagement.  (BSW's Memorandum in Support [Doc. 1699], Sect. IIB).

H.   **Whether the Expert Sufficiently Connected the Proposed Testimony with the Facts of the Case.**  As was discussed above and in depth in BSW's Memorandum in Support, Mr. Arfa-Zanganeh failed to connect his calculation of damages to the facts of the case.  He failed to consider all factors such as premiums received on the policies he claims comprise the basis for his damages number, reinsurance recoveries, payment of policy loans, policy surrenders, or a billion dollar loss to the Companies between 2007 and May 31, 2014.  This was outside the scope of his engagement.  (BSW's Memorandum in Support [Doc. 1699], Sect. IIB).

Because Plaintiff SDR failed to put forth evidence to show any of these *Daubert* factors were satisfied, she gravely failed to meet her burden of proof. These fundamental flaws go to the core of admissibility, and therefore, these are not merely issues for cross-examination. A jury will be improperly tainted if permitted to hear Mr. Arfa-Zanganeh's opinions on causation and damages when they are so fundamentally flawed and unreliable. *Children's Broadcasting Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1017 (8th Cir. 2001) (a jury can be "tainted" if it is exposed to an "exaggerated sum" of damages that was not reliably calculated). *Daubert* is meant to "protect juries from being swayed by dubious scientific testimony." *Watson*, 668 F.3d at 1015. Mr. Arfa-Zanganeh's opinions on causation and damages should be excluded.

## *CONCLUSION*

For the foregoing reasons and for the reasons stated in its Memorandum in Support of Motion to Strike Plaintiff SDR's Expert Shahriar Arfa-Zanganeh's Opinions on Causation and Damages [Doc. 1699], Brown Smith Wallace, LLC respectfully request that this Honorable Court order that all expert testimony relating to causation, damages, and the calculation of damages, either written or oral, submitted by Shahriar Arfa-Zanganeh be excluded from these proceedings.

/s/ Steven J. Hughes
Gary E. Snodgrass   #27037
Federal Registration No. 27037MO
Steven J. Hughes   #38968
Federal Registration No. 38968MO
Jaime N. Mitchell   #60949
Federal Registration No. 60949MO
PITZER SNODGRASS, P.C.
Attorney for Defendant Brown Smith Wallace
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545
(314) 421-3144 (Fax)

I hereby certify that a copy of the foregoing filed electronically with the Clerk of the Court this 7th day of November, 2014 to be served by operation of the Court's electronic filing system upon the following:

| Plaintiffs | dreilly@rplaw.com; lpozner@rplaw.com; wfisher@rplaw.com; geroper@rplaw.com; mgraham@grgpc.com; mcole@grgpc.com; MBurkitt@rplaw.com; mrobertson@rplaw.com; mkotlarczyk@rplaw.com; dnielsen@rplaw.com; |
|---|---|
| Southwest Bank and Marshall & Isley Trust Company, N.A. | jdemerath@armstrongteasdale.com; clarose@armstrongteasdale.com; blong@winston.com; ldesider@winston.com; JTravalini@winston.com; |
| U.S. Bank, N.A. | sandra.wunderlich@stinsonleonard.com; andrew.scavotto@stinsonleonard.com; cicely.lubben@stinsonleonard.com; neal.griffin@stinsonleonard.com; russell.keller@stinsonleonard.com; john.young@stinsonleonard.com; marc.goldstein@stinsonleonard.com |
| Bremen Bank and Trust Company | tcummings@armstrongteasdale.com; jvalentino@armstrongteasdale.com; |
| Bank of America, N.A. | perry.brandt@bryancave.com; jeff.ziesman@bryancave.com; tim.davis@bryancave.com; james.lawrence@bryancave.com; tracy.hancock@bryancave.com; |
| American Stock Transfer and Trust Company, LLC | jaykanzler@wkllc.com; jdaichman@kanekessler.com; gstrain@kanekessler.com; |
| Comerica Bank & Trust, N.A. | jgolden@dykema.com; rgottlieb@dykema.com; rzipprich@dykema.com; jjamison@dykema.com; jhongs@hinshawlaw.com; |
| National City Bank and PNC Bank, N.A. | mbartolacci@thompsoncoburn.com; kbousquet@thompsoncoburn.com; pwolff@wc.com; akeyes@wc.com; mhickcox-howard@wc.com; mdarrough@thompsoncoburn.com; srader@wc.com; |
| Brown Smith Wallace, L.L.C. | snodgrass@pspclaw.com; hughes@pspclaw.com; jmitchell@pspclaw.com; |
| J. Tyler Cassity and Hollywood Forever, Inc. | slee@raineslaw.com; sguerami@raineslaw.com; rshore@raineslaw.com; mfeldman@raineslaw.com; fak@korantenglawfirm.com; |
| Forever Enterprises, Inc., Forever Network, Inc., Forever Illinois, Inc., Texas Forever, Inc., Lincoln | firminap@gmail.com; |

| | |
|---|---|
| Memorial Services, Inc., National Heritage Enterprises, Inc., National Prearranged Services Agency, Inc., Legacy International Imports, Inc., and Brentwood Heritage Properties, L.L.C | |
| Richard Markow | sarachan@capessokol.com; cooley@capessokol.com; fehr@capessokol.com; |
| Rhonda L. Cassity, Inc., a/k/a Wellstream, Inc. | colleen@cjmaclaw.com |
| Herbert Morisse | mbartolacci@thompsoncoburn.com; kbousquet@thompsoncoburn.com; |
| George Wise, III | kerrikfieldslaw@msn.com; |
| Katherine Scannell | adam@goffsteinlaw.com; |
| Tony B. Lumpkin, III, Pro se | tlumpkin@ltjmanagement.com; |

Via Mail:

Brent D. Cassity #38224-044
Leavenworth
U.S. Penitentiary
P.O. Box 1000
Leavenworth, Kansas  66048

Randall K. Sutton #36549-044
Rochester FMC
P.O. Box 4000
Rochester, MN  55903

Nekol Province #36759-044
Carswell
Federal Medical Center
P.O. Box 27137
Fortworth, Texas  76127

David R. Wulf #38227-044
FCI Terre Haute
4200 Bureau Road North
Terre Haute, Indiana  47808

Mr. Tony B. Lumpkin, III
3806 Horseshoe Bend Cove
Austin, Texas  78704

J. Douglas Cassity #02005-045
Marion U.S. Penitentiary
P.O. Box 1000
Marion, Illinois  62959

/s/ Steven J. Hughes