UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JO ANN HOWARD & ASSOCIATES, P.C., *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 4:09CV01252 ERW ) |
| J. DOUGLAS CASSITY, *et al.*, | ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiffs' Motion for Leave to Amend Complaint and Remove Certain Defendants and Claims [ECF No. 1663].

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

This litigation arises out of proceedings instituted by the Texas Department of Insurance in Travis County, Texas, in which National Prearranged Services, Inc. ("NPS"), Lincoln Memorial Life Insurance Company ("Lincoln"), and Memorial Service Life Insurance Company ("Memorial") were placed in receivership and are currently in the process of being liquidated. Plaintiffs in this litigation are Jo Ann Howard and Associates, P.C., acting on behalf of NPS, Lincoln, and Memorial, as Special Deputy Receiver ("SDR") in connection with the Texas receivership proceedings; the National Organization of Life and Health Guaranty Associations ("NOLHGA")[1]; and the individual state life and health insurance guaranty associations of Arkansas, Illinois, Kansas, Kentucky, Missouri, Oklahoma, and Texas. These individual

---

[1] NOLHGA represents the interests of the state life and health insurance guaranty associations of Arizona, California, Colorado, the District of Columbia, Georgia, Idaho, Indiana, Iowa, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Mexico, North Dakota, Ohio, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Washington, West Virginia, Wisconsin, and Wyoming.

1

guaranty associations, as well as those represented by NOLHGA, are statutory entities created by state legislatures to provide protection for resident policyholders in the event that a member insurance company becomes insolvent. Plaintiffs represent that these state guaranty associations have been assigned or subrogated to the claims of funeral homes and consumers arising out of dealings with NPS through (1) each state guaranty association's enabling act; (2) the NPS / Lincoln / Memorial Liquidation Plan approved by the Texas Receivership Court on September 22, 2008; or (3) express assignments received from recipients of death benefits paid by a state guaranty association.

Prior to the institution of the Texas proceedings, NPS was in the business of selling pre-need funeral service contracts, which were sold to consumers through funeral homes. Lincoln and Memorial were issuers of life insurance policies. NPS marketed its pre-need contracts by assuring consumers that funds paid to NPS would be secured in pre-need trusts and backed by whole life insurance policies issued by Lincoln or Memorial for the full amount of the contract. NPS represented to these consumers that the necessary funds would be available when the pre-need beneficiary died and the funeral home's claim became due. In accordance with state law, this process was accomplished in certain states by requiring the purchaser to simultaneously apply for a life insurance policy issued by Lincoln or Memorial in an amount corresponding to the amount of the pre-need contract. In other states, the pre-need trust itself purchased the life insurance policies.

On May 3, 20, 2012, Plaintiffs herein filed their Third Amended Complaint, asserting a wide variety of claims against various defendants, including, but not limited to, claims for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-1968, violations of the Lanham Act, 15 U.S.C. §§ 1051-1141n, state law claims concerning

intentional and negligent fraudulent misrepresentations, negligence and gross negligence, breach of fiduciary duties, and violations of the Texas Receivership Act, Tex. Ins. Code §§ 443.202-443.205 [ECF No. 916]. The Third Amended Complaint alleges the fraudulent scheme's ultimate goal was to siphon funds away from NPS, Lincoln, and Memorial for the personal use of certain defendants, a scheme that ultimately left more than $600 million in liabilities to be satisfied by the SDR and the state life and health guaranty association Plaintiffs.

There are over forty defendants named in Plaintiffs' Third Amended Complaint, with varying degrees of alleged involvement in what Plaintiffs characterize as a scheme to defraud individual consumers and funeral homes in the sale of NPS's pre-need funeral contracts. Six of the defendants named in this matter have been prosecuted for a variety of fraud-based crimes in a parallel criminal case, *United States v. Sutton*, Case No. 4:09CR00509 JCH (E.D. Mo.).[1] The principal focus of Plaintiffs' claims is a group of defendants, defined as "the RICO Defendants," consisting of (1) Doug Cassity, Tyler Cassity, Rhonda Cassity, and Brent Cassity ("the Cassity Defendants"), who are the beneficial owners of NPS, Lincoln, Memorial, and a number of affiliated entities through the RBT Trust II – a family trust of which Doug Cassity is the settlor and the Cassity Defendants are the sole beneficiaries; (2) certain officers and employees of the Cassity-controlled entities; (3) a number of attorneys and law firms engaged by those entities; (4) several of those entities themselves; and (5) banks acting as trustees over the pre-need trusts. Plaintiffs allege that the RICO Defendants defrauded and conspired to defraud NPS's individual and funeral home consumers by, among other things:

> (1) not revealing to NPS employees, funeral homes, or consumers that Lincoln and Memorial, as issuers of the life insurance policies intended to fund the pre-need contracts upon the death of the purchaser, were not independent of NPS, and

---

[1] Randall Sutton, Sharon Nekol Province, James Douglas Cassity, Brent Douglas Cassity, and Howard A. Wittner pled guilty to a variety of crimes including mail fraud, insurance fraud, money laundering, and fraud by wire. David R. Wulf was convicted of similar crimes by a jury.

3

that Lincoln, Memorial, NPS, and the Cassity Defendants were not independent of each other;

(2) in states in which the purchaser of the pre-need contract applied for the life insurance policy directly, altering policy applications to indicate that the policy was to be paid for in installments, when in fact the purchaser had paid the full amount of the policy in full, so that NPS would only be required to deposit the first installment into a pre-need trust, with the remainder of the amount then ultimately diverted to the RICO or Cassity Defendants through various Cassity-controlled entities, including NPS, Lincoln, and Memorial;

(3) in states in which the pre-need trusts purchased the life insurance policies, purchasing installment policies with monthly payments when the consumer paid for the pre-need contract with a single payment in full, likewise in order to avoid depositing the entire policy amount into a pre-need trust and to siphon the remaining funds to the RICO or Cassity Defendants;

(4) altering life insurance policy applications to indicate that NPS was the owner or beneficiary of the policy, in order to allow NPS to take out loans on the policies from Lincoln or Memorial, and then denying that NPS had taken out any such loans in response to inquiries from funeral homes;

(5) directing NPS to stop paying premiums to Lincoln on whole life policies and surrendering whole life policies for their cash value, with the effect of reducing NPS's obligations to Lincoln and allowing NPS to retain a greater percentage of funds received from consumers in exchange for the pre-need funeral contracts;

(6) removing funds from the NPS pre-need trusts in exchange for the issuance of promissory notes or debentures, with repayment only occurring through book entries unsupported by actual transactions or through the temporary shifting of funds between various entities controlled by the RICO Defendants; and

(7) engaging in "roll-over" transactions with funeral homes, whereby a funeral home would agree to transfer its existing pre-need contracts to NPS and remit to NPS the balance of its trust funds from those contracts, with NPS then using the above-described tactics with whole life insurance policies issued by Lincoln to avoid placing as much as possible of the "roll-over" funds into a pre-need trust, and diverting the remainder to the RICO or Cassity Defendants.

Based on these allegedly wrongful actions, Plaintiffs assert additional claims related to allegedly fraudulent transfers between Cassity-controlled entities against another set of Defendants that are collectively referred to as "the Fraudulent Transfer Defendants." Plaintiffs bring another set of claims arising out of the removal of funds from the pre-need trusts through

the issuance of promissory notes and debentures against yet another group of defendants that are defined as "the Promissory Note Defendants," some of whom are likewise RICO or Fraudulent Transfer Defendants.

The Motion for Leave to Amend presently before the Court concerns primarily aiding and abetting claims against certain members of a group of defendants defined in the Third Amended Complaint as the "Trustee Defendants."[2] Plaintiffs seek to re-plead their tort claims in the Fourth Amended Complaint including Aiding and Abetting Fraud (Count 29); Aiding and Abetting Breach of Fiduciary Duty by Investment Advisors (Count 30); and Plaintiffs seek to add Civil Conspiracy (Count 35) against U.S. Bank, N.A., National City Bank, PNC Bank, Marshall & ILsley Trust Company, N.A., Southwest Bank, and BMO Harris Bank, N.A., but not against Bremen Bank and Trust Company [ECF No. 1663-5].[3]

On September 11, 2012, this Court ordered Plaintiffs' aiding and abetting claims be dismissed because the Missouri Supreme Court had not recognized a cause of action based on Section 876(b) of the Restatement (Second) of Torts and this Court predicted the Missouri Supreme Court would decline to adopt the theory of liability presented by either § 876(b) or § 876(c) [ECF No. 1123]. Further, this Court found even if the Missouri Supreme Court recognized such torts, Plaintiffs' complaint failed to state a claim on those counts.

In their present Motion for Leave to Amend, Plaintiffs claim good cause exists for amending the complaint because of recent Missouri decisions recognizing aiding and abetting liability under §876(b) and because of new facts developed in discovery establishing the claims.

---

[2] The Missouri Trustee Defendants include U.S. Bank, N.A.; National City Bank, PNC Bank, Bremen Bank and Trust Company; Marshall & Ilsley Trust Company, N.A.; Southwest Bank; and BMO Harris Bank, N.A.
[3] Plaintiffs also seek leave to remove Defendants and claims that have previously been dismissed and to include minor edits to the Complaint.

Defendants[4] assert the recent Missouri decisions do not affect the Court's analysis in its September 11, 2012 Memorandum and Order dismissing the aiding and abetting claims, the "new" facts put forth by Plaintiff are not actually new, and an amendment would cause undue prejudice to Defendants at such a late date [ECF No. 1719, 1720, 1721].

## II. STANDARD

Where a party seeks leave to amend a complaint after the deadline in the applicable case management order has passed, the FRCP Rule 16(b) good-cause standard applies first, then the "when justice so requires" standard of Rule 15(a) applies. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). Rule 16(b) governs the issuance and modification of pretrial scheduling orders while Rule 15(a) governs amendment of pleadings. Fed. R. Civ. P. 16(b) and 15(a). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman*, 532 F.3d at 716 (*quoting Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)). If a party has been diligent in meeting the scheduling order's deadlines, the Court should then decide if the amendment is proper under Rule 15(a) including if there is prejudice to the other parties. *Id.*, at 716-17. Good cause requires a change in circumstance, law, or newly discovered facts. *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012).

## III. DISCUSSION

### a. *Plaintiff has Failed to Show Good Cause to Amend*

Plaintiffs' argue good cause exists because Missouri law has changed since the Court's Order on September 11, 2012, and new facts have been discovered substantiating their aiding

---

[4] Defendants opposing Plaintiffs' Motion include BMO Harris Bank, Marshall & Ilsley Trust Company, Southwest Bank ("BMO Defendants"), National City Bank and PNC Bank, N.A. ("National City"), and U.S. Bank, N.A. Plaintiffs have reached a settlement agreement with BMO Defendants, but a voluntary dismissal has not been filed as of the date of this memorandum, thus BMO Defendants' arguments are included.

6

and abetting claims. Each Defendant's response puts forth similar arguments that Plaintiffs failed to meet the good cause requirement because of undue delay in seeking to amend, and failure to put forth new facts and the law has not changed.

1.  Undue Delay in Seeking to Amend

On April 16, 2013, this Court issued the Case Management Order for this case [ECF No. 1188]. This order requires fact discovery to be completed no later than June 1, 2014, and all discovery shall be completed by September 15, 2014. Trial is scheduled to begin on February 2, 2015, and to proceed for eleven weeks. The deadline for motions to amend pleadings or add additional parties was April 30, 2012 [ECF No. 789]. Plaintiffs filed the Motion for Leave to Amend on September 5, 2014, over two years after the deadline to amend pleadings, ten days before the close of all discovery, and three months after the close of fact discovery. Late amendments that impose new theories of liability requiring additional discovery are grounds for denial. *Popoalii v. Corr. Med. Serv.*, 512 F.3d 488, 497 (8th Cir. 2008). While discovery was ongoing, Defendants were defending claims of breach of fiduciary duties, negligence, gross negligence, unjust enrichment, and money had and received. Aiding and abetting claims impose new theories of liability which would require additional discovery. Civil conspiracy claim is an entirely new claim for which no discovery has occurred. Plaintiffs' amendment is late and would require new discovery.

Plaintiffs' cite to four recent Missouri state appellate and federal district court opinions in support of their argument the law has changed [ECF No. 1663]. The first is *Safe Auto Insurance Company v. Hazelwood*, which was decided by the Missouri Court of Appeals, Southern District, on February 7, 2013. 404 S.W.4d 360 (Mo. App. 2013). The second, *Nickell v. Shanahan*, was decided on June 4, 2013, by the Eastern District of the Missouri Court of Appeals. No. ED

99163, 2013 WL 2402852 (Mo. App. June 4, 2013). Thirdly, Plaintiffs assert *Lonergan v. Bank of America, N.A.*, decided by the U.S. District Court, Western District of Missouri, on January 16, 2013, is new. No. 2:12-CV-04226-NKL, 2013 WL 176024 (W.D. Mo. Jan. 16, 2013). And lastly, Plaintiffs cite and rely on *Callaway Bank v. Bank of the West*, decided on March 25, 2013, by the U.S. District Court, Western District of Missouri. No. 12-4159-CV-C-MJW, 2013 WL 1222781 (W.D. Mo. Mar. 25, 2013). All of these cases were decided at least fourteen months before Plaintiffs filed their Motion for Leave to Amend. During oral arguments on Plaintiffs' Motion, Plaintiffs indicated they waited to file their motion until the Missouri Supreme Court decided *Nickell v. Shanahan*. However, the Missouri Supreme Court decided it in July 2014, and the Plaintiffs waited another month to file. Prompt filing of an amendment of this magnitude is necessary, especially when other pressing deadlines have been ordered including the dispositive motion deadline of October 15, 2014.

Plaintiffs cite many depositions as evidence of new facts that have arisen since the dismissal of Plaintiffs' aiding and abetting claims in 2012. The latest deposition cited by Plaintiffs was taken on May 23, 2014. Most of the depositions occurred in March and April of 2014. If Plaintiffs had filed their motion earlier, it is possible additional discovery could have been completed without changing any dates in the scheduling order.

Plaintiffs refer the Court to *Ghattas v. First National Bank of Layton*, No. 4:12-CV-2348 CAS, 2014 WL 222819 *1 (E.D. Mo. Jan. 21, 2014) for the proposition facts can arise in discovery after the deadline for amendment has passed causing a plaintiff the need to file an amended pleading. But the facts in *Ghattas* are much different than the facts presented here. In *Ghattas*, Plaintiff filed his motion for leave to amend relatively soon after he learned of the new facts and there was still ample time to conduct discovery. *Id.*, at *1. Additionally, the new claim

8

was closely related to other claims. *Id*. In that case, there were four months before the dispositive motion deadline was set. *Id*. The trial was nine months away. *Id*. This is simply not the case here. Plaintiffs' motion was filed three months after so-called new facts were discerned. The dispositive motion deadline was October 15, 2014, and the trial was only five months away.

In addition to re-pleading aiding and abetting claims, Plaintiffs also seek leave to add a claim of civil conspiracy against Trustee Defendants. Defendants assert the new facts alleged by Plaintiffs for civil conspiracy are not new and there is no new case law justifying an amendment. The Court agrees with Defendants; Plaintiffs have failed to show good cause for allowing a claim for civil conspiracy.

Civil conspiracy has been recognized as a cause of action in Missouri for many years. *See State Farm Mut. Auto. Ins. Co. v. Weber*, 767 S.W.2d 336 (Mo. Ct. App. 1989) (discussing a claim of civil conspiracy in 1989). In order to support this claim, Plaintiffs must rely on new facts to establish good cause. As with the "new" facts for aiding and abetting liability, all of these depositions took place between January and May 2014. Plaintiffs waited three months before filing a motion for leave to amend. There is no justifiable reason for waiting to file the civil conspiracy claim.

For these reasons, the Court finds Plaintiffs were not diligent in seeking to amend their complaint and therefore, have not established good cause for leave to amend.

        2.        Newly Discovered Facts

Newly discovered facts can establish good cause for leave to amend a pleading. *Sherman*, 532 F.3d at 718. Plaintiffs have listed a number of new facts discovered after depositions were taken of various individuals. However, many of the new facts listed were known by Plaintiffs before September 2012, because they were referred to in prior filings with

9

this Court or in Plaintiffs' Third Amended Complaint.

Some of the facts Plaintiffs are claiming to be "new" were stated, almost exactly the same in the Third Amended Complaint. For example, Plaintiffs allege the deposition of Pamela J. Roberts on March 4, 2014, revealed the RICO defendants "pillaged the pre-need trust assets by withdrawing funds and replacing them with promissory notes and debentures" [ECF No. 1663]. Similar language was found in Plaintiff's Third Amended Complaint, paragraph 276: "Defendants pillaged the pre-need trust funds, withdrawing cash and replacing the cash with promissory notes and/or debentures . . ." [ECF No. 916]. A claimed important fact in Plaintiffs' Fourth Amended Complaint is Allegiant Bank drafted two documents that allegedly facilitated the fraud. But these facts were already alleged in numerous places in Plaintiffs' Third Amended Complaint. For instance, in paragraph 228.216, Plaintiffs allege Herbert Morisse, a trust officer for Allegiant, participated in the drafting of the Custody Agreements; and in paragraph 228.226, Morisse allegedly participated in the drafting of the Wulf letters. Plaintiffs' allege some new facts in their Motion, but a significant amount of the facts listed appear in a similar variation in the Third Amended Complaint or in other filings by Plaintiffs showing the facts were learned before September 2012.

Plaintiffs have cited several cases in their Reply to support their contention that a party can wait for facts to be developed in discovery and a party is allowed to amend a complaint to add facts recently confirmed by discovery [ECF No. 1842]. *See Cathedral Art Metal Co. v. Giftco, Inc.*, No. 06-465S, 2010 WL 936219 (D. R.I. Mar. 12, 2010) (District Court allowed Plaintiff to amend complaint to add facts recently confirmed or learned through discovery); *Bridgeport Music, Inc. v. Universal Music Group, Inc.*, 248 F.R.D. 408, 414 (S.D.N.Y. 2008) (citing several federal courts who have permitted amendments after developing facts in

discovery); *Birchwood Lab. Inc. v. Battenfeld Tech., Inc.*, 762 F.Supp.2d 1152 (D. Minn. 2011); and *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 989 F.Supp. 1237 (N.D. Cal. 1997) (when a legal theory implicates FRCP 9(b), a party is entitled to confirm facts before amending). Plaintiffs' cited cases are not persuasive in support of their Motion to Amend. The aiding and abetting claims are not new. The Court previously dismissed those claims. Most of the facts Plaintiffs' assert as new were before the Court when the aiding and abetting claims were dismissed.

The Court finds Plaintiffs have not established sufficient "new" facts to allow for an amendment of their complaint at this late date.

  *b.*  *Plaintiffs Fail to Satisfy Rule 15(a)*

Rule 15 provides that "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. Pro. 15(a). Denial of leave to amend is appropriate if "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Sherman*, 532 F.3d at 715 (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005). Even if this Court found good cause under Rule 16(b), the Court would deny the amendment under Rule 15(a) because of undue prejudice to Defendants.

Defendants have argued in their responses and orally that significant prejudice will result if the amendment is allowed. Defendants contend they have been preparing to defend negligence and breach of fiduciary duty claims, not aiding and abetting or civil conspiracy. The addition of the claims would require extensive discovery into the initial fraud scheme that Defendants did not conduct originally. Plaintiffs assert any prejudice can be cured by a sixty to ninety day

continuance of the trial date and limited discovery. They also contend Defendants do not have to conduct the extensive discovery, as claimed, because the aiding and abetting claims are similar to other claims already alleged.

This case was filed in 2009 and endured a lengthy stay while a corresponding criminal case was pending involving several of the individual defendants. Plaintiffs and Defendants have been waiting for resolution for five years. Continuing the trial at this date for additional discovery is unjust to all parties and additional discovery is necessary if aiding and abetting and civil conspiracy claims are added. Over the next two months, the parties will be defending for or against summary judgment motions and preparing for trial. Requiring Defendants to conduct extensive discovery in a short period of time or continuing the trial to a much further date into the future, is unduly prejudicial to Defendants. *See Popp Telecom v. American Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) ("Where an amendment would likely result in the burdens of additional discovery and delay to the proceedings, a court usually does not abuse its discretion in denying leave to amend.").

Plaintiffs cite several cases stating prejudice lessens if the additional claims arise from the same transaction, are closely related to the original claim, and are predicted in earlier proceedings. *See Bridgeport Music*, 248 F.R.D. 408; *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*, No. 12 Civ. 4828(KPF)(JCF), 2014 WL 3767035 (S.D.N.Y. Jul. 24, 2014); and *Popp Telecom* 210 F.3d at 943. However, in the present case, Defendants have been proceeding under the reasonable assumption that these claims had been dismissed and would not be able to be brought again. This is unlike the cases cited by Plaintiffs where the parties could expect certain claims to arise after the facts came out in discovery supporting such claims because they had not been previously alleged.

If the Court were to allow such an amendment, it would result in undue prejudice to Defendants.

    *c.*    *National City's Request for Attorney Fees*

National City requests attorney fees and other costs in defending against Plaintiffs' Motion for Leave to Amend because of Plaintiffs' misrepresentation of "new" facts found in previous pleadings. The Court denies National City's request for fees.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that Plaintiffs' Motion for Leave to Amend Complaint and Remove Certain Defendants and Claims [ECF No. 1663] is **DENIED.**

So Ordered this 19th Day of November, 2014.

                          */s/ E. Richard Webber*

                          **E. RICHARD WEBBER**
                          **SENIOR UNITED STATES DISTRICT JUDGE**