UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JO ANN HOWARD & ASSOCIATES, P.C., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:09CV01252 ERW |
| J. DOUGLAS CASSITY, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the court upon "Comerica's Motion for Summary Judgment" [ECF No. 1821].

## I. FACTUAL AND PROCEDURAL BACKGROUND

This litigation arises out of proceedings instituted by the Texas Department of Insurance in Travis County, Texas, in which National Prearranged Services, Inc. ("NPS"), Lincoln Memorial Life Insurance Company ("Lincoln"), and Memorial Service Life Insurance Company ("Memorial") were placed in receivership and are currently in the process of being liquidated. Plaintiffs in this litigation are Jo Ann Howard and Associates, P.C., acting on behalf of NPS, Lincoln, and Memorial, as Special Deputy Receiver ("SDR") in connection with the Texas receivership proceedings; the National Organization of Life and Health Guaranty Associations ("NOLHGA")[1]; and the individual state life and health insurance guaranty associations of

---

[1] NOLHGA represents the interests of the state life and health insurance guaranty associations of Arizona, California, Colorado, the District of Columbia, Georgia, Idaho, Indiana, Iowa, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Mexico, North Dakota, Ohio, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Washington, West Virginia, Wisconsin, and Wyoming.

Arkansas, Illinois, Kansas, Kentucky, Missouri, Oklahoma, and Texas. These individual guaranty associations, as well as those represented by NOLHGA, are statutory entities created by state legislatures to provide protection for resident policyholders in the event that a member insurance company becomes insolvent. Plaintiffs represent that these state guaranty associations have been assigned or subrogated to the claims of funeral homes and consumers arising out of dealings with NPS through (1) each state guaranty association's enabling act; (2) the NPS / Lincoln / Memorial Liquidation Plan approved by the Texas Receivership Court on September 22, 2008; or (3) express assignments received from recipients of death benefits paid by a state guaranty association.

Prior to the institution of the Texas proceedings, NPS was in the business of selling pre-need funeral service contracts, which were sold to consumers through funeral homes. Lincoln and Memorial were issuers of life insurance policies. NPS represented to these consumers that the necessary funds would be available when the pre-need beneficiary died and the funeral home's claim became due. In accordance with state law, this process was accomplished in certain states by requiring the purchaser to simultaneously apply for a life insurance policy issued by Lincoln or Memorial in an amount corresponding to the amount of the pre-need contract. In other states, the pre-need trust itself purchased the life insurance policies.

On May 3, 20, 2012, Plaintiffs herein filed their Third Amended Complaint, asserting a wide variety of claims against various defendants, including, but not limited to, claims for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-1968, violations of the Lanham Act, 15 U.S.C. §§ 1051-1141n, state law claims concerning intentional and negligent fraudulent misrepresentations, negligence and gross negligence, breach of fiduciary duties, and violations of the Texas Receivership Act, Tex. Ins. Code §§ 443.202-

443.205 [ECF No. 916]. The Third Amended Complaint alleges the fraudulent scheme's ultimate goal was to siphon funds away from NPS, Lincoln, and Memorial for the personal use of certain defendants, a scheme that ultimately left more than $600 million in liabilities to be satisfied by the SDR and the state life and health guaranty association Plaintiffs.

There are over forty defendants named in Plaintiffs' Third Amended Complaint, with varying degrees of alleged involvement in what Plaintiffs characterize as a scheme to defraud individual consumers and funeral homes in the sale of NPS's pre-need funeral contracts. Many of these defendants have since been dismissed. The claims against Comerica Bank & Trust, N.A. ("Comerica") which is seeking summary judgment, are Breach of Fiduciary Duty by Trustee Banks (Count 19) and Negligence and Gross Negligence by Trustee Banks (Count 20) [ECF No. 916].

Comerica acted as trustee of the NPS Iowa Pre-Need trust from June 2004 until December 2005 or January 2006[1] [ECF No. 1826]. On June 1, 2004, Comerica entered into a succession agreement with American Stock Transfer and Trust Company, the former trustee, and NPS which stated Comerica shall not have liability for the actions or omissions of the former trustee. On the same date, Comerica also entered into an Amendment to the Trust Agreement with NPS. The applicable trust agreement provisions are as follows:[2]

> Section 2.2: "The Trustee shall have the exclusive management and control of the Trust and its funds; provided that the Seller at its discretion may appoint an independent qualified investment advisor so long as the requirements of Iowa law are met, and the Trustee shall have no liability for any investment decisions made by such investment advisor."

---

[1] Parties dispute the ending date of Comerica's trustee tenure. Comerica asserts it was December 2005, Plaintiffs assert it was January 2006. This difference is immaterial for the purposes of this motion.
[2] The parties agree as to the language of the trust agreement but disagree as to the implications of these provisions.

Section 3.2(d): "The Trustee shall have no discretion with respect to making the distributions under this Section 3.2 and therefore, except as otherwise specifically provide above in this Section, shall make distributions only at such times and in such manner and amounts as the Seller may authorize."

Section 4.1: "The Trustee shall be accountable to the Seller and Owner only for the funds paid over to it by the Seller under such Owner's Funeral Agreement, but shall have no duty to see that the payment received complies with the provisions of the Funeral Agreements. The Trustee shall not be obliged to see that any payments so made to it are deposited according to the provisions of the Funeral Agreements."

Section 4.2(a): "The Trustee, or the investment advisor appointed pursuant to Article 2.2 hereof, shall have full discretion and authority with respect to the investment of the funds in the Trust, and shall have full discretion to trade with the corporate Trustee or others first approved in writing by the Seller. The Trustee or such investment advisor are authorized and empowered, but not by way of limitation with the following powers, rights, and duties: . . . (a) to invest any part or all of the funds in the Trust in any common or preferred stock, open-end or closed-end mutual funds, . . . life insurance insuring the life of any beneficiary as the term "Beneficiary" is defined in paragraph 1.1 herein, . . . as it shall in its absolute discretion select without regard to any of the restrictions of the laws of any jurisdiction applicable to investments of fiduciaries except that the Trustee shall exercise such judgment and care which men of ordinary prudence exercise in the management of their own affairs with regard to the permanent disposition of their funds."

Section 4.5: "No successor trustee shall be liable for any act or failure to act of any predecessor Trustee."

Comerica asserts David Wulf of Wulf, Bates & Murphy was appointed investment advisor of the Iowa Trust and made investment decisions upon which Comerica relied [ECF No. 1977].[3] During Comerica's tenure as trustee, NPS was licensed to sell pre-need funeral contracts in Iowa [ECF No. 1826].

Before becoming trustee, Comerica's trust administrator was in communication with David Bowman, a broker at Merrill Lynch, and Jean Maylack, NPS' outside counsel [ECF No.

---

[3] Plaintiffs dispute any facts related to appointment of the independent investment advisor and investment decisions made for the trusts.

1826]. The Iowa NPS trust held Merrill Lynch Funds and insurance policies. All deposits and withdrawals went through the Merrill Lynch account for the trust. Comerica's trust administrator's understanding of Comerica's role was to "mirror activity (deposits, withdrawals, income, etc.)" of Merrill Lynch. Comerica's trust administrator also spoke with AST, the prior trustee, regarding how to administer the trust account. Every month, Comerica received a statement from Merrill Lynch regarding the deposits into the trust. Comerica also received from NPS a list of individuals who had life insurance policies.[4] Comerica did not take custody of the policies or any other trust assets. Comerica would reconcile the information it received from NPS and Merrill Lynch and prepare a statement for the trust.[5] All of the transactions in the Iowa trust were performed by Merrill Lynch [ECF No. 1977]. NPS' president sent wire transfer requests to Merrill Lynch requesting transfer of trust funds to Lincoln to purchase life insurance policies and pay premiums. Comerica did not receive copies of these requests.

During Comerica's tenure as trustee, there were no policy loans taken against the trust assets, no improper lapses or cancellations of insurance policies, whole life policies were not replaced with term policies, no improper surrenders of policies or trust assets, no promissory notes or debentures replacing or transferring funds from trust assets and all pre-need funeral contracts were paid during Comerica's tenure. The trust assets at the beginning of Comerica's tenure were approximately $1.8 million and when its tenure ended, approximately $6.4 million. Throughout Comerica's tenure as trustee, the percentage of trust assets held as life insurance policies increased dramatically, from 66% of total assets to 86% [ECF No. 1977]. Comerica was removed as trustee in December 2005 [ECF No. 1826].

---

[4] Plaintiffs dispute the accuracy of these statements and whether they listed every individual who had a life insurance policy.
[5] The parties dispute how often this occurred.

## II. SUMMARY JUDGMENT STANDARD

A court shall grant a motion for summary judgment only if the moving party shows "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). By definition, material facts "might affect the outcome of the suit under the governing law," and a genuine dispute of material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The moving party bears the initial burden of proof in establishing "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). The moving party must show that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence and specific facts that demonstrate a genuine dispute on that issue. *Anderson*, 477 U.S. at 250. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986). Instead, the non-moving party must demonstrate sufficient favorable evidence that could enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.* The Court must view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009).

## III. DISCUSSION

Comerica raises six arguments for granting summary judgment on the two claims against it: breach of fiduciary duty and negligence [ECF No. 1821]. The Court addresses each argument as follows.

### A. *Causation*

Comerica contends Plaintiffs cannot establish causation in both their negligence and breach of fiduciary duty claims. A plaintiff must establish two prongs of causation: cause in fact and scope of liability. *Garr v. City of Ottumwa*, 846 N.W.2d 865, 869 (Iowa 2014).[6] The conduct is a cause in fact of the harm if but-for the conduct, the harm would not have happened. *Id*. The scope of liability is the legal cause or proximate cause test and applies a risk standard.

---

[6] Iowa law applies under the trust agreement.

*Thompson v. Kaczinski*, 774 N.W.2d 829, 837-38 (Iowa 2009). The scope of liability test is fact-intensive and "requires consideration of the risks that made the actor's conduct tortious and a determination of whether the harm at issue is a result of any of those risks." *Id.* Foreseeability of an injury remains an important consideration in the analysis. *Id. at* 838-39. Causation is a jury question but in cases where there is no evidence of causation, it may be decided as a matter of law. *Garr*, 846 N.W.2d at 870.

Plaintiffs have shown sufficient evidence of causation to present the issue to a jury. Comerica asserts Plaintiffs cannot prove Comerica caused any harm because all of the pre-need contracts were paid during Comerica's tenure as trustee. But the injury Plaintiffs are asserting is not for contracts unpaid while Comerica was trustee. The injury is the significant amount of assets Comerica allowed to be taken out of the trusts without oversight causing contracts signed during Comerica's tenure to go unpaid at a future date. There is evidence in the record of Comerica allowing wire transfer requests from NPS' president to be sent to Lincoln, an affiliated company, to purchase life insurance policies or pay premiums. This money was then looted from Lincoln through a variety of ways by the Cassity family. Plaintiffs have created a genuine issue of material fact as to whether Comerica's alleged breaches allowed the scheme to continue and flourish.

It is not unjust or impractical to impose liability against Comerica for the harm alleged. Pre-need contracts are susceptible to this exact harm where a pre-need seller promises to provide services in the future for payment now and then uses the money for illicit purposes. One purpose of pre-need funeral contract statutes in is to protect the consumer's money to ensure the funds are available when they are needed in the future. The vehicle chosen by the legislators to accomplish this purpose was to require the funds be placed in trusts. If Plaintiffs are able to

establish Comerica failed to protect the trust assets, it is foreseeable Comerica's conduct caused the harm at issue.

Comerica also assert the RICO Defendants' actions were a superseding cause precluding recovery.[7] A defendant's conduct is not the proximate cause of the harm if a later-occurring event breaks the chain of events between the conduct and the injury. *Hayward v. P.D.A., Inc.*, 573 N.W. 29, 32 (Iowa 1997). Factors Iowa courts consider in determining if an intervening act is a superseding cause include if the intervening act brings about harm different in kind from what would otherwise have resulted, consequences of the act are extraordinary, the intervening force is operating independently of any situation created by the defendant's negligence, the intervening act is due to a third person's act or failure to act, the intervening act is due to a third person's actions and subjects the third person to liability, and the degree of culpability of the wrongful act of a third person. *Id.* In order to preclude a defendant from liability, the intervening act must not have been reasonably foreseeable. *Id.*

The intervening actions of the RICO Defendants were reasonably foreseeable to Comerica. As previously discussed, the purpose of pre-need trusts is to prevent exactly the type of harm which occurred in the present case. That an individual would use fraudulent actions to gain access to assets in any trusts is entirely foreseeable. At a minimum, Plaintiffs have put forth enough material facts to raise the issue of whether Comerica's actions proximately caused Plaintiffs' injuries. "[W]hen facts are in dispute or room exists for reasonable different of opinion as to whether the conduct is intervening, the question is for the jury." *Haumersen v.*

---

[7] The RICO Defendants include Doug Cassity, Brent Cassity, Tyler Cassity, Randal Sutton, Howard Wittner, David Wulf, Wulf, Bates & Murphy, Inc., Tony Lumbpkin, Katherine Scannell, Kelly Tate, George Wise, Randy Singer, Joe Cappleman, Roxanne Schnieders, James Crawford, Keith Hale, Mike Butler, Nicki Province, Erin Province, Forever Enterprises, Inc., National Heritage Enterprises, Inc., and Lincoln Memorial Services, Inc.

*Ford Motor Co.*, 257 N.W.2d 7, 15 (Iowa 1977). Comerica's Motion for Summary Judgment on this point is denied.

### B. *Comerica's Duties*

Comerica next argues it does not owe a duty for investment of the Iowa Trust Funds or for pre-need contract funds not a part of the Iowa trust during Comerica's tenure.

#### 1. **Duty for Investment of Iowa Trust Funds**

Comerica states it was relieved of liability for any investment decisions made by an investment advisor under the trust agreement. As stated *infra* in the uncontroverted material facts, the Iowa trust agreement allows for the appointment of an independent investment advisor who may invest the trust funds in life insurance. The Iowa preneed funeral statute also allows an investment advisor to be appointed, although it does not provide for relief from liability. Iowa Code § 523A.203(4) (2003).

Under Iowa law, "the settlor can vary the terms of trust management from those set out by statute." *Hanson v. Minette*, 461 N.W.2d 592, 596 (Iowa 1990). Comerica and NPS were allowed to contract for a relief from liability for investment decisions. But there is a point at which public policy prohibits a trustee from contracting away liability for breaches. *Walker v. Howell*, 226 N.W. 85, 89-90 (Iowa 1929). As such a trustee always has an overarching duty to protect all trust assets for the beneficiaries. Iowa Code § 523A.202(2)(d). There is ample evidence in the record for a jury to find Comerica did not protect the trust assets, even with the appointment of the investment advisor and relief from liability for investment decisions.

Additionally, there is evidence in the record creating a genuine issue of material fact as to whether Comerica should get the protections of the exculpation clause because it violated other provisions of Iowa statutes such as allowing the trust assets to be invested in NPS' business

operations and failure to hold control of the trust assets.[8] Further, there are disputed facts as to whom was the appointed investment advisor and if the investment decisions were made by the investment advisor or employees of NPS. There are genuine issues of material fact in regards to investment of the Iowa trust assets which must be decided by a jury.

### 2. Duty for Funds or Insurance Policies It Did Not Receive

Comerica contends it does not owe a duty for funds or insurance policies it did not receive. Such funds include those placed in the Iowa trust after Comerica's tenure as trustee ended. Comerica is correct. Under the trust agreement, the succession agreement, and Iowa law, Comerica does not have a duty for trust funds it did not receive during its tenure. However, Plaintiffs are not alleging Comerica owed a duty over those trust funds. Plaintiffs are alleging the loss of those future trust funds are the damages caused by Comerica's actions during its tenure. As to liability for a predecessor trustee's actions, Plaintiffs are alleging Comerica is liable for its own failure to remedy the breaches, not for the breaches committed by the predecessor trustee. Comerica has failed to prove there is no evidence of causation on this issue as to prevent the issue from being presented to the jury.

Comerica also claims it does not owe a duty for insurance policies it did not receive. However, there is evidence in the record those insurance policies were purchased with Iowa trust assets. Thus, the policies should have been received by Comerica. A trustee has a duty to control and protect trust assets. The life insurance policies were purchased with trust assets and became assets themselves. Comerica should have controlled the assets and did owe a duty to

---

[8] The Iowa Funeral Services Statute prohibits a trustee from investing, directly or indirectly, in a seller's business operations. Iowa Code § 523A.203(6)(c). There is a genuine dispute of material facts as to whether investment in life insurance policies sold by an affiliate of NPS constitutes investment in NPS' business operations.

those for whom insurance policies were purchased with trust funds. Comerica's Motion for Summary Judgment is denied as to this point.

### C. Indemnification Provision

Comerica asserts the "Amendment to Trust Agreement" includes an indemnification provision barring Plaintiff SDR's claims brought on behalf of NPS. The "Amendment to Trust Agreement" provides:

> "The Trustee shall not be required to engage in administrative proceedings or litigation without being indemnified to its satisfaction against any expenses thereof. In any case in which the Trustee engages in administrative proceedings or litigation in discharge of its fiduciary obligations, its expenses thereof shall constitute a charge against the assets of the Trust unless paid by the Seller."

[ECF No. 1826-3].

Indemnification agreements are enforceable in Iowa. *Herter v. Ringland-Johnson-Crowley Co.*, 492 N.W.2d 672, 674 (Iowa 1992). However, Iowa courts look with disfavor on agreements relieving a party of its own negligence and require such language to be "clear and unequivocal." *Id*. The agreement need not expressly state such relief, but it must clearly import the intent. *Id*. "General indemnity language in a contract has been deemed insufficient to impose indemnity for the indemnitee's own negligence." *McNally & Nimergood v. Neumann-Kiewit Constructors, Inc.*, 648 N.W.2d 564, 572 (Iowa 2002).

Here, the indemnification provision is general and broad. It lists no exclusions or instances for which Comerica would be indemnified or not. It states Comerica will be indemnified for any litigation in discharge of its fiduciary obligations. Intent to relieve Comerica of liability for negligence is not clear. Without "clear and unequivocal" language, this Court cannot find the provision indemnifies Comerica for negligence.

### D. Statute of Limitations

Next, Comerica argues Plaintiffs' claims are barred by the Iowa two-year statute of limitations for negligence. Comerica claims appointment of a receiver does not toll the statute of limitations.

District courts exercising supplemental jurisdiction apply the choice-of-law rules of the forum state and the state statutes of limitations indicated by those choice-of-law rules. [ECF No. 449] (quoting *East Maine Baptist Church v. Union Planters Bank, N.A.*, 244 F.R.D. 538, 545 (E.D. Mo. 2007)). Under Missouri choice of law principles, the applicable statute of limitations is a procedural matter, meaning that the forum state's law applies. *Id. (*citing *Nettles v. Am. Tel. & Tel. Co.*, 55 F.3d 1358, 1362 (8th Cir. 1995)). Missouri law provides for a five-year period of negligence claims. Mo. Rev. Stat. § 516.120. Section 516.120 must be read in conjunction with Section 516.190, Missouri's borrowing statute. *Nettles v. Am. Tel.*, 55 F.3d at 1362. If the cause of action originates in Iowa and Iowa's statute of limitations bars the action as untimely, the borrowing statute adopts Iowa's statute of limitations. *Id.* Iowa law provides for a two-year period for injuries based on torts. Iowa Code § 614.1(2).

First, the Court must decide if the action is barred under Iowa law to determine if the Missouri borrowing statute applies. If the Missouri borrowing statute does not apply, the Court will then look to Missouri law to determine if the action is barred.

Under Iowa law, an action accrues when the plaintiff has actual or constructive knowledge of the facts supporting the elements of the claim. *Bressler v. Graco Children's Prod. Inc.*, 43 F.3d 379, 380 (8th Cir. 1994). Iowa has adopted the doctrine of fraudulent concealment. *Higbee v. Walsh*, 294 N.W. 597, 605 (Iowa 1940). The doctrine holds "where the party against whom a cause of action existed in favor of another, by fraud or actual fraudulent concealment prevented such other from obtaining knowledge thereof, the statute would only commence to run

from the time the right of action was discovered, or might, by the use of diligence, have been discovered." *Id*. Although Comerica is not the party committing the fraudulent acts here, the rationale behind the doctrine applies.[9] Iowa courts "are reluctant to afford the benefit of the statute [of limitations] to those who violate fiduciary duties." *Rowen v. Le Mars Mut. Ins. Co. of Iowa*, 282 N.W.2d 639, 647 (Iowa 1979). Due to fraudulent concealment, the facts could not have been discovered until 2008, when NPS went into receivership. Comerica became trustee in June 2004, and remained trustee until December 2005, or January 2006. NPS went into receivership in 2008 and Plaintiffs' first complaint was filed on August 6, 2009. Plaintiffs' claim is not barred by Iowa's statute of limitations.

Because Plaintiffs' claims are not barred by Iowa's statute of limitations, the Missouri borrowing statute does not apply. Under Missouri's five-year period, Plaintiffs' negligence claim is timely even if the statute of limitations began accruing when Comerica resigned as trustee in 2006.

### E. *Economic Loss Doctrine*

Comerica asserts the economic loss doctrine precludes Plaintiffs' negligence claims because Plaintiffs are seeking purely economic damages. The doctrine states a plaintiff "who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Annett Holdings, Inc. v. Kum & Go, LLC*, 801 N.W.2d 499, 503 (Iowa 2011) (quoting *Neb. Innkeepers Inc. v. Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124, 126 (Iowa 1984)). An economic loss is a loss unrelated to injury to the person or property of the plaintiff. *Id*. Economic losses are recoverable for actions asserting claims of

---

[9] "This doctrine is analogous to the doctrine of adverse domination, a doctrine that tolls statutes of limitation for claims by corporations against their officers, directors, lawyers, and accountants while the corporation is controlled by those acting against its interests." *Kelly v. Englehart Corp.*, Nos. 1-241, 99-1807, 2001 WL 855600 at *3 n. 7 (Iowa Ct. App. Jul. 31, 2001).

professional negligence against attorneys and accountants, negligent misrepresentation, or when duty of care arises out of a principle-agent relationship. *Id.* at 504. The purpose of the doctrine is to prevent plaintiffs with contract claims from litigating them as tort claims. *Van Sickle Const. Co. v. Wachovia Commercial Mortg. Inc.*, 783 N.W.2d 684, 693 (Iowa 2010).

The economic loss doctrine does not apply here because the consumers and funeral homes were not in contract with Comerica and could not have brought breaches of contract claims. The damages at issue are not purely economic losses. Therefore, the Court denies Comerica's Motion for Summary Judgment on this point.

### F.    *In Pari Delicto Defense*

Comerica's final argument is Plaintiff SDR's claims are barred because the wrongdoing was perpetrated by NPS itself.[10] "The doctrine of in pari delicto is the legal counterpart to the equitable doctrine of unclean hands." *General Car & Truck Leasing Sys. Inc. v. Lane & Waterman*, 557 N.W.2d 274, 279 (Iowa 1996). The focus is on the relative culpability of the parties and will apply only where the plaintiff was equally or more culpable than the defendant or had the same or greater knowledge as to the illegality or wrongfulness of the action. *Id.* It does not matter to the analysis under what theory recovery is sought. *Id.* The doctrine applies if the defendant proves "(1) a material misrepresentation, (2) made knowingly (scienter), (3) with intent to induce another to act or refrain from acting, (4) upon which the other justifiably relies." *Id.* at 281 (quoting *Rosen v. Bd. of Med. Examiners*, 539 N.W.2d 345, 349 (Iowa 1995)).

A receiver is not precluded from asserting claims barred by a corporation's own fraud because the wrongdoer has been removed once a receiver has been appointed. *Kelley v. Coll. of*

---

[10] Comerica incorporated Bank of America's Motion for Partial Summary Judgment on this point [ECF No. 1814]. Bank of America cites Missouri law, but the applicable law is Iowa as provided in the trust agreement and under Missouri choice of law rules.

*St. Benedict*, 901 F.Supp.2d 1123, 1129 (D. Minn. 2012); *see also SEC v. Cook*, No. CA 3:00-CV-272, 2001 WL 256172 at *2 (N.D. Tex. Mar. 8, 2001); *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995) (citing *McCandless v. Furlaud*, 296 U.S. 140, 160 (1935)). This comports with Iowa law which states "[w]henever public policy is considered as advanced by allowing either party to sue for relief against the transaction, then relief is given to him." *In re Sylvester's Estate*, 192 N.W. 442, 444 (Iowa 1923). For these reasons, in pari delicto does not bar Plaintiff SDR's claims brought on behalf of NPS because the wrongdoers have been removed from NPS.

Accordingly,

**IT IS HEREBY ORDERED** that "Comerica's Motion for Summary Judgment" [ECF No. 1821] is **DENIED**.

So Ordered this 31st Day of December, 2014.

_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**