IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JO ANN HOWARD AND ASSOCIATES, P.C., *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Cause No. 4:09-cv-01252-ERW<br>) |
| J. DOUGLAS CASSITY, *et al.*, | )<br>) |
| Defendants. | ) |

**TRIAL BRIEF OF DEFENDANT U.S. BANK, NATIONAL ASSOCIATION**

U.S. Bank, National Association ("U.S. Bank") respectfully submits this Trial Brief in accordance with the Court's Case Management Order.  This Trial Brief does not attempt to describe all of the legal and evidentiary issues that will arise at trial.  Instead, the brief outlines what U.S. Bank believes will be among the significant issues.  U.S. Bank reserves the right to present any available legal or factual defense or position at trial.

On the day this Trial Brief was filed, the Court issued an order granting in part and denying in part the joint motion for summary judgment filed by U.S. Bank and other Missouri trustee defendants.  (Doc. 2092.)  U.S. Bank has had limited time to analyze this order, but has nonetheless attempted to incorporate it into this Trial Brief.  U.S. Bank's motion for summary judgment based on the applicable limitations period remains pending.  (Docs. 1775, 2002.)  Although U.S. Bank believes all claims asserted in this matter fail as a matter of law, U.S. Bank is confident that any jury empaneled will conclude that U.S. Bank acted reasonably and caused no actionable damages.

I.      Introduction

This is a trust case in which Plaintiffs seek to hold two of U.S. Bank's predecessors liable for decades of criminal activity – the effects of which allegedly extended outside Missouri – by members or associates of the Cassity family.  The Cassity consortium created National Prearranged Services, Inc. ("NPS") to sell pre-need funeral contracts.  NPS was required by law to deposit in trust a percentage of the funds collected on these contracts.  NPS engaged a trustee and an independent investment advisor in connection with several pre-need trusts that were created in Missouri.  The advisor was a firm known as Wulf, Bates & Murphy ("WBM").  Among other things, WBM directed the Missouri trusts to purchase life insurance policies from an affiliate controlled by the Cassity consortium, Lincoln Memorial Life Insurance Company ("Lincoln").  The Cassity consortium also controlled another insurance company, Memorial Life Insurance Company ("Memorial"), that did not issue policies in Missouri.  Both Lincoln and Memorial were domiciled in Texas, while NPS was domiciled in Missouri.

Two predecessors to U.S. Bank served as trustees for the Missouri pre-need trusts from approximately 1989-1998.  Those predecessors were Mark Twain Bank ("Mark Twain") and Mercantile Trust Company ("Mercantile"), with Mark Twain merging into Mercantile in 1997 (collectively, "Mark Twain/Mercantile").  During the trusteeship of Mark Twain/Mercantile, WBM directed the purchase of certain Lincoln whole life insurance policies, and also directed other investments such as debentures, stocks, and bonds.  WBM also directed NPS to take out loans by borrowing against the insurance policies ("policy loans") owned by the trusts.  NPS authorized or ratified all of these transactions, without telling Mark Twain/Mercantile.  In 1994, the State of Missouri entered into a Consent Judgment with NPS that defined various rights and obligations relating to the trusts, including NPS' right to use life insurance policies to fund its

2

preneed contracts in Missouri.  As part of the Consent Judgment, the Court appointed a monitor to oversee NPS' compliance with the Consent Judgment.  The monitor concluded his duties and released NPS from monitoring in 2000.

Ten years passed, with a series of successor trustees unaffiliated with U.S. Bank, Mark Twain, or Mercantile.  Allegiant Bank, predecessor to Defendants National City Bank and PNC, served as trustee from 1998-2004.  Bremen Bank ("Bremen"), a settling Defendant in this case, served as trustee from 2004-2005.  Southwest Bank and Marshall & Ilsley, predecessors to settling Defendant BMO Harris, served as trustee from 2005-2006.  Bremen stepped back into the role of trustee in 2006, and remained in that position until NPS was placed in receivership in 2008.  Several regulatory bodies had jurisdiction over NPS, Lincoln, or Memorial from 1989-2008, and outside auditors certified the financial statements of Lincoln and Memorial during this time period as well.

Final regulatory action against the entities controlled by the Cassity consortium began in 2007, when the Texas Department of Insurance ("TDI") placed Lincoln and Memorial under supervision.  Lincoln, Memorial, and NPS were deemed insolvent and placed into receivership in 2008.  This included the appointment of a Special Deputy Receiver ("SDR") to wind up the affairs of Lincoln, Memorial, and NPS.  The federal government launched a criminal investigation that led to guilty pleas by several members of the Cassity consortium, including Doug Cassity, Brent Cassity, Nekol Province, Randy Sutton, and attorney Howard Wittner.  David Wulf, the principal at WBM, was also convicted of criminal offenses.  At the trial, the federal government presented the bank trustees as victims of the fraud.

Undeterred, the SDR filed this lawsuit in 2009, alleging that U.S. Bank and others are responsible for hundreds of millions of dollars of financial damage allegedly wrought by the

Cassitys in their decades-long scheme.  Other plaintiffs include various state guaranty associations that were assigned or subrogated to the rights of individuals with unpaid pre-need contracts, along with an umbrella organization for the state guaranty associations known as the National Organization of Life and Health Guaranty Association.  By the time of any trial, it will have been between 16-25 years since any U.S. Bank predecessor administered the Missouri trusts.  Plaintiffs assert one claim against U.S. Bank for breach of fiduciary duty and one claim against U.S. Bank for negligence.  Both claims are premised on alleged breaches of the duties owed by Mark Twain/Mercantile in its capacity as trustee.

## II.      Legal and trial issues

### A.      Duty and breach

As noted in the joint motion for summary judgment filed by U.S. Bank and other trustee defendants, Missouri law deems any breach of a trustee's duties as trustee a "breach of trust." *Witmer v. Blair*, 588 S.W.2d 222, 224 (Mo. Ct. App. 1979); *Covey v. Pierce*, 82 S.W.2d 592, 598 (Mo. Ct. App. 1935).  Damages in a breach of trust case are measured by "(a) loss in value of the trust property attributable to the breach, (b) profit inuring to the trustee from the breach, or (c) loss of profit to the trust which would otherwise have accrued but for the breach." *Barnett v. Rogers*, 400 S.W.3d 38, 49-50 (Mo. Ct. App. 2013) (citation omitted); *accord Parker v. Pine*, 617 S.W.2d 536, 540 (Mo. Ct. App. 1981).

These authorities notwithstanding, the Court has now held that "[t]he Trustees are liable for all damages proximately caused by their breaches for those of which they owed duties." (Doc. 2092 at 11.)  Still, the Court acknowledged that "[w]ithout the relationship of trustee and beneficiary, Plaintiffs have not alleged the Trustees owe any other duty to the consumers or funeral homes."  The Court further noted that the existence of a duty is a prerequisite to any

4

analysis of causation and damages.  For example, when discussing the amounts allegedly owed by guaranty associations on insurance policies, the Court stated:

> The issue is not whether the damages were proximately caused; it is whether the Trustees owed a duty to those policyholders.  If the policies were never placed in the trusts or the payments for the pre-need contract was never put into the trust, then the Trustees did not owe a duty to the consumer or funeral home.  The beneficiaries of the trust cannot collect damages for injuries to consumers and funeral homes who were not beneficiaries, whether those injuries were caused by the Trustees' breaches or not.

(*Id.* at 12.)  The Court likewise held that "[t]he Trustees cannot be liable for pre-acceptance negligence unless Plaintiffs can prove the Trustees owed a duty outside of their duties as trustees, which the Plaintiffs have not done." (*Id.* at 25.)  Any attempt by Plaintiffs at trial to impose liability or seek damages for conduct outside the trustee-beneficiary relationship should be rejected.

Moreover, the evidence at trial will show that Mark Twain/Mercantile acted reasonably and prudently under the circumstances.  Although NPS never provided Mark Twain/Mercantile with a copy of the 1994 Consent Judgment, the judgment allowed NPS to continue selling pre-need contracts in Missouri and authorized NPS to fund the contracts with insurance policies issued by its affiliate, Lincoln.  There was no finding of wrongdoing by NPS.  The investment advisor appointed by NPS directed the purchase of life insurance policies to fund the preneed contracts, believing it to be the most effective investment for this purpose.  The investment advisor also authorized NPS to take policy loans against these policies, without the knowledge and permission of Mark Twain/Mercantile.  Despite the extensive regulatory oversight of NPS, Lincoln and Memorial, no governmental agency in Missouri or Texas required NPS, Lincoln, or Memorial to cease doing business before 2008.  Plaintiffs' experts have not identified any instance in which Mark Twain/Mercantile distributed trust income in violation of Missouri law.

5

U.S. Bank's expert, Professor Francis Hanna, literally wrote the book on Missouri trusts. Professor Hanna will confirm that Mark Twain/Mercantile met or exceeded the operative standard of care.

Furthermore, U.S. Bank anticipates that several of Plaintiffs' liability arguments at trial will be inconsistent with governing trust authorities.  Plaintiffs have suggested that Mark Twain/Mercantile was required to segregate deposits of individual pre-need purchasers, but Missouri law provided that "[p]ayments regarding two or more preneed contracts may be deposited into and commingled in the same preneed trust, so long as the trust's grantor is the seller of all such preneed contracts and the trustee maintains adequate records of all payments received."  Mo. Rev. Stat. § 436.031(1).  Plaintiffs also focus on the purchase of insurance policies, even though Paragraph 4.2(a) of the Mark Twain/Mercantile trust agreement said that subject to "judgment and care which men of ordinary prudence exercise in the management of their own affairs with regard to the permanent disposition of their funds," the trustee or an independent investment advisor had the power to invest trust funds in a range of investment vehicles, including "debentures" and "life insurance on the life of any beneficiary."

**B.     Causation and damages**

Although U.S. Bank continues to believe that damages, if any, should be limited to trust losses, Plaintiffs face a difficult task at trial even under a more general "proximate cause" standard.  "Proving causal connection between the allegedly negligent act and injury requires a showing of two things:  causation in fact and proximate cause." *McCormack v. United States*, No. 4:10-CV-1068 CAS, 2012 WL 911420, *5 (E.D. Mo. Mar. 16, 2012) (applying Missouri law).  The mere fact that injury follows negligence "does not necessarily create liability; a plaintiff must show the negligence was the proximate cause of the injury." *Id.* (citation omitted).

6

A defendant's conduct "is the proximate cause of a plaintiff's injury when the injury is the natural and probable consequence of the conduct." *Rosenberg v. Shostak*, 405 S.W.3d 8, 18 (Mo. Ct. App. 2013) (citation omitted).  A finding of proximate cause "cannot be based on speculation or conjecture." *Tyson v. Chicago Title Ins. Co.*, 348 S.W.3d 833, 837 (Mo. Ct. App. 2011).

       The burden on Plaintiffs is magnified by the Court's rejection of joint and several liability.  The Court noted that Plaintiffs' damages expert, Dr. Jonathan Arnold, indicated that it would be possible to allocate damages among trustees.  Hence, "[w]hile apportionment between the Trustees may be difficult, the evidence suggests it is not impossible. . . . Plaintiffs must prove which damages were caused by each defendant."  (Doc. 2092 at 28.)  U.S. Bank will demonstrate at trial that while it may be theoretically possible to allocate damages based on particular acts of Mark Twain/Mercantile, Dr. Arnold did not utilize an acceptable method for doing so.  Plaintiffs' theory that Mark Twain/Mercantile could have "stopped the entire scheme" is rank speculation, and Dr. Arnold did not tie Plaintiffs' claimed damages to specific or relevant events.

       The doctrine of superseding or intervening cause poses an additional barrier to Plaintiffs. "An efficient, intervening cause is a new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate and immediate cause of the injury, but it may not consist of merely an act of concurring or contributing negligence." *Buck v. Union Elec. Co.*, 887 S.W.2d 430, 434 (Mo. Ct. App. 1994).  Numerous parties or institutions dealt with NPS, Lincoln, Memorial, or the Missouri trusts not just during the trusteeship of Mark Twain/Mercantile from 1989-1998, but also during the 10-year period between the resignation of Mark Twain/Mercantile and the 2008 receivership proceedings.  The concept of intervening cause is particularly important in cases involving criminal conduct by third parties. *See, e.g., First Nat'l Bank of Sikeston v. Goodnight*, 721 S.W.2d 122, 126-27 (Mo. Ct. App. 1986).

7

Plaintiffs' inability to show that any alleged breaches of a trustee-beneficiary relationship proximately caused actionable damages will not stop there.  Plaintiffs have never satisfactorily addressed Paragraph 4.1 of the trust Mark Twain/Mercantile trust agreement, which states that the trustee shall be accountable to NPS and any Owner "only for the funds paid over to it" by NPS.  The Court's order highlights other difficulties Plaintiffs will have at trial against U.S. Bank:

- *Amounts owed by guaranty associations on insurance policies.*  The Court held that Plaintiffs have the possibility of collecting damages for payments on insurance policies only "[i]f a consumer or funeral home's funds or life insurance policy were held in the Missouri trusts."  (Doc. 2092 at 12, 15.)

- *Amount paid to assume Memorial's obligations.*  Although the Court determined that there was an issue of fact whether any Memorial policies were held in the Missouri trusts (*id.* at 12-13), U.S. Bank believes Plaintiffs will be unable to show any such policies were placed in those trusts from 1989-1998.

- *Amounts paid for administrative expenses.*  The Court held that neither the guaranty associations nor the SDR can recover administrative expenses.  (*Id.* at 14, 18-19.)

C.     **Investment advisor**

As detailed in the Missouri trustees' joint summary judgment motion, U.S. Bank believes NPS's appointment of WBM as an investment advisor precludes many of Plaintiffs' claims.  The Missouri statute governing "Special Purpose Contracts," also known as Chapter 436, provided:

> A preneed trust agreement may provide that when the principal and interest in a preneed trust exceeds two hundred fifty thousand dollars, investment decisions regarding the principal and undistributed income may be made by a federally registered or Missouri-registered independent qualified investment advisor designated by the seller who established the trust; provided, that title to all investment assets shall remain with the trustee and be kept by the trustee to be

8

> liquidated upon request of the advisor of the seller. In no case shall control of said assets be divested from the trustee nor shall said assets be placed in any investment which would be beyond the authority of a reasonably prudent trustee to invest in. The trustee shall be relieved of all liability regarding investment decisions made by such qualified investment advisor.

Mo. Rev. Stat. § 436.031(2) (enacted 1982, repealed 2005). Alternatively, Mark Twain/Mercantile was "not under a duty to inquire into or participate in the performance of" a fiduciary duty delegated to the advisor unless Mark Twain/Mercantile had "actual knowledge" that the advisor was breaching his fiduciary duties. Mo. Rev. Stat. § 456.550 (enacted 1983, repealed 2005).

The Court has now interpreted Chapter 436.[1] The Court held that an investment advisor must be independent of both the grantor and the trustee. (Doc. 2092 at 24.) The Court further held that § 436.031(2) "relieves the trustee of all liability regarding investment decisions made by the investment advisor if the investment advisor is federally registered or Missouri-registered, qualified, independent, control of the assets remains with the trustee, and the assets are not placed in any investment which would be beyond the authority in which a reasonably prudent trustee would invest." (*Id.* at 23-24.)

Although U.S. Bank believes that this interpretation renders the last sentence of § 436.031(2) a nullity, the Court's "independence" requirement will require further definition if the issue is presented to the jury. It is undisputed that Mark Twain/Mercantile was independent of WBM. As to NPS (and without waiving the argument that independence from the trustee is all that is required), the relevant inquiries at trial should include whether (1) NPS was independent of WBM at the time of WBM's appointment; (2) NPS was structurally independent of WBM, as

---

[1] The Court ruled on the Missouri Trustees' authorization and *in pari delicto* defenses as well. (Doc. 2092 at 19-23.) U.S. Bank preserves these defenses for purposes of appeal, but will not discuss them here.

9

opposed to a transaction-by-transaction or communication-by-communication analysis. Whatever alleged ties there may have been between NPS and WBM after 1998, those alleged ties were virtually non-existent during the trusteeship of Mark Twain/Mercantile.

Based upon the language of the statute, as well as the trust instrument authorizing the appointment of an investment advisor by NPS, it was reasonable for Mark Twain/Mercantile trust administrators to conclude that WBM was responsible for the investment decisions with respect to the assets in the trust.

### D. Limitations period

U.S. Bank's motion for summary judgment based on the applicable limitations period has been fully briefed and will not be repeated. It bears emphasis, however, that the Court's recent order confirms that there are no disputed issues of material fact. For instance, the Court recognized that "[t]he injury incurred by the consumers and funeral homes is the funeral services going unpaid." (Doc. 2092 at 11.) The Court also stated that "[u]ntil 2008, when the companies went into receivership, all claims for funeral services were paid." (*Id.* at 7.) All of this supports U.S. Bank's principal argument that Plaintiffs did not acquire a right of action until 2008 or later, which requires the application of the five-year repose period in the Missouri Uniform Trust Code. Because Plaintiffs did not file suit within five years of Mark Twain/Mercantile's resignation in 1999, all claims against U.S. Bank are time-barred.

Case: 4:09-cv-01252-ERW   Doc. #:  2119   Filed: 01/12/15   Page: 11 of 12 PageID #: 51623

Respectfully submitted,

**STINSON LEONARD STREET LLP,**

By:   */s/ Sandra J. Wunderlich*
    Sandra J. Wunderlich, #39019MO
    Andrew J. Scavotto, #57826MO
    Cicely I. Lubben, #53897MO
    Neal B. Griffin, #64879MO
    John G. Young, Jr., #25701MO
    Marc D. Goldstein, #62910MO
    7700 Forsyth Boulevard, Suite 1100
    St. Louis, MO 63105
    Telephone: (314) 863-0800
    Facsimile: (314) 863-9388
    E-mail: sandra.wunderlich@stinsonleonard.com
        andrew.scavotto@stinsonleonard.com
        cicely.lubben@stinsonleonard.com
        neal.griffin@stinsonleonard.com
        john.young@stinsonleonard.com
        marc.goldstein@stinsonleonard.com

    Russell J. Keller, *pro hac vice*
    Ashley E. Dillon, *pro hac vice*
    1201 Walnut Street, Suite 2900
    Kansas City, MO  64106-2150
    Telephone: (816) 842-8600
    Facsimile:  (816) 691-3145
    E-mail: russell.keller@stinsonleonard.com
        ashley.dillon@stinsonleonard.com

and

    Timothy P. Griffin, *pro hac vice*
    150 S. 5th Street
    Minneapolis, MN 55402
    Telephone:  (612) 335-1937
    Facsimile:  (612) 335-1657
    E-mail: timothy.griffin@stinsonleonard.com

***Attorneys for Defendant U.S. Bank, National Association***

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 12th day of January, 2015 the foregoing instrument was filed electronically with the Clerk of the Court and served upon all counsel of record via the Court's CM/ECF system. The undersigned further certifies that the a true and correct copy of the foregoing instrument was served via First Class U.S. Mail, postage prepaid, upon the following non-participants in Electronic Case Filing:

| PRO SE DEFENDANT<br>NEKOL PROVINCE | PRO SE DEFENDANT<br>DAVID R. WULF |
|---|---|
| Sharon Nekol Province<br>#36759-044<br>CARSWELL<br>FEDERAL MEDICAL CENTER<br>P.O. BOX 27137<br>FORT WORTH, TX 76127 | David R. Wulf<br>#38227-044<br>TERRE HAUTE<br>FEDERAL CORRECTIONAL INSTITUTION<br>P.O. BOX 33<br>TERRE HAUTE, IN 47808 |

/s/ Sandra J. Wunderlich
Attorney for Defendant U.S. Bank, National Association