IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JO ANN HOWARD AND ASSOCIATES, P.C., SPECIAL DEPUTY RECEIVER OF LINCOLN MEMORIAL LIFE INSURANCE COMPANY, MEMORIAL SERVICE LIFE INSURANCE COMPANY, AND NATIONAL PREARRANGED SERVICES, INC., ET AL., <br><br>         Plaintiffs, <br><br> v. <br><br> J. DOUGLAS CASSITY; RANDALL K. SUTTON; BRENT D. CASSITY; J. TYLER CASSITY; RHONDA L. CASSITY; ET AL., <br><br>         Defendants. | ) ) ) ) ) ) ) ) ) Case No. 09-CV-1252-ERW ) ) ) ) ) ) ) ) |

**PLAINTIFFS' BRIEF ADDRESSING NATIONAL CITY BANK/PNC BANK'S AUTHORITIES AND ARGUMENT REGARDING SOLE CAUSATION**

Plaintiffs respectfully submit this brief of authorities and argument addressing the case law raised by Defendants National City Bank and PNC Bank (collectively "National City") on sole causation at the January 26, 2015 pre-trial hearing.

**I.      National City May Not Rely on Sole Cause Authority**

Missouri law regarding the fault of non-parties to an action is clear and unequivocal: "In Missouri, fault is only to be apportioned among those at trial." *Fahy v. Dresser Indus., Inc.*, 740 S.W.2d 635, 641 (Mo. 1997); *accord Jensen v. ARA Servs., Inc.*, 736 S.W.2d 374, 377 (Mo. 1987). In an attempt to circumvent this well-established rule, National City cites not to cases addressing the apportionment of fault between multiple tortfeasors (as is the case here), but instead discussing the right of a defendant to argue that another party was the "sole cause" of the injury.

1

1935851

In Missouri, the "sole cause" of an injury is the act of "the plaintiff or a third party directly causing the injury *without any concurring or contributory negligence of the defendant*." *Dixon v. Wabash R. Co.*, 198 S.W.2d 395, 398 (Mo. Ct. App. 1946) (emphasis added).

The "sole cause" defense does not alter the basic premise of Missouri law that "[a] defendant is liable for his acts even if subsequent events also contribute to plaintiff's injuries." *Bening v. Muegler*, 67 F.3d 691, 697 (8th Cir. 1995); *see Tillman ex rel. Tillman v. Elrod*, 897 S.W.2d 116, 118 (Mo. Ct. App. 1995) ("Where concurrent or successive negligence combined together results in injury, the injured party may recover damages of either or both, and neither can use the defense that the prior occurrence or negligence of the other contributed to the injury."). Instead, it only stands for the common-sense proposition that a defendant can prove that it had *no* role in causing an injury by showing that a third party caused *all* of that injury. *See Dixon*, 198 S.W.2d at 398 ("'Sole' as used in the phrase 'sole cause' means 'alone; that is, the only one' at fault, 'the sole author' of the injuries complained of.").

While a defendant may admit evidence that someone else was the "sole cause" of a plaintiff's injury, the defendant must show both that "there [was] no negligence on [the defendant's] part which caused or contributed to cause plaintiff's injuries" and that "the sole proximate cause of plaintiff's injuries was the act or negligence of someone other than him." *Carney v. Stuart*, 331 S.W.2d 558, 561 (Mo. 1960); *see Quigley v. Sneed*, 367 S.W.2d 637, 641 (Mo. 1963) ("[A] defendant may undertake to absolve himself of liability to plaintiff on the basis that some act of plaintiff, or of some third person, was the sole proximate cause of plaintiff's injuries, and that he was not actionably negligent in any of the respects charged against him.").

In contrast, if a defendant's negligence played *some* role in causing plaintiff's injuries, pointing to other contributing causes does not relieve the defendant of liability. *See Villa v. Burlington N. & Santa Fe Ry. Co.*, 397 F.3d 1041, 1046-47 (8th Cir. 2005) ("[T]he presence of multiple contributing causes will not preclude a finding of liability against a defendant who has provided a legal cause of a plaintiff's injury."); *Bella v. Turner*, 30 S.W.3d 892, 896 (Mo. Ct. App. 2000) (noting the parties' agreement that "concurrent tortfeasors cannot escape liability by pointing out the misfeasance of one another").

As held by the Court in denying the Missouri Trustees' previous attempts to skirt liability in this manner, "[t]he Trustees are liable for all damages proximately caused by their breaches for those of which they owed duties." [ECF No. 2092 at 11]. "If a defendant is negligent, he is liable, although his negligence is not the sole negligence involved or the sole proximate cause." *Cannon v. S.S. Kresge Co.*, 116 S.W.2d 559, 568 (Mo. Ct. App. 1938)); *cf. Chaney v. Falling Creek Metal Prods., Inc.*, 906 F.2d 1304, 1308 (8th Cir. 1990) ("It is also settled law that the negligence of another person is only a defense if it is the sole, proximate cause of the injuries.").

**II.     All Seven Cases Cited by National City Are Inapplicable Sole Cause Decisions**

National City seeks to impermissibly shift liability to non-parties by shoehorning what is in reality a defense of comparative or contributory negligence into the framework of a sole cause evidentiary argument. National City has not, to date, sought to admit evidence of the fault of others to show that Allegiant bears *no* fault for the damages arising from its fiduciary breaches. Instead, as National City conceded in its opposition to the dismissal of David Wulf and Wulf, Bates & Murphy, it seeks a "reduction of damages" because "[t]he jury is likely to believe" that third parties "should bear the lion's share of the blame . . . ." [ECF No. 2142 at 3]. This is not a

3

1935851

sole cause argument, but instead is another attempt by National City to argue that it should not be culpable for the damages it has caused because another party also contributed to the injury. "In Missouri, an injured party may recover for any negligent act directly contributing to his injury, regardless of what other negligent act may contribute, concur, or cooperate to produce the injury . . . ." *Reese v. U.S. Fire Ins. Co.*, 173 S.W.3d 287, 294 (Mo. Ct. App. 2005) (quoting *Kayes v. Kayes*, 897 S.W.2d 51, 53 (Mo. Ct. App. 1995)); *see Robinson v. Mo. State Highway & Transp. Comm'n*, 24 S.W.3d 67, 80 (Mo. Ct. App. 2000) (concluding that "any negligence . . . would be no more than acts of concurrent negligence and, as such, would not relieve the respondents of liability for their own negligent acts").

All seven cases cited by National City in oral argument are inapplicable here because they sought to present sole cause evidence. In *Hoehn v. Hampton*, the Missouri Court of Appeals held that even though a sole causation instruction could no longer be tendered under the Missouri Approved Instructions, a defendant retained "the right to argue the facts which would demonstrate that the [injury] was caused solely by [another's] negligence." 483 S.W.2d 403, 410 (Mo. Ct. App. 1972) (quotations omitted). Relying on *Hoehn*, the court in *Simpson v. Smith* likewise held that the Missouri Approved Instructions did "not prevent a defendant from introducing evidence and arguing that the acts of one other than the defendant were the sole cause of the accident." 771 S.W.2d 368, 373 (Mo. Ct. App. 1989).

In *Oldaker v. Peters*, the court relied on *Hoehn* and the holding in *Simpson* that a defendant may introduce evidence that "the acts of one other than the defendant were the sole cause of the accident." 817 S.W.2d 245, 252-53 (Mo. 1991) (quoting *Simpson*, 771 S.W.2d at 373). It also relied on *Birmingham v. Smith,* which held that a driver's general denial of a negligence claim was

4

1935851

sufficient to allow him to introduce evidence in support of a sole cause defense.  420 S.W.2d 514, 516-17 (Mo. 1967).  Consistent with *Hoehn*, *Simpson*, and *Birmingham*, the *Oldaker* court found no error in allowing the driver of a car to argue that two dismissed defendants were the sole cause of an accident and that "she is not guilty of the negligence charged."  817 S.W.2d at 252.

In *Whisenand v. McCord*, 996 S.W.2d 528, 529 (Mo. Ct. App. 1999), the plaintiff sued the driver of a tractor trailer for negligence in hitting her.  The plaintiff appealed a trial court ruling that allowed the defendant to argue the fault of a third-party driver in closing argument, and the appellate panel affirmed.  *Id.*  The *Whisenand* court relied heavily on *Cook ex rel. Cook v. Willis*, 885 S.W.2d 791 (Mo. Ct. App. 1994), which the court interpreted to hold that "one cannot argue the negligence of a person who was a party but who was dismissed out on the merits." *Whisenand*, 996 S.W.2d at 531.  Because the third party at issue never was sued by the plaintiff, the court allowed evidence that the third party was the sole cause of injury.  *See id.* at 532.

In *Owens v. Dougherty*, the Missouri Court of Appeals found the trial court erred in instructing the jury not to consider the negligence of non-parties as the sole cause of the decedent's death.  84 S.W.3d 542, 549 (Mo. Ct. App. 2002).  In doing so, the court explained that there is a distinction between:  (1) arguing that fault should be apportioned among tortfeasors, and (2) arguing that the defendant was not negligent because someone else's conduct was the sole cause of the subject accident.  *Id.* at 548–49.  Citing *Oldaker*, the *Owens* court held that the defendant could argue that "the negligence of someone else, even a non-party, was the sole cause of the incident in question." *Id.*

*Tucker v. Wal-Mart Stores, Inc.* involved a different procedural posture than presented here and addressed the issue of "whether the fault of nonparties to an action may be asserted as

5

1935851

an affirmative defense in an answer." No. 1:06-CV-19 CAS, 2006 WL 1134712, at *5 (E.D. Mo. Apr. 26, 2006). The court found that *Fahy*, 740 S.W.2d at 635, was not controlling because it addressed whether fault could be apportioned to non-parties *at trial*. *Tucker*, 2006 WL 1134712, at *5. Citing to *Oldaker*, the court held that the defendants could proceed with their affirmative defense of negligence of other parties. *Id.*

In *Mengwasser v. Anthony Kempker Trucking, Inc.*, the plaintiff argued that the trial court erred in allowing the defendant to argue that a non-party's actions caused a vehicular accident. 312 S.W.3d 368, 372-73 (Mo. Ct. App. 2010). The Missouri Court of Appeals disagreed, holding that "[t]he rules of evidence do not prevent a defendant from arguing that the act of a third person, even a non-party, was the *sole cause* of the plaintiff's injury." *Id.* at 373 (emphasis added). The court specifically noted the difference between asking the jury to apportion fault and asking the jury "to find that the defendant was not at fault *at all*." *Id.* at 375 (emphasis in original). Only the latter is permitted by Missouri law. *Id.*

None of these cases supports National City's desire to mitigate its own liability by seeking to blame dismissed defendants and other third parties in this case. The cases support the opposite conclusion. *See Whisenand*, 996 S.W.2d at 532 ("Of course, it would not have been proper for defense counsel to argue to the jurors that they should apportion fault to phantom parties, that is, to persons who were not parties to the lawsuit."). At most, these cases stand for the proposition that, in an appropriate case, a defendant may use evidence of the acts of third parties to show that it played *no* role in causing a plaintiff's injury. That situation cannot exist where the undisputed facts—and this Court's Comerica order [ECF No. 2068 at 9]—negate any

1935851

notion that National City is 100% blameless for the central role it played in losing hundreds of millions of dollars that it was statutorily mandated to safeguard in the pre-need trusts.

National City's reliance on sole cause cases involving negligence claims also does nothing to support any argument that it may claim that non-fiduciaries are 100% responsible for causing damages that arose from its fiduciary violations. In *Shervin v. Huntleigh Securities Corp.*, 85 S.W.3d 737 (Mo. Ct. App. 2002), a defendant accused of breach of fiduciary duty argued that his breach did not proximately cause the plaintiff's damages because a non-party caused the damages instead. *Id.* at 742-43. The court held that because the non-party "did not have a duty to take any action," the defendant's proximate cause argument failed. *Id.* at 743.

In *In re Estate of Gangloff*, 743 S.W.2d 498 (Mo. Ct. App. 1987), a personal representative of an estate argued that the premature payment of fees to the estate's attorney, which the trial court found was a breach of the personal representative's fiduciary duty, was not the proximate cause of losses to the estate. *Id.* at 501. The personal representative argued that "the unforeseen disappearance of the estate's attorney was an intervening cause of the loss; therefore, he should not be held liable." *Id.* The court rejected this argument, holding that "[t]he attorney's disappearance would not have caused a loss to the estate without the premature payment by [the personal representative], which we have already found to be a breach of fiduciary duty. The two events are not independent and a prudent trustee ought to have anticipated the possibility that" the losses could have occurred. *Id.*

Similar to the *Gangloff* court's analysis, this Court in its Comerica order found:

Pre-need contracts are susceptible to this exact harm where a pre-need seller promises to provide services in the future for payment now and then uses the money for illicit purposes. One purpose of pre-need funeral contract statutes is to protect the consumer's money to ensure the funds are available when they are

7

1935851

> needed in the future. The vehicle chosen by the legislators to accomplish this purpose was to require the funds be placed in trusts. . . . The intervening actions of the RICO Defendants were reasonably foreseeable to Comerica. As previously discussed, the purpose of pre-need trusts is to prevent exactly the type of harm which occurred in the present case. That an individual would use fraudulent actions to gain access to assets in any trusts is entirely foreseeable.

[ECF No. 2068 at 8-9]. In denying National City's summary judgment motion, the Court likewise ruled that National City, as a statutory, pre-need trustee, had numerous duties both under Chapter 436 and the common law. The Court's summary judgment rulings were premised on finding numerous "undisputed facts" [ECF No. 2092 at 3] that logically and legally preclude any attempt by National City to argue that it is 0% at fault despite its role as fiduciary obligated to protect the pre-need trust funds:

- "Before accepting the trusts, neither Mark Twain nor Allegiant reviewed the terms of the pre-need contracts. . . . Allegiant failed to learn NPS was subject to a consent judgment with the Missouri Attorney General's Office. Allegiant administered the trusts in the same manner Mercantile did and did not learn the premium terms of the life insurance policies, the relationship between NPS and Lincoln, the value of the life insurance assets, or the recordkeeping requirements of the trusts [ECF No. 1952]." [*Id.* at 4].

- "Allegiant was informed of these requests on the wire transfer documents describing the transaction as 'POL LOAN' [ECF No. 1952]." [*Id.* at 5]

- "Assets from the Missouri trusts were transferred to Memorial to reimburse Memorial for administrative costs Memorial incurred on NPS's behalf and to pay premiums on Memorial life insurance policies. Assets were also transferred to pay premiums on non-Missouri life insurance policies. Approximately $2.5 million was also transferred out of the trusts to Hollywood Forever. Approximately $4.6 million was transferred out of the trusts to Lincoln Memorial Services, a company owned by the Cassity family. Numerous other transactions occurred which transferred money from the Missouri trusts to companies outside of Missouri." [*Id.* at 6].

- "Allegiant also accepted deposits into the trusts from Lincoln and Memorial from policy loan proceeds taken on life insurance policies from other states than Missouri. These funds were used to pay premiums on Missouri life insurance policies [ECF No. 1952]." [*Id.*].

8

Any attempt by National City to claim it is blameless also defies its now rejected position that NPS was the only beneficiary of the pre-need trusts and that it owed no duty to consumers or funeral homes. Based on that flawed view of a pre-need trustee's fiduciary duties, National City has admitted through Rule 30(b)(6) testimony and otherwise that Allegiant acted consistently with that erroneous belief and did nothing to, and had no duty or ability to, protect the consumers and funeral homes. National City should not be allowed to claim that non-fiduciaries, such as the Cassitys, are 100% responsible for violations of Allegiant's fiduciary duties, including to protect and preserve trust assets, ensure prudent investments, and numerous other requirements unique to a pre-need trustee.

National City has sought throughout this case to use the conduct of others to lessen its culpability for the damages that its negligence and fiduciary breaches proximately caused. National City's attempt to misapply sole cause authority is merely the most recent manifestation of this strategy. However, the cases that it cites are inapplicable to its stated goal—to prevent National City from "shoulder[ing] damages" that it feels "rightfully fall" to other parties. [ECF No. 2142 at 4].

### III. Intervening and Superseding Cause Arguments Are Foreclosed

National City similarly seeks to limit its liability by arguing that the conduct of others constitutes an intervening and superseding cause. Intervening and superseding cause is closely related to the concept of sole cause. *See Hollister v. A. S. Aloe Co.*, 156 S.W.2d 606, 608 (Mo. 1941) ("If there is an intervening act of negligence of another party, itself the efficient, direct, and proximate cause of the injury, it becomes in law the sole cause."). Like sole cause, an intervening and superseding cause precludes a defendant from being a cause of the plaintiff's injury. *See*

*Boggs ex rel. Boggs v. Lay*, 164 S.W.3d 4, 19 (Mo. Ct. App. 2005) ("[I]ntervening conduct renders any prior negligence too remote to operate as the proximate cause.").

However, the mere existence of an intervening cause does not relieve a defendant of liability; "[i]t must so interrupt the chain of events that it becomes the responsible, direct, proximate and immediate cause of the injury." *Buchholz v. Mosby-Year Book, Inc.*, 969 S.W.2d 860, 862 (Mo. Ct. App. 1998). If an intervening cause is "a foreseeable and natural product of the original negligence," it is not superseding and does not preclude the defendant from being a cause of a plaintiff's injury. *Jordan v. Gen. Growth Dev. Corp.*, 675 S.W.2d 901, 903 (Mo. Ct. App. 1984).

Here, National City asserts that it is entitled to present evidence and argue that other former defendants' conduct was an intervening and superseding cause. As to David Wulf; Wulf, Bates & Murphy, and the Cassitys, among other former defendants, the Court already has ruled that their conduct was "reasonably foreseeable" as a matter of law and thus not an intervening cause. [ECF No. 2068 at 9]. While this ruling did not include Brown Smith Wallace, the same reasoning should control, given National City's obligation to perform adequate recordkeeping for the NPS pre-need trusts. Mo. Rev. Stat. § 436.031.

National City suggests that the Comerica summary judgment ruling does not apply despite the same conduct being at issue. While the Court's order addressing Comerica's intervening cause argument applied Iowa law, the standard for intervening cause in Missouri is substantially the same. *Compare Hargis v. Lankford*, 372 S.W.3d 82, 86 (Mo. Ct. App. 2012) ("An efficient, intervening cause is a new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate and immediate cause of the injury, but it

10

may not consist of an act of concurring or contributing negligence."), *with Hayward v. P.D.A., Inc.*, 573 N.W.2d 29, 32 (Iowa 1997) ("To conclude that an event or conduct constitutes a superseding cause, the court must find that the later-occurring event is such as to break the chain of causal events between the actor's [conduct] and the plaintiff's injury.") (internal quotation marks and citation omitted) (alternation in original).

As illustrated by this Court's rulings on Comerica's intervening cause defense, a court may rule on the defense as a matter of law.  The Eastern District of Missouri likewise ruled that the plaintiffs were "entitled to summary judgment on defendants' affirmative defense of intervening cause" because the intervening cause "merely contributed to the chain of events set in motion by [the defendant]."  *In re Genetically Modified Rice Litig.*, 666 F. Supp. 2d 1004, 1025 (E.D. Mo. 2009), *adhered to on reconsideration*, No. 4:06MD1811 CDP, 2011 WL 5024548 (E.D. Mo. Oct. 21, 2011).  As relevant here, the *Rice Litigation* court held that "if [defendant's] negligence resulted in [injury], the failure of others to detect the [injury] is not an intervening cause."  *Id.* at 1024; *see English v. Empire Dist. Elec. Co.*, 220 S.W.3d 849, 857 (Mo. Ct. App. 2007) ("An intervening cause will not break the chain of causation when it is merely a natural progression of events that were set in motion by the original negligent act.").

Given the Court's prior rulings and the undisputed facts including the loss of pre-need trust assets under Allegiant's watch, National City cannot rely on sole cause authority or intervening cause.  National City should be precluded from introducing evidence and arguing that non-parties are solely at fault for the injuries caused by Allegiant.

Dated this 27th day of January, 2015.

Respectfully submitted,

_____s/ Wendy B. Fisher_____
Daniel M. Reilly (Admitted *Pro Hac Vice*)
Larry S. Pozner, E.D. Missouri Bar No. 2792CO
Wendy B. Fisher (Admitted *Pro Hac Vice*)
Glenn E. Roper (Admitted *Pro Hac Vice*)
Clare S. Pennington (Admitted *Pro Hac Vice)*
Farrell A. Carfield (Admitted *Pro Hac Vice*)
Lauren G. Jaeckel (Admitted *Pro Hac Vice*)
Sean Connelly (Admitted *Pro Hac Vice*)
Michael P. Robertson (Admitted *Pro Hac Vice*)
Michael T. Kotlarczyk (Admitted *Pro Hac Vice*)
Dru R. Nielsen (Admitted *Pro Hac Vice*)
Ashley D. Morgan (Admitted *Pro Hac Vice*)

Reilly Pozner LLP
1900 16th Street, Suite 1700
Denver, CO 80202
(303) 893-6100

Maurice B. Graham, Bar No. 3257
Morry S. Cole, Bar No. 77854
Gray, Ritter & Graham, P.C.
701 Market Street, Suite 800
St. Louis, MO 63101
(314) 241-5620

Attorneys for Plaintiffs Jo Ann Howard and Associates, P.C., in its capacity as Special Deputy Receiver of Lincoln Memorial Life Insurance Company, Memorial Service Life Insurance Company, and National Prearranged Services, Inc.; the National Organization of Life and Health Insurance Guaranty Associations; the Missouri Life & Health Insurance Guaranty Association; the Texas Life & Health Insurance Guaranty Association; the Illinois Life & Health Insurance Guaranty Association; the Kansas Life & Health Insurance Guaranty Association; Oklahoma Life & Health Insurance Guaranty Association; the Kentucky Life & Health Insurance Guaranty Association; and the as Life & Health Insurance Guaranty Association

1935851

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2015, the foregoing **PLAINTIFFS' BRIEF ADDRESSING NATIONAL CITY BANK/PNC BANK'S AUTHORITIES AND ARGUMENT REGARDING SOLE CAUSATION** was filed electronically with the Clerk of Court and served by operation of the Court's electronic filing system upon all counsel of record in this case participating in Electronic Case Filing.

I hereby further certify that on January 27, 2015, the foregoing was sent by United States Postal Service or by electronic means, as indicated below, to the following non-participants in Electronic Case Filing:

>Sharon Nekol Province, *Pro se*
>Register # 36759-044
>FMC Carswell
>Federal Medical Center
>P.O. Box 27137
>Fort Worth,  TX 76127

>*s/ Wendy B. Fisher*
>Wendy B. Fisher
>(Admitted *Pro Hac Vice)*
>Attorney for Plaintiffs