UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JO ANN HOWARD AND ASSOCIATES, )
P.C., *et al.*, )
)
     Plaintiffs, )
v. )     Cause No. 4:09-CV-01252-ERW
)
J. DOUGLAS CASSITY, *et al.*, )
)
     Defendants. )

## MEMORANDUM IN SUPPORT OF PNC BANK'S[1]
## MOTION FOR JUDGMENT AS A MATTER OF LAW

Under Rule 50(a) of the Federal Rules of Civil Procedure, PNC Bank moves for

judgment as a matter of law on three categories of Plaintiffs' claimed damages.  As trial has

confirmed, Plaintiffs' claims for these damages have no basis in the actual evidence.  Plaintiffs

seek to recover from PNC Bank amounts that have no connection to Allegiant's conduct

whatsoever.  In particular, the Special Deputy Receiver ("SDR") claims as damages (a) "growth"

amounts that NPS independently promised to pay funeral homes above and beyond the amount

of money deposited into the Missouri Trusts and (b) payments the Texas Life and Health

Insurance Guaranty Association ("TLHGA") has made related to policies issued by Memorial.

Allegiant did not owe any duty to NPS related to growth payments or Memorial life insurance

policies.  Further, there is no evidence that any action of Allegiant caused NPS to be unable to

honor growth payments, or Memorial to be unable to honor policies it had issued.  Because there

---

[1] "PNC Bank" includes PNC Bank, N.A. and National City Bank.

is not a legally sufficient evidentiary basis to find for Plaintiffs on these categories of damages, they should not be submitted to the jury.[2]

In addition, Plaintiffs have not proven a submissible claim for punitive damages.  Under Missouri law, an award of punitive damages requires "clear and convincing evidence of evil motive and reckless indifference to the plaintiff's rights."  *Romeo v. Jones,* 144 S.W.3d 324, 334 (Mo. Ct. App. 2004) (citations omitted).  Plaintiffs have not adduced *any* evidence of evil motive or reckless indifference on the part of Allegiant Bank—let alone clear and convincing evidence. At most, Plaintiffs have presented evidence that Allegiant's trust administrator was negligent. Under applicable Missouri and Eighth Circuit law, such a showing cannot support the extraordinary remedy of punitive damages.

## STANDARD

Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a).  When reviewing the sufficiency of the evidence on a state-law claim, "a federal district court applies the sufficiency standard of the state in which it sits."  *Ashley v. R.D. Columbia Assocs., L.P.*, 54 F.3d 498, 501 (8th Cir. 1995); *see also Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 812 (8th Cir. 1992). Under Missouri law, "[a] case may not be submitted unless each and every fact essential to liability is predicated on legal and substantial evidence."[3]  *Ellison v. Fry*, 437 S.W.3d 762, 768

---

[2] PNC Bank reiterates and preserves its argument that damages, if any, in this case should be limited to the amount of harm to the trust.  *See, e.g.*, *Barnett v. Rogers*, 400 S.W.3d 38, 49-50 (Mo. Ct. App. 2013); *Parker v. Pine*, 617 S.W.2d 536, 540 (Mo. Ct. App. 1981).  Nothing herein should be viewed to waive that argument.

[3] The federal sufficiency standard is comparable.  Under federal law, "judgment as a matter of law is proper when the nonmoving party has presented insufficient evidence to support a jury verdict in his favor viewing the evidence in the light most favorable to the nonmoving party and

(Mo. 2014) (en banc).  "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case." *Oliver v. Ford Motor Credit Co.*, 437 S.W.3d 352, 358 (Mo. Ct. App. 2014) (quotation marks omitted).  Judgment as a matter of law (or directed verdict) may be granted as to certain categories of damages.  *See, e.g.*, *Krakover v. Mazur*, 48 F.3d 341, 346 (8th Cir. 1995) (punitive damages); *Shaughnessy v. Mark Twain State Bank*, 715 S.W.2d 944, 949 (Mo. Ct. App. 1986) (category of damages).

## ARGUMENT

### I. The SDR Cannot Recover Its Claimed "Growth" Payment Damages from PNC Bank.

The SDR claims as damages approximately $44 million in connection with "growth" payments that NPS apparently promised to pay funeral homes around the country.[4]  In its ruling on PNC Bank's motion for summary judgment, the Court ruled:

> The Trustees did owe a duty to NPS because NPS was a beneficiary of the trusts. It is possible NPS's inability to pay growth or inflation payments is a proximate cause of the alleged breaches of the Trustees.  It is the jury's providence to decide if the Trustees breached their duties and if the damages claimed were proximately caused by those breaches.

D.E. #2092, at 13.  Under this ruling, for the SDR to recover its claimed "growth" payment damages, it must establish that (a) Allegiant owed a duty to NPS related to such payments and

---

giving the nonmoving party the benefit of all reasonable inferences without assessing credibility."  *Marti v. City of Maplewood*, 57 F.3d 680, 685 (8th Cir. 1995).

[4] PNC Bank reiterates that the SDR has not proven that this figure reliably represents the amount that NPS is supposedly obligated to pay funeral homes.  None of the representatives of the SDR could explain how this figure was calculated.  *See* Trial Tr., Vol. 11-A, at 57:17-58:8 (Harrigan); Vol. 14-B, at 56:9-57:10 (Barnard); Vol. 17-B, at 77:7-17 (Howard).  And Carolyn Barnard, the person who generated the number from CTS, took no steps to compare the growth factor figures "spit out" by CTS with the growth factors promised in NPS's contracts with funeral homes. Trial Tr., Vol. 14-B, at 57:11-15.

3

(b) Allegiant's breach of duty proximately caused NPS's inability to make such payments.

There is no evidence establishing either element.

First, there is no evidence that Allegiant owed any duty to NPS related to NPS's promised growth payments to funeral homes.  Under governing law, Allegiant's duty was "to protect *the trust property* against damage or destruction."  *Ray Cnty. v. Heath*, 636 S.W.2d 413, 417 (Mo. Ct. App. 1982) (emphasis added); *see also* Restatement (Second) of Trusts § 176 (1959) ("The trustee is under a duty to the beneficiary to use reasonable care and skill to preserve *the trust property*." (emphasis added)).  Allegiant had no obligation "to account for property which was never in [its] possession or under [its] control."  *Cole v. Lamb*, 461 S.W.2d 14, 15 (Mo. Ct. App. 1970) (per curiam).  The testimony of Plaintiffs' standard-of-care expert, Ed Coster, confirmed that the custom and practice of the trust industry required Allegiant to "control that which it is responsible for, whether it's, you know, a piece of real estate or cash or securities or whatever," and to "protect the assets."  Trial Tr., Vol. 16-A, at 70:5-15.  In other words, under both the governing law and the custom and practice, Allegiant's duty was to protect the assets that were in the trust.

There is no evidence that the money NPS used to make growth payments was an asset of the Missouri Trusts.  According to the testimony of multiple witnesses, the growth payments that NPS promised funeral homes were amounts *in addition* to the money that pre-need purchasers paid to NPS.  *See* Trial Tr. Vol. 9-B, at 43:15-44:2 (Summerville); Vol. 11-A, at 56:10-20 (Harrigan); Vol. 11-A, at 87:3-7 (Lewis); Vol. 14-B, at 53:25-54:7 (Barnard); Vol. 17-B, at 79:16-18 (Howard).  By their very nature, the growth payments were "money that was never put into the NPS trusts in Missouri."  Trial Tr., Vol. 11-A, at 56:21-23 (Harrigan).  Because the money used to pay growth payments was not a trust asset, Allegiant Bank did not owe any duty

4

to NPS relating to the growth payments that NPS promised funeral homes.  *See* D.E. #2214, at 3 ("The policies or payments must have been going into the trusts to create a duty."); *see also Cole*, 461 S.W.2d at 15.  There is no basis for the SDR to claim that amount as damages against Allegiant Bank.

Second, and independently, the SDR has not proven that Allegiant's actions proximately caused NPS's inability to make growth payments to funeral homes, as this Court ruled it was required to do.  "The general test for proximate cause is whether the injury is the natural and probable consequence of the defendant's [breach]."  *Tyson v. Chi. Title Ins. Co.*, 348 S.W.3d 833, 837 (Mo. Ct. App. 2011) (quotation marks omitted).  "Where the plaintiff fails to make this causal connection between the defendant's alleged negligence and plaintiff's alleged injury, no damages may be recovered."  *Id.*  There is no evidence that NPS's inability to make growth payments is the natural and probable consequence of any alleged breach of duty by Allegiant.  There was no testimony that NPS relied on trust income to generate growth payments, and no expert opined that Missouri Trusts generated insufficient income for NPS.  (Indeed, Plaintiffs' theory appears to be that the Missouri Trusts paid NPS too *much* money.)  To the contrary, Jo Ann Howard admitted that no one has analyzed whether NPS would have been able to make growth payments even if Allegiant had *not* committed any alleged breaches of duty.  Trial Tr., Vol. 17-B, at 78:11-80:17.  If NPS would have been unable to continue making growth payments irrespective of Allegiant's conduct, then Allegiant could not have proximately caused the growth payment losses.  The SDR's failure to prove proximate causation independently precludes any recovery for growth payments.

II.     **The SDR Cannot Recover for Payments Made by TLHGA in Connection with Memorial Policies.**

This Court has already held that TLHGA cannot itself recover damages against PNC Bank for payments TLHGA has made related to Memorial life insurance policies because Allegiant did not owe any duties to Memorial policyholders.  *See* D.E. #2214, at 3. Nevertheless, the SDR claims those same payments as damages on the ground that TLHGA is a creditor of the NPS estate.  This claim fails on multiple grounds.  First, the SDR has not proved that TLHGA has a valid claim against the NPS estate.  Second, Allegiant did not owe any duty to NPS related to Memorial life insurance policies issued in Texas.  Finally, the SDR has not proved that Allegiant's actions caused Memorial's inability to pay on life insurance policies or NPS's inability to pay on the associated pre-need contracts.  For each of these reasons, the Court should hold that Plaintiffs cannot submit to the jury any claim for damages related to Memorial-issued policies.

A.     **The SDR Has Not Proven That TLHGA Has a Valid Claim against the NPS Estate.**

This Court has held that Plaintiffs must prove that TLHGA "truly [is] a creditor of the NPS estate to recover [its] damages at trial."  D.E. #2214, at 4.  In particular, the Court observed that it did "not have the facts necessary to determine if this claim has been adjudicated by the receivership court or has been paid by the SDR to determine if the SGAs are creditors of NPS." *Id.*

The SDR has not proven that TLHGA's claim against the NPS estate has been adjudicated by the receivership court or paid by the SDR.  In fact, the evidence establishes the opposite.  Kim Harrigan, the SDR's claims administrator, confirmed that the Texas receivership court must approve all distributions from the NPS estate.  Trial Tr., Vol. 11-A, at 42:20-23.  She

testified, however, that the Texas receivership court "has not yet approved any distributions from the NPS estate to the Guaranty Associations."[5]  Trial Tr., Vol. 11-A, at 43:24-44:2.

The receivership court's approval of the Liquidation Plan in 2008 did not adjudicate the validity of the Guaranty Associations' claims against NPS.  The Liquidation Plan merely specifies the priority level of any claims by the Guaranty Associations.  *See* D-221-0015, § 10.6.1 ("The SDR shall classify any of the Participating Association claims against NPS as Class 5 general creditor level claims as defined in Tex. Ins. Code § 443.301(e).").  The Liquidation Plan similarly specifies the creditor level for claims under pre-need contracts, "including claims for the difference between the amount of death benefits under the Policy paid by a Participating Association and the amount of funeral/burial benefits purportedly due under a Preneed Funeral Contract."  *See id.*, § 10.6.2 ("[T]he SDR shall classify such claim against NPS as a Class 5 general creditor level claim as defined in Tex. Ins. Code § 443.301(e).").  Neither provision purports to determine that the claims are valid.

In sum, the SDR has not presented any evidence that TLHGA has a valid, approved claim against the NPS estate for reimbursement for amounts it paid related to life insurance policies issued by Memorial.

### B.    Allegiant Did Not Owe a Duty to NPS Related to Memorial Policies.

Even if TLHGA has a valid creditor claim against NPS, Allegiant is not automatically liable to the NPS estate for all creditor claims.  As this Court has already ruled, Allegiant Bank "only owe[d] duties to the beneficiaries of the trusts *as trustee*."  D.E. #2092, at 11 (emphasis added); *see also id.* at 25 (ruling that Plaintiffs had not proved that "the Trustees owed a duty

---

[5] The Texas receivership court has approved distributions to the Guaranty Associations from the *Lincoln* estate.  Trial Tr., Vol. 11-A, at 42:24-43:14 (Harrigan).  This is unsurprising, since the Guaranty Associations are deemed to have priority claims against Lincoln's estate by statute. *See* Tex. Ins. Code § 443.301(b); Trial Tr., Vol. 11-A, at 42:24-43:11 (Harrigan).

outside of their duties as trustees").  The first step in analyzing the SDR's claim for damages is determining the scope of the duty that Allegiant owed to NPS as the trustee of the Missouri Trusts.

As set forth above, Allegiant's responsibility under both the law and the custom and practice in the trust industry was "to protect the trust property against damage or destruction." *Ray Cnty.*, 636 S.W.2d at 417; *see also* Trial Tr., Vol. 16-A, at 70:5-15 (Coster).  It is undisputed that there were no Memorial policies in the Missouri Trusts.  *See* D.E. #2214, at 3 ("Plaintiffs have stated in their pleadings and again in their response to this motion there were no Memorial policies held in the Missouri trusts.").  The evidence at trial confirms that Memorial only issued policies to NPS purchasers *in Texas*.  *See* Trial Tr., Vol. 8-A, at 71:23-72:1 (Cassity).  Because Memorial policies were not trust assets, Allegiant did not owe a duty to protect and control Memorial policies that backed NPS pre-need contracts issued in Texas.  There is no basis for the SDR to recover against Allegiant any amounts that the NPS estate supposedly owes to TLHGA for payments related to Memorial policies.

### C.     Allegiant Did Not Cause Any Memorial-Related Losses.

Finally, the SDR has not proven that any breach of duties by Allegiant caused losses related to policies issued by Memorial in Texas.  TLHGA paid claims on Memorial policies and paid another insurer to assume the Memorial obligations because Memorial became insolvent and was unable to pay its obligations.  There is absolutely no evidence that Allegiant caused Memorial to go insolvent, or that Memorial ever paid any money to the Missouri Trusts.  None of Plaintiffs' experts even analyzed the reasons for Memorial's insolvency.

Nor is there evidence that Allegiant caused NPS's inability to pay claims on pre-need contracts issued in Texas that were backed by Memorial life insurance policies.  Plaintiffs did not present any evidence that Allegiant's conduct in operating the Missouri Trusts contributed to

8

NPS's inability to make payments to Texas pre-need purchasers.  Plaintiffs' causation theory appears to be that Allegiant could have somehow stopped NPS's Missouri operations.  Even putting aside the utterly speculative nature of this theory, there is no basis on which the jury could reasonably conclude that Allegiant could have stopped NPS's operations *in Texas*.  NPS was already operating in Texas when Allegiant became trustee in 1998.  Trial Tr., Vol. 8-A, at 110:12-18 (Cassity); Vol. 10-A, at 125:10-15 (Sargent).  Texas "rivaled" Missouri in terms of importance to NPS, Trial Tr., Vol. 8-A, at 109:20-23 (Cassity), and Texas was one of NPS's six "foundation" states, Trial Tr., Vol. 10-B, at 4:17-22, 10:5-16 (Sargent).  Even accepting *arguendo* Plaintiffs' speculative theory that Allegiant could have somehow stopped NPS's Missouri operations, there is simply no evidence that Allegiant could have stopped NPS's Texas operations.  Brent Cassity is the only witness who testified on this subject, and he testified only that NPS would have had to change its marketing strategy if it no longer operated in Missouri.  Trial Tr., Vol. 8-A, at 121:17-122:15.  This testimony does not have "probative force" upon the different question of whether Allegiant could have stopped the issuance of NPS pre-need contracts in Texas.  *Oliver*, 437 S.W.3d at 358 (quotation marks omitted).  Plaintiffs have not proven that Allegiant should or could have stopped NPS from issuing pre-need contracts in Texas.  Accordingly, there is not a legally sufficient evidentiary basis to find that Allegiant caused any Memorial-related losses.

### III.   Plaintiffs Have Not Proven a Basis for an Award of Punitive Damages.

Plaintiffs also have failed to put forth facts that support a submissible case for punitive damages.  Under Missouri law,[6]

---

[6] Although there are constitutional limitations on punitive damages, *see, e.g.*, *BMW of North America v. Gore*, 517 U.S. 559 (1996), as a general matter, "[i]n a diversity action . . . the propriety of an award of punitive damages for the conduct in question . . . are questions of state law," *Browning-Ferris Indus. of Vermont v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989).

> [b]efore punitive damages can be considered, a plaintiff must present clear and convincing evidence of evil motive and reckless indifference to the plaintiff's rights. Generally, evidence is clear and convincing if it instantly tilts the scales in the affirmative when weighed against the evidence in opposition and if it causes the fact finder to have an abiding conviction that the evidence is true.

*Romeo,* 144 S.W.3d at 334 (citations omitted).

"Submission of a punitive damages claim to the jury warrants special judicial scrutiny because the instructional standards for punitive damages are necessarily general."  *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 247 (Mo. banc 2001) (overruled on other grounds by *Badahman v. Catering St. Louis*, 395 S.W.3d 29, 40 (Mo. banc 2013)).[7]  In making that determination,

> [f]actors that weigh against submission of punitive damages claims are circumstances in which: prior similar occurrences known to the defendant have been infrequent; the injurious event was unlikely to have occurred absent negligence on the part of someone other than the defendant; and, the defendant did not knowingly violate a statute, regulation, or clear industry standard designed to prevent the type of injury that occurred.

*Id.* at 248 (citation omitted).[8]  "Careful judicial scrutiny is needed to determine whether the conduct was so egregious that it was tantamount to intentional wrongdoing."  *Id.* (citation omitted).

Plaintiffs have presented *no evidence* of "evil motive and reckless indifference to the Plaintiffs' rights," much less the clear and convincing evidence that would be required to permit the issue to go to the jury.  Plaintiffs' theory of the case is that a single former employee of Allegiant Bank—Herb Morisse—failed to recognize fraud by third parties more than ten years

---

[7] *Badahman* overrules *Alcorn* only as to an issue of Missouri appellate procedure.  *See Badahman*, 395 S.W.3d at 40.

[8] Moreover, while it would not relieve a defendant of liability for negligence, "conformity with the regulatory process does negate the conclusion that [a defendant's] conduct was tantamount to intentional wrongdoing."  *Alcorn*, 50 S.W.3d at 249.

ago.  Plaintiffs have not established bad motive on Mr. Morisse's part.  There is simply no basis under Missouri law to award punitive damages against a bank that failed to discover fraud, *even if* that bank's employee's failure to uncover the fraud was negligent.[9]

Moreover, Allegiant Bank, a small Missouri bank, ceased to exist in 2004 when it was merged into National City Bank.  Prior to the merger, Allegiant Bank transferred the trusts to Bremen Bank.  In turn, National City Bank was merged into PNC Bank in 2009.  Neither National City Bank nor PNC Bank ever acted as a trustee of any of the trusts at issue in this case.  At best, Plaintiffs have shown negligent conduct over a decade ago by one employee of a bank that no longer exists.  Leaving aside that this conduct would not merit punitive damages *against Allegiant*, as a practical matter, any damages award would be paid by *PNC Bank*, an entity that has no involvement in *any* of the conduct at issue in the case.[10]

Under Missouri law, "punitive damages require a willful, wanton or malicious culpable mental state." *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. 1989).  In other words, "acts justifying imposition of punitive damages must be willful, wanton, malicious or so reckless as to be in utter disregard of consequences.  There must be some element of wantonness or bad motive." *McClellan v. Highland Sales & Inv. Co.*, 484 S.W.2d 239, 242 (Mo. 1972) (citations omitted).  This element of wantonness or bad motive must be proven by clear and convincing

---

[9] Indeed, three former Defendants in this case were convicted of *defrauding Allegiant* through the very conduct that Plaintiffs assert Mr. Morisse failed to detect and stop.  Contrary to Plaintiffs' incorrect assertions that the SDR is the only "victim" of the fraud, David Wulf, Randy Sutton, and Doug Cassity were convicted of defrauding Allegiant Bank.  *See* D-235, D-236, D-237 (judgments of conviction).

[10] The rationale for punitive damages seems particularly inapplicable to a successor in liability two corporations removed from the actual events that give rise to the potential liability.  "The remedy is, after all, imposed as punishment for and deterrence of bad conduct." *Alcorn*, 50 S.W.3d at 248.

evidence because "the remedy is so extraordinary or harsh that it should be applied only sparingly." *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 110 (Mo. 1996).

The Missouri Supreme Court has noted that "punitive damages are to be the exception rather than the rule, and that they are to be confined to cases in which the evidence . . . . [shows] willful wrongdoing, or recklessness which is the equivalent of willful wrongdoing." *Menaugh v. Resler Optometry, Inc.*, 799 S.W.2d 71, 75 (Mo. 1990), *overruled on other grounds by Rodriguez*, 936 S.W.2d at 110.[11]  Negligence, therefore, is not a sufficient basis for an award of punitive damages.[12]  *See Menaugh*, 799 S.W.2d at 74 ("A punitive award is not appropriate in every negligence case.  Facts in addition to those relied on in the negligence submission must be established in order to recover punitive damages.").

Following Missouri law, the Eighth Circuit has twice reversed punitive damages awards against fiduciaries because there was no proof of self-dealing or personal profit from the breach of fiduciary duty.  *See Koester v. Am. Republic Invs.*, 11 F.3d 818, 823 (8th Cir. 1993); *Bold v. Simpson*, 802 F.2d 314, 321 (8th Cir. 1986).  In each of these cases, the conduct at issue was far more egregious than anything Plaintiffs contend Mr. Morisse or Allegiant Bank did.

In *Koester*, the defendant against whom the jury awarded punitive damages was the general partner in a real estate venture and was responsible for managing the partnership's properties.  *Koester*, 11 F.3d at 820.  The plaintiffs, the limited partners in the venture, sued the

---

[11] *Rodriguez* reverses *Menaugh* as to the burden of proof for punitive damages.  *See id.*

[12] Nor is gross negligence a sufficient basis for punitive damages.  The Missouri Supreme Court has adopted the Restatement (Second) of Torts' rule that the underlying conduct must be "outrageous" and show "evil motive or reckless indifference to the rights of others."  *Burnett*, 769 S.W.2d at 789 (citing Restatement (Second) of Torts § 908(2) (1979)).  Under the Restatement approach, gross negligence does not meet this standard.  *See* Restatement (Second) of Torts § 908, Reporter's Note b ("Gross negligence, in the sense of merely an extreme departure from ordinary care, is not enough.").  Indeed, the Restatement requires "conduct involving some element of outrage similar to that usually found in crime."  *Id.* cmt. b.

12

defendant for breach of fiduciary duty and fraud.  *Id.* at 821.  A jury found that the defendant had breached his fiduciary duties to the limited partners because, "after representing that he would personally manage the partnership properties, [the defendant] sold buildings in California without accounting for or distributing the sale proceeds to plaintiffs, and failed to provide them with notice of a foreclosure sale [of another partnership property] until one business day before the sale."  *Id.* at 823.  The *Koester* defendant's breaches resulted in more than $3 million in consequential damages to the partnership.  *Id.*  Notably, the Eighth Circuit's opinion did not indicate what happened to the sale proceeds the defendant failed to account for or distribute.  *See id.*  Moreover, at the time of trial, the defendant was under indictment for the conduct at issue in the civil litigation.  *See id.* at 821.

Despite the fiduciary's various misdeeds, the Eighth Circuit nonetheless concluded that "none of these actions are inherently reflective of bad motive or legal malice" and accordingly reversed the jury's award of punitive damages.  *Id.*  The Court went on to note that the plaintiffs' argument that these acts justified punitive damages even though there was no evidence of self-dealing or misappropriation of funds "reduces to the proposition that any breach of fiduciary duty warrants an award of punitive damages."  *Id.; see also Moon v. Tower Grove Bank & Trust Co.*, 691 S.W.2d 399, 401 (Mo. App. 1974) ("The requisite mental state requires an intent to cause harm.  Mere intent to commit the act which causes harm is not sufficient.").

Similarly, in *Bold v. Simpson*, 802 F.2d at 321, the Eighth Circuit reversed an award of punitive damages against an officer of a corporation who breached his fiduciary duty when he assigned a company lease to himself and mismanaged the property.  *Bold* stems from a failed oil and gas venture.  *See id.* at 317.  After the manager who was overseeing oil and gas operation walked off the job, the defendant assigned the lease to himself and took over the management of

13

the property.  *Id.*  The owner of the property sued to take back the property he had leased to the

corporation because it was not producing sufficient royalties.  *Id.*  Ultimately, the property owner

prevailed in voiding the lease, and the corporation lost its entire investment.  *Id.*  The jury found

the defendant's acts constituted fraud, conversion, and negligent mismanagement.  *Id.*

Nonetheless, as in *Koester*, the Eighth Circuit reversed the jury's award of punitive damages

because there was no evidence of malice.  *Id.* at 321 (citing *Moon*, 691 S.W.2d at 401, among

other authorities).

   Given the Eighth Circuit's determination in *Koester* and *Bold* that it was legal error to

submit the issue of punitive damages to the jury despite the far more blameworthy conduct of

those defendants, there is no basis for the jury in this case to consider punitive damages.

Plaintiffs have put forth no evidence of conduct "so egregious that it was tantamount to

intentional wrongdoing," *see Alcorn*, 50 S.W.3d at 247, much less the "clear and convincing"

evidence that would permit this issue to reach a jury, *Romeo*, 144 S.W.3d at 334.

                                        **CONCLUSION**

   For the foregoing reasons, PNC Bank requests that the Court enter judgment in favor of

PNC Bank on Plaintiffs' claims for (a) growth payment damages, (b) damages related to

Memorial life insurance policies, and (c) punitive damages.

14

Dated:  March 2, 2015                          Respectfully submitted,

By:    /s/ Amy Mason Saharia
    Stephen D. Raber (Admitted *pro hac vice*)
    J. Andrew Keyes (Admitted *pro hac vice*)
    Amy Mason Saharia (Admitted *pro hac vice)*
    Mary Beth Hickcox-Howard (Admitted *pro hac vice*)
    Teagan J. Gregory (Admitted *pro hac vice*)
    **WILLIAMS & CONNOLLY LLP**
    725 Twelfth Street, N.W.
    Washington, DC 20005
    (202) 434-5000 (telephone)
    (202) 434-5029 (facsimile)
    asaharia@wc.com

    Mike W. Bartolacci, Bar No. 29110
    **THOMPSON COBURN LLP**
    One U.S. Bank Plaza, Suite 2600
    St. Louis, MO 63101
    (314) 552-6000 (telephone)
    (314) 552-7000 (facsimile)
    mbartolacci@thompsoncoburn.com

    *Attorneys for Defendants National City Bank*
    *and PNC Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 2, 2015, the foregoing MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW was filed electronically with the Clerk of Court and served by operation of the Court's electronic filing system upon all counsel of record in this case participating in Electronic Case Filing.


<u>/s/ Amy Mason Saharia</u>
Amy Mason Saharia
(Admitted *Pro Hac Vice*)

*Attorney for Defendants National City Bank
and PNC Bank, N.A.*