UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JO ANN HOWARD          )
ASSOCIATES, P.C., *et al.*,     )
                        )
     Plaintiffs,         )
                        )
     vs.              )     Case No. 4:09CV01252 ERW
                        )
J. DOUGLAS CASSITY, *et al.*,   )
                        )
     Defendants.       )

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs' First Amended Bill of Costs [ECF No. 2398].

## I.     BACKGROUND

This litigation arose out of proceedings instituted by the Texas Department of Insurance in Travis County, Texas, in which National Prearranged Services, Inc. ("NPS"), Lincoln Memorial Life Insurance Company ("Lincoln"), and Memorial Service Life Insurance Company ("Memorial") were placed in receivership and subsequently liquidated. Plaintiffs in this litigation are Jo Ann Howard and Associates, P.C., acting on behalf of NPS, Lincoln, and Memorial, as Special Deputy Receiver ("SDR") in connection with the Texas receivership proceedings; the National Organization of Life and Health Guaranty Associations ("NOLHGA")[1]; and the individual state life and health insurance guaranty associations of Arkansas, Illinois, Kansas, Kentucky, Missouri, Oklahoma, and Texas.

---

[1] NOLHGA represents the interests of the state life and health insurance guaranty associations of Arizona, California, Colorado, the District of Columbia, Georgia, Idaho, Indiana, Iowa, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Mexico, North Dakota, Ohio, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Washington, West Virginia, Wisconsin, and Wyoming.

On May 3, 2012, Plaintiffs herein filed their Third Amended Complaint, asserting a wide variety of claims against various defendants, including, but not limited to, claims for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-1968, violations of the Lanham Act, 15 U.S.C. §§ 1051-1141n, state law claims concerning intentional and negligent fraudulent misrepresentations, negligence and gross negligence, breach of fiduciary duties, and violations of the Texas Receivership Act, Tex. Ins. Code §§ 443.202-443.205 [ECF No. 916]. The Third Amended Complaint alleged the fraudulent scheme's ultimate goal was to siphon funds away from NPS, Lincoln, and Memorial for the personal use of certain defendants, a scheme that ultimately left more than $600 million in liabilities to be satisfied by the SDR, NOHLGA, and the state life and health guaranty association Plaintiffs.

There were over forty defendants named in Plaintiffs' Third Amended Complaint, with varying degrees of alleged involvement in what Plaintiffs characterized as a scheme to defraud individual consumers and funeral homes in the sale of NPS's pre-need funeral contracts. All but two of these defendants have since been dismissed.

On March 9, 2015, the jury returned a verdict for Plaintiffs and against Defendant PNC Bank[2] [ECF No. 2301].[3] Plaintiffs now seek recovery of their costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure ("FRCP").

## II.    STANDARD

Rule 54(d) of the FRCP provides "costs—other than attorney's fees—should be allowed to the prevailing party." *See also In re Derailment Cases*, 417 F.3d 840, 844 (8th Cir. 2005) ("A prevailing party is presumptively entitled to recover all of its costs."). Pursuant to 28 U.S.C. § 1920, the Court may tax costs for:

---

[2] PNC Bank includes PNC Bank, N.A. and National City Bank.
[3] Plaintiff makes no attempt to recover costs from any other defendants.

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The Court may not award costs other than those authorized by § 1920, because this section "imposes rigid controls on cost-shifting in federal courts[.]" *Brisco-Wade v. Carnahan*, 297 F.3d 781, 782 (8th Cir. 2002) (internal citations omitted). However, upon objection by the opposing party as to authorized costs, the Court may exercise its discretion to grant or deny costs. *Pershern v. Fiatallis North America, Inc.*, 834 F.2d 136, 140 (8th Cir. 1987).

Defendant has a number of objections to the Plaintiffs' motion for costs, which the Court will review in turn.

## III. DISCUSSION

### A. § 1920(1) – Fees of the Clerk

The Court may tax the fees of the clerk to the prevailing party pursuant to 28 U.S.C. § 1920(1). Defendant does not dispute the taxation of this cost, and so Defendant will accordingly be taxed $350.00 for fees of the Clerk.

### B. § 1920(2) – Costs for Printed or Electronically Recorded Transcripts

#### i. Deposition Transcripts

As discussed *infra*, Defendant has failed to rebut the presumption that Plaintiffs are entitled to recover all of their deposition transcript costs, and thus Defendant will be taxed $69,555.13 in satisfaction of those costs.

### 1. Deposition Transcripts of Plaintiffs' Experts and 30(b)(6) Representatives[4]

The cost of deposition transcripts for the Plaintiffs' experts and 30(b)(6) representatives will be taxed to Defendant. Defendant objects that the transcripts were not "necessarily obtained for use in the case," but were instead "obtained primarily for the convenience of [the] parties" [ECF No. 2407, pg. 4]. Defendant contends this is "evidenced by the fact that Plaintiffs did not request these depositions in the first instance and no parties appear to have referenced this testimony in summary judgment briefing." Defendant further argues Plaintiffs had continuing access to these witnesses, and they could not have presented the witnesses' deposition testimony at trial [ECF No. 2407, pg. 5].

"The relevant inquiry is not whether the parties used the depositions at trial, but, rather, whether the depositions reasonably seemed necessary at the time they were taken." *Cowden v. BNSF Ry. Co.*, 991 F.Supp.2d 1084, 1089 (E.D. Mo. 2014) (quoting *Zotos v. Lindbergh School Dist.*, 121 F.3d 356, 363 (8th Cir. 1997)) (internal quotations omitted). Additionally, "[e]ven if a deposition is not introduced at trial, a district court has discretion to award costs if the deposition was necessarily obtained for use in case and was not purely investigative." *Id.* (quoting *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006)). This inquiry is prospective rather than retrospective—it looks at what the parties would have reasonably considered necessary at the time of the depositions, not what was ultimately necessary in response to intervening circumstances. *Zotos*, 121 F.3d at 363 ("[T]he determination of necessity must be made in light of the facts known at the time of the deposition, without regard to intervening

---

[4] Defendant objects to paying the costs for the deposition transcripts for the following Plaintiff representatives and experts: Shahriar Arfa-Zanganeh, Andy Dalton, Chris Fuller, Donna Garrett, Kim Harrigan, Jo Ann Howard, Paul Peterson, and Anthony Pye [ECF No. 2407, pg. 4].

developments that later render the deposition unneeded for further use.") (internal quotations omitted) (citations omitted).

Contrary to Defendant's assertions, a party's decision to utilize deposition testimony in summary judgment briefing is merely evidence of necessity—opting not to do so does not necessarily imply a lack of necessity within the meaning of § 1920(2). *See Emmenegger v. Bull Moose Tube Co.*, 33 F.Supp.2d 1127, 1134 (E.D. Mo. 1998) ("Although use of a deposition at trial is direct evidence of its necessity, a deposition unused at trial may still fall within § 1920's ambit if it was reasonably necessary in preparing the case."). Additionally, while the Plaintiffs' continued access to these witnesses could in theory provide Plaintiffs with answers they sought from such witnesses, access alone does not make the Plaintiffs' possession of the deposition transcripts unnecessary. Plaintiffs still needed an official record of what their experts and personal representatives said during their depositions should they be called as witnesses. Further, at the time the depositions were taken, Plaintiffs could have reasonably believed the transcripts were necessary to utilize the information to anticipate and defend against arguments put forth by the Defendants throughout the course of the litigation. *See Cowden*, 991 F.Supp.2d at 1088 ("Plaintiff correctly predicted Defendant would use his deposition for impeachment purposes. Thus, it was reasonably necessary for Plaintiff to possess a copy of the deposition.").

Because Defendant has failed to rebut the presumption that the prevailing party is entitled to receive all of their costs, the Defendant will be taxed the costs of deposition transcripts for the Plaintiffs' expert witnesses and 30(b)(6) representatives. *See In re Derailment Cases*, 417 F.3d 840, 844 (8th Cir. 2005).

**2.** Deposition Transcripts for the Plaintiffs' "Other witnesses relevant to this case"[5]

The costs of the deposition transcripts for the "other witnesses relevant to this case" to which Defendant objects shall be taxed against Defendant. While the necessity of their testimony may at this point seem of tenuous relevance, at the time the depositions were taken, all of the individuals to whom Defendant objects were listed on Defendant's witness list. *Brookins v. Wissota Promoters Assoc.*, No. A3-00-06, 2001 WL 629258, at *5 (D.N.D. Feb. 15, 2001) (explaining that, where a witness is listed on a party's witness list, obtaining their deposition transcript can be considered relevant and necessary) (citing additional cases); *see also Manildra Mill. Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1184-85 (Fed. Cir. 1996) (affirming a finding of the lower court that the deposition transcripts were necessary where witnesses were on a party's may call list); *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002) (finding that listing witnesses on a witness list indicates a need for a party to obtain deposition transcripts for cross-examination purposes). If, at the time of their depositions, Plaintiffs were aware of the possibility those witnesses may be called at trial, even if intervening circumstances or otherwise rendered their testimony unnecessary, it cannot be said Plaintiffs' procurement of their deposition transcripts would have been at that time unnecessary within the meaning of §1920(2). *See Cowden*, 991 F.Supp.2d at 1088 (quoting *Zotos*, 121 F.3d at 363). If there was a possible need to cross-examine those witnesses or to prepare arguments to rebut assertions the witnesses may have made during their depositions, then a copy of the deposition would be a necessary tool in effectuating that purpose. *See Brookins*, 2001 WL 629258, at *5 (finding

[5] Defendant objects to paying the costs for the deposition transcripts for the Plaintiffs' "other witnesses relevant to this case" as follows: Donna Botkin, Steven Bott, Dino Cannella, Scott Giuliano, Matthew Harlan, Herbert Lemmer, David Pisarkiewicz, Shar Reinhold, and Bruce Talen [ECF No. 2407 at 5].

deposition transcripts necessary where they may be needed to guide witness testimony and to object to improper cross-examination or impeachment).

Additionally, notwithstanding Defendant's contentions, it is not the Plaintiff's burden to explain the necessity of obtaining deposition transcripts; it is incumbent upon the objecting party to rebut the presumption the prevailing party is entitled to recover *all* of its costs. *See Cowden*, 991 F.Supp.2d at 1087 (quoting *In re Derailment Cases*, 417 F.3d 840, 844 (8th Cir. 2005)). Defendant has failed to do so. The Defendant will be taxed the costs of the deposition transcripts for Plaintiffs' "other witnesses relevant to this case."

### *ii. Hearing Transcripts*

Because this Court is persuaded of the necessity of some of the Plaintiffs' requested hearing transcripts, the costs for such transcripts shall be awarded as discussed *infra*. Hearing transcripts are recoverable as costs under § 1920(2) if they are necessarily obtained for use in the case. *See Moore v. Moore*, 111 Fed. App'x. 436, 439 (8th Cir. 2004) (affirming an award for costs of a preliminary hearing transcript). However, what qualifies as "necessarily obtained" with respect to a hearing transcript has been left unclear in the Eighth Circuit. In order to explicate a clearer line with which to distinguish the recoverability of a given hearing transcript, this Court finds the deposition transcript inquiry to be appropriately analogous: whether the hearing transcripts reasonably seemed necessary at the time they were obtained. *See Zotos*, 121 F.3d 356 (applying similar language to deposition transcript cost recovery).

Defendant argues none of the Plaintiffs' ten requested hearing transcripts were necessary because they were all of hearings resulting in written orders [ECF No. 2407, pg. 6]. This argument is meritless; countless remarks, oral agreements, expositions of legal theories, and more could be discussed at any given hearing which may not work their way into a final written

order.  The mere existence of a written order following a hearing does not nullify all conceivable need for a transcript of the hearing.

Those issues aside, hearing transcripts numbers 1 through 5, as listed in Plaintiffs' Reply in Support of their First Amended Bill of Costs [ECF No. 2433, pgs. 6-9], shall not be allocated to Defendant, as they cannot be said to have been "necessarily obtained" within the meaning of § 1920(2).[6]  Plaintiffs assert generally these transcripts were "essential to maintaining a proper record of the proceedings, drafting briefs, and preparing for trial" [ECF No. 2395, pg. 6].  With respect to the June 21, 2011 transcript, Plaintiffs offer no compelling explanation, following Defendant's objections, as to how the transcript was reasonably necessary at the time it was obtained; Plaintiffs simply assert they "consulted the transcript" and "used the Court's remarks in pleadings" [ECF No. 2433, pg. 7].  This particular use is more properly considered a convenience rather than a necessity, and thus this cost shall not be awarded.  *See McDowell v. Safeway Stores, Inc.*, 758 F.2d 1293, 1294 (8th Cir. 1985) ("[T]he court should determine that transcripts were not obtained primarily for the convenience of parties but were necessary for use in the case.").

As for the January 3, 2014 hearing transcript, Plaintiffs appear to have obtained a transcript in anticipation of yet unraised legal issues or trial complications [ECF No. 2433, pg. 7].  Such uncertainty in the need for a transcript does not rise to the requisite level of reasonable necessity at the time the transcript was acquired, as there was no indication Defendant might breach an agreement made in open court.  Furthermore, the costs of the June 9, 10, and 17, 2014

---

[6] Transcripts 1-5 are: (1) 6/21/11 Rule 16 Conference, (2) 1/3/14 Hearing Regarding Depositions of Criminal Defendants, (3) 4/28/14 Hearing on Plaintiffs' Motion to Strike National City Bank's Failure to Mitigate Damages Defense and Quash its Subpoena, (4) 6/9/14-6/10/14 Hearings Regarding Plaintiffs' Motion to Compel 30(b)(6) Testimony from National City Bank, and (5) 6/17/14 Telephone Hearing Regarding Plaintiffs' Motion to Compel 30(b)(6) Testimony from National City Bank.

transcripts will not be taxed to Defendant for the same reason: a transcript for the purpose of holding Defendant to an agreement that there is no evidence they intended to breach renders the transcript not reasonably necessary at the time it was obtained.

Because transcripts 1-5 were not reasonably necessary at the time they were obtained, Plaintiffs' requested costs for hearing transcripts for those dates shall not be taxed to Defendant.

However, hearing transcripts numbers 6-10, as listed in the Plaintiffs' Reply in Support of their First Amended Bill of Costs [ECF No. 2433, pgs. 9-12], shall be taxed to Defendant, as Plaintiffs have demonstrated a degree of necessity for those transcripts which has not been successfully rebutted by Defendant.[7] The November 12, 2014 hearing covered numerous, complex motions—so many that maintaining orderly and accurate personal notes of the hearing would have been cumbersome, if not impossible, while also attempting to retain some degree of efficiency in the proceeding. Further, any written order would likely not have addressed every significant detail raised throughout the course of the hearing. As such, the transcript was reasonably necessary at the time it was obtained, and costs shall be taxed to Defendant.

The November 24 and 25, 2014 *Daubert* hearing transcripts were also reasonably necessary at the time they were obtained. As Plaintiffs point out, this Court made both oral and written statements at the hearing on the admissibility and scope of expert testimony, some of which were inconsistent, and "Plaintiffs needed to compare the hearing transcript to the Order to understand where, if at all, there were conflicting statements" [ECF No. 2433, pg. 9]. Additionally, because it was only a matter of weeks between this hearing and the December

_____

[7] Transcripts 6-10 are: (6) 11/12/14 Hearing Regarding Plaintiffs' Motion for Leave to Amend the Complaint, Plaintiffs' Motion to Compel 30(b)(6) Testimony from National City Bank, National City Bank's Motion to Compel Plaintiffs' Production of Settlement Documents, and Plaintiff SDR's Motion for In Camera Review and to Compel Production of Non-Privileged Documents; (7) 11/24/14-11/25/14 *Daubert* Hearing; (8) 12/17/14-12/19/14 Summary Judgment Hearing; (9) 1/26/15-1/28/15, 1/30/15 Pretrial Conference; (10) 2/3/15-2/4/15 Rule 104 Summary Exhibit Hearing.

summary judgment hearing, the cost of expediting the transcripts is reasonable and taxable to the Defendant.

The transcript of the summary judgment hearing on December 17 through 19, 2014 is similarly taxable to Defendant as having been reasonably necessary at the time it was obtained. This hearing was long, complex, and covered numerous topics and arguments. Furthermore, the temporal proximity of the hearing to various deadlines, including the pre-trial conference and the trial itself, illustrates the reasonable necessity of obtaining a transcript, and additionally warrants the cost associated with an expedited production.

The pre-trial conference transcripts from January 26, 27, 28, and 30, 2015 were also reasonably necessary at the time they were obtained. This four day proceeding contained numerous rulings, objections, withdrawn objections, and more, in which it would have been impracticable to have sufficiently utilized another less accurate method of recording the developments, particularly so near in time to trial.

Finally, the February 3 and 4, 2015 Rule 104 Summary Exhibit Hearing transcripts are similarly recoverable as being reasonably necessary at the time they were obtained. The rationale supporting their recovery would be largely duplicative of that supporting recovery for the previous transcripts, with the exception, as Plaintiffs note, that this Court, as well as the parties, relied on the transcript for its accuracy. This fact serves to illustrate the practical necessity of a transcript in a case of this magnitude and complexity.

For the aforementioned reasons, $11,251.10 will be taxed to the Defendant for the costs associated with the Plaintiffs' acquisition of reasonably necessary hearing transcripts.

*iii. Daily Trial Transcripts*

The costs of the daily trial transcripts will be taxed to Defendant as having been necessarily obtained for use in the case. *McDowell*, 758 F.2d at 1294. Plaintiffs argue the daily trial transcripts were necessary as a result of the length and complexity of the trial, the parties and the court extensively relied on the transcripts, and the trial transcripts were utilized heavily in post-trial briefing [ECF No. 2433, pgs. 12-15]. In response, Defendant cites a string of Missouri district court cases refusing to tax costs for daily trial transcripts [ECF No. 2407, pgs. 7-8]. However, Defendant does not object to *McDowell*'s general proposition that trial transcripts are taxable where they are necessarily obtained [ECF No. 2407 at 8], they merely note that trial transcripts "are not *ordinarily* 'necessary.'" (emphasis added). All of the cases Defendant cites are cases in which the trials lasted no longer than a week and a half, as can be gleaned either from the express language of the opinions or from the diminutive costs associated with the daily trial transcripts discussed therein. *See, e.g.*, *Emennegger*, 33 F.Supp.2d at 1138 (nine day trial); *Avante Int'l Tech. Corp. v. Premier Election Solutions, Inc.*, No. 4:06CV0978 TCM, 2009 WL 3259613 (E.D. Mo., 2009) (six day trial).

Conversely, the instant trial spanned over four weeks, covered numerous issues, the testimony of dozens of witnesses, the introduction of an extensive array of evidence, and more. Plaintiffs cite to a series of cases at both the district and circuit court levels awarding or affirming costs of daily trial transcripts on theories regarding the length and complexity of the case, on the heavy reliance of parties and courts, on their use in post-trial briefing, and more. *See United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.*, 174 F.R.D. 479, 484 (D. Colo. 1997) (permitting the recovery of costs for trial transcripts given the length and complexity of the case); *Commerce Oil Refining Corp. v. Miner*, 198 F. Supp. 895, 897 (D.R.I. 1961 (same); *Perks v. Town of Huntington*, 331 Fed. Appx. 769, 770 (2d Cir. 2009) (affirming an award of daily trial

transcripts because the court and parties extensively relied on them); *Majeske v. City of Chicago*, 218 F.3d 816, 825 (7th Cir. 2000) (same); *Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161, 1207-08 (N.D. Iowa 2003) (taxing costs for daily trial transcripts where they were used in post-trial motions).  Each of these rationales for taxing the costs of daily trial transcripts were observable in this case.  As both parties concede, daily trial transcripts are taxable where they are necessarily obtained for use in the case, and a long and complex case such as this serves as a clear exemplification of the necessity anticipated by § 1920(2).

For these reasons, $29,584.15 will be taxed to Defendant for costs associated with the Plaintiffs' acquisition of daily trial transcripts.

### C.   *§ 1920(3) – Witness Fees and Disbursements*

The full $35,421.34 cost associated with witness fees for attending depositions and trial shall be taxed to Defendant without exception for Plaintiffs' 30(b)(6) witnesses.  The Supreme Court has explained "§ 1821 specifies the amount of the fee that must be tendered to a witness, § 1920 provides that the fee may be taxed as a cost, and Rule 54(d) provides that the cost shall be taxed against the losing party unless the court otherwise directs."  *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987).  As Defendant notes, the term "witness" in § 1821 required further definition, and correctly identifies the existence of the "party witness exception" barring recovery of witness fees for parties to a lawsuit.  *See Haroco, Inc. v. Am. Nat'l Bank & Trust Co.*, 38 F.3d 1429, 1442 (7th Cir. 1994) (identifying the "general rule" that parties may not normally collect witness fees); *Hodge v. Seiler*, 558 F.2d 284, 287 (5th Cir. 1977) (same); *EEOC v. Convergys Customer Mgmt. Grp. Inc.*, No. 4:04-CV-846 CAS, 2006 WL 2345541, at *7 (E.D. Mo. July 7, 2006) (same, citing *Haroco*), *aff'd*, 491 F.3d 790 (8th Cir. 2007).  However, Plaintiffs have identified a series of cases limiting the applicability of the party witness exception

to only those party witnesses who are named parties or parties in interest [ECF No. 2433 at 16].

*See, e.g.*, *Canal Barge Co. v. Commonwealth Edison Co.*, No. 98 C 0509, 2003 WL 1908032, at

*5 (N.D. Il. Apr. 18, 2003) (taxing costs for witness fees of corporate representatives); *Gelda v.

R.O.I. Enterprises, Inc.*, 581 F.Supp. 553, 555 (E.D. Mo. 1984) (taxing witness fees where the

officer/director testifying for a party corporation was not "personally involved in the litigation.").

This Court is persuaded by Plaintiffs' argument that *New Jersy Mfrs. Ins. Grp. v.

Electrolux, Inc.*, No. CIV.A.10-1597 AET, 2013 WL 5817161, at *10 (D.N.J. Oct. 21, 2013), the

sole case cited by Defendant for the proposition that 30(b)(6) witnesses qualify as party

witnesses, is inapplicable as being in reference to a local rule of procedure and not § 1920(3).

Because this Court finds none of the witness' fees to which Defendant objects were those

of "party witnesses," the exception does not apply and the full cost of $35,421.34 for the

Plaintiffs' witness fees shall be taxed to Defendant.

### D.   § 1920(4) – Exemplification and Copying Costs

#### i. Electronic Discovery Costs

The bulk of the costs associated with the production of documents pursuant to the

stipulated electronic discovery agreement shall be taxed to Defendant as "copies" necessarily

obtained for use in the case.  However, some costs incurred paying Plaintiffs' "support

specialist" for services rendered in production of the documents shall be reduced due to the

prevalence of unrecoverable costs and to the inability of this Court to parse apart some of the

taxable and untaxable portions of the costs given the imprecision of the work documentation.

*See Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*, No.

4:11CV1299RWS, 2014 WL 1729152 (E.D. Mo. May 1, 2014) (refusing to tax costs where the

moving party failed to adequately separate taxable from untaxable costs in their invoices).

13

As a preliminary matter, this Court is persuaded by the Plaintiffs' argument that discovery-related copying expenses, and not exclusively trial-related copying expenses, fall within the purview of § 1920(4). Following legislative history, Eighth Circuit precedent, and precedent from other circuits, this Court holds that all expenses related to copying and exemplification, whether for production in discovery or for use at trial, are taxable as costs under § 1920(4) if necessarily obtained for use in the case. *See Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 165 (3d Cir. 2012) (noting the legislature changed the language of § 1920(4) from "for use at trial" to "for use in the case"); *Country Vintner of North Carolina, LLC, v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 257 (4th Cir. 2013) (same); *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 914, 927 (9th Cir. 2015) (noting the Ninth Circuit does not require a document to be introduced into the record to be recoverable as a copy); *Little Rock Cardiology Clinic v. Baptist Health*, 591 F.3d 591, 602 (8th Cir. 2009) (citing *Slagenweit*, 63 F.3d 719) (noting the Eighth Circuit has upheld awards of costs for discovery-related expenses); *Stanley v. Cottrell, Inc.*, 784 F.3d 454, 467 (8th Cir. 2015) (citing *Little Rock* with approval for the proposition that a court can properly tax discovery-related copying costs); *CBT Flint Partners v. Return Path, Inc.*, 737 F.3d 1320, 1328 (Fed. Cir. 2013) (allowing recovery of discovery-related copying costs).

This Court acknowledges the law regarding what qualifies as "making copies" within the meaning of § 1920(4) is inconsistent throughout the nation. However, in defining the term, and in the absence of prevailing Eighth Circuit precedent on this issue, this Court is persuaded by the reasoning of the Federal Circuit and the Ninth Circuit in their interpretations of § 1920(4). *See CBT Flint Partners*, 737 F.3d 1320 (permitting the taxation of discovery-related costs for the production of meta-data, imaging drives, file conversion, scanning, and load file production

where all of the above are necessary to comply with a court order or production agreement between the parties, but excluding the costs of de-duplication, coding, document review, costs of setting up the data hosting server, keyword searching, and decryption); *In re Online DVD*, 779 F.3d at 928 (permitting taxation of costs for OCR, conversion to TIFF, and citing the reasoning of the Federal, Fourth, and Third Circuits in *CBT Flint*, *Country Vintner*, and *Race Tires* for their relatively inclusive definitions of "making copies"). In order to produce a "faithful production of electronically stored information," the term "making copies" should be construed to include the movant's costs of OCR scanning, TIFF conversions, the imaging of computer storage drives, the transfer of files from one drive or disc to another, the production of load files, and the extraction or imaging of metadata where required to provide a complete copy of a file if such metadata is requested by the opposing party, but shall exclude Bates labeling as a taxable cost. *See CBT Flint Partners*, 737 F.3d 1320 (Fed. Cir. 2013); *In re DVD*, 779 F.3d at 928. While this Court does recognize the practical necessity of Bates labeling in light of the sheer volume of documents produced in this case, Bates labeling can in no way be construed as "making copies" within the plain language of § 1920(4). *See Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S.Ct. 1997, 2000 (2012) (holding courts have to construe § 1920 statute narrowly, but give the words their plain meaning). There are two primary reasons for this conclusion.

First, because the term "copies" is construed to include copies of digital documents, any process or procedures inherent in producing a completed "copy" of the final digital document must be recoverable, as the ultimate digital copy could not be completely and accurately produced but for the completion of those ancillary procedures. *See CBT Flint*, 737 F.3d at 1328. This includes things like the costs of OCR scanning, TIFF conversions, producing load files, the imaging of computer storage drives, the transfer of files from one drive or disc to another, and

the extraction or imaging of metadata. These are all examples of procedures undertaken by Plaintiffs which are implicit in the creation of a copy of a digital document, necessarily performed in order to accurately reproduce the document in accordance with a production request by Defendant and the court.

However, the costs associated with Bates labeling are not properly allocated to Defendant in this case, even in light of the tremendous volume of documents rendering such organizational procedures of practical necessity.[8] Adhering to the plain meaning of the language utilized in § 1920(4), this Court cannot construe the term "copies" to include activities entirely unrelated to providing a full and complete copy of a document or other material. Bates labeling is an organizational procedure, not a method of replication.

In spite of the exclusion for Bates labeling, a relatively broader definition of "copies" including intermediary steps is generally more appropriate. Where a task or procedure is an indispensable component of producing a fair and accurate copy of a document or other "material," those costs are recoverable. This applies equally to the act of running a piece of paper through a copy machine as it does to the extraction or imaging of metadata. *See CBT Flint*, 737 F.3d at 1329. It does not follow that because the words "extraction" and "imaging" do not sound or look much like the word "copy," or that because the process of imaging a storage drive does not appear to share many characteristics with the process of running a piece of paper through a copy machine, they are somehow intrinsically different in the essential nature of the actions being performed and the results being produced.

Second, the costs of making copies were incurred pursuant to a standing order requiring Plaintiffs to produce to Defendant copies of all documents produced by Plaintiffs throughout the

---

[8] Over 900,000 documents were produced by Plaintiff consisting of over 5 million pages [ECF No. 2433, pg. 20].

course of the litigation, and also to a stipulated agreement between the parties to produce all ESI

in a particularly specified manner, including all metadata [ECF No. 733]. In order to have been

in compliance with both the agreement and the order, it was necessary, within the meaning of §

1920(4), for Plaintiffs to produce copies of all documents to Defendant with their metadata

intact. Although the stipulations as to the form of document production were self-imposed, the

ordered document production at issue was not. As a result, there can be no argument the copies

were not "necessarily obtained." *Race Tires Am., Inc*., 674 F.3d at 171, n. 11 ("[W]e have

acknowledged that the costs of conversion to an agreed-upon production format are taxable as

the functional equivalent of 'making copies.'"); *Country Vintner*, 718 at 260, n. 19 ("If . . . a case

directly or indirectly required production of ESI-unique information such as metadata, we

assume, without deciding, that taxable costs would include any technical processes necessary to

copy ESI in a format that includes such information."); *In re DVD*, 779 F.3d at 928 ("When

copies are made in a fashion necessary to comply with obligations such as these, costs are

taxable so long as the copies are 'necessarily obtained for use in the case.'"); *CBT Flint*, 737

F.3d at 1328 ("To the extent that a party is obligated to produce (or obligated to accept)

electronic documents in a particular format or with particular characteristics intact (such as

metadata, color, motion, or manipulability), the costs to make duplicates in such a format or with

such characteristics preserved are recoverable.").

     Notwithstanding this Court's authority to tax costs for a variety of digital copying-related

expenses, Plaintiff has included a small proportion of unrecoverable costs in the documentation

of the work performed by their in-house technology specialist, and the Court has reduced their

cost recovery accordingly.

Additionally, acknowledging Defendant's contention they should not be responsible for the costs incurred litigating claims against other settling defendants, the full extent of the taxable costs will be levied against PNC Bank. As Plaintiffs note, Eighth Circuit precedent explains the prevailing party is not only presumptively entitled to recover all of their costs, but the parties from whom costs are sought are jointly and severally liable for such costs [ECF No. 2433 at 22]. *See Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 497-8 (8th Cir. 2002). To hold otherwise would circumvent the presumption embodied in Rule 54(d). *Id.* at 497.

In light of the foregoing, $309,977.87 shall be taxed to Defendant for the Plaintiffs' copying costs incurred in the production of Electronically Stored Information.

### ii. Copies of Depositions and Trial Exhibits

Defendant does not object to this category of costs, and therefore $48,275.83 shall be taxed to Defendant.

### iii. Exemplification Costs for Printing Demonstrative Exhibits, Displaying Trial Exhibits to the Jury, and Video Editing

Because the Eighth Circuit has not clearly decided this issue, *see Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir. 1985), this Court is tasked with determining the proper interpretation of the term "exemplification" within the meaning of § 1920(4). The degree to which certain exhibits or expenses are recoverable as costs varies widely among the circuits. *But see Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 763-64 (8th Cir. 2006) (affirming, without discussing, an award of exemplification costs that contained "graphic and visual aids"); *compare Kohus v. Toys R Us, Inc.*, 282 F.3d 1355, 1359 (Fed. Cir. 2002) (holding that the term "exemplification" should be construed narrowly in accordance with the Black's Law Dictionary definition, which defines it simply as "[a]n official transcript of a document from public records, made in form to be used

as evidence, and authenticated as a true copy"); *Arcadian Fertilizer, L.P. v. MPW Indus. Services, Inc.*, 249 F.3d 1293, 1297 (11th Cir. 2001) (same); *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891-92 (5th 1993) (same); *Summit Technology, Inc. v. Nidek Co., Ltd.*, 435 F.3d 1371, 1376-78 (Fed. Cir. 2006) (same); *with Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427-429 (7th Cir. 2000) (holding that "exemplification" should be construed in accordance with its plain meaning—"to show or illustrate by example," therefore including the costs of any action or creation that "furthers the illustrative purpose" of an exhibit); *Trammel v. BASF Corp.*, No. 99C6897, 2002 WL 59114, at *7 (N.D. Il. Jan. 14, 2002) (same); *Chemetall GmbH v. ZR Energy, Inc.*, No. 99C4334, 2001 WL 1104604, at *30 (N.D. Il. Sept. 18, 2001) (same); *Goss Intn'l Corp. v. Tokyo Kikai Seisakusho, Ltd.*, No. C00-35LRR, 2004 WL 1234130, at *11 (N.D. Iowa June 2, 2004).

In light of the Supreme Court's ruling in *Taniguchi*, the language of § 1920 should be given its plain meaning, and in view of *Marmo*'s tacit approval of a broader "exemplification" definition, this Court is unpersuaded by the reasoning of other circuits the interpretation of the term "exemplification" should be confined to the its narrowest legal definition. *See Taniguchi*, 132 S.Ct. at 2002 ("When a term goes undefined in a statute, we give the term its ordinary meaning."); *Marmo*, 457 F.3d at 763-64. However, limiting a party's otherwise overbroad cost recovery is the requirement that an exemplification be "necessarily obtained for use in the case." 28 U.S.C. § 1920(4); *Cefalu*, 211 F.3d at 428; *Country Vintner*, 718 F.3d at 250. As a result, Plaintiffs' costs for exemplification shall not be taxed against Defendant for reasons articulated *infra*.

### 1. Costs of Demonstrative Exhibits

Demonstrative exhibits fall within the ambit of "exemplification" under the Court's plain language interpretation of the term. By their very name, demonstrative exhibits demonstrate—or illustrate—a concept or fact to the fact finder by way of example. *See Manildra*, 878 F.Supp. at 1428, n.10 ("'Exemplification' has been interpreted to embrace all manner of demonstrative evidence, such as models, charts, photographs, illustrations, and other graphic aids.") (internal quotations omitted) (quoting reference omitted). Some circuits have explained that, in order to qualify as an "exemplification," the presentation in question must "further[] the illustrative purpose of [the] exhibit." *Cefalu*, 211 F.3d at 428. However, even if the demonstrative exhibits qualify as an exemplification, they must still have been "necessarily obtained." *Id.* (quoting § 1920(4)). Courts have interpreted the necessity requirement to exclude cost recovery for exhibits which were merely illustrative of expert testimony, other adequate evidence, or that served primarily to illustrate counsel's argument. *See Manildra*, 878 F.Supp. at 1428; *Esler v. Safeway Stores, Inc.*, 77 F.R.D. 479, 483 (W.D. Mo. 1978); *Guevara v. Onyewu*, 943 F. Supp. 2d 192 (D.D.C. 2013); *Summit Tech*, 435 F.3d at 1375, 1377.

Defendants contend this Court should do the same, while Plaintiffs cite to the *Goss* decision which misquotes and misrepresents the Eighth Circuit's decision in *Crues*.[9] Additionally, the court in *Goss* allowed the recovery of costs for exhibits simply because of the "complexity of the issues," and because "[t]he demonstrative exhibits and graphic presentations [the plaintiff] used at trial expedited [its] presentation of issues and made trial of th[e] matter more efficient than it would have been without such demonstrative exhibits and graphic presentations." *Goss*, at 11. But, to employ this relaxed standard for "necessity" is to read the

---

[9] The court in *Goss* cited *Crues* for the proposition that "[e]xpenses for trial exhibits, including enlargements, may be costs which are allowable under § 1920(4). . ." However, *Crues* refrained from deciding whether or not such costs are covered by § 1920(4) and remanded the case for a determination of necessity. 768 F.2d at 234.

requirement out of the statute entirely—every demonstrative expedites presentation of the issues and makes trial more efficient. Moreover, the incentives of an attorney are to develop trial techniques beyond what is strictly "necessary" for the presentation of their case. However, the statute only allows recovery for exemplifications that were "necessarily obtained for use in the case," not for those that merely make trial more efficient, convenient, or expeditious. § 1920(4). This interpretation is necessary to avoid the allure of expending vast sums of money on elaborate, professionally prepared exhibits and electronic presentations that might have jury appeal, but such sensational expense should appropriately be borne at the peril of excessively imaginative counsel.

This Court is persuaded by Defendant's argument that the Plaintiffs' exhibit costs are unnecessary and therefore unrecoverable for two reasons: (1) the Plaintiffs' demonstrative exhibits were all illustrative of expert testimony, other adequate evidence, or served primarily to illustrate counsel's argument, *see* Ex. C (Trial Transcript) at Vol. 22, 52:15-53:18 (supporting counsel's closing argument); *id.* at Vol. 16-B, 29:20-33:23 (aiding expert witness testimony); and (2) even if the demonstrative exhibits did not fall into any of the aforementioned categories, they could have been presented to the jury free of charge via the electronic display system in the courtroom. As such, the Plaintiffs' demonstrative exhibits were "exemplifications" within the meaning of § 1920(4), but were not "necessarily obtained," and the Plaintiffs' Bill of Costs is reduced accordingly.

### 2. Costs of Displaying Trial Exhibits to the Jury

Plaintiffs seek to recover the costs they incurred in paying their "litigation support specialist" to manipulate, highlight, and enlarge the exhibits throughout the course of the trial [ECF # 2395, pg. 14]. They claim this was necessary because it helped the jury understand the

evidence.  However, the analysis for technical assistance at trial is quite similar to the analysis of demonstrative exhibits, and accordingly Plaintiffs may not recover their costs for the use of their in-house support specialist in presenting evidence at trial.

Even if the use of the specialist "furthered the illustrative purpose" of the exhibits presented, it cannot be said the use of such a specialist was *necessary* to put on an intelligible case.  *See Behlman v. Century Sur. Co.*, No. 4:12-CV-1567JAR, 2014 WL 2930658, at *1 (E.D. Mo. June 27, 2014) (disallowing recovery for a trial technician as not falling within the scope of § 1920).  Plaintiffs' counsel could have presented their case, as many attorneys trying cases before this Court have historically done, through the use of PowerPoint or the courtroom electronic display system rather than hiring a third party vendor.  Additionally, the cases Plaintiffs cite largely conflate two different types of recovery: one type relating to the costs a party may incur electronically presenting information to a jury, and another for the distinct and additional costs that may be incurred *paying a third party* to present that information to a jury. Where a cheaper, feasible alternative exists for the presentation of evidence to the finder of fact, costlier options may not be said to be "necessary" within the meaning of § 1920(4), and are instead merely "glitz" for which the losing party is not obligated to pay. *See Hunt v. City of Portland*, No. CV 08-802-AC, 2011 WL 3555772, at *14 (D. Or., Aug. 11, 2011) (citing *Cefalu*, 211 F.3d at 428); *Wheeler v. Carlton*, No. 3:06-CV-00068GTE, 2007 WL 1020481, at *11 (E.D. Ark., Apr. 2, 2007) (no recovery for tech vendor used to display exhibits at trial).

Because the costs Plaintiffs incurred in paying their technology specialist were not necessary, those costs shall not be taxed to Defendant.

### 3.   Costs of Video Editing

Plaintiffs seek the costs associated with the time their in-house technology specialist spent editing video depositions used at trial [D.E. #2395 at 15]. They assert such editing was necessary in order to conform their video clips to this Court's rulings on admissibility. For the following reasons, the costs associated with editing the video depositions shall not be taxed to Defendant.

Plaintiffs cite this Court's decision in *Cowden* for the proposition that video deposition editing is a recoverable cost. *See Cowden*, 991 F.Supp.2d at 1096 (taxing costs for video deposition editing to the defendant in light of their failure to object). Costs were awarded solely as a result of the defendant's failure to object, and not as a result of a reasoned analysis of the cases or the statute. *Baird* similarly lacks any explanation as to why video editing qualifies as "exemplification" or as anything else under § 1920. *See Baird v. Dolgencorp, L.L.C.*, No. 4:11-CV-1589 DDN, 2013 WL 5106928, at *3 (E.D. Mo. Sept. 12, 2013). As such, these decisions are not dispositive of this issue.

While this Court concedes it was necessary for Plaintiffs to have edited their video depositions so they may adhere to admissibility rulings, and consequently the service was "necessary" within the meaning of § 1920, video editing does not constitute "exemplification" under § 1920(4). It does not serve to illustrate something by way of example, and it does not "further the illustrative purpose" of an exhibit. *Cefalu*, 211 F.3d 416. The Supreme Court in *Taniguchi* instructed that the statute was to be narrowly construed, and the tasks for which Plaintiffs seek recovery as costs simply cannot be interpreted to fall within the purview of the term "exemplification." *See Taniguchi*, 132 S.Ct. at 2006.

In light of the foregoing analysis, the costs incurred editing videos for trial shall not be taxed to Defendant.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' First Amended Bill of Costs [ECF No. 2398] is **GRANTED, in part,** and **DENIED, in part**.

**IT IS FURTHER ORDERED** that Defendant PNC Bank must pay $499,723.20 to Plaintiffs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure.

So Ordered this 20th day of November, 2015.

_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**