# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3872

_____

Jo Ann Howard and Associates, P.C., Special Deputy Receiver of Lincoln Memorial Life Insurance Company, Memorial Service Life Insurance Company, and National Prearranged Services, Inc.; National Organization of Life and Health Insurance Guaranty Associations; Missouri Life and Health Insurance Guaranty Association; Texas Life and Health Insurance Guaranty Association; Illinois Life and Health Insurance Guaranty Association; Kansas Life and Health Insurance Guaranty Association; Oklahoma Life and Health Insurance Guaranty Association; Kentucky Life and Health Insurance Guaranty Association; Arkansas Life and Health Insurance Guaranty Association,

*Plaintiffs - Appellees*,

v.

J. Douglas Cassity; Randall Sutton; Brent D. Cassity; Tyler J. Cassity; Rhonda L. Cassity; Katherine P. Scannell; Randall J. Singer; Howard A. Wittner; Wittner, Spewark and Maylack, PC; David R. Wulf; Wulf, Bates and Murphy, Inc.; Michael R. Butler; Lennie J. Cappleman; James M. Crawford; Larry Keith Hale; Tony B. Lumpkin, III; Erin P. Engle; Nekol Province; Roxanne J. Schnieders; Kelly Tate; George Wise, III; Marianne Jones; Anne Chrun; National Heritage Enterprises, Inc.; Forever Enterprises, Inc., formerly known as Lincoln Heritage Corporation; Lincoln Memorial Services, Inc.; Forever Network, Inc.; Forever Illinois, Inc.; Hollywood Forever, Inc.; Texas Forever, Inc.; National Prearranged Services Agency, Inc.; Legacy International Imports, Inc.; Wise, Mitchell and Associates, LTD; Brentwood Heritage Properties, LLC; Brennen Bank and Trust Company,

*Defendant*s,

National City Bank,

*Defendant - Appellant*,

Marshall and Ilsley Trust Company, N.A.; Southwest Bank; U.S. Bank, N.A.; Bank of America, N.A.; American Stock Transfer and Trust Company; Comerica Bank and Trust, N.A.; Brown Smith Wallace, LLC; John Does, 1-25; Rhonda L. Cassity, Inc.,

*Defendant*s,

PNC Bank, N.A.,

*Defendant - Appellant*,

BMO Harris Bank, N.A.; Richard Markow; Herbert Morisse,

*Defendants,*

------------------------------

American Bankers Association; Missouri Bankers Association,

*Amici on Behalf of Appellant(s).*

No. 15-3878

Jo Ann Howard and Associates, P.C., Special Deputy Receiver of Lincoln Memorial Life Insurance Company, Memorial Service Life Insurance Company, and National Prearranged Services, Inc.; National Organization of Life and Health Insurance Guaranty Associations; Missouri Life and Health Insurance Guaranty Association; Texas Life and Health Insurance Guaranty Association; Illinois Life and Health Insurance Guaranty Association; Kansas Life and Health Insurance Guaranty Association; Oklahoma Life and Health Insurance Guaranty Association; Kentucky Life and Health Insurance Guaranty Association; Arkansas Life and Health Insurance Guaranty Association,

*Plaintiffs - Appellants,*

-2-

v.

J. Douglas Cassity; Randall Sutton; Brent D. Cassity; Tyler J. Cassity; Rhonda L. Cassity; Katherine P. Scannell; Randall J. Singer; Howard A. Wittner; Wittner, Spewark and Maylack, PC; David R. Wulf; Wulf, Bates and Murphy, Inc.; Michael R. Butler; Lennie J. Cappleman; James M. Crawford; Larry Keith Hale; Tony B. Lumpkin, III; Erin P. Engle; Nekol Province; Roxanne J. Schnieders; Kelly Tate; George Wise, III; Marianne Jones; Anne Chrun; National Heritage Enterprises, Inc.; Forever Enterprises, Inc., formerly known as Lincoln Heritage Corporation; Lincoln Memorial Services, Inc.; Forever Network, Inc.; Forever Illinois, Inc.; Hollywood Forever, Inc.; Texas Forever, Inc.; National Prearranged Services Agency, Inc.; Legacy International Imports, Inc.; Wise, Mitchell and Associates, LTD; Brentwood Heritage Properties, LLC; Brennen Bank and Trust Company,

*Defendants,*

National City Bank,

*Defendant - Appellee,*

Marshall and Ilsley Trust Company, N.A.; Southwest Bank; U.S. Bank, N.A.; Bank of America, N.A.; American Stock Transfer and Trust Company; Comerica Bank and Trust, N.A.; Brown Smith Wallace, LLC; John Does, 1-25; Rhonda L. Cassity, Inc.,

*Defendants,*

PNC Bank, N.A.,

*Defendant - Appellee,*

BMO Harris Bank, N.A.; Richard Markow; Herbert Morisse,

*Defendants,*

------------------------------

-3-

American Bankers Association; Missouri Bankers Association,

*Amici on Behalf of Appellee(s).*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 20, 2016
Filed: August 17, 2017

_____

Before COLLOTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

PNC Bank appeals a jury verdict in favor of special deputy receiver Jo Ann Howard and Associates, P.C., and a group of state guaranty associations (together, Appellees).  The jury found PNC liable for negligence and breach of fiduciary duty in violation of its duties as trustee of various preneed trusts created by National Prearranged Services, Inc.  On appeal, PNC makes three arguments: (1) the district court improperly concluded that Appellees' claims arise in tort rather than under the law of trusts; (2) Appellees' claims should have been tried to the court rather than a jury; and (3) the district court improperly disallowed PNC's defenses.  Appellees cross-appeal, arguing that the district court erroneously dismissed their tort claims alleging that PNC's predecessor-in-interest aided and abetted fraud and breaches of fiduciary duty.  We conclude that Appellees' claims arise under trust law, that the claims are properly tried to the court, and that the measure of damages is limited accordingly.  We further hold that the district court properly limited PNC's defenses,

-4-

and correctly dismissed Appellees' aiding-and-abetting claims.  We therefore affirm in part, reverse in part, and remand for further proceedings.

## I.

This case arises out of the nationwide fraud scheme of National Prearranged Services, Inc. (NPS), a Missouri-based seller of preneed funeral contracts.  The Cassity family owned and operated NPS.  NPS operated across the country, but the company's activities in Missouri are the subject of this appeal.  The Cassitys also owned two Texas-based life insurance companies, Lincoln Memorial Life Insurance Company (Lincoln) and Memorial Service Life Insurance Company (Memorial).

Chapter 436 of the Missouri Revised Statutes, now repealed, governed the making of preneed funeral contracts in Missouri during the relevant period.  Mo. Rev. Stat. §§ 436.005-.071 (2008) (repealed 2009).   A preneed contract was an arrangement that required the current payment of money in consideration for funeral services to be provided later at the time of a death.  *Id.* § 436.005(5).  NPS sold preneed funeral contracts that allowed consumers to purchase funeral services at a fixed price.  Under a preneed contract, a purchaser selected the merchandise and services that the purchaser wanted for the contract beneficiary, which was either the purchaser or a third party.  When this contract beneficiary died, the purchaser's chosen funeral home performed the funeral according to the contract.

Under Missouri law, NPS could retain up to twenty percent of the proceeds of each preneed funeral contract.  Mo. Rev. Stat. § 436.027.  NPS was required to deposit the other eighty percent into a trust.  *Id.* §§ 436.021.1(2), 436.027, 436.031.1.  The statute provided that NPS must appoint a state or federally chartered financial institution as trustee of its trusts.  *Id.* § 436.031.1.  The trustee was to invest and reinvest the assets deposited in the trusts.  *Id.* § 436.031.2.  Because the NPS trusts

-5-

held funds in excess of $250,000, NPS was allowed to appoint an independent qualified investment advisor to make investment decisions for the trust property. *Id.*

Missouri law also dictated how NPS distributed payments to funeral homes. After a consumer's funeral, the funeral home submitted a written certification to NPS establishing that it provided the funeral services to the deceased consumer. *Id.* § 436.045. Upon receipt of the certification, NPS paid the funeral home the amount specified in the preneed contract plus a "growth" payment. The "growth" payment protected funeral homes against rising funeral costs. Once NPS paid the funeral home, NPS was entitled to a distribution from the trust equal to all deposits made into the trust for the particular preneed contract. *Id.*

Allegiant Bank became the trustee of NPS's Missouri trusts in August 1998. Allegiant's responsibilities as trustee were set forth in the NPS trust agreement, which was governed by Chapter 436. When Allegiant assumed its role as trustee, NPS already had appointed Wulf Bates & Murphy (Wulf) as its investment advisor. Wulf served throughout Allegiant's tenure as trustee. During this time, Wulf used trust assets to purchase Lincoln life insurance policies. The policies insured the lives of NPS's preneed consumers in Missouri. When a consumer died, Lincoln paid the proceeds of the policies to the NPS trusts.

Allegiant served as trustee until May 2004, when it resigned after being acquired by National City Bank. Because National City Bank did not want to assume Allegiant's role as trustee, Allegiant transferred the trust assets to Bremen Bank, which became the trustee. When Allegiant resigned, NPS's Missouri trusts held $122.9 million in deposits and $159.8 million in Lincoln life insurance coverage. In 2009, PNC acquired National City Bank. PNC's potential liability in this case, therefore, derives solely from its acquisition of National City Bank, Allegiant's successor-in-interest.

-6-

In 2007, insurance regulators discovered that NPS had engaged in massive fraud for years.  At the direction of NPS, Lincoln routinely issued policy loans to NPS against Lincoln life insurance policies owned by the Missouri trusts without the trustee's written approval.  NPS caused the loans to issue even though the trustee was the only party permitted to take such a loan.  This practice depleted trust assets. Separately, and outside of Missouri, NPS manipulated the payment amounts reflected on life insurance policy applications, allowing it to retain most of the money that should have been sent to the issuing life insurance company.  For example, if a consumer paid fifteen hundred dollars for an insurance policy, NPS would change the amount paid to five dollars, send five dollars to Lincoln, and keep the rest of the money.

As a result of this fraud, a Texas receivership court placed NPS, Lincoln, and Memorial into receivership, and the court appointed the special deputy receiver. Because Lincoln and Memorial were life insurance companies, their receivership triggered coverage by the state guaranty associations.  State guaranty associations are non-profit organizations that protect consumers by honoring the obligations in consumers' policies when insurance companies fail.  In this case, the associations are making payments on the policies issued by Lincoln and Memorial.  These payments ensure that consumers' funerals are paid for upon death even though the insurance companies are in receivership.

After the three entities were placed into receivership, the receiver and the associations agreed to a liquidation plan for the entities.  Under the plan, the associations agreed that any death benefits that would otherwise be due or payable to NPS or its trusts under the policies would be paid to funeral homes.  The funeral homes and consumers, in turn, agreed to assign to the associations any rights under, and causes of action relating to, the policies.

-7-

In August 2009, Appellees commenced this action.  They sued on behalf of NPS, funeral homes, and consumers.  The complaint alleged that Allegiant, PNC's predecessor, breached its fiduciary duties as trustee, was negligent, and aided and abetted fraud and breach of fiduciary duty.  Appellees asserted that Allegiant breached its fiduciary duties and was negligent when it allowed NPS to take policy loans on the trust-owned insurance policies, failed to ensure that the loans were adequately secured, neglected to account adequately for the funds in the NPS preneed trusts, failed to keep and review adequate records of trust transactions, and failed to verify trust account records.  As a result of these breaches of duty and negligent acts, the complaint alleged, Allegiant allowed NPS agents to manipulate trust assets and siphon millions of dollars from the NPS trusts.  In separate aiding-and-abetting claims, the complaint alleged that Allegiant knew of independent breaches of fiduciary duty by Wulf and acts of fraud by NPS, and substantially assisted or encouraged them.

Before trial, PNC moved to strike Appellees' jury trial demand, arguing that although their claims were presented as tort claims, the claims were actually a single equitable claim for breach of trust.  The district court denied the motion because it determined that Appellees' claims arose under tort law and were actionable at law.  PNC later moved for partial summary judgment, arguing that trust law defines Appellees' available monetary remedy for breaches of trust.  The district court again concluded that Appellees' claims were not subject to the trust-law measure of damages because the suit was an action at law.

In its motion for summary judgment, PNC also argued that NPS was the only trust beneficiary, and that PNC was therefore entitled to raise defenses of authorization and *in pari delicto*.  The court determined that PNC could not raise these defenses against either the associations or the receiver.  The court also rejected PNC's contention that under Mo. Rev. Stat. § 436.031.2, Allegiant could not be liable for Wulf's investment decisions.  The district court granted PNC's motion to dismiss

-8-

Appellees' aiding-and-abetting claims on the grounds that Appellees failed to adequately plead their claim and that Missouri does not recognize such claims in any event.

The claims alleging breach of fiduciary duty and negligence proceeded to trial. Appellees claimed $355.5 million in compensatory damages.  This amount included losses on policies that occurred inside and outside of Missouri both before and after Allegiant's tenure as trustee, unpaid "growth" payments to funeral homes both inside and outside of Missouri, and obligations on preneed contracts that were not associated with Lincoln or Memorial life insurance policies.  Of the $355.5 million, roughly $66 million was attributable to losses on preneed contracts written in Missouri during Allegiant's tenure.

At the close of Appellees' case-in-chief and following the close of evidence, PNC moved for judgment as a matter of law.  PNC argued that Appellees did not prove causation and certain subcategories of its alleged damages.  The court denied the motions.  The jury awarded Appellees $355.5 million in compensatory damages and $35.55 million in punitive damages.

PNC filed three post-trial motions: (1) a renewed motion for judgment as a matter of law or, in the alternative, for a new trial or remittitur; (2) a motion for a new trial based on legal and evidentiary errors; and (3) a motion to amend the judgment to account for settlement amounts paid by other defendants.  The district court adhered to its prior rulings and denied the motions for judgment as a matter of law and for a new trial, but granted PNC's motion to amend the judgment based on settlements.  PNC appeals, and Appellees cross-appeal.  We review *de novo* the district court's interpretations of Missouri law.  *Sligo, Inc. v. Nevois*, 84 F.3d 1014, 1019 (8th Cir. 1996).

-9-

II.

PNC argues that Appellees' claims arise under trust law rather than tort law, and that Appellees are thus entitled only to the damages afforded under trust law. We conclude that PNC is correct. Under trust law, a trustee owes fiduciary duties to trust beneficiaries. Restatement (Third) of Trusts § 70(b) (2007). If a trustee violates any of these duties, then it is liable to the beneficiaries for breach of trust. *Witmer v. Blair*, 588 S.W.2d 222, 224 (Mo. Ct. App. 1979); Restatement (Third) of Trusts § 93 (2012). The claim is for breach of trust regardless of whether the breach is "wrongful and fraudulent or done through negligence or aris[es] through mere oversight and forgetfulness." *Covey v. Pierce*, 82 S.W.2d 592, 598 (Mo. Ct. App. 1935) (per curiam). Tort claims are not categorically disallowed against trustees. Both third parties and beneficiaries can bring a tort claim against a trustee for a tort committed in the course of the administration of the trust, but the trustee's alleged tort must arise from a violation of a duty that is not imposed by trust law. *See* Restatement (Second) of Trusts § 264 & cmt. a, illus. 1-2 (1959); 4 Scott & Ascher on Trusts § 26.3 (5th ed. 2006).

Appellees allege that Allegiant, as trustee, was required to control trust assets, protect trust assets, and keep adequate records of trust funds. Trust law, not tort law, imposed these duties on Allegiant. Restatement (Third) of Trusts §§ 76, 83, 84 (2007). If Allegiant breached any of these duties, then PNC is liable to only trust beneficiaries and for only those damages provided for under trust law. *See* Restatement (Third) of Trusts § 94 (2012); Restatement (Second) of Trusts § 205 (1959).

Trust law provides that if a trustee commits a breach of trust, "he is chargeable with (a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or (b) any profit made by him through the breach of trust; or (c) any profit which would have accrued to the trust estate if there had been no breach of trust."

-10-

*Estate of Luyties v. Scudder*, 432 S.W.2d 210, 216 (Mo. 1968) (quoting Restatement (Second) of Trusts § 205).* Therefore, to the extent PNC is liable to Appellees for breach of Allegiant's duties under trust law, the appropriate measure of damages is set forth in § 205.  As Allegiant was a trustee over NPS trusts in Missouri from 1998 to 2004, Appellees can recover for losses to the trusts in Missouri caused by Allegiant's breaches during this time.  Damages to the Missouri trusts after Allegiant's trusteeship or outside of the Missouri trusts are not recoverable from PNC as Allegiant's successor.

III.

The parties disagree about who were the beneficiaries of the preneed trusts at issue.  PNC maintains that NPS was the sole beneficiary of the Missouri trusts, because NPS was the only entity entitled to receive distributions of trust income and principal in the ordinary course under the statute and trust agreement.  *See* Mo. Rev. Stat. §§ 436.031.3, 436.045; Restatement (Third) of Trusts § 48 (2003).  Appellees respond that even if NPS was a beneficiary, then so too were the funeral homes and the consumers, because the trusts existed to ensure that the homes and consumers had funds to perform funeral services.  We conclude that the trust beneficiaries are NPS, consumers in Missouri, and the funeral homes that were to provide services to those consumers pursuant to the consumers' preneed contracts.

The standard definition of a trust beneficiary is "[a] person for whose benefit property is held in trust."  Restatement (Third) of Trusts § 3 (2003).  "A person is a beneficiary of a trust if the settlor manifests an intention to give the person a beneficial interest."  *Id*. § 48.  A beneficial interest is a "right or expectancy in

---

*The Missouri Uniform Trust Code, which codified a trust-law measure of damages substantially similar to that found in the Restatement (Second) of Trusts § 205, does not apply here, because it took effect after Allegiant's tenure as trustee. *See* Mo. Rev. Stat. § 456.10-1002 (2005).

-11-

something (such as a trust or an estate), as opposed to legal title to that thing." *Beneficial Interest*, Black's Law Dictionary (10th ed. 2014).

Under the statutory scheme, NPS was entitled to receive trust principal in the ordinary course after NPS reimbursed funeral homes for the cost of services purchased by Missouri consumers.  But the whole purpose of the preneed trusts was to ensure funding for funeral services for the benefit of the consumers.  The statute's requirement that NPS, as the seller of a preneed contract, deposit eighty percent of the preneed contract amount into a trust was intended to benefit consumers by guaranteeing that money would be available to pay for funerals.  Funeral homes likely would not have agreed to perform funeral services without a guarantee that they would be reimbursed for those services, so the trusts were intended to benefit them too.

To be sure, the statute called for NPS to receive trust assets directly from the trust in the ordinary course.  But if NPS failed to make reimbursements, then consumers and funeral homes were entitled to a distribution directly from the trust in "an amount equal to all deposits made into the trust for the [preneed] contract."  Mo. Rev. Stat. § 436.048.  The consumers and funeral homes were not mere incidental beneficiaries of the trust like a creditor of an intended beneficiary.  *Cf.* Restatement (Third) of Trusts § 48 cmt. a, illus. 3.  The central purpose of the preneed trusts was to ensure the availability of funds to pay funeral homes for performing funeral services that benefitted consumers.

If NPS were deemed the sole beneficiary, then the purpose of the preneed trusts would be frustrated.  NPS was the settlor of the trust, Mo. Rev. Stat. § 436.005(6), and if NPS were also the sole beneficiary, then it could "compel the termination of the trust, although the purposes of the trust have not been accomplished." Restatement (Second) of Trusts § 339 (1959).  The preneed trusts were not created with the intent that NPS could dissolve the trusts at any time—before the funds were

-12-

used to reimburse funeral homes that agreed to provide services for the consumers who supplied the funds for the trusts.

Identifying the trust beneficiaries is important, because PNC raises defenses based on an assumption that NPS was the sole beneficiary. PNC contends that the district court erroneously struck its authorization and *in pari delicto* defenses before trial. The authorization defense applies when a beneficiary concurs in or assents to a breach of trust; such a beneficiary is said to have authorized the breach and cannot complain about it in a lawsuit. *Walker v. James*, 85 S.W.2d 876, 885 (Mo. 1935). The *in pari delicto* defense provides that "a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party." *Dobbs v. Dobbs Tire & Auto Ctrs., Inc.*, 969 S.W.2d 894, 897 (Mo. Ct. App. 1998). These defenses do not apply to innocent Missouri consumers who were to receive funeral services under a preneed contract, or to funeral homes who were to provide those services. Because the consumers and funeral homes were beneficiaries of the preneed trusts, the district court did not err in striking the defenses.

PNC also asserts that the district court erroneously struck its investment advisor defense under Mo. Rev. Stat. § 436.031.2. The statute provided that a preneed trust agreement may provide that when trust funds exceed $250,000, investment decisions may be made by an independent qualified investment advisor designated by the seller. Mo. Rev. Stat. § 436.031.2. The law continued: "In no case shall control of said assets be divested from the trustee nor shall said assets be placed in any investment which would be beyond the authority of a reasonably prudent trustee to invest in." *Id.*

PNC argues that once NPS hired an investment advisor, Allegiant was relieved of all liability relating to investment decisions of trust property. We reject that contention because it gives no effect to the requirement that assets remain invested

-13-

in a manner that is within the authority of a reasonably prudent trustee.  A trustee always has a duty to ensure that trust assets are invested prudently, whether the trustee is investing the assets himself or monitoring the investment decisions of an investment advisor.  Restatement (Third) of Trusts §§ 90, 91 (2007).  The statute recognized this ongoing duty by providing that "in no case" where assets are invested imprudently—investment advisor or no—may the trustee be relieved of liability. PNC is not relieved of liability unless Allegiant ensured that Wulf was investing trust assets within the authority of a reasonably prudent trustee.

IV.

PNC next contends that Appellees' trust-law claim should have been tried to the court, rather than to a jury.  We see merit in this point.  "Courts of equity generally have exclusive jurisdiction over actions against a trustee for breach of trust, as they are equitable actions."  *Brown v. United Mo. Bank, N.A.*, 78 F.3d 382, 387 (8th Cir. 1996).  It follows, therefore, that Appellees' trust-law claim should have been tried to the court under the general rule.

There is one exception to the rule for claims for indebtedness.  *See id.* at 388; Restatement (Second) of Trusts §§ 197, 198 (1959).  A claim for indebtedness arises when a trustee has a duty to pay money or transfer trust property immediately and unconditionally to the beneficiary, and the trustee fails to do so.  *Id.* § 198.  So long as "there has been a final settlement of accounts and nothing remains on the part of the trustee but to pay over the amount found to be due," the beneficiary has a legal claim to recover a specific sum of money.  *Howard's Estate v. Howe*, 131 S.W.2d 517, 520 (Mo. 1939).  But when there has been no accounting made and no settlement due, "the only remedy of the [beneficiary is] by a bill in equity and not by an action at law."  *Id.*

-14-

Citing *Jefferson National Bank of Miami Beach v. Central National Bank in Chicago*, 700 F.2d 1143 (7th Cir. 1983), Appellees argue that they bring a claim for indebtedness. In that case, a trust grantor revoked a trust and transferred the assets to a bank. That bank sued a former trustee, alleging that the trustee had acted with a conflict of interest that led to a diminution of the trust. The Seventh Circuit determined that because the trust was terminated, the claim was necessarily a claim at law for indebtedness. *Id.* at 1150.

We are not convinced by the reasoning of *Jefferson National Bank*. A breach-of-trust claim for damages does not become an indebtedness claim merely because the trust is terminated. *See Kaitz v. Dist. Ct.*, 650 P.2d 553, 555 (Colo. 1982); *Kohler v. Fletcher*, 442 N.W.2d 169, 172 (Minn. Ct. App. 1989). Beneficiaries can bring an indebtedness claim only when they allege a breach by the trustee of an express duty to pay a sum certain or to transfer a particular chattel. *Kaitz*, 650 P.2d at 555; Restatement (Second) of Trusts § 198. As one court observed, *Jefferson National Bank* presented a "traditionally equitable question of whether or not the alleged 'common law trustee' breached its fiduciary duty. Unless and until that equitable question is resolved in plaintiffs' favor, the alleged trustee is under no duty to make any payment whatsoever." *Nobile v. Pension Comm. of Pension Plan for Emps. of New Rochelle Hosp.*, 611 F. Supp. 725, 729 (S.D.N.Y. 1985). Trust-law claims can be brought at law only when "there is no possible need for the intervention of equity, the only question being whether the trustee failed to perform a ministerial act expressly mandated by the trust instrument." *Id.*; *see also* Restatement (Second) of Trusts § 198(1) cmt. b.

This case presents the "traditionally equitable question of whether or not the alleged 'common law trustee' breached its fiduciary duty." *Nobile*, 611 F. Supp. at 729. Liability had not been established when Appellees brought their claim; no accounting had been made, and no settlement was due. *See Howard's Estate*, 131 S.W.2d at 520. Appellees do not allege that Allegiant merely failed "to perform a

-15-

ministerial act expressly mandated by the trust instrument." *Nobile*, 611 F. Supp. at 729. Nor do they allege that Allegiant failed "to transfer [trust] chattel or pay [trust] money to [them]." Restatement (Third) of Trusts § 95 cmt. a (2012). Therefore, their claim is not a claim for indebtedness arising out of breach of trust that would be heard by a jury.

Appellees further contend that if their claim is not one for indebtedness, then Missouri law still allows them to bring a claim at law for damages against Allegiant. They rely on the presence of damages claims in *Sherwood v. Saxton*, 63 Mo. 78, 82 (1876), but the trust at issue in *Sherwood* was a deed of trust. "A deed of trust is a form of mortgage," *Bob DeGeorge Assocs., Inc. v. Hawthorn Bank*, 377 S.W.3d 592, 597 (Mo. 2012), and a "mortgage is not a trust," Restatement (Third) of Trusts § 5 cmt. k (2003). Trust law is generally not applicable to a trustee of a deed of trust, *see id.*, so *Sherwood* does not inform whether the claims here should proceed in law or in equity. *Sherwood* stands only for the limited proposition that in some cases, a debtor can sue a mortgage trustee in a court of law for damages.

Appellees also rely on *Halladay v. Verschoor*, 381 F.2d 100 (8th Cir. 1967), but that case involved fraud and unjust-enrichment claims by a successor-trustee against a third party for fraudulent conduct in its dealings with a predecessor-trustee. *Id.* at 102-03. The court's determination that non-trust-based claims by a successor-trustee against a third party are legal claims that may be tried to a jury has no application here.

For the reasons discussed, Appellees bring a claim on behalf of trust beneficiaries for breach of trust. That type of claim is properly tried to the court.

-16-

V.

Appellees cross-appeal the district court's dismissal of their claims alleging that Allegiant and others aided and abetted fraud and breaches of fiduciary duty. They argue that even if they are limited to a trust-law claim against PNC based on the actions of Allegiant, they can also bring tort claims against PNC for acts of Allegiant and other trustees that they believe aided and abetted NPS and Wulf. The district court concluded that Missouri does not recognize the asserted causes of action for aiding and abetting, and that the complaint did not adequately plead them in any event.

"Aiding and abetting" is a criminal law concept that gave rise in tort law to a theory known as "concert of action." The Restatement (Second) of Torts § 876 addresses "Persons Acting in Concert" as follows:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Appellees alleged that Allegiant Bank and other trustees aided and abetted NPS's fraud and Wulf's breaches of fiduciary duty. They relied on a theory of liability that corresponds to § 876(b) or (c) of the Restatement. Appellees' claim for aiding and abetting fraud was similar to their trust-law claim: they contended that Allegiant and others failed to maintain control of trust assets, retain and keep title to all trust assets, preserve trust assets, and ensure that trust distributions were lawful

-17-

and properly recorded.  Appellees alleged that these acts encouraged and substantially assisted NPS and others to perpetuate their fraud scheme.

Appellees also claimed that Allegiant and other trustees aided and abetted several breaches of fiduciary duty by Wulf.  The trustees allegedly did so by (1) allowing Wulf to serve as investment advisor, even though they knew that Wulf was not independent and was making poor investment management decisions, (2) allowing members of the Cassity family to dictate investment decisions, and (3) failing to warn stakeholders of Wulf's actions.  Appellees also complained that Allegiant aided and abetted Wulf's breaches by signing agreements with Wulf to give up custody over trust assets and by helping to draft letters signed by Wulf that directed Allegiant to take direction from NPS and others regarding trust assets.

The district court predicted that the Missouri Supreme Court would decline to adopt the theory of liability presented by § 876(b) and (c).  Our jurisdiction is premised on diversity of citizenship, so we apply state law and must follow controlling decisions of the Supreme Court of Missouri.  *See Annex Props., LLC v. TNS Research Int'l*, 712 F.3d 381, 384 (8th Cir. 2013) (per curiam).  That court's only decision concerning § 876 of the Restatement is *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241 (Mo. 1984).  *Zafft* concerned a concert-of-action claim in a pharmaceutical product-liability action under the theory of § 876(a).  The court rejected the claim, but the decision is murky, and it has produced conflicting interpretations.

The *Zafft* court first explained the concert-of-action theory derived from § 876(a) and then concluded that "[t]he element of agreement or cooperation necessary to application of this theory is lacking in this case."  *Id*. at 245.  One Missouri court took this analysis to mean that *Zafft* endorsed § 876(a) and rejected the claim only because the plaintiff presented insufficient evidence.  *Shelter Mut. Ins. Co. v. White*, 930 S.W.2d 1, 3-4 (Mo. Ct. App. 1996).  *Zafft* later concluded, however, that "the theories advanced by plaintiffs do not persuade the Court to abandon the

-18-

Missouri tort law which requires that they establish a causal relationship between the defendants and the injury-producing agent as a precondition to maintenance of their causes of action." 676 S.W.2d at 247. Given the *Zafft* court's earlier citation of *Abel v. Eli Lilly & Co.*, 343 N.W.2d 164 (Mich. 1984), which observed that the concert-of-action theory may have eased the plaintiff's traditional burden of proof of causation, *id.* at 176 & n.19, *Zafft*'s refusal to "abandon the Missouri tort law" could be read as a rejection of § 876(a). One Missouri court seems to have so construed *Zafft* in saying that § 876(c) has not been adopted in Missouri. *Richardson v. Holland*, 741 S.W.2d 751, 754 (Mo. Ct. App. 1987).

Given that *Zafft* squarely rejected the concert-of-action claim in that case for insufficient evidence of agreement or cooperation, it was unnecessary for the court to accept or reject § 876(a) as an available theory in Missouri. We disagree with the intermediate appellate court in *White* that *Zafft*'s focus on sufficiency of the evidence means that the state supreme court *adopted* § 876(a). Courts often take the path of least resistance, and if the evidence was plainly insufficient on one element, then there was no need to address a possibly more difficult question about the viability of the theory overall. The court's concluding concern about proof of causation raises doubt about whether Missouri would accept § 876(a). But because the court's more focused discussion of § 876(a) resolved the claim based on insufficient evidence, we cannot be sure that the court also meant to address the theory more broadly.

Whatever clues that *Zafft* provides about a cause of action under § 876(a) in Missouri, the decision does not address aiding-and-abetting liability under the subsections at issue here, § 876(b) and (c). *See Bradley v. Ray*, 904 S.W.2d 302, 315 & n.11 (Mo. Ct. App. 1995). An intermediate Missouri court in *White* recognized a cause of action under § 876(b), but we think that decision was based on an overreading of *Zafft*. Another intermediate court rejected § 876(c) in *Richardson*, but that decision, too, probably reads more into *Zafft* than is warranted.

-19-

We are left with little guidance in an uncertain area.  The Supreme Court observed in 1994 that "in some States, it is still unclear whether there is aiding and abetting tort liability of the kind set forth in § 876(b) of the Restatement." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 181 (1994). That condition persists today in significant States.  In 2012, the Ohio Supreme Court answered a certified question by saying that it had never recognized a claim under § 876.  *DeVries Dairy, L.L.C. v. White Eagle Coop. Ass'n*, 974 N.E.2d 1194, 1194 (Ohio 2012).  The law in Virginia appears unsettled.  *Jordan v. Osmun*, No. 1:16-CV-501, 2016 WL 7173784, at *4 (E.D. Va. Dec. 8, 2016).

A federal district judge in 1991, with the benefit of *Zafft*, was not convinced that Missouri courts would recognize a cause of action for aiding and abetting a breach of fiduciary duty.  *Omaha Indem. Co. v. Royal Am. Managers, Inc.*, 755 F. Supp. 1451, 1459 (W.D. Mo. 1991).  Another district judge in 2013—citing decisions concerning trespass and assault from the nineteenth and early twentieth centuries—concluded that Missouri does recognize liability for aiding and abetting a tort.  *Lonergan v. Bank of Am., N.A.*, No. 2:12-CV-04226, 2013 WL 176024, at *11-12 (W.D. Mo. Jan. 16, 2013).  The district judge in this case, after a thorough review of the relevant authorities, predicted that Missouri would not recognize a cause of action under § 876(b) or (c).

This court has exercised caution in expanding state-law theories of liability that are not foreshadowed by state precedent.  *Kingman v. Dillard's, Inc.*, 643 F.3d 607, 615, 617 (8th Cir. 2011).  Under the circumstances here, Appellees seek to use aiding-and-abetting liability to circumvent the limitations of trust law by holding PNC liable in tort for essentially the same conduct that constitutes a breach of trust.  We are not prepared to predict that the Supreme Court of Missouri would recognize a new cause of action based on § 876(b) or (c) on the facts of this case.  We therefore reject Appellees' cross-appeal.

-20-

\*       \*       \*

In summary, we affirm the judgment in part, reverse in part, and remand for further proceedings.  We conclude that Appellees brought a trust-law claim in equity that should have been tried to the court.  The beneficiaries of the preneed trusts were NPS, Missouri consumers, and the funeral homes that were to provide services for the consumers.  The measure of damages for the trust claim is defined by § 205 of the Restatement (Second) of Trusts.  The district court properly dismissed Appellees' claims for aiding and abetting in tort.  Although the case was tried to a jury on a tort-law theory, we do not dictate that the case be retried in its entirety.  The district court is familiar with the evidence and may proceed based on the existing trial record as it sees fit, with receipt of additional evidence as the court deems appropriate.

_____

-21-

# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

August 17, 2017

Mr. James F. Bennett
DOWD & BENNETT
Suite 1900
7733 Forsyth
Saint Louis, MO  63105-0000

RE:  15-3872  Jo Ann Howard and Associates, et al v. National City Bank, et al
15-3878  Jo Ann Howard and Associates, et al v. National City Bank, et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Michael E. Gans
Clerk of Court

JMM

Enclosure(s)

cc:     Mr. Michele (Mike) W Bartolacci
        Mr. Farrell A. Carfield
        Mr. Morry Sean Cole
        Mr. Sean Connelly
        Mr. Maurice B. Graham
        Teagan J. Gregory
        Ms. Mary E. Hickcox-Howard
        Mr. Robert J. Kelly
        Mr. J. Andrew Keyes

Mr. Gregory J. Linhares
Mr. Eric John Magnuson
Ms. Caitlin E O'Connell
Ms. Clare S. Pennington
Mr. Larry Pozner
Mr. Stephen Raber
Mr. Daniel M. Reilly
Mr. Michael P. Robertson
Ms. Susan Ford Robertson
Ms. Amy Saharia

District Court/Agency Case Number(s):   4:09-cv-01252-ERW
                                        4:09-cv-01252-ERW

# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

August 17, 2017

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE:  15-3872  Jo Ann Howard and Associates, et al v. National City Bank, et al
      15-3878  Jo Ann Howard and Associates, et al v. National City Bank, et al

Dear Sirs:

A published opinion was filed today in the above case.

Counsel who appeared on the brief and presented argument on behalf of the appellant was James F. Bennett, of Saint Louis, MO. Sean Connelly, of Denver, CO. The following attorney(s) appeared on the appellant brief;  Stephen D. Raber, J. Andrew Keyes both of Washington, D.C., Caitlin E. O'Connell, of St. Louis, Mo.

Counsel who appeared on the brief and presented argument on behalf of the appellees was Sean Connelly, of Denver, CO.  The following attorney(s) appeared on the appellee brief;  Eric John Magnuson, of Minneapolis, MN., Clare S. Pennington, of Denver, CO.,  Daniel M. Reilly, of Denver, CO.,  Larry Pozner, of Denver, CO.,  Michael P. Robertson, of Denver, CO.,  Robert J. Kelly, of Denver, CO.

Counsel who appeared on the amicus brief was Susan Ford Robertson and J. Zachary Bickel, both of Kansas City, MO.

The judge who heard the case in the district court was Honorable E. Richard Webber. The judgment of the district court was entered on November 20, 2015.

If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

JMM

Enclosure(s)

cc:  MO Lawyers Weekly

District Court/Agency Case Number(s):   4:09-cv-01252-ERW
                                        4:09-cv-01252-ERW