# EXHIBIT B

Case: 4:09-cv-01252-ERW   Doc. #: 2527-2   Filed: 01/09/18   Page: 2 of 5 PageID #: 70484

Audio Proceedings - 9/20/2016
Jo Ann Howard and Associates, P.C., et al. v. National City Bank, et al.

## Page 1

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

Case Nos. 15-3872(L) and 15-3878
_____

JO ANN HOWARD AND ASSOCIATES, P.C., et al.,
Plaintiffs-Appellees/Cross-Appellants,
v.
NATIONAL CITY BANK, et al.,
Defendants-Appellants/Cross-Appellees.
_____

On appeal from the United States District Court
for the Eastern District of Missouri
(No. 4:09-CV-01252-ERW)
_____

REPORTER'S TRANSCRIPT OF AUDIO PROCEEDINGS
September 20, 2016
_____

Transcribed by:
LAURA L. CORNING, FCRR, CSR

## Page 2

APPEARANCES

For the Plaintiffs-Appellees/Cross-Appellants:
   SEAN CONNELLY
   Zonies Law, L.L.C.
   1900 Wazee Street
   Suite 203
   Denver, Colorado 80202

For the Defendants-Appellants/Cross-Appellees:
   JAMES F. BENNETT, ESQ.
   Dowd Bennett, L.L.P.
   7733 Forsyth Boulevard
   Suite 1900
   St. Louis, Missouri 63105

## Page 3

1  *  *  *  *  *
2       (This begins Media Unit 1.)
3            -o0o-
4       MR. BENNETT:  Thank you, Your Honor, and
5  may it please the Court.
6       PNC Bank appeals a jury verdict of 355.5
7  million in compensatory damages and punitive damages of
8  $35 million.  PNC is before the Court because it
9  purchased National City Bank in 2009, and National City
10 Bank in turn had purchased a St. Louis bank called
11 "Allegiant Bank" in 2004.
12      The issues on this appeal are many, and
13 some of them present somewhat complex issues of law,
14 but it is our fundamental position that there is one
15 statement of fact that demonstrates why many -- why the
16 judgments cannot stand, and that would be at the outset
17 that this is a case bought -- brought by a trust
18 beneficiary against a trustee alleging that this
19 Missouri trustee violated trustee duties to take care
20 of assets and to prudently invest them and to report
21 the assets.
22      Once that undisputable -- indisputable
23 fact, a fact that's pled in the Complaint, found by the
24 District Court to be true, was the sole basis of the
25 jury instructions submitted to the jury that resulted

## Page 4

1  in the verdict -- once you accept that this is a
2  Missouri trust case between a beneficiary and a trustee
3  and not a third party, a series of conclusions can be
4  reached from that.
5       The first is that even if you call your
6  claim "negligence," and even if you call it "breach of
7  fiduciary duty," which is what the plaintiffs did here
8  and what Judge Webber used to conclude that this was an
9  action at law instead of equity, you look at Missouri
10 law on that -- this is a diversity case, and dating
11 back to the beginning -- and we cite Covey versus
12 Pierce for this proposition:
13         It is the law that every violation
14      by a trustee of a duty that equity lays
15      upon him, whether wrongful and fraudulent
16      or through negligence, is a breach of
17      trust.
18      Then you look, next, at the cases that
19 say, well, what happens when somebody tries to plead
20 around that.  They don't say, I'm suing for breach of
21 trust.  We cite the Hansinger case that talks about how
22 regardless of these claims denominated, they're
23 breaches of trust.  And to look at hornbook law, you
24 would say the restatement section 201 flatout says
25 that:

Case: 4:09-cv-01252-ERW   Doc. #:  2527-2   Filed: 01/09/18   Page: 3 of 5 PageID #: 70485

Audio Proceedings - 9/20/2016
Jo Ann Howard and Associates, P.C., et al. v. National City Bank, et al.

5

1   A breach of trust is a violation
2   of any duty which the trustee owes to the
3   beneficiary.
4        And then we cite, also, a series of cases
5   that just simply recast trust cases as trust cases,
6   notwithstanding the fact that they've been pled in
7   negligence.
8        JUDGE MELLOY:  Okay.  Let's assume
9   you're right.  Judge Webber basically found a breach
10  of trust in this case, and I don't think you're really
11  arguing that there wasn't a breach of trust.  So let's
12  assume that there's a breach of trust.  So where does
13  that leave us?
14       MR. BENNETT:  Certainly.
15       JUDGE MELLOY:  Do you get, what is it?
16  80, a hundred million dollars was the corpus of the
17  trust that was -- that was stolen?
18       MR. BENNETT:  Around a hundred -- I
19  think 122 million was the principal sum.
20       JUDGE MELLOY:  So you would owe 122
21  million.
22       MR. BENNETT:  No.  Because -- well, I
23  can explain why I think there would have to be a new
24  trial on that at the appropriate time.
25       JUDGE MELLOY:  But -- so you would owe

6

1   122 million and maybe interest -- let's assume, best
2   case scenario, you owe 122 million plus about 10 years
3   of interest.
4        Can you get any compensatory damages
5   under trust law beyond the corpus of the trust and
6   any -- any interest that might be owed?
7        MR. BENNETT:  If by "interest" you also
8   encompass the idea that it could have been invested
9   prudently and gotten more money --
10       JUDGE MELLOY:  Right.
11       MR. BENNETT:  -- the answer --
12       JUDGE MELLOY:  Exactly.
13       MR. BENNETT:  -- is that that is the
14  measure of damages.  As Judge Hand -- Learned Hand
15  said, that is hornbook law that 205 applies under
16  these circumstances.
17       JUDGE MELLOY:  There's no potential for
18  any type of compensatory damages beyond the corpus and
19  interest.
20       MR. BENNETT:  Beyond the diminution in
21  value of the trust, which we actually think we would
22  contest if there was a new trial on that on what the
23  proper measure of that would be.  However, there is a
24  circumstance under which we would be liable for people
25  outside of the trust assets.  That would be if

7

1   nontrust duties form the basis of the claim.
2        So you have people who had funerals and
3   funeral home directors who are -- who could bring a
4   claim as nonbeneficiaries.  And what the law says on
5   that, we cite a nice Pennsylvania case to talk about
6   that, you can bring such claims against a trustee, but
7   what you don't assert when you're not a beneficiary is
8   that trust duties are what was breached, and so you
9   have to find an independent duty that was breached.
10       And so here --
11       JUDGE COLLOTON:  Are those claims in
12  this case?
13       MR. BENNETT:  No.  No.
14       JUDGE COLLOTON:  All right.  All right.
15  So let's stick with Judge Melloy's question about
16  where we are if you're right on the trust issue.
17       MR. BENNETT:  Okay.
18       JUDGE COLLOTON:  What you just brought
19  up sounds like that would be a separate lawsuit.
20       MR. BENNETT:  I believe that it would be
21  a totally separate lawsuit.
22       JUDGE COLLOTON:  All right.  So on
23  the -- on the question Judge Melloy raised -- I know
24  you have these defenses you want to raise, in pari
25  delicto and authorization.  But setting that aside,

8

1   why would there need to be a new trial if the defenses
2   are inapplicable?  Since the judge heard all the
3   evidence, why couldn't he just make the necessary
4   findings based on the existing record?
5        MR. BENNETT:  Because the -- the issue
6   with that approach is that the expert for the
7   plaintiff and the other evidence does not show what
8   Judge Webber would find under 205 because the 205
9   measure of damage under our case law is the loss and
10  value of the trust estate resulting from the breach.
11       So I think everybody knows that we
12  stopped being trustee in '04, and we started in '98.
13  What would have needed to have happened is -- and
14  Dr. Arnold, who's the plaintiffs' trust expert,
15  certainly could have done this -- is to say, by virtue
16  of Allegiant's conduct, what is the loss and value of
17  the trust estate resulting from these breaches.
18       What that could involve are a couple of
19  different ways, and it may be -- you know, and you
20  could talk about whether it can just be this damages
21  portion, but what you normally do in a trust case, as a
22  person who's been in the county probate court before,
23  is you would say, this money shouldn't have gone out,
24  it -- it's $20 million, and here's how much that cost
25  the trust.

Case: 4:09-cv-01252-ERW  Doc. #: 2527-2  Filed: 01/09/18  Page: 4 of 5 PageID #: 70486

Audio Proceedings - 9/20/2016
Jo Ann Howard and Associates, P.C., et al. v. National City Bank, et al.

9

1  Or you could value the trust. You could
2  value the trust and say, here's what it was worth when
3  we handed it to Allegiant, and here's what it was worth
4  at the end.
5  But I want to make sure -- Dr. Arnold's
6  testimony is at Appendix 438 to 43, 638 to 643 is the
7  key part of this. He says:
8      I did not calculate losses from
9      the particular transfer of any money out
10     of the trusts and did not calculate the
11     value of the assets held in any of the
12     trusts.
13 And so what we would have to do is -- I
14 mean, if you said to me -- on these topics, and setting
15 aside my position everywhere else, what would happen
16 here, it would be -- you would say, it is a trust case.
17 Under black letter law, the measure of damages is 205.
18 We're going to remand, and that requires a different
19 theory of damages, which would either be money out and
20 not properly accounted for or the diminution in value
21 of the trust. And we would submit, in equity, of
22 course, there's no case ever that says that a trustee
23 in a case against a beneficiary doesn't at least get an
24 authorization defense.
25      JUDGE MELLOY: Well, I guess I'm curious

10

1  as to how this case got -- I mean, you're not
2  seriously contending there wasn't a breach of duty,
3  right?
4      MR. BENNETT: We're not challenging the
5  jury's determination on that.
6      JUDGE MELLOY: Yeah. I mean, you really
7  can't with a straight face. I mean, they -- they --
8  he -- the trustee let him steal millions of dollars
9  and -- and got away with it. And --
10     MR. BENNETT: We -- we filed a lot of
11 briefs, and we don't contend that that needs to be
12 reversed.
13     JUDGE MELLOY: And so why aren't you
14 just writing a check for at least what you lost? I
15 mean, there --
16     MR. BENNETT: Well, there's -- I mean,
17 that gets into a lot of things that happened
18 beforehand on whether we would have done that or not.
19     But the -- to -- you know, the -- the
20 judgment's 355 million down to 280. So we didn't never
21 [sic] have that opportunity.
22     JUDGE MELLOY: So what do you -- what do
23 you say you owe?
24     MR. BENNETT: What I -- what we say we
25 owe is that there were breaches from '98 to '94,

11

1  people took over after us, and that the proper measure
2  would be, if they did it, to say what happened in that
3  six-year period to the value of the trust.
4      Because one thing that's really important
5  that I think people know from the record is that after
6  we were long gone, what the criminals did was take
7  insurance policies that were actually in place and
8  surrendered tens of thousands of them on one day in
9  2007. A lot happened after we were gone.
10     So all we're saying is, on this issue is
11 that if you remanded us and said it's a trust case, you
12 say 205's the measure, always has been --
13     JUDGE COLLOTON: You -- you mean you
14 would remand and say liability is a given at this
15 point? Even though you're saying it should have been
16 a bench trial, you're --
17     MR. BENNETT: No. I'm not saying that.
18 I'm saying we -- we should be able to --
19     JUDGE COLLOTON: Well, why do you have
20 to --
21     MR. BENNETT: -- have an authorization
22 defense.
23     JUDGE COLLOTON: -- have a new trial?
24 Well, all right. Why would you have to
25 have a new trial? You're not contesting you breached

12

1  the fiduciary duty. The judge made a specific finding
2  of that. So -- so isn't the best-case scenario you get
3  a trial on damages?
4      MR. BENNETT: Well, I guess you would
5  say what is the new trial on damages about. If it is
6  this particular transfer out was a breach, you know,
7  that's -- we would contest that.
8      We do think we're entitled to these four
9  defenses as well.
10     JUDGE COLLOTON: So you want a new trial
11 because you want to raise these defenses that were
12 precluded.
13     MR. BENNETT: Right.
14     JUDGE COLLOTON: But if the judge was
15 right on those -- assume for a minute that he was
16 correct on the defenses -- then would we just be down
17 to a trial on damages?
18     MR. BENNETT: Well, I think that if the
19 judge was right that we were -- that the four defenses
20 were properly excluded and that we would like to
21 contest in a damages trial which breaches are tried --
22 tied to damages because it is our fundamental position
23 that many breaches that were put in the verdict
24 directing instruction, like failure to report or that
25 you took a note and it wasn't a prudent investment,

Case: 4:09-cv-01252-ERW   Doc. #:  2527-2   Filed: 01/09/18   Page: 5 of 5 PageID #: 70487

Audio Proceedings - 9/20/2016
Jo Ann Howard and Associates, P.C., et al. v. National City Bank, et al.

13

1  aren't tied to damages in any way.
2          So even if you said we're going to do
3  damages or we think that liability's established -- and
4  Judge Webber essentially made the Rule 52 findings --
5          JUDGE COLLOTON:  Well, you said you're
6  not contesting liability.
7          MR. BENNETT:  I said we're not trying to
8  say --
9          JUDGE COLLOTON:  If -- if you --
10         MR. BENNETT:  -- that the jury -- we're
11 not saying there was insufficient evidence for the
12 jury.
13         JUDGE COLLOTON:  Yeah.  But you are
14 saying --
15         MR. BENNETT:  -- but we -- we are
16 saying --
17         JUDGE COLLOTON:  -- there shouldn't have
18 been a jury trial at all.
19         MR. BENNETT:  Right.
20         JUDGE COLLOTON:  So you are in a sense
21 contesting the jury verdict on liability.
22         MR. BENNETT:  No question about that,
23 that we don't think that the jury verdict should stand
24 on liability.
25         JUDGE COLLOTON:  But you're saying if

14

1  Judge Webber made adequate liability findings that
2  could be said to comply with Rule 52, then that might
3  be a ground to affirm the liability?
4          MR. BENNETT:  Well, the problem with
5  doing that approach in any way, shape, or form,
6  though, is that the breaches that are findable aren't
7  tied to any of the damages that were presented, and,
8  therefore, you would still have to have a
9  causation-related --
10         JUDGE MELLOY:  Well -- but --
11         MR. BENNETT:  -- trial as well.
12         JUDGE MELLOY:  -- he might already have
13 the record that's necessary.
14         MR. BENNETT:  He -- well, if you --
15         JUDGE MELLOY:  (Unintelligible.)
16         MR. BENNETT:  -- remanded for that
17 purpose, I think we could talk to him about whether --
18         JUDGE MELLOY:  Yeah.
19         MR. BENNETT:  -- he thought that he had
20 that or not.
21         JUDGE MELLOY:  Now -- well, go ahead.
22         JUDGE SHEPHERD:  Well, I've -- I've got
23 a couple of questions, and -- and maybe they're
24 primarily factual.
25         MR. BENNETT:  Sure.

15

1          JUDGE SHEPHERD:  The trusts -- the
2  trusts have ended --
3          MR. BENNETT:  True.
4          JUDGE SHEPHERD:  -- in, you said, 2004.
5          MR. BENNETT:  No.  We -- we stopped
6  being the trustee in 2004.
7          JUDGE SHEPHERD:  Okay.  What -- what
8  happened to the trusts themselves?
9          MR. BENNETT:  Certainly.  When we turned
10 it over, there were 20- -- you know, tens of thousands
11 of policies still in place.  The trusts continued to
12 operate.
13         A bank called Bremen Bank took it over,
14 then a bank called Marshall & Ilsley took it over, and
15 then Bremen took it back.  And, in addition, there were
16 trusts in Iowa, for example, as well.  And they all ran
17 until 2008 when the insurance companies that issued the
18 policies that were being used to pay these benefits out
19 went insolvent.
20         And so this worked for four more years
21 after we were long gone and had nothing to do with it.
22         JUDGE SHEPHERD:  But -- but have the
23 trusts terminated?
24         MR. BENNETT:  The trusts terminated
25 in -- I think you would say in '08.

16

1          JUDGE SHEPHERD:  Okay.
2          MR. BENNETT:  Not when we left.
3          JUDGE SHEPHERD:  And so -- so when
4  this -- when this action was brought, the trust had
5  previously terminated or -- the trusts had previously
6  terminated, they were no longer in existence; is that
7  correct?
8          MR. BENNETT:  Either when the case was
9  brought or shortly thereafter the trusts weren't
10 operated anymore.
11         JUDGE SHEPHERD:  Okay.  So that -- that
12 leads me to this question:  Aren't the cases that
13 you -- that you have cited from Missouri trust law,
14 aren't those cases that involve and -- and envision a
15 situation in which the trust is -- is ongoing and
16 there is a trust corpus that needs to be replenished
17 and can be replenished?  Where -- where here, the
18 trust's -- the trust's over.  The -- the identity of
19 these various parties as beneficiary and trustee,
20 those -- those -- those -- those have gone.
21         And so we -- we truly just have a
22 situation of -- of a damages lawsuit for negligence or
23 for -- for breach of trust, but there's no -- no trust
24 corpus to be replenished --
25         MR. BENNETT:  Well, that --