IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JO ANN HOWARD AND ASSOCIATES, P.C., SPECIAL DEPUTY RECEIVER OF LINCOLN MEMORIAL LIFE INSURANCE COMPANY, MEMORIAL SERVICE LIFE INSURANCE COMPANY, AND NATIONAL PREARRANGED SERVICES, INC., ET AL., ) ) ) ) ) ) ) |  |
| Plaintiffs, ) | Case No. 09-CV-1252-ERW |
| v. ) ) |  |
| J. DOUGLAS CASSITY; RANDALL K. SUTTON; BRENT D. CASSITY; J. TYLER CASSITY; RHONDA L. CASSITY; ET AL., ) ) ) ) |  |
| Defendants. ) |  |

**PLAINTIFFS' RESPONSE TO PNC BANK, N.A. AND
NATIONAL CITY BANK'S STATEMENT REGARDING RULE 16 CONFERENCE**

Plaintiffs Jo Ann Howard and Associates, P.C., Special Deputy Receiver of Lincoln Memorial Life Insurance Company, Memorial Service Life Insurance Company, and National Prearranged Services, Inc.; the National Organization of Life and Health Insurance Guaranty Associations; and the State Guaranty Associations (collectively "Plaintiffs") hereby respectfully submit this response to PNC Bank, N.A. and National City Bank's (collectively "PNC") Statement Regarding Rule 16 Conference ("PNC's Statement").

**INTRODUCTION**

After a full trial on its breaches of duties as trustee and in the face of the Eighth Circuit's declaration that the case need not "be retried in its entirety," PNC proposes that the Court delay the trial on the losses suffered by the trust estate and bifurcate from it a separate trial on Allegiant's breaches of trust. Bifurcation of this case is unwarranted and

1

2177106

would cause unnecessary delay and expense.  Instead, should the Court determine that additional discovery on the breach of trust issue is necessary, the Court can order the parties to expeditiously conduct the plainly limited additional factual discovery on liability alongside any discovery on losses.  This limited discovery on liability and losses can be easily accomplished in the next 75 days.  Attached as Exhibit A is a proposed scheduling order that would efficiently accomplish this goal.  As Plaintiffs' counsel set forth in its Rule 16 motion, Plaintiffs are ready to proceed to trial as this Court sees fit, and if a trial on this matter in the next five or six months is the Court's preference, Plaintiffs can and will be ready to go.

Plaintiffs also request that PNC be required to promptly respond to Plaintiffs' pending Motion for Judgment (Doc. No. 2526) so that the parties and the Court may determine what factual disputes, if any, remain on Allegiant's breaches of trust.  PNC may, in its response, propose findings of fact as to its twice-rejected authorization and *in pari delicto* defenses.  Such proposed findings, however, would be clearly inadmissible on remand since the Eighth Circuit unambiguously affirmed this Court's holding that PNC could not assert those defenses as to the SDR standing in the shoes of NPS.

Finally, contrary to PNC's Statement but consistent with the Eighth Circuit's mandate, the Court may properly make initial findings of fact that losses to the trust estate *resulted from* Allegiant's breaches identified in Plaintiffs' proposed Findings of Fact and Conclusions of Law.  (Doc. No. 2527-1).  These proposed initial findings are supported in the existing record, were previously made by this Court, and were contemplated by the Eighth Circuit.  Such findings are separate and distinct from the quantification of trust losses that will need to be resolved at the trial of this case.

2177106

I.   **Simultaneous Liability and Damages Discovery with a Single Hearing Would Maximize Efficiency and Eliminate Unnecessary Delay**

In response to Plaintiffs' request for a Rule 16 Conference, PNC seeks, without actually filing a Rule 42(b) motion, to bifurcate this case into two tracks resulting in two trials: (a) a second trial on liability and (b) a much later damages trial. In so doing, PNC makes no reference to or attempt to meet the standards for bifurcation under Rule 42(b). *See* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial on one or more separate issues[.]"). Nor could PNC meet these standards. First, no prejudice could arise from hearing any remaining liability issues and damages evidence simultaneously at a bench trial. Nor would bifurcation promote convenience or expedite and economize these proceedings. On the contrary, one obvious impact of splitting this case into two would be to indefinitely prolong these proceedings. Indeed, PNC proposes (1) additional discovery into liability; (2) after which a "short bench trial" on liability would be held; (3) after which PNC would file a response to Plaintiffs' Motion for Judgment; and then (4) entry of judgment on liability. (Doc. No. 2544 at 3). Once that liability phase has been completed, PNC proposes: (5) fact discovery on losses; (6) after which the parties will engage in expert discovery on losses; (7) after which there would be a bench trial on causation and losses; and finally (8) entry of judgment on causation on losses. (Doc. No. 2544 at 3-4). As detailed in Exhibit A, a much quicker, more convenient and more economical approach would be: (1) fact discovery on new liability evidence and damages, with the scope narrowly tailored via Rule 52 briefing; (2) expert discovery on damages; (3) a bench trial on losses and any remaining new liability evidence left unresolved after the Court's ruling on Plaintiffs' Motion for Judgment; and (4) entry of judgment.

Although PNC declares it is "not oppose[d]" to a two part trial, (Doc. No. 2544 at 1), PNC is the only party that has proposed bifurcation. Plaintiffs have not requested bifurcation and believe it would be inefficient and unnecessarily delay final resolution of this matter. Instead, Plaintiffs filed a motion requesting this Court enter judgment on liability based on the record as it currently exists. (Doc. No. 2526).

## II.     PNC Should Be Required to Respond to Plaintiffs' Motion for Judgment

PNC should be required to promptly respond to Plaintiffs' Motion for Judgment Against PNC Bank on Allegiant's Breaches of Trust and PNC's Investment Advisor Defense (Doc. No. 2526). In its response, PNC should detail its position to the Court and Plaintiffs on: (i) whether the existing trial record is sufficient for the Court to make findings of fact and conclusions of law on Allegiant's breaches of trust; (ii) whether and to which, if any, of Plaintiffs' proposed findings it objects; (iii) whether the Court should make any additional findings from the trial record; (iv) whether PNC desires to supplement the trial record and, if so, in what manner and with what evidence; and (v) as to any additional evidence it desires to submit, why such evidence is necessary and why it was not previously submitted. This is a fair procedure that would allow the Court to determine if any additional evidence is necessary and appropriate.

## III.    PNC's Authorization and *In Pari Delicto* Defenses Are Barred on Remand by the Eighth Circuit's Ruling

PNC's response to Plaintiffs' Motion for Judgment may include proposed findings of fact and conclusions of law on PNC's affirmative defenses. However, the Eighth Circuit's ruling, and the scope of the resultant mandate, on PNC's authorization and *in pari delicto* affirmative defenses is clear. As the Eighth Circuit described the issue before it: "PNC contends that the district court erroneously struck its authorization and *in pari*

4

*delicto* defenses before trial." *Jo Ann Howard and Assocs., P.C. v. Cassity*, 868 F.3d 637, 647 (8th Cir. 2017). The scope of PNC's appeal is important. PNC did not simply appeal the Court's rejection of those defenses as to consumers and funeral homes. Instead, it specifically appealed this Court's order striking those defenses *as applied to NPS*. *See* Ex. B (Br. of Appellants PNC Bank, N.A. and National City Bank) at 14 ("the court held that it would 'not allow [those defenses] to be asserted against the SDR' *even though NPS itself was subject to the defenses*.") (emphasis added, alteration in original). Rejecting PNC's argument, the Eighth Circuit affirmed this Court's ruling. *Jo Ann Howard & Assocs.*, 868 F.3d at 642 ("We further hold that the district court properly limited PNC's defenses[.]").

After the Eighth Circuit issued its ruling, PNC *acknowledged* that the Eighth Circuit's holding barred its *in pari delicto* and authorization defenses as to the SDR standing in the shoes of NPS. *See* Ex. C (Appellants' Opp. to Appellees' Pet. for Panel Rehearing) at 12 ("Plaintiffs' requested relief also would likely *reintroduce* the question of whether the *in pari delicto* and authorization defenses bar the claims of the Special Deputy Receiver (SDR) standing in the shoes of NPS.") (emphasis added). The Eighth Circuit then denied Plaintiffs' request for panel rehearing. Having successfully taken the position before the Eighth Circuit that the Circuit's ruling resolved the question of those affirmative defenses, PNC cannot now be heard to argue that those defenses are still valid. *Spencer v. Annett Holdings, Inc.*, 757 F.3d 790, 798 (8th Cir. 2014) ("[J]udicial estoppel applies when a party—having taken one litigating position and successfully persuaded a court to adopt that position—would derive an unfair advantage or impose an unfair detriment on the opposing party by taking a contrary position in new litigation.")

5

2177106

Given its appellate briefing and the scope of the Eighth Circuit's holding, PNC's claim that the "Eighth Circuit did *not* affirm this Court's prior holding that the SDR, standing in the shoes of NPS, is not subject to those defenses," (Doc. No. 2544 at 2 (emphasis in original)), is meritless. Further, PNC's argument relies on the shaky premise that, in an order requiring remanded proceedings, the Eighth Circuit did not consider the scope of the remand proceedings when issuing its order on PNC's defenses. (Doc. No. 2544 at 2). The Eighth Circuit knew that it was ordering a retrial on breaches of trust brought by three beneficiary classes (NPS, consumers and funeral homes). It knew that this Court had previously struck PNC's authorization and *in pari delicto* defenses as asserted against the SDR in the shoes of NPS. PNC, however, would have this Court believe that in affirming, the Eighth Circuit left unresolved the appellate issue directly before it—that is, the *exact* question that PNC raised on appeal—without explicitly stating so.

**IV.  The Narrow Liability and Losses Discovery Identified by PNC Can be Accomplished Simultaneously in a Brief Period of Time**

PNC's Statement sets forth very narrow and limited additional fact discovery it proposes on both the issue of liability and damages. Specifically, PNC identifies: (1) "one or more National City Bank witnesses" on NCB's acquisition of Allegiant; (2) "updated claim- and payment-related data in Plaintiffs' possession[;]" and (3) "the assumption agreement[.]" PNC had the evidence in the first category available to it at the time of the first trial but affirmatively chose not to present it based on a "tactical decision[.]" (Doc. No. 2544 at 3). The rest of this additional discovery can easily be completed in the next 75 days. There is no discernable reason why this fact discovery cannot, and should not, be sought simultaneously under a standard Rule 16 order. Plaintiffs' proposed schedule,

2177106

attached as Exhibit A, would allow the parties to accomplish any additional limited fact discovery and expert discovery in a timely and expeditious matter.

V. **The Court May Appropriately Find from the Existing Record That Losses to the Trust Estate Resulted from Allegiant's Breaches of Trust**

Finally, PNC claims that the Court "cannot appropriately enter findings of fact related to causation of losses[,]" (Doc. No. 2544 at 1), because "[n]o witness at trial testified about causation of trust-law damages[,]" (*Id.* at 2).  As such, PNC misapprehends the requirements for establishing a causal link between breach and loss.  As the Court previously explained, causation can be inferred "from the circumstances.  'If the logical conclusion from the evidence is that if certain things had been done certain results would not have occurred, and such results did occur, the evidence of causation is sufficient.'" (Doc. No. 2504 at 15-16 (quoting *Basta v. Kansas City Power & Light Co.*, 456 S.W.3d 447, 454 (Mo. Ct. App. 2014)).

This Court has already found that Allegiant's breaches were the actual and proximate cause of losses to the trust. (*See, e.g.*, Doc. No. 2504 at 14 ("But because Allegiant's trust department kept no independent records and approved all requested wire transfers of NPS without questioning their purpose, the Cassitys borrowed vast sums of money, in most cases without collateral from the trusts."), 16 ("It was easy for the jury to infer the assets from the trust would not have disappeared had Allegiant done its duties. … It's clear, the trusts' assets would not have been depleted had Allegiant not allowed the trust assets to be so easily removed from the trusts.  The harm did not occur when Lincoln and Memorial became insolvent, the harm occurred when Allegiant allowed the money to be removed from the trusts with no oversight."), 18 ("It is the reasonable and probable consequence that assets will be taken from trusts for ill-gotten purposes when a trustee

takes no action to protect the assets."), 18-19 ("This is not a case where a trustee complied with its duties but was hoodwinked by criminals.  Allegiant did not fulfill its duties and a natural and probable consequence of failing to fulfill its duties, is the assets were depleted.").  In its opening brief to the Eighth Circuit, PNC recognized that these findings were tied to trust-law theory of damages.  (Doc. No. 2527-3 at 75 ("the district court's justification for the verdict … invoke[d] the trust-law theory of damages")).  This Court's discretion to review the existing record and to resolve the question of whether there were trust losses resulting from Allegiant's breaches of trust was addressed in the argument before the Eighth Circuit.  Ex. D at 14:3-17.[1]  Plaintiffs' Motion for Judgment simply asks this Court to make as its findings the easy inferences that assets from the NPS Missouri Trusts would not have disappeared had Allegiant not committed the breaches of trust identified in the proposed Findings of Fact and Conclusions of Law.

Significantly, Section 205 imposes a *lower* causal standard than that already found by this court.  *See* Restatement (Second) of Trusts § 205 (If a trustee commits a breach of trust, 'he is chargeable with (a) any loss or depreciation in value of the trust estate *resulting from* the breach of trust ….");  *Jo Ann Howard & Assocs.*, 868 F.3d at 646; *Poage v. State Farm Fire & Cas. Co.*, 203 S.W.3d 781, 786, 787 (Mo. App. 2006). ("[R]esulting from does not require a proximate causal connection."  Instead, "the causal connection needs to be reasonably apparent.  The injury and loss must be a natural and reasonable incident or consequence" of defendant's conduct. ); *Eichholz v. Secura Supreme Ins. Co.*, 735 F.3d 822, 827 (8th Cir. 2013)

---

[1] "MR. BENNET: [T]he breaches that are findable aren't tied to any of the damages that were presented, and, therefore, you would still have to have a causation-related … trial as well.
THE COURT: Well – but -- … he might already have the record that's necessary.
MR. BENNETT: He – well, if you – … remanded for that purpose, I think we could talk to him about whether … he thought that he had that or not."

8

("Missouri courts interpret the phrase 'resulting from' to require a 'causative link between a harm and a covered occurrence or even to be 'reasonably apparent' such that the harm could be considered a 'natural and reasonable incident or consequence' of the covered event or occurrence."). The limited causal findings proposed by Plaintiffs are, therefore, appropriate in light of the record already established.

This issue further highlights the need for PNC to promptly and formally respond to Plaintiffs' Motion for Judgment (rather than oppose it or delay it by merely commenting on it in response to a Rule 16 motion). A response to Plaintiffs' motion is the appropriate pleading for PNC to raise its objections to proposed findings of fact. The issue regarding what portion of the existing record could be used on remand to address Allegiant's breaches of trust has been squarely before the parties for five months, since the Eighth Circuit issued its decision and stated that "we do not dictate that the case be retried in its entirety." As set forth in Exhibit A, Plaintiffs believe a response deadline of February 13 (giving PNC 35 days from the day the motion was filed) is appropriate.

Dated this 26th day of January, 2018.

Respectfully submitted,

*s/ Daniel M. Reilly*
Daniel M. Reilly (Admitted *Pro Hac Vice*)
Larry S. Pozner, E.D. Missouri Bar No. 2792CO
Clare S. Pennington (Admitted *Pro Hac Vice*)
Robert J. Kelly (Admitted *Pro Hac Vice*)
Michael P. Robertson (Admitted *Pro Hac Vice*)
Farrell A. Carfield (Admitted *Pro Hac Vice*)
John M. McHugh  (Admitted *Pro Hac Vice*)

Reilly Pozner LLP
1700 Lincoln Street, Suite 3400
Denver, CO 80203
(303) 893-6100

2177106

and

Maurice B. Graham, Bar No. 3257
Gray, Ritter & Graham, P.C.
701 Market Street, Suite 800
St. Louis, MO 63101
(314) 241-5620

Attorneys for Plaintiffs Jo Ann Howard and Associates, P.C., in its capacity as Special Deputy Receiver of Lincoln Memorial Life Insurance Company, Memorial Service Life Insurance Company, and National Prearranged Services, Inc.; the National Organization of Life and Health Insurance Guaranty Associations; the Missouri Life & Health Insurance Guaranty Association; the Texas Life & Health Insurance Guaranty Association; the Illinois Life & Health Insurance Guaranty Association; the Kansas Life & Health Insurance Guaranty Association; Oklahoma Life & Health Insurance Guaranty Association; the Kentucky Life & Health Insurance Guaranty Association; and the Arkansas Life & Health Insurance Guaranty Association

## **CERTIFICATE OF SERVICE**

     I hereby certify that on January 26, 2018, the foregoing Response to PNC Bank, N.A. and National City Bank's Statement Regarding Rule 16 Conference was filed electronically with the Clerk of Court and served by operation of the Court's electronic filing system upon all counsel of record in this case participating in Electronic Case Filing.

                                             *s/ Daniel M. Reilly*
                                             Daniel M. Reilly
                                             (Admitted *Pro Hac Vice)*
                                             Attorney for Plaintiffs