UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JO ANN HOWARD & ASSOCIATES, P.C., et al., | ) ) ) | |
| Plaintiff(s), | ) ) | |
| v. | ) ) | No. 4:09CV01252 ERW |
| J. DOUGLAS CASSITY, et al., | ) ) ) ) | |
| Defendant(s). | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiffs' Motion for Protective Order [2556], Defendants PNC Bank, N.A. and National City Bank, N.A.'s Motion for Protective Order [2566], Defendants PNC Bank, N.A. and National City Bank, N.A.'s Motion for Protective Order as to Plaintiffs' Second Post-Remand Set of Discovery Requests [2580], and Plaintiff SDR's Motion to Compel Production of Documents [2582].

**I.  BACKGROUND**

This litigation began on August 6, 2009, when Plaintiffs[1] filed a complaint against more than forty defendants, including National City Bank, N.A. and PNC Bank N.A ("Defendants").[2] After a stay was imposed on July 11, 2011,[3] while a corresponding criminal case progressed, the

---

[1] Plaintiffs consist of the Special Deputy Receiver, Jo Ann Howard and Associates, P.C., for National Prearranged Services, Inc., Lincoln Memorial Life Insurance Company, and Memorial Service Life Insurance Company, and the National Organization of Life and Health Guaranty Associations, and the individual state life and health insurance guaranty associations of Arkansas, Illinois, Kansas, Kentucky, Missouri, Oklahoma, and Texas.

[2] PNC Bank, N.A. is the successor-in-interest to National City Bank, N.A. and was not included in the first complaint, but was added at a later date.

[3] All discovery for criminal defendants was stayed while trustee defendants and Plaintiffs were permitted to conduct limited fact discovery during the pendency of the stay.

litigation proceeded on August 22, 2013. A jury trial began on February 2, 2015, and concluded in a jury verdict for Plaintiffs for $355,500,000 in compensatory damages and $35,550,000 in punitive damages. Plaintiffs and Defendants appealed the Court's rulings to the Eighth Circuit Court of Appeals, which remanded the case back to this Court. Currently pending before the Court are three Motions for Protective Orders and a Motion to Compel; all concern the scope of the Eighth Circuit's remand and it's affect on the breadth of discovery on remand.

## II. STANDARD

Rule 26(c)(1) of the Federal Rules of Civil Procedure authorizes a court to issue orders concerning discovery to protect parties from "annoyance, embarrassment, oppression, or undue burden or expense" on a showing of good cause. "Although the federal rules permit liberal discovery, it 'is [to be] provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes.'" *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)). "Because of liberal discovery and the potential for abuse, the federal rules 'confer[ ] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required.'" *Id*. (quoting *Seattle Times*, 467 U.S. at 36). The moving party has the burden to demonstrate good cause for issuance of the protective order and his claim of harm is based on more than stereotypical and conclusory statements. *Id*. at 926 (citing *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973)).

## III. DISCUSSION

Plaintiffs filed a Motion for Protective Order and a Motion to Compel and Defendants filed two Motions for Protective Orders. The focus of the arguments in all of these motions is what the scope of discovery should be on remand.

2

A.   *Eighth Circuit Opinion*

In their opinion to remand this matter, the Eighth Circuit stated as follows:

PNC argues that Appellees' claims arise under trust law rather than tort law, and that Appellees are thus entitled only to the damages afforded under trust law. We conclude that PNC is correct. Under trust law, a trustee owes fiduciary duties to trust beneficiaries. Restatement (Third) of Trusts § 70(b)( (2007). If a trustee violates any of these duties, then it is liable to the beneficiaries for breach of trust. *Witmer v. Blair*, 588 S.W.2d 222, 224 (Mo. Ct. App. 1979); Restatement (Third) of Trusts § 93 (2012). The claim is for breach of trust regardless of whether the breach is "wrongful and fraudulent or done through negligence or aris[es] through mere oversight and forgetfulness." *Covey v. Pierce*, 82 S.W.2d 592, 598 (Mo. Ct. App. 1935) (per curiam). Tort claims are not categorically disallowed against trustees. Both third parties and beneficiaries can bring a tort claim against a trustee for a tort committed in the course of the administration of the trust, but the trustee's alleged tort must arise from a violation of a duty that is not imposed by trust law. *See* Restatement (Second) of Trusts § 264 & cmt. a, illus. 1-2 (1959); 4 Scott & Ascher on Trusts § 26.3 (5th ed. 2006).

Appellees allege that Allegiant, as trustee, was required to control trust assets, protect trust assets, and keep adequate records of trust funds. Trust law, not tort law, imposed these duties on Allegiant. Restatement (Third) of Trusts §§ 76, 83, 84 (2007). If Allegiant breached any of these duties, then PNC is liable to only trust beneficiaries and for only those damages provided for under trust law. *See* Restatement (Third) of Trusts § 205 (1959).

Trust law provides that if a trustee commits a breach of trust, "he is chargeable with (a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or (b) any profit made by him through the breach of trust; or (c) any profit which would have accrued to the trust estate if there had been no breach of trust." *Estate of Luyties v. Scudder*, 432 S.W.2d 210, 216 (Mo. 1968) (quoting Restatement (Second) of Trusts § 205). Therefore, to the extent PNC is liable to Appellees for breach of Allegiant's duties under trust law, the appropriate measure of damages is set forth in § 205. As Allegiant was a trustee over NPS trusts in Missouri from 1998 to 2004, Appellees can recover for losses to the trusts in Missouri caused by Allegiant's breaches during this time. Damages to the Missouri trusts after Allegiant's trusteeship or outside of the Missouri trusts are not recoverable from PNC as Allegiant's successor.

*Jo Ann Howard & Assoc., P.C. v. Cassity*, 868 F.3d 637, 645-46 (8th Cir. 2017).

B.   *Disclosure of Witnesses*

Before addressing the merits of the motions, the Court would like to address an issue

3

raised throughout the briefs and oral arguments on these motions. There was a suggestion the parties are not disclosing witnesses as required by the Federal Rules of Civil Procedure. The Court expects all attorneys to abide by the Federal Rules, Local Rules and the Rules of Professional Conduct throughout the entirety of this case. The Federal Rules require disclosure of the name and contact information of any witness that may have discoverable information the disclosing party may use to support its claims or defenses. The disclosure must also include the subject matter of the information the witness may have. Fed. R. Civ. Pro. 26(a)(1)(A)(i). The parties are not required to disclose what witnesses the parties expect to present at trial until thirty days before the trial begins. Fed. R. Civ. Pro. 26(a)(3)(B). The Court expects the attorneys to abide by these rules.

  C. *Plaintiffs' Motion for Protective Order, ECF No. 2556*

In their Motion, Plaintiffs ask the Court for an order protecting them from having to respond to Defendants' Third Set of Requests for Production to Plaintiffs and Third Set of Interrogatories to Plaintiffs. Plaintiffs assert these requests ask for discovery about conduct occurring after Allegiant resigned as trustee, which is irrelevant to determining damages under the Eighth Circuit's remand order. Further, Plaintiffs argue Defendants are attempting to resurrect the tort calculation of damages which the Eighth Circuit rejected, and are attempting to by-pass the temporal restrictions for which Defendants asked from the Eighth Circuit on appeal. In response, Defendants contend the information they are requesting from outside of the Allegiant time period is necessary to determine the losses during Allegiant's tenure. Defendants argue the discovery is relevant to determine the extent of damages recoverable by the state guaranty associations, the extent to which any losses to the Missouri trusts are recoverable by the SDR and any potential damages set-offs. Finally, Defendants assert Plaintiffs misstate the Eighth

Circuit's order and seek to impose artificial time limits.

In their third set of discovery requests, which includes a request for production of documents and interrogatories, Defendants ask for the following: (1) an updated copy of the NPS Contract Tracking System database and the Insware database; (2) documents showing payments by Plaintiffs for any Missouri policies; (3) documents and communications[4] relating to any Assumption Reinsurance Agreements or payments made to or to be made pursuant to any of these agreements; (4) documents and communications relating to any payments made or to be made to Plaintiffs by any reinsurer of policies issued by Lincoln or Memorial; (5) documents and communications relating to any restitution payments or obligations for *United States v. Sutton et al.*, No. 4:09CR00509 JCH; (6) documents and communications relating to any agreement or understanding among Plaintiffs about the distribution of proceeds recovered in this action; (7) the policy number, the death benefit, any amount owed under an Assumption Reinsurance Agreement, if the policy was fully paid, if the policy lapsed, and the amount deposited into the Missouri trust for the Policy for every Missouri policy owned by the Missouri pre-need trusts during Allegiant's tenure; (8) the total amount paid by the SDR to each state guaranty association; and (9) all unpaid claims held by creditors of NPS other than the state guaranty associations.

> Federal Rule of Civil Procedure 26(b)(1) states the scope of discovery is as follows:
>
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The discovery requested by Defendants is relevant, nonprivileged, proportional to the needs of

---

[4] The Court uses the terms "documents" and "communications" as defined by the parties in their discovery requests.

the case, and not overly burdensome. The central issue in this case, on remand, is determining the amount of damages, if any, owed to the trusts. Defendants' discovery requests are all relevant to determining damages. The damages measure to be applied in this matter, according to the Eighth Circuit, is the Restatement (Second) of Trusts § 205, which states damages may be:

> (a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or (b) any profit made by him through the breach of trust; or (c) any profit which would have accrued to the trust estate if there had been no breach of trust.

Under this provision, Plaintiffs may recover damages to make the trusts whole; they may not recover damages that go beyond making the trust whole nor can they double recover. The discovery requests are necessary to determine what damages Plaintiffs have already recovered, if any.

Plaintiffs argue Defendants' discovery requests violate the collateral source rule which prevents a tortfeasor from attempting to introduce evidence showing a plaintiff's damages will be covered by another source, such as insurance. *Roberts v. BJC Health Sys.*, 391 S.W.3d 433, 439 (Mo. 2013). The Court will be applying trust law in this matter; therefore, the collateral source rule, which applies only to tortfeasors, is not applicable.

Plaintiffs also argue the discovery requested is for time periods outside of the temporal limits imposed by the Eighth Circuit. The Eighth Circuit stated Plaintiffs may only recover damages for the Allegiant time period. However, the discovery requested, although it is for information after the Allegiant tenure, is relevant to determining what damages occurred during the Allegiant tenure. The Eighth Circuit imposed temporal limitations on damages, not on discovery.

Further, Plaintiffs already agreed to provide some of the requested discovery at the Rule 16 Conference. Plaintiffs' counsel stated, "Two things, both of which we will produce promptly. The updated payments information . . . And then the second issue is information concerning an

6

assumption agreement . . . We will turn that agreement over . . . And we will make witnesses available to answer questions on – in both aspects of that." ECF No. 2547, pg. 17. Thus, for all of these reasons, the Court will deny Plaintiffs' Motion for Protective Order. Plaintiffs shall comply with the discovery requests within twenty days of this order.

    D.    *Defendants' Motion for Protective Order, ECF No. 2566*

In their Motion, Defendants ask the Court for an order protecting them from producing a witness in response to a 30(b)(6) Notice from Plaintiffs and from producing information requested in Plaintiffs' First Post-Remand Set of Requests for Production. Defendants assert Plaintiffs' discovery requests are predicated on a meritless damages theory that is contrary to the undisputed evidence. Further, Defendants argue the discovery is overly burdensome and duplicative of prior discovery. In response, Plaintiffs contend the requested discovery is relevant and not duplicative, because Defendants did not conduct a full search when it was requested prior to trial. Plaintiffs also argue information about the merger between Allegiant and National City and National City and PNC is relevant, because Defendants have put their knowledge of the problems in the trusts at issue through their assertion of the *in pari delicto* defense and authorization defense. Finally, Plaintiffs state information about the mergers is relevant, because the Eighth Circuit opinion and trust law allow Plaintiffs to pursue profits made by Allegiant through its breaches of trusts.

Plaintiffs are requesting a 30(b)(6) witness be produced by National City to be deposed on the following topics[5]: (1) National City's investigation, analysis, due diligence, and valuation of Allegiant as a possible acquisition; (2) National City's communications with PNC Bank about

---

[5] The parties use "topic" to describe the subject matters requested in the 30(b)(6) notice. The Court uses the same language to avoid confusion.

Allegiant's trust department, NPS, NPS Pre-Need Trusts, or the Cassitys;[6] (3) the profit made by Allegiant in the merger; (4) National City's communications with Allegiant regarding Allegiant's trust department, NPS, NPS Pre-Need Trusts, or the Cassitys; (5) communications from Herbert Morisse to any financial institution about the pre-need trusts from January 1, 2004, to May 15, 2004; and (6) National City or Allegiant's communications with any beneficiaries of any trust administered by Allegiant between the date the merger was announced and July 31, 2004.

Plaintiffs also issued ten requests for production that are at issue in this motion: (1) documents and communications about PNC's due diligence or valuation of National City; (2) documents or communications created or received by National City regarding Allegiant's trust department, NPS, the pre-need trusts, or the Cassitys; (3) documents or communications about National City's investigation, analysis, due diligence, and valuation of Allegiant; (4) documents of the policies and procedures for PNC and National City's trust departments between 1998 and 2004; (5) job descriptions, evaluations, or memos of Albert Kantra, Robert Hipskind, Thomas Jurmanovich, and Jan Sackley concerning National City's due diligence of Allegiant; (6) documents showing the start date, job description, evaluations, and reasons for termination of employment for Herbert Morisse and Sean Hayes; (7) communications between January 1, 2004, and June 1, 2004, between Allegiant and any financial institution about Allegiant's trust department, NPS, the pre-need trusts, or the Cassitys; (8) communications between Allegiant or National City and any beneficiary or settlor of any trust administered by Allegiant sent between November 1, 2003, and July 30, 2004; (9) all electronic or hard-calendars kept by Herbert Morisse, Jan Sackley, Sean Hayes, Robert Hipskind, Thomas Jurmanovich, or Albert Kantra

---

[6] When the Court refers to the Cassitys it includes any Cassity Consortium entity or any member of the Cassity family.

from November 1, 2003, to June 30, 2004; and (10) communications between National City and any insurance company related to the merger of Allegiant into National City.

To understand the parties' arguments, the history of discovery concerning the due diligence of National City before the merger with Allegiant is necessary. Plaintiffs originally propounded discovery on this topic to Defendants in November 2011. After extensive conferrals on the topic, Plaintiffs gave Defendants a list of eleven custodians whose documents the Plaintiffs wanted searched. Defendants identified an additional eight custodians who might also have documents related to the pre-need trusts. These documents were produced in April 2014. In September 2014, Plaintiffs challenged Defendants' privilege log and after conducting an *in camera* review, the Court ordered Defendants to produce additional documents. Plaintiffs requested additional depositions in light of the disclosure and the Court allowed eight additional depositions to be taken, for a total of nineteen depositions related to the merger. Throughout the discovery process, Plaintiffs took three 30(b)(6) corporate representative depositions of National City, including an entire day spent deposing a witness on National City's due diligence review.

As noted, Plaintiffs have conducted extensive discovery into National City's due diligence review. Therefore, any additional discovery will be an additional burden on Defendants. However, some of the information requested is relevant to several pending issues in this matter. For example, discovery into National City's due diligence may uncover additional breaches of trust, can help determine what Allegiant knew when it transferred the trusts to Bremen, and what damages occurred due to any breaches of trust. The focus of the Court's decision will be on the proportionality of the discovery requests. Rule 26 requires the Court to balance the importance of the discovery with the burden and expense in producing the discovery.

The Court will permit an additional 30(b)(6) deposition, with limitations. Topic 1 will be

9

permitted but will be limited to a maximum four hours of testimony. The reason for this limitation is Plaintiffs have already deposed multiple 30(b)(6) witnesses on this topic. Plaintiffs' prior notice on this subject, before the trial, asked for "all documents, communications, and meetings relating to National City's due diligence and review of Allegiant's trust department and/or the NPS Pre-Need trusts in connection with the 2004 merger of Allegiant with and into National City." Plaintiffs deposed a witness on this topic for approximately six hours. Thus, the burden on Defendants in preparing and producing a witness on such a broad topic again is high.

Topic 2 will be permitted with limitations. This topic concerns communications between National City and PNC Bank concerning Allegiant's trust department, NPS, the Pre-Need Trusts or the Cassitys. PNC merged with National City four years after Allegiant transferred the trusts to Bremen. The burden on Defendants to produce testimony on these broad subjects is high. Therefore, the Court will limit this topic to communications between National City and PNC Bank concerning the potential liability of National City for the pre-need trusts.

Topics 3, 4 and 5 will be permitted. Topic 3 requests testimony on the profit made by Allegiant in the merger with National City. Throughout the briefs and oral argument on these motions, Plaintiffs and Defendants argued extensively about the appropriate measure of damages for breaches of trusts. The Court will not determine at this time what damages measure will be applied. It is premature at this stage of the case to make that decision. Therefore, the Court will permit discovery into the various potential damages measures including any alleged profit gained by Allegiant through its merger with National City. Topic 4, requesting testimony on communications with Allegiant related to Allegiant's trust department, NPS, the pre-need trusts, or the Cassitys will be permitted. Defendants will not be expected to prepare a witness on communications that have already been disclosed and covered in the first round of 30(b)(6)

10

depositions, unless newly discovered information suggests the need for additional testimony. Topic 5 will be permitted in its entirety.

The Court will exclude Topic 6. This topic concerns communications between National City or Allegiant and any beneficiaries of any trust administered by Allegiant between the date the merger was announced and July 31, 2004. This request is overbroad and not relevant. National City and Allegiant's communications with other beneficiaries has no impact on what breaches of trusts occurred in the NPS trusts and the damages that were caused from those breaches.

As for the Requests for Production, Request 1 will be permitted, but limited. This request, as written, is extremely burdensome. Therefore, the Court will limit the request to documents of PNC's due diligence and valuation of National City that discuss the potential liability of National for the pre-need trusts. Requests 2 and 7 will be permitted for communications created or received by National City regarding NPS, the pre-need trusts, or the Cassitys. Communications regarding the entirety of Allegiant's trust department is too broad and overly burdensome.

Request 3 will be permitted in its entirety. This information is highly relevant. The Court will strike Request 4. The policies, procedures, and guidelines of National City or PNC are not relevant in determining if Allegiant's conduct was a breach of trust. The standard of care, as outlined in the Restatement of Trusts (Second) § 174, is the care and skill a man of ordinary prudence would exercise in dealing with his own property.

The Court will permit Requests for Production 5 and 6 in their entirety. They are relevant and not overly burdensome. Request 8 will be limited. This request asks for communications between Allegiant or National City and any beneficiary or settlor of *any* trust administered by Allegiant. This request is entirely too broad. The Court will order production of communications

between Allegiant or National City and any beneficiary of the pre-need trusts. How Allegiant communicated with other trust beneficiaries and settlors has no bearing on whether it violated its duties in regards to the pre-need trusts. Request 9 was withdrawn by the Plaintiffs during oral argument. Finally, Request 10 will be permitted, with limitation. Discovery on communications between National City and any insurance company related to the merger with Allegiant is overbroad. The Court will limit it to communications with any insurance company about NPS, the pre-need trusts, or the Cassitys.

For the above stated reasons, the Court will grant, in part, and deny, in part, Defendants' request for a protective order.

D.  *Defendants' Motion for Protective Order, ECF No. 2580*

In their second Motion, Defendants ask the Court for an order protecting them from responding to Plaintiffs' Second Post-Remand Set of Discovery Requests. These requests concern National City's acquisition of Allegiant and the details of a loss reserve, if any, PNC booked related to potential liability for the pre-need trusts. Defendants assert the information requested is irrelevant and duplicative to prior discovery requests. Additionally, Defendants argue any information about a potential loss reserve is protected by the attorney-client privilege and work product doctrine. Plaintiffs state the limited information requested is relevant and discoverable.

Plaintiffs' Second Post-Remand Set of Discovery Requests at issue in this motion are: (1) documents or communications between National City and Allegiant about any potential liabilities of Allegiant from the pre-need trusts; (2) documents or communications between PNC and National City about any potential liabilities of National City from the pre-need trusts; (3) identification of individuals that represented, advised, or acted on behalf of Allegiant during the

12

merger with National City; (4) identification of individuals that represented, advised, or acted on behalf of National City during the merger with Allegiant; (5) identification of individuals that represented, advised, or acted on behalf of National City during its merger with PNC; (6) identification of individuals that represented, advised, or acted on behalf of PNC during its merger with National City; (7) the date National City and PNC became aware Lincoln, Memorial and NPS were placed into receivership; (8) identification of the date a loss reserve was booked, individuals with knowledge of the reserve, and documents relating to the booking of the reserve; and (9) admission PNC booked a loss reserve for liability of the pre-need trusts.

    For the same reasons the Court will limit discovery and grant, in part, Defendants' first motion for a protective order, the Court will also limit the discovery requested by Plaintiffs, at issue, in this motion. The Court will permit, in its entirety, Requests 1, 2 and 7, documents and communications between National City and Allegiant about any potential liabilities of Allegiant for the pre-need trusts, documents between National City and PNC about potential liabilities of National City for the pre-need trusts, and the date National City and PNC became aware of the receivership proceedings. This information is relevant to determining damages and identification of the date National City and PNC learned of the receivership proceedings is not burdensome. Requests 3 and 4, asking for identification of individuals from Allegiant and National City involved with the merger, will be permitted but limited to any individuals who have not been previously disclosed and who may have knowledge of the pre-need trusts. This limits the burden on Defendants and reduces the likelihood of duplicative discovery. The Court will issue a protective order as to Requests 5, and 6. These requests concern PNC and National City's merger, which, as stated previously, is not relevant except to the extent liability of National City for the pre-need trusts was considered by PNC at the time of the merger between National City

13

and PNC. This information must be disclosed as ordered above. Concerning other elements of Request 5 and 6, the burden of the requests outweighs its likely benefit.

Requests 8 and 9 concern whether a loss reserve was created for liabilities related to the pre-need trusts and any details if there is such a reserve. Defendants assert this information is protected by attorney-client privilege and the work product doctrine. The Eighth Circuit has held individual reserve figures are protected by the work product doctrine, because they reveal the mental impressions, thoughts and conclusions of an attorney evaluating the claim. *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir. 1987). General information about a company's loss reserves is not protected. *Id*. at 403. However, the Court does not need to determine if the information requested by Plaintiffs is protected, because the information is not relevant. Defendants' internal assessment as to whether there will be liability exposure has no impact on whether there is actually liability. *See Sundance Cruises Corp. v. Am. Bureau of Shipping*, No. 87 Civ. 0819 (WK), 1992 WL 75097 at *1 (S.D. N.Y. Mar. 31, 1992). There is no reasonable need for this information to determine if there were breaches of trusts and the damages that result from them. Thus, the Court will grant the protective order as to Requests 8 and 9. For these reasons, the Court will grant, in part, and deny, in part Defendants' Motion for Protective Order.

  E.  *Plaintiff SDR's Motion to Compel, ECF No. 2582*

In its Motion to Compel, Plaintiff SDR asks the Court to order Defendants to supplement their prior incomplete discovery responses. Plaintiff SDR asserts Defendants only searched for documents by custodians identified by Plaintiffs; thus, according to Plaintiff SDR, the search is necessarily incomplete. Plaintiff SDR argues this discovery is relevant, because Defendants have stated they are going to bring live witnesses to trial to testify about National City's due diligence. Defendants contend Plaintiffs fully probed National City's due diligence of Allegiant in prior

discovery. Defendants also state Plaintiffs demand for discovery related to the merger of PNC and National City is irrelevant and burdensome.

Plaintiffs ask Defendants to supplement the following discovery requests: (1) documents relating to Defendants' knowledge, investigation and inquiry into Lincoln and Memorial, assets and liabilities, and the valuation of those assets and liabilities, held by the pre-need trusts; (2) documents related to the merger of National City and PNC that concern the pre-need trusts or successor liability of the pre-need trusts; (3) documents and communications between National City and PNC prior to the merger of the two banks that relate to the pre-need trusts or the Cassitys; and (4) documents and communications related to PNC's investigation, analysis, and review of National City as a possible acquisition that relate to the pre-need trusts or the Cassitys.

The discovery at issue in this motion is very similar to the discovery at issue in Defendants' first motion for protective order. For the same reasons as discussed previously, Requests 2, 3, and 4 will be limited to communications between National City and PNC which concern any potential liability of National City for the pre-need trusts.

For Request 1, Plaintiffs ask Defendants to search for records generated and maintained by an additional thirteen individuals. Besides listing a position or role for each individual, no additional information is provided for the Court to determine if the burden of requiring Defendants to conduct additional searches is greater or less than the likely benefit of the discovery. Request 1is relevant to the issues in this case, and although burdensome to Defendants, is important to Plaintiffs in establishing their case. The Court will permit discovery for the custodians who were involved in the merger and were involved in any aspect of the due diligence for the pre-need trusts or transferring the trusts to Bremen Bank.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Protective Order [2556] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' PNC Bank, N.A. and National City Bank, N.A.'s Motion for Protective Order [2566]is **GRANTED, in part,** and **DENIED, in part**.

**IT IS FURTHER ORDERED** that Defendants' PNC Bank, N.A. and National City Bank, N.A.'s Motion for Protective Order as to Plaintiffs' Second Post-Remand Set of Discovery Requests [2580] is **GRANTED, in part,** and **DENIED, in part**.

**IT IS FURTHER ORDERED** that Plaintiff SDR's Motion to Compel Production of Documents [2582] is **GRANTED, in part,** and **DENIED, in part**.

Dated this 8th Day of June, 2018.

*E. Richard Webber*

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE