**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JO ANN HOWARD AND ASSOCIATES, P.C., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:09-CV-01252 ERW |
| J. DOUGLAS CASSITY, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Amended Bill of Costs and Plaintiffs' Amended Motion for Award of Attorneys' Fees. ECF Nos. 2989, 2991. The motions are fully briefed and ready for disposition.

## I. BACKGROUND

This cause of action commenced on August 6, 2009, alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, violations of the Lanham Act, 15 U.S.C. §§ 1051-1141n, state law claims concerning intentional and negligent fraudulent misrepresentations, negligence and gross negligence, breach of fiduciary duties, and violations of the Texas Receivership Act, Tex. Ins. Code §§ 443.202-443.205. In March 2015, the matter proceeded to a jury trial on Plaintiffs'[1] claims against the remaining Defendants PNC Bank, N.A. ("PNC") and National City Bank, N.A. ("NCB") (collectively "PNC"). The jury determined

---

[1] Plaintiffs consist of the Special Deputy Receiver, Jo Ann Howard and Associates, P.C., for National Prearranged Services, Inc., Lincoln Memorial Life Insurance Company, and Memorial Service Life Insurance Company, and the National Organization of Life and Health Guaranty Associations, and the individual state life and health insurance guaranty associations of Arkansas, Illinois, Kansas, Kentucky, Missouri, Oklahoma, and Texas.

PNC was liable to Plaintiffs under negligence and breach of fiduciary duty theories in the amount of $355.5 million in compensatory damages and $35,550,000 in punitive damages.

Both Plaintiffs and PNC appealed the Court's decisions. The Eighth Circuit affirmed the judgment in part, reversed in part, and remanded for further proceedings. *Jo Ann Howard & Assoc., P.C. v. Cassity*, 868 F.3d 637 (8th Cir. 2017). The Eighth Circuit concluded Plaintiffs' claims arose under trust law in equity rather than tort law and held the claims were properly tried to the Court. *Id.* at 651. This Court then held a bench trial which commenced on November 28, 2018 and concluded on January 11, 2019. On July 3, 2019, the Court found PNC liable for breach of fiduciary duty by a trustee. ECF No. 2953 pp. 265-278. That same date the Court entered judgment in favor of Plaintiffs and against PNC in the amount of $102,135,293.07. ECF No. 2954. The Court issued an Amended Judgment on December 4, 2019 entering a total amount of damages of $99,497,290.24. ECF No. 3035.

After obtaining judgment in their favor, Plaintiffs filed a Bill of Costs and a Motion for Award of Attorneys' Fees. ECF Nos. 2962, 2965. PNC moved to defer ruling on Plaintiffs' motions for costs and attorneys' fees pending the outcome of its appeal to the Eighth Circuit Court of Appeals. ECF No. 2973. On August 19, 2019, the Court denied PNC's motion to defer ruling and issued a Scheduling Order setting forth a discovery and briefing schedule related to Plaintiffs' Bill of Costs and Motion for Award of Attorneys' Fees. ECF No. 2985. The Court further announced it would award attorneys' fees and costs to the Plaintiffs, "but only after August 17, 2017, the date of the Eighth Circuit's remand to this Court." ECF No. 2985 p. 2.

Thereafter, Plaintiffs filed an Amended Bill of Costs, seeking a total of $3,108,810.73 in taxable costs, and Amended Motion for Award of Attorneys' Fees, requesting an award of $13,206,942 as reasonable attorneys' fees, including fees incurred pre-remand. ECF Nos. 2989,

2991.  PNC opposes the amounts requested by Plaintiffs and further argues the Court lacks

discretion to award attorneys' fees in equity.  PNC also filed two separate motions to strike

Plaintiffs' Amended Motion for Award of Attorneys' Fees.  ECF Nos. 2996, 3001.

## II. DISCUSSION

### A. Bill of Costs

Rule 54(d) of the Federal Rules of Civil Procedure provides "costs—other than attorney's

fees—should be allowed to the prevailing party."  *See also In re Derailment Cases*, 417 F.3d

840, 844 (8th Cir.2005) ("A prevailing party is presumptively entitled to recover all of its

costs.").  A district court has broad discretion over awarding costs to a prevailing party.  *Blakley*

*v. Schlumberger Technology Corp.*, 648 F.3d 921, 930 (8th Cir. 2011) (citation omitted).  Before

any bill of costs is taxed, the party claiming any item of cost or disbursement must attach an

affidavit, having knowledge of the facts, that such item is correct and has been necessarily

incurred in the case and that services for which fees have been charged were actually and

necessarily preformed.  28 U.S.C. § 1924.  Pursuant to 28 U.S.C. § 1920, costs which may be

taxed include:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in
the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the
copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of [Title 28 U.S.C.];

(6) Compensation of court appointed experts, compensation of interpreters, and salaries,
fees, expenses, and costs of special interpretation services under section 1828 of [Title 28
U.S.C.].

28 U.S.C. § 1920(1)-(6).  The losing party bears the burden of overcoming the presumption the prevailing party is entitled to recover all costs permitted by § 1920.  *Stanley v. Cottrell, Inc.*, 784 F.3d 454, 464 (8th Cir. 2015).

The Court may not award costs other than those authorized by § 1920, because this section "imposes rigid controls on cost-shifting in federal courts[.]" *Brisco–Wade v. Carnahan*, 297 F.3d 781, 782 (8th Cir. 2002) (internal citations omitted).  However, upon objection by the opposing party as to authorized costs, the Court may exercise its discretion to grant or deny costs.  *Pershern v. Fiatallis N. Am., Inc.*, 834 F.2d 136, 140 (8th Cir. 1987).

### 1. § 1920(2) – Printed or Electronically Recorded Transcripts

Plaintiffs request $118,169.43 in fees for printed or electronically recorded transcripts necessarily obtained for use in the case.  The total fees are comprised of $72,218.04 for costs of deposition transcripts and videos for post-remand deponents; $3,909.15 for costs of post-remand hearing transcripts; and $42,042.24 for costs of trial transcripts used in the second trial.  In response, PNC states they do not object to Plaintiffs' requested fees for post-remand transcripts.  Thus, the Court will tax costs in favor of Plaintiffs in the amount of $118,169.43 under § 1920(2).

### 2. § 1920(3)

#### a. Witnesses

As fees for witnesses under § 1920(3), Plaintiffs seek $2,798,832.86 for witness fees and contract employee fees.  Specifically, Plaintiffs request $54.96 for post-remand witness Herbert Morisse's trial attendance and mileage fees; $3,380.35 for post-remand witness Tony Lumpkin's subsistence fees; $2,744,288.41 for post-remand expert witness fees; and $51,109.14 for post-remand Special Deputy Receiver ("SDR") contract employee fees.  PNC does not object to fees

and disbursements for post-remand witnesses Herbert Morisse and Tony Lumpkin in the total amount of $3,435.43. However, PNC argues post-remand expert witness fees and contract employee fees are not taxable as costs under § 1920(3). Plaintiffs, on the other hand, contend the expert witness and contract employee fees are taxable under the Missouri Uniform Trust Code ("MUTC"), Mo. Rev. Stat. § 456.10-1004, and the Court's inherent equitable power.

The MUTC provides, "[i]n a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." Mo. Rev. Stat. § 456.10-1004. Plaintiffs argue the costs of post-remand expert fees and post-remand SDR contract employee fees, while not covered under § 1920, are properly awarded under the MUTC as "costs and expenses." PNC claims neither the MUTC nor equitable principles can expand the categories of costs that are taxable in federal court beyond those listed in § 1920.

The Court finds federal law governs the award of costs and expenses in this case. *See Chaparral Res., Inc. v. Monsanto Co.,* 849 F.2d 1286, 1292 (10th Cir. 1988) ("Because federal procedural law governs the taxation of costs, any discretion afforded the trial court would arise under federal law, namely Fed. R. Civ. P. 54(d), and not under state law. That discretion is constrained by 28 U.S.C. §§ 1821 and 1920."). "[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." *Crawford Fitting Co. v. J. T. Gibbons, Inc.,* 482 U.S. 437, 445 (1987).

While Plaintiffs argue the MUTC provides for an award of expenses not limited by § 1821 and § 1920, the Court notes Plaintiffs motion unambiguously requests the Clerk tax "fees

for witnesses and other itemized *costs*" under Rule 54(d) and 28 U.S.C §§ 1920 and 1821. Further, the MUTC is discretionary and "not tantamount to an express statutory mandate" sufficient to override the limitations set forth in § 1821.[2] *Chaparral Resources*, 849 F.2d at 1292. Contrary to Plaintiffs' position, the Court does not find the itemized costs for expert witness fees and contract employee fees totaling nearly $3M to be a procedural technicality. To the extent Plaintiffs sought reimbursement of these fees as expenses under the MUTC, they should have requested those fees in an appropriate motion. *See* Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and related nontaxable expenses must be made by motion [for attorney's fees]."). The Court will therefore deny Plaintiffs' motion for the costs of post-remand expert witness fees and post-remand contract employee fees set forth in its Bill of Costs.

### b. E-Discovery Costs

Plaintiffs also request e-discovery fees. However, PNC argues these e-discovery fees are outside the Court's post-remand parameters for an award of costs. Plaintiffs respond e-discovery costs incurred before August 17, 2017 were necessary for the successful development and presentation of Plaintiffs' breach of trust claim in the second trial. PNC does not argue these

---

[2] Plaintiffs' reliance on *Garcia v Wal-Mart Stores, Inc.* and similar cases is misplaced. 209 F.3d 1170 (10th Cir. 2000). The statute relied upon by the Tenth Circuit and Colorado district courts was non-discretionary and thus not preempted by federal law. *Id.* at 1178-79; *see also Squires ex rel. Squires v. Breckenridge Outdoor Educ. Ctr.*, No. 10-CV-00309-CBS-BNB, 2013 WL 1231557, at *6 (D. Colo. Mar. 27, 2013) (finding the Colorado statute mandating the court must award actual costs incurred after an offer of settlement is rejected was non-discretionary other than determining the reasonableness of costs). Further, other courts awarding witness fees did so under applicable statutes awarding costs and attorney's fees, which statutory authorization is not present in this case. *See, e.g., SapaNajin v. Gunter*, 857 F.2d 463, 465 (8th Cir. 1988) (finding reasonable expenses of litigation incurred by counsel on the prevailing side could be awarded under 42 U.S.C. § 1988 for reasonable expenses of representation); *Bright v. Land O'Lakes, Inc.*, 844 F.2d 436, 444 (7th Cir. 1988) (holding Wisconsin state statute authorizing fee shifting of actual costs to a prevailing plaintiff did not preclude an award of expert witness fees).

costs are not taxable under § 1920 or that the Court's award of costs for e-discovery in the amount of $309,977.87 to Plaintiffs after the first trial was improper. ECF No. 2509 p. 18. However, the Court agrees the requested costs for e-discovery are outside the post-remand parameters set forth in the Court's Scheduling Order of August 19, 2019. The amount requested is the exact amount taxed as costs prior to remand. While Plaintiffs contend the e-discovery management which occurred before the August 17, 2017 deadline was necessary for the successful development and presentation of Plaintiffs' breach of trust claim in Trial 2, Plaintiffs make no effort to parse out the costs relevant to the second trial. Absent further information, the Court stands by the post-remand cut off date and will deny Plaintiffs' request for e-discovery costs.

### 3. § 1920(4) – Exemplification and Copying Costs

Last, Plaintiffs request fees for exemplification and the costs of making copies of materials necessarily obtained for use in the case in the amount of $17,559.99. PNC does not object to the Court awarding these costs. Therefore, an award of $17,559.99 for exemplification and copying costs shall be granted to Plaintiffs.

### 4. Conclusion

Based on the foregoing, the Court will grant in part and deny in part Plaintiffs' motion for Bill of Costs. The Court will award costs to Plaintiff in the amount of $139,164.73.

### B. Attorneys' Fees

An award of attorneys' fees in this case is governed by Missouri law. "Missouri follows the 'American Rule' that provides, absent statutory authorization or contractual agreement, each party bears the expense of his or her own attorney's fees, with few exceptions. *O'Riley v. U.S. Bank, N.A.,* 412 S.W.3d 400, 418 (Mo. Ct. App. 2013) (citation omitted). One of these few

exceptions to the American Rule is "special circumstances" justifying an award of attorney's fees. *Id*. (citations omitted). The special circumstances exception "is narrow and must be strictly applied." *Wells v. Farmers All. Mut. Ins. Co.,* No. 2:07CV00036 ERW, 2009 WL 2836502, at *11 (E.D. Mo. Aug. 28, 2009). "Special circumstances have been found in very limited fact situations, usually to award attorney's fees to a trust beneficiary who has successfully pursued litigation beneficial to the estate as a whole." *Grewell v. State Farm Mut. Auto. Ins. Co.,* 162 S.W.3d 503, 507 (Mo. Ct. App. 2005). Another exception is statutory authorization, such as that provided by Mo. Rev. Stat. 456.10-1004, which allows recovery of "attorney's fees, expenses and costs [a party] incurs in litigation involving the administration of a trust." *O'Riley*, 412 S.W.3d at 418.

"The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.,* 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The product of this calculation is "presumed to be the reasonable fee to which counsel is entitled" when the attorney has met his burden of showing the claimed rate and number of hours are reasonable. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986) (internal quotations and citation omitted). The "novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation" are reflected in this amount. *Id*. (internal quotations and citation omitted). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

Further, in determining the overall reasonableness of an award of attorneys' fees, the Court may adjust this "lodestar" when considering twelve factors. *Breeden v. Consumer*

*Adjustment Co.,* No. 4:18-CV-01944 JAR, 2019 WL 1518185, at *1 (E.D. Mo. Apr. 8, 2019)

(citing *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717–19 (5th Cir. 1974) (limited

by *Blanchard v. Bergeron*, 489 U.S. 87 (1989)). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3.

PNC argues an award of attorney's fees is improper. Specifically, PNC asserts the

MUTC does not apply because it took effect after Allegiant's tenure as trustee, and the Code

explicitly states it is not retroactive. PNC further claims the case does not fall within the special

circumstances exception to the American Rule.

The Court agrees the MUTC does not apply in this case. The Eighth Circuit so found in

its August 17, 2017 decision remanding the case for proceedings under laws of equity. *Jo Ann*

*Howard & Assocs., P.C. v. Cassity*, 868 F.3d 637, 646 n. 1 (8th Cir. 2017) ("The Missouri

Uniform Trust Code, which codified a trust-law measure of damages substantially similar to that

found in the Restatement (Second) of Trusts § 205, does not apply here, because it took effect

after Allegiant's tenure as trustee. *See* Mo. Rev. Stat. § 456.10-1002 (2005)."). The MUTC

states, "[a]n act done before January 1, 2005, is not affected by any provisions contained in

sections 46.1-101 to 456.11-1106." Mo. Rev. Stat. § 456.11-1106.1(5). The statute states **any**

provisions contained in the MUTC do not affect an act done before January 1, 2005, and the

record is clear Allegiant's tenure as trustee ended prior to the date the MUTC took effect.

Absent Missouri law to the contrary, the Court must interpret the statute using its plain language, that is the provisions of the MUTC do not apply to acts done before January 1, 2005.

However, the Court finds this case falls within the narrow exception for awarding attorneys' fees. Specifically, Missouri courts have applied an intentional misconduct exception to non-declaratory judgment actions when the party against whom the fees were awarded engaged in intentional conduct that was spiteful, fraudulent, or groundless. *Trs. of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 286 (Mo. 2019) (citations omitted). For instance, in *Barr v. Missouri State Department of Social Services,* the Missouri Court of Appeals found unusual or special circumstances where the Children's Division placed petitioner in the child abuse registry on an arbitrary, capricious, and unreasonable finding of abuse and/or neglect without a full and proper investigation. 565 S.W.3d 683, 691-92 (Mo. Ct. App. 2018). The Missouri Court of Appeals in *Barkho v. Ready* affirmed the trial court's finding of special circumstances to award attorney's fees in a case seeking specific performance of a contract where the defendant's "actions were reckless, willful, and malicious." 523 S.W.3d 37, 46 (Mo. Ct. App. 2017). In *Volk Const. Co. v. Wilmescherr Drusch Roofing Co.*, the Missouri Court of Appeals affirmed an award of attorney's fees under the special circumstances exception where the defendants engaged in intentional misconduct involving transfers with the intent to hinder, delay, and defraud creditors in violation of the Missouri Uniform Fraudulent Transfer Act. 58 S.W.3d 897, 901 (Mo. Ct. App. 2001).

While the court in *Trustees of Clayton Terrace Subdivision* noted the Supreme Court of Missouri had not allowed a finding of special circumstances based on intentional misconduct outside the context of declaratory judgment to permit an award of attorney's fees, it declined to determine whether the appellate courts erred in extending the declaratory judgment exception to

non-declaratory action. *Id.* Instead, the Supreme Court of Missouri assumed, without deciding, "that such a limited additional exception exists for intentional misconduct that is fraudulent, groundless or based solely on spite" but found no such circumstances in the case before it. *Id.*; *see also Robinson v. City of Sikeston*, No. 1:19CV41 RLW, 2020 WL 588606, at *13 (E.D. Mo. Feb. 6, 2020) (finding despite uncertainty at the Supreme Court of Missouri regarding attorneys' fees in non-declaratory actions, sufficient appellate authority existed to allow plaintiff's claim for attorneys' fees to go forward); *State ex rel. Vescovo v. Clay Cty.,* 589 S.W.3d 575, 590 (Mo. Ct. App. 2019) (noting the Supreme Court of Missouri recently observed that the special circumstance of "intentional misconduct" had not led it to award attorney's fees outside a declaratory judgment context but stopped short of determining if lower court cases awarding such fees for intentional misconduct in non-declaratory judgment actions was error).

The Court concludes ample authority exists under Missouri law for the proposition that intentional misconduct constitutes "special circumstances" justifying an award of attorney's fees in non-declaratory judgment actions. Further, the Court finds such intentional misconduct occurred in the present case such that an award of attorneys' fees is warranted.

In its Findings of Fact and Conclusions of Law, the Court explicitly found, "Allegiant repeatedly violated its duties by systematically failing to maintain control over the trust assets, protect the trust assets, and maintain the records required of preneed trustees under Chapter 436, the Trust Agreement, and the industry standard of care." ECF No. 2953 p. 268. Further, "Allegiant knowingly provided NPS and the Cassitys unfettered access to the trust funds." *Id.* Additionally, the Court found, "Mr. Morisse's drafting of documents resulted in complete abdication of Allegiant's duties permitting the Trusts to be looted. Defendants, as Allegiant's

successors, are liable to restore all losses the Trusts suffered during Allegiant's tenure as trustee." *Id.* at p. 287. In awarding punitive damages, the Court stated:

> The following conduct by Allegiant showed its reckless disregard for the beneficiaries: the protocol Allegiant intentionally put into place at the beginning of its trusteeship, under which it would not review any wire transfer requests before processing them; Allegiant's practice of accepting NPS's statement of death claim distribution amounts without ever understanding them or attempting to reconcile them to the amounts on deposit as required by Chapter 436, the custody agreement, and the delegation letter authored by Allegiant under which NPS could freely dictate distributions of assets. . . . Allegiant put its interests ahead of the beneficiaries. Mr. Morisse acted dishonestly in misrepresenting the state of the trust assets to Bremen, and acted with reckless indifference to the rights of the beneficiaries by instructing Bremen on how to administer the Trusts, such that the Cassity scheme would continue.

*Id.* at p. 293. Thus, the Court concluded, "Mr. Morisse's conduct was willful, wanton and malicious; he was acting with an evil motive and acting with reckless indifference, through the combination of knowingly giving false testimony throughout this bench trial and by transferring a worthless asset to Bremen Bank." *Id.* at p. 301.

This Court's findings of fact and conclusions of law ruling Allegiant's actions willful, malicious, and reckless supports a finding of special circumstances sufficient to award attorneys' fees to Plaintiffs. *See St. Louis Title, LLC v. Talent Plus Consultants, LLC,* 414 S.W.3d 24, 26 (Mo. Ct. App. 2013) (recognizing an exception to the American Rule in "special circumstances" where a party's conduct is "frivolous, without substantial legal grounds, reckless or punitive"). PNC argues many of the fees were incurred due to Plaintiffs' ten-year pursuit of failed tort theories. However, the Court finds the limitation to only post-remand attorneys' fees ensures Plaintiffs will not benefit from pursuing claims under a tort theory prior to the remand by the Eighth Circuit.

### 1. Pre-Remand Fees

At the outset the Court notes the Scheduling Order clearly stated the Court would only consider attorneys fees after the remand date. The order did not provide Plaintiffs with a second opportunity to seek pre-remand fees. However, in the Amended Motion for Award of Attorneys' Fees, Plaintiffs included pre-remand fees for select depositions taken before Trial 1, factual development for Trial 1, document management for Trial 1, and reimbursement of hold-back fees, totaling $4,101,635. While the Court understands Plaintiffs' assertiveness, the Court carefully considered the cut-off date for attorneys' fees in light of Plaintiffs' improper litigation of tort theories, a two-week jury trial, and an appeal, all over an eight-year span. Therefore, as stated in its Order of August 19, 2019, the Court will only consider those fees incurred after August 17, 2017.

### 2. Post-Remand Fees for Reilly Pozner

Courts have broad discretion in determining the reasonableness of attorneys' fees, and the Court's role as trial judge renders it an expert in determining a reasonable fee in light of the Court's familiarity with the issue and the character of the legal services rendered. *Am. Modern Home Ins. Co. v. Thomas*, No. 4:16 CV 215 CDP, 2019 WL 3976355, at *3 (E.D. Mo. Aug. 22, 2019) (citations omitted).

As stated above, to determine a reasonable attorney's fee, a court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). However, this does not end the inquiry. *Id.* at 434. "There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained." *Id.* (internal quotations omitted).

PNC argues the Court should not award fees for unsuccessful claims litigated by Plaintiffs. Where a plaintiff is deemed the prevailing party even though he succeeded on only some of his claims, the court addresses two questions. *Id.* "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.*

The Court finds in the second trial, Plaintiffs prevailed on their breach of trust claims pertaining to Missouri trust losses.[3] PNC contends Plaintiffs' limited success on various damages theories post-remand warrants a global reduction of fees. The Court disagrees. Under *Hensley*, upon which PNC relies, the Supreme Court explicitly referred to "distinctly different claims for relief that are based on different facts and legal theories" where "counsel's work on one claim will be unrelated to his work on another claim." *Id*. at 434-35. Here, the Plaintiffs sought damages based upon the same facts and theories set forth in the breach of trust claim. That the Court did not award the entire amount of damages requested does not detract from the ultimate result obtained, a finding of breach of trust and resulting damages, including punitive damages. Thus, the Court will not deduct from the amount of fees awarded any sums based on "limited success." *See Id.* at 435 (finding an attorney should recover attorney's fees for all hours reasonably spent to obtain a favorable result, and "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit"); *see also*

---

[3] The Eighth Circuit concluded Plaintiffs "brought a trust-law claim in equity that should have been tried to the court." *Jo Ann Howard & Assocs., P.C. v. Cassity*, 868 F.3d 637, 651 (8th Cir. 2017). Thus the Eighth Circuit remanded the case for trial on the breach of trust claim only. *Id.* at 651-52. Further the *Cassity* court found Plaintiffs could recover for losses to the trusts in Missouri when Allegiant was a trustee from 1998 to 2004. *Id.* at 646.

*Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991) (finding several related legal theories based on a common core of facts were not discrete causes of action such that compensation should not be awarded on a claim-by-claim basis but on all hours reasonably expended to achieve a successful result).

With respect to the hourly rates of the Reilly Pozner attorneys, the Court finds the rates are reasonable given the competency and qualifications of the professionals who worked on the case. The billing rates for partners at Reilly Pozner ranged from $425 to $712.69 an hour. Based on Missouri billing rates, this range conforms to rates charged by Missouri firms. *See Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) (finding district courts may rely on their own experience and knowledge of prevailing market rates in determining reasonable hourly rates). PNC does not object to the rates, other than catch-up fees which the Court will address later in this Memorandum. However, PNC objects to the reasonableness of the hours expended in this litigation. Specifically, PNC argues the Court should reduce the award of fees based on inadequate entries; unnecessary or excessive tasks or time; and entries which are not attorneys' fees.

When requesting attorney's fees, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley,* 461 U.S. at 437. "Incomplete or imprecise billing records preclude any meaningful review by the district court of the fee application for 'excessive, redundant, or otherwise unnecessary' hours and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim." *H.J. Inc. v. Flygt Corp.,* 925 F.2d 257, 260 (8th Cir. 1991) (quoting *Hensley*, 461 U.S. at 434, 437 & n. 12). Rather than making line-by-line determinations of vague entries or excessive or duplicative work, a court may exercise its discretion and make a

percentage reduction of the requested fees. *Ladd v. Pickering*, 783 F. Supp. 2d 1079, 1095 (E.D. Mo. 2011); *see also Mom365, Inc. v. Pinto*, No. 4:19-CV-01226 JAR, 2019 WL 6019299, at \*4 (E.D. Mo. Nov. 14, 2019) ("A district court may in the exercise of its discretion use a percentage reduction – instead of line-by-line cuts – as a practical means of reducing fee claims.").

In this case, the Court finds the use of numerous attorneys and professional staff was warranted given the magnitude and complexity of Plaintiffs' cause of action and PNC's vigorous defense.[4] Further, the Court notes having several attorneys attending the same meetings or participating in the same conference call promotes the efficient exchange of strategy perspective. *Emmenegger v. Bull Moose Tube Co.,* 33 F. Supp. 2d 1127, 1139 (E.D. Mo. 1998). However, the Court also agrees with PNC in that some of the billing records are inadequate, redundant, unnecessary, or excessive. Accordingly, the Court will reduce the amount of fees as set forth below.

### a. Depositions

Plaintiffs request attorneys' fees for preparing and conducting depositions in a total amount of $650,457. ECF No. 2292-3. The Plaintiffs employed nine attorneys and three paralegals.[5] The Court recognizes the complexity of this case which required many depositions and the use of several attorneys. *See, e.g., Ludlow v. BNSF Ry. Co.,* 788 F.3d 794, 803 (8th Cir.

---

[4] During post-remand litigation, Reilly Pozner utilized a total of nine Reilly Pozner attorneys, seven contract attorneys, four paralegals, and one law clerk. ECF No. 2966-1.

[5] In this district, fees for work performed by paralegals and other legal assistants may be included in an award of attorneys' fees. *Emmenegger,* 33 F. Supp. 2d at 1139 (awarding attorneys' fees for work performed by paralegals and paralegal assistants); *see also Weitz Co. v. MH Washington*, 631 F.3d 510, 535 (8th Cir. 2011) (finding clerical work was not compensable as attorneys' fees, paralegal work at market rates was compensable); *Koenig v. Bourdeau Const. LLC,* No. 4:13CV00477 SNLJ, 2014 WL 6686642, at \*4 (E.D. Mo. Nov. 26, 2014) (finding the rates requested for paralegals and law students were reasonable).

2015) (finding no abuse of discretion in district court's conclusion that involvement of a second attorney was reasonable given the depositions' complexity, length, and importance).

However, the Court notes several instances where attorneys merely attended a deposition but did not participate. For example, on July 31, 2018, four attorneys attended the 9.5-hour deposition of Mr. Coster, but only one attorney defended the deposition. On August 1, 2018, four attorneys attended the 4.5-hour deposition of Plaintiffs' expert Mr. Purcell. Likewise, on August 16, 2018, three attorneys attended all or part of the Dalton deposition, and three attorneys attended all or part of the Franke deposition on September 10, 2018. Overall, two or more attorneys attended the numerous and lengthy depositions prior to the second trial. Further, the entries show several attorneys prepared for the same depositions and reviewed the same deposition transcripts. Such "overlawyering" may be subject to a reduction in fees by the trial court. *Kline v. City of Kansas City, Mo., Fire Dep't*, 245 F.3d 707, 709 (8th Cir. 2001); *see also A.J. by L.B. v. Kierst,* 56 F.3d 849, 864 (8th Cir. 1995) (allowing a court to reduce attorney hours and fees "for inefficiency or duplication of services in cases where more than one attorney is used").

The Court also notes entries for performance of clerical tasks such as planning travel and calendaring events are not awardable as attorneys' fees. *Am. Modern Home Ins. Co.,* 2019 WL 3976355, at *6. For example, Mr. Pozner billed a total of 1.4 hours for making travel arrangements and calendaring upcoming depositions. Ms. Burkitt, a paralegal, billed time for managing, organizing, and confirming deposition arrangements, as well as communicating with the court reporter regarding upcoming deposition dates. Based on the foregoing, the Court finds a global reduction of 25% is warranted for the fees requested pertaining to depositions taken after remand.

### b. Fact Development

For post remand fees pertaining to fact development, Plaintiffs request $441,718 in attorneys' fees, primarily incurred by Larry Pozner and various contract attorneys. The Court notes the contract attorneys' fees are significantly less than the fees of Reilly Pozner partners. However, the Court also notes the absence of any affidavits from attorneys presumably hired as outside counsel to perform factual development. Indeed, while Plaintiffs complain about Mr. Wack's[6] report because he "knows nothing about the quality of [the contract attorneys'] work," Plaintiffs provide no information on attorneys Cassandra MacKenzie, Juliana Okulski, Yona Porat, or Jack Stokan sufficient for the Court to determine the "the experience, reputation and ability of the attorney(s)." *Breeden*, 2019 WL 1518185, at *1; *see also Allerdissen v. Med. Commercial Audit, Inc.,* No. 4:19-CV-01291-JAR, 2019 WL 7282476, at *3 (E.D. Mo. Dec. 26, 2019) (refusing to award attorneys' fees for co-counsel's work on the case which was unsupported by affidavit).

In addition, much of the work and the hours are excessive. For instance, Ms. MacKenzie spent a large amount of time reviewing emails and deposition transcripts, but the entries fail to show if, or how, the hours of review were reasonably expended for use in factual development.[7]

---

[6] PNC employed attorney Thomas E. Wack to review the reports from Plaintiffs' expert and related documents. Mr. Wack engaged in defense civil litigation for nearly 48 years and was a partner at Bryan Cave for 30 years before retiring in 2016. He specialized in class actions and complex commercial litigation. His vast litigation experience, client billing experience, and service as an expert witness on attorney's fees in a recent state case render him qualified to provide his expert opinion on the attorneys' fees requested in this matter. ECF No. 3001-1 p. 2.

[7] The Court also notes the same depositions were reviewed by attorneys at Reilly Pozner, and the fees were submitted as fees for depositions before Trial 2. Such "inefficiency or duplication of services" warrants a reduction in fees. *A.J.,* 56 F.3d at 864; *see also Van Booven v. PNK (River City), LLC,* No. 4:14-CV-851 CEJ, 2015 WL 3774043, at *2 (E.D. Mo. June 17, 2015) (deducting some hours as duplicative or excessive where more than one attorney billed time for reviews).

"If it is not possible for the court to determine which hours were spent on particular claims or issues because of imprecise billing records, the court may resolve uncertainties against the party requesting fees, and simply reduce the lodestar amount." *Trim Fit, LLC v. Dickey*, No. 4:06-CV-49 CEJ, 2008 WL 4838150, at *8 (E.D. Mo. Nov. 6, 2008), *aff'd and remanded,* 607 F.3d 528 (8th Cir. 2010); *see also H.J. Inc.,* 925 F.2d at 260 (finding imprecise billing records preclude a district court from conducting meaningful review for "excessive, redundant, or otherwise unnecessary" hours or attributing an attorney's time to a distinct issue or claim).

Likewise, Ms. Porat spent over 12 hours reviewing the trial transcripts and over 40 hours working on restitution and forfeiture matters pertaining to the underlying criminal case. Nothing in the entries explains how these hours were necessary and reasonable to the factual development of the civil case. Thus, the Court finds the factual development for the second trial should be reduced by 50% to accurately reflect the reasonable amount of time required for factual development.

### *c. Document Management*

Plaintiffs request $68,100 in document management fees. PNC argues many of these fees are for clerical work or for non-legal work. As stated above, work of a paralegal is included in an award of attorneys' fees. Further, "[i]t is well established that time expended and functions performed by an attorney's support staff may be included in an attorney's fee award." *Mayhall v. Berman & Rabin, P.A.,* No. 4:13CV0175 AGF, 2014 WL 340215, at *9 (E.D. Mo. Jan. 30, 2014) (collecting cases). However, fees for clerical work or expenses related to document management should be subsumed in firm overhead and may not be recovered as attorneys' fees. *See Nadarajah v. Holder,* 569 F.3d 906, 921 (9th Cir. 2009) (finding filing, transcript organization, and document organization time was clerical in nature and should have been subsumed in firm

overhead and not billed at paralegal rates); *In re Iowa Ready-Mix Concrete Antitrust Litig.,* No. C 10-4038-MWB, 2011 WL 5547159, at *4 (N.D. Iowa Nov. 9, 2011) (assessing document and data management as costs).

In addition, Plaintiffs request fees for work performed by IT Professionals Glen Gilbert and Colin Pitet, primarily to prepare and download electronic documents. While the Court agrees with Plaintiffs that work done by a ***paralegal*** that might otherwise be performed by an attorney such as assistance with document production, Plaintiffs have not presented any support for an award of attorneys' fees for computer processing work performed by the IT staff. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) (recognizing paralegals were able to perform tasks under attorney supervision at a lower billing rate).

Taking into consideration the foregoing, the Court finds the IT professional work is not compensable as attorneys' fees. Further, some of the entries are clerical in nature, such as identifying storage boxes, reviewing emails from court clerk, coordinating the creation of binders, working on quality control, downloading uploads and depositions. These types of entries are not legal work. Thus, the Court will reduce amount requested for document management by 50%.

### *d. Case Development and Strategy*

Plaintiffs seek an award for attorneys' fees in this category totaling $2,022,267, reflecting a 19% reduction by Plaintiffs' expert, Rodney Loomer.[8] PNC opposes this amount based upon

---

[8] Plaintiffs' expert witness on attorneys' fees is Rodney E Loomer, a partner at Turner, Reid, Duncan, Loomer, and Patton, P.C. located in Springfield, Missouri. Mr. Loomer has over 35 years of experience in complex products liability defense on behalf of large corporations. He also has been responsible for overseeing charges for attorneys' fees and ensuring they were reasonable. The Court finds Mr. Loomer qualified to provide his expert opinion in this case. ECF No. 2966-1.

excessive time billed and time billed for "review" unrelated to PNC or the outcome of the case. The Court notes Plaintiffs utilized several contract attorneys with no accompanying information pertaining to their expertise or skills which, for example, would justify a rate such as $500 per hour for contract attorney Todd Mair. Further, four attorneys collectively, and primarily Stephen Segall, billed over 200 hours discussing, researching, and drafting documents on judicial estoppel. The Court notes this argument played only a small role in the post-remand pleadings. In addition, Robert Kelly billed over 30 hours researching prior opinions by this Court unrelated to the PNC litigation.

The Court also notes redundancies and duplication of effort with respect to several attorneys reviewing trial transcripts, documents and transcripts related to appeal in the Eighth Circuit, and deposition review. For example, six attorneys and one paralegal reviewed the Eighth Circuit oral argument transcript, and several attorneys reviewed trial transcripts. *Van Booven,* 2015 WL 3774043, at *2 (deducting some hours as duplicative or excessive where more than one attorney billed time for reviews). Further, tasks such as "reviewed and responded to emails of the day" are vague and do not indicate whether the work performed was related to PNC. *H.J. Inc.*, 925 F.2d at 260.

Finally, the Court notes several entries from Scott Shadler and John Martin, IT professionals, regarding the start of an MTL data base program, query development, and meetings with attorneys regarding the same. However, the records fail to indicate the data base was used only for PNC. Additionally, as stated above, IT matters are overhead and not recoverable as attorneys' fees. In short, the Court finds the fees requested for "Case Development and Strategy" should be reduced by an additional 15%.

### e. Dispositive Motions

Plaintiffs request fees for dispositive motions in the amount of $125,339. PNC takes issue only with Mr. Kelly's hours billed for preparing for a Rule 16 scheduling conference. The Court notes most of Mr. Kelly's time was spent drafting motions and replies related to the Rule 16 conference and motions presented therein. Therefore, the Court finds the fees requested for dispositive motions to be reasonable, and no deductions are warranted.

### f. Written Discovery

Plaintiffs also seek $440,275 in attorneys' fees for written discovery, after a 10% reduction by Mr. Loomer. The Court agrees with PNC that some of these fees are redundant and finds further reductions are warranted. For instance, the billing records show three attorneys worked on a motion for protective order, and several different attorneys prepared and reviewed discovery responses. The Court will therefore apply an additional 10% reduction.

### g. Trial 2 Preparation

In this category, Plaintiffs' request $43,765. The Court notes paralegals performed the majority of work at a lower rate. The Court finds these fees to be reasonable.

### h. Pre-Trial 2

Here, Plaintiffs seek attorneys' fees in the amount of $858,635, which was revised after Mr. Loomer applied a 25% reduction for duplicative work. At the outset, the Court notes the preparation of trial exhibits, demonstratives, and visuals by IT professionals are not recoverable as attorneys' fees. The Court also notes the billing records contain vague references to "review[ing] e-mails," "review[ing] documents for production," "prepar[ing] for trial," and "trial preparation." These entries preclude the Court from conducting meaningful review of the

reasonableness of attorney hours billed.  *Trim Fit, LLC,* 2008 WL 4838150, at *8.  Accordingly, the Court finds a further reduction of 15% is appropriate.

### *i. Trial 2*

Plaintiffs submitted a revised request for fees in this category in the amount of $1,154,593; a 15% reduction as suggested by Mr. Loomer.  The Court has reviewed the submissions and finds a greater reduction is warranted.  The trial lasted 22 days, during which time several Reilly Pozner attorneys attended, but did not participate in the trial proceedings.  On day one, November 28, 2018, ten attorneys and three paralegals attended the trial, with only four attorneys and one paralegal participating.  On day 6 of the trial, six attorneys billed roughly 9 hours each for attending the trial.  In sum, the billing records show several attorneys and paralegals in attendance each day who billed hours but did not participate or otherwise assist in the trial.  Likewise, several attorneys expended time preparing for trial, but the billing records fail to show any participation or assistance during the trial other than attendance.  The Court again acknowledges the complexity of the issues in the case but finds the mere trial preparation and attendance of numerous attorneys and paralegals to be duplicative and excessive beyond the fees already reduced.  *Betton v. St. Louis Cty.,* No. 4:05CV01455 JCH, 2010 WL 2025333, at *6 (E.D. Mo. May 19, 2010) (reducing fees where four attorneys billed for trial time but only two addressed the Court.  Therefore, the Court will apply an additional 15% reduction in the Trial 2 category.

### j. Post-Submission Fees[9]

Plaintiffs' request the 5% reduced rate of $201,463 for fees incurred after submission of the case to the Court. The Court agrees activities such as packing boxes and organizing the file after trial are clerical in nature and not recoverable as attorneys' fees. The Court also notes duplicative efforts in that several attorneys and paralegals spent considerable time preparing for closing arguments and attending closing arguments, with only three attorneys presenting and participating in the closing arguments. This excessive number of attorneys and hours warrants an additional reduction of 20%.

### k. Expert Witnesses

After a 10% reduction for an excessive number of participants, the Plaintiffs seek $328,684 for attorney work performed with respect to expert witnesses. PNC argues these fees should be reduced by one-fourth because the Court rejected and/or disregarded some of the experts' testimony and calculations, and many of the entries are vague. This complex case involved millions of dollars and required the use of many experts. The Court agrees the number of attorneys expending hours on meeting with experts and reviewing reports is excessive. Further, entries such as "met with various experts regarding case issues," "reviewed expert reports for comments," and "conferred . . . regarding expert data issues" preclude the Court from conducting meaningful review for the reasonableness of the fees. Thus, the Court will apply an additional 5% reduction to Plaintiffs' request for expert witness fees.

---

[9] PNC argues Plaintiffs are not entitled to any fee categories not included in the original motion for attorneys' fees. However, the Court notes Plaintiffs filed present motion for attorneys' fees pursuant to the Court's directive to file an amended motion by a date certain, and the Court will entertain the new categories submitted in the amended motion for attorneys' fees. ECF No. 2985.

### l. Client Communications

Plaintiffs request $262,760 in fees for client communications. These fees include preparation for, and participation in, weekly "Litigation Oversight Committee" telephone conferences by up to six attorneys and one paralegal. The Court agrees the clients were sophisticated and involved in the litigation. However, the Court also finds the involvement of so many Reilly Pozner attorneys to communicate with clients is excessive and redundant. Therefore, the Court will reduce this amount by 50%.

### m. New Hourly Rate Catch-up Fees

Plaintiffs contend they are entitled to catch-up fees for six months of bills erroneously reflecting old hourly rates, not newly negotiated rates. Plaintiffs seek $253,811 to recapture the rate differential for that time period, which reflects a 10.5% average reduction by Mr. Loomer across all post-remand fee categories. The Court notes many of the reductions proposed by Mr. Loomer failed to account for excessive, redundant, and duplicative work performed by Reilly Pozner attorneys. The Court will therefore apply an additional 15% reduction.

### n. Holdback Fees

Plaintiffs also seek $2,055,560 for reimbursement of amounts held back pursuant to an agreement between Plaintiffs and Reilly Pozner. Under this agreement, Plaintiffs paid 75% of the hourly fees incurred, and upon reaching certain recovery thresholds, Plaintiffs agreed to pay Reilly Pozner 90% of the 25% holdback amount. ECF No. 2992-2 ¶ 16. Because Plaintiffs obtained judgment against PNC, Reilly Pozner requests payment of the holdback fees based upon the full value of fees sought in the amended motion for attorneys' fees. The Court has considered this request, and in light of reductions taken in fee categories set forth above, the Court finds a 33% fee reduction is warranted.

### *o. Gray, Ritter & Graham Fees*

Last, Plaintiffs request $81,527.50 for post-remand services provided by the St. Louis firm of Gray, Ritter & Graham. In his Declaration, Maurice Graham indicates the fees and rates requested are reasonable, and he only billed for the reasonable time spent accomplishing tasks. ECF No. 2966-3. Further, Mr. Loomer noted Mr. Graham's hourly rate of $550 per hour was reasonable in light of Mr. Graham's reputation, experience, and skill. Finally, Mr. Loomer found no issues with redundancy or excessiveness in the post-remand submissions. The Court has reviewed the billing records submitted by Gray, Ritter & Graham as well as the reports from Mr. Loomer. The Court agrees with PNC that the billing records lack sufficient detail. However, the Court also finds Mr. Graham's exceptional work in this case warrants some award of attorneys' fees. Thus, the Court will reduce the requested amount by 15% to reflect the vague billing submissions provided by Mr. Graham. *Trim Fit, LLC,* 2008 WL 4838150, at *8.

## III. CONCLUSION

Based on the foregoing, the Court finds Plaintiffs are entitled to costs in the amount of $139,164.73. Further, after reductions to the lodestar amount, the Court awards attorneys' fees in the amount of $7,005,337, as set forth in the chart below:

| Fee Category | Requested Amount (Revised) | Percentage Reduction | Reduced Amount |
|---|---|---|---|
| Depositions | $   650,457 | 25% | $   487,843 |
| Fact Development | $   441,718 | 50% | $   220,859 |
| Doc. Management | $     68,100 | 50% | $     34,050 |
| Case Strategy | $2,022,267 | 15% | $1,718,927 |
| Dispositive Motions | $   125,339 | 0% | $   125,339 |
| Written Discovery | $   440,275 | 10% | $   396,248 |
| Trial Prep | $     43,765 | 0% | $     43,765 |
| Pretrial | $   858,635 | 15% | $   729,840 |
| Trial | $1,154,593 | 15% | $   981,404 |
| Post-Submission | $   201,463 | 20% | $   161,170 |
| Expert Witnesses | $   328,684 | 5% | $   312,250 |
| Client Communications | $   262,760 | 50% | $   131,380 |

| Catch-Up Fees | $ 253,811 | 15% | $ 215,739 |
| Holdback Fees | $2,055,560 | 33% | $1,377,225 |
| Gray, Ritter & Graham | $ 81,527 | 15% | $ 69,298 |
| **TOTAL** | | | $7,005,337 |

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Amended Bill of Costs (ECF No. 2989) is

**GRANTED** in part and **DENIED** in part. The Clerk of the Court shall tax costs against

Defendants in the amount of $139,164.73.

**IT IS FURTHER ORDERED** that Plaintiffs' Amended Motion for Award of Attorneys'

Fees (ECF No. 2991) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Plaintiffs shall recover from Defendants the

reasonable attorneys' fees in the amount of $7,005,337.

**IT IS FURTHER ORDERED** that Plaintiffs' original Motion for Award of Attorneys'

Fees (ECF No. 2965) is **DENIED** as **MOOT.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiffs' Motion for

Attorneys' Fees or in the Alternative, to Expand Discovery (ECF No. 3001) is **DENIED** as

**MOOT.**

**IT IS FINALLY ORDERED** that Defendants' Motion to Strike Portions of Plaintiffs'

Amended Motion for Award of Attorneys' Fees (ECF No. 2996) is **DENIED** as **MOOT.**

Dated this 21st day of February, 2020.


_E. Richard Webber_

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE